# EXHIBIT D

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF TEXAS

3              MARSHALL DIVISION

4              - - - - -

5   ------------------------------------x

    SOFTWARE RIGHTS ARCHIVE, LLC.,        :

6                                         :

                    Plaintiff,            :

7                                         : Civil Action No.
          -vs-                            : 2:07-cv-511 (CE)

8                                         :

    GOOGLE INC., YAHOO! INC., IAC SEARCH  :

9   & MEDIA, INC., AOL, LLC., and LYCOS,  :
    INC.,                                 :

10                                        :

                    Defendants.           :

11  ------------------------------------x

12

13              - - - - -

14      Videotaped deposition of JEFFREY FRANKLIN AIT, the

15  witness herein, called for the purpose of Discovery

16  Examination by the Defendants, pursuant to Federal

17  Rules of Civil Procedure, taken before Rita Rodriguez,

18  a Notary Public for South Carolina, at the Hilton

19  Myrtle Beach Resort, 10000 Beach Club Drive, Myrtle

20  Beach, South Carolina, on Tuesday, September 30, 2008,

21  commencing at 9:45 a.m.

22              - - - - -

23

24

25

1              JEFFREY FRANKLIN AIT,

2        of lawful age, the Witness herein, called for

3        Discovery Examination by the Defendants, being by

4        me first duly sworn, as hereinafter certified,

5        deposed and said as follows:

6                EXAMINATION

7 BY MR. WALSH:

8 Q.    Good morning, Mr. Ait.

9 A.    Good morning.

10 Q.    Mr. Ait, my name is Tom Walsh.  We met a few

11        minutes ago when you walked into the room.  I

12        represent Google and AOL in a lawsuit that's been

13        brought by the Software Rights Archive in the

14        Eastern District of Texas by my clients.

15           Do you understand that?

16 A.    I do.

17 Q.    To my knowledge, you and I never met before

18        today.  Does that square with your recollection?

19 A.    It does.

20 Q.    Have you ever given a deposition before?

21 A.    I have.

22 Q.    Can you tell me, to the best of your ability,

23        even if it's an approximation, actually how many

24        times you believe you have been deposed?

25 A.    15, 20 times.

1  alleged wrong doings you would have allegedly
2  undertaken while at the company?
3  A.  No.
4  Q.  Companies may have gone under and as a result you
5      may have left the company but it had nothing to
6      do with any of your performance?
7  A.  No.
8  Q.  We get now to the time at DeltaPoint.  How long
9      were you at DeltaPoint and then the company that
10     it became, Site?
11 A.  Up and through its bankruptcy and dissolution.
12 Q.  In 2004?
13 A.  I believe that's true.
14 Q.  So during that entire time you were the CEO of
15     DeltaPoint which later became Site?
16 A.  Once we began the bankruptcy proceedings I became
17     the Responsible Party not necessarily the CEO.
18 Q.  Is it fair to say that your CEO duties ended when
19     the bankruptcy occurred?
20 A.  Yes.
21 Q.  And that's the duties as the CEO of Site?
22 A.  Yes.
23 Q.  I may ask some follow-up questions like that.
24     I'm just trying to make it clear for the record.
25     You are doing a very good job of communicating

1       with me, so I'm not at all confusing about that.

2            Is it fair to say you ceased being CEO --

3       I'm going to ask you about Site and then Slash,

4       you ceased being CEO when you became the

5       Responsible Person when the bankruptcy was filed

6       for Site; correct?

7 A.    Yes.

8 Q.    You ceased being the CEO of Slash when Slash was

9       merged into Site about the 2000 time frame?

10 A.    Yes.

11 Q.    Do you remember when, I'm sure we have it, but do

12       you recall generally when the bankruptcy was

13       filed by Site?

14 A.    1999, 2000 Februaryish time frame, I believe.

15 Q.    So the bankruptcy took several years to conclude?

16 A.    Yes.

17 Q.    I have never been involved in a bankruptcy, I'll

18       confess to you, at least not directly involved.

19       When you become a Responsible Person for a

20       bankruptcy, does that basically become a

21       full-time job?

22 A.    It does not.

23 Q.    It's not occupying all of your working hours?

24 A.    It is not.

25 Q.    So once the bankruptcy occurred for Site and you

1    may be required by the Bankruptcy Court in

2    connection with the Final Decree."

3          I read that correctly; correct?

4  A.    Yes.

5  Q.    "The responsible person shall be discharged from

6    all duties and responsibilities of the plan upon

7    the issuance of the final decree"; correct?

8  A.    Sure.

9  Q.    And you know for a fact, Mr. Ait, that the final

10    decree has been issued in the Bankruptcy Court?

11  A.    It has or it is my belief that it has.

12  Q.    It's my belief that it has as well. I just don't

13    have it in front of me to put it in front of you.

14          But you would agree with me pursuant to

15    this plan of reorganization in Exhibit 21, upon

16    the final decree being signed by the Bankruptcy

17    Court, you ceased to be the Responsible Person

18    for Site; correct?

19  A.    That's true.

20  Q.    I said I didn't have it handy but my colleague

21    does.

22  A.    Okay.

23          - - - - -

24        (Thereupon, Ait Exhibit No. 23

25            was marked)

1                    - - - - -

2  Q.    Mr. Ait, I'm handing you what's been marked as

3        Deposition Exhibit No. 23.  Do you have that

4        handy in front of you now?

5  A.    I do.

6  Q.    Would you agree with me, Mr. Ait, that the Final

7        Decree was in fact signed on January 6, 2004 by

8        the United States Bankruptcy Court for the San

9        Jose Division of the United States Bankruptcy

10       Court in the Northern District of California.

11 A.    Uh-huh.

12 Q.    You agree; correct?

13 A.    I agree.

14 Q.    So pursuant to Paragraph F of Exhibit 21, the

15       Responsible Person shall be discharged from all

16       duties and responsibilities of the plan upon the

17       issuance of the Final Decree, your role as

18       Responsible Person ended on January 6th of 2004;

19       correct, Mr. Ait?

20             MR. KAPLAN:  Objection to form.

21 Q.    You may answer, sir.

22 A.    I assume.

23 Q.    Mr. Ait, it took almost five years for this

24       bankruptcy to be closed or from sometime in 1999

25       until January of 2004, so almost five years;

1      is that someone else's writing?

2  A.    It's not mine.

3  Q.    So when I said the writing on the document, I was

4      meaning on the actual Secretary of State form,

5      you understood that; right?

6  A.    Yes.

7  Q.    And you said to Victor Hardy, "Please accept this

8      e-mail as my permission to remove the company

9      from its suspended status by executing and

10     putting into effect the attached document"; is

11     that correct, Mr. Ait?

12 A.    I did send that e-mail, yes.

13 Q.    What authority did you believe you had on

14     July 30th of 2008 to do this for Site?

15 A.    The fact that the company was in a suspended

16     state and that the dissolution that I had

17     previously been told had been affected was not

18     actually affected so the corporation was not

19     dissolved.

20 Q.    But, Mr. Ait, your duties as a Responsible Person

21     had ended back in January of 2004; correct?  We

22     have already seen that today?

23         MR. KAPLAN:  Objection to form.

24 A.    I didn't even think about that when I did this.

25     My whole goal was to try to comply with the

1    Judge's Order to dissolve the company and I was

2    as surprised as anyone to find out it was in a

3    suspended state and not a dissolved state.

4 Q. Has it been dissolved today?

5 A. I have been in contact with the Franchise Tax

6    Board and I'm trying to file those papers with

7    the state of California.

8    Federally it has been dissolved and I

9    don't know whether it was my legal team who

10    didn't do the right thing or whether the state of

11    California has not got all the right paperwork in

12    place.

13 Q. So, as of today, to your knowledge, Site has not

14    been dissolved?

15 A. It has not as of this date because there is

16    certain tax implications that I do not have money

17    to pay since there is nothing in the company?

18 Q. When you say it has been federally dissolved,

19    what did you mean by that?

20 A. It is my understanding that upon filing a final

21    tax document with the federal government, the

22    federal government then refers to it as being

23    final.

24    That final tax document was filed in the

25    state of California. However, the state of

1 Q.    What did Mr. Hardy tell you when he said he was

2       going to send you this document?

3               MR. KAPLAN: Just a moment.

4               MR. WALSH: This is August of 2008.

5               MR. KAPLAN: Fine. Go ahead.

6 A.    He just said, as a matter of support, that he

7       would ask me to sign the assignment of patents if

8       that is what I had actually intended to happen

9       just to clarify that it was my intent for that

10      assignment to have taken place.

11 Q.    Did you check -- do you see Schedule A on that

12      document?

13 A.    I did.

14 Q.    You checked those patent numbers against some

15      independent record to make sure those are the

16      right patents numbers to include?

17 A.    I did not.

18 Q.    Did you check with anyone to make sure those were

19      the patent numbers that should be listed on

20      Schedule A?

21 A.    I did not.

22 Q.    You took Mr. Hardy's word for it that those were

23      the right patents to be listed?

24 A.    I did.

25 Q.    You signed this document, Deposition Exhibit 29,

1      as the chief executive officer of Site; correct?

2  A.   Yes.

3  Q.   But I think you agreed with me earlier, didn't

4       you, Mr. Ait, that you ceased being chief

5       executive officer of Site when it went into

6       bankruptcy?

7  A.   That's true.

8  Q.   You also signed it as the president and chief

9       executive officer of Slash; correct?

10 A.   Yes.

11 Q.   And you told me earlier that Slash ceased to

12      exist when it merged into DeltaPoint in 2000;

13      correct?

14 A.   That's true.

15 Q.   On the second page of this document, Mr. Ait --

16      let's start on the first page.

17           You see about the sixth Whereas clause

18      down?

19 A.   "Whereas the Site entities have ratified"?

20 Q.   Yes.   This is the 2005 assignment that you saw

21      for the first time when Mr. Wolff sent it to you

22      in July of 2008; correct?

23 A.   Yes.

24 Q.   Give me one second, Mr. Ait.  I want to make sure

25      I'm not getting confused, which I may be.

1     agreed to ratify it.

2  Q.   Would you agree with me, Mr. Ait, that you simply

3       did not have the authority in August of 2008, on

4       behalf of Site or Slash, to do any ratification

5       of any of the prior assignment to Mr. Egger or

6       purported assignment to Mr. Egger since your

7       duties as Responsible Person had ended almost

8       four years ago?

9  A.   Perhaps.   I mean, I don't know that to be true

10      or not.  Since the company was not dissolved, I

11      don't know what my Responsible Party position is.

12 Q.   Don't you think it would be a good idea, to the

13      extent you are going to be involved with any sort

14      of further action with respect to these, for you,

15      as the former Responsible Person, to go into the

16      Bankruptcy Court and see what the Bankruptcy

17      Court has to say about this?

18           MR. KAPLAN:  Objection to form.

19 A.   Perhaps.

20 Q.   Let me finish up a line of questioning here in

21      just a second and then we can take a break.  If

22      you could go a couple more minute, Mr. Ait.

23           - - - - -

24           (Thereupon, Ait Exhibit No. 30

25                was marked)

```
 1   STATE OF SOUTH CAROLINA        :

 2                                  :   SS:    CERTIFICATE

 3   COUNTY OF HORRY                :

 4        I, Rita Rodriguez, a Notary Public for South

 5   Carolina, do hereby certify that the within named

 6   witness,                , was by me first duly sworn to

 7   testify the truth, the whole truth and nothing but the

 8   truth in the cause aforesaid:

 9        That the testimony then given was reduced by me

10   to stenotype in the presence of said witness,

11   subsequently transcribed onto a computer under my

12   direction, and that the foregoing is a true and correct

13   transcript of the testimony so given as aforesaid.

14        I do further certify that this deposition was

15   taken at the time and place as specified in the

16   foregoing caption, and that I am not a relative,

17   counsel or attorney of either party, or otherwise

18   interested in the outcome of this action.

19        IN WITNESS WHEREOF, I have hereunto set my hand

20   and affixed my seal of office at Myrtle Beach, South

21   Carolina this    day of         ,

22

                    Rita Rodriguez

23                   RITA RODRIGUEZ, Notary Public
                     for South Carolina.

24

         My Commission expires October 4, 2010.

25
```