# EXHIBIT F

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:07-cv-511 (CE) |
| GOOGLE INC., YAHOO! INC., | § | |
| IAC SEARCH & MEDIA, INC., AOL LLC, | § | |
| and LYCOS, INC. | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## THIRD DECLARATION OF JEFFREY FRANKLIN AIT

I, Jeffrey Franklin Ait, hereby make the following declaration under penalty of perjury. All facts set forth herein are true and correct, and I make this declaration based upon my personal knowledge and upon review of corporate records.

1.      I was the Chief Executive Officer of the debtor Site Technologies, Inc. ("Site Tech," and formerly known as "DeltaPoint, Inc.") and the debtor's subsidiary Site/technologies/inc ("Site/Tech") at the time of Site Tech's bankruptcy. I was also the official "Responsible Person" under the bankruptcy plan and was charged with implementing the plan and creating the debtor's schedules.

2.      On September 16, 1998, Site Tech sold and assigned, among other things, U.S. Patent No. 5,544,352, and related applications and future patents (which include U.S. Patent Nos. 5,832,494 and 6,233,571) (collectively, "the Patents") to Daniel Egger. Daniel Egger paid $100,000 for the Patents. Prior to the bankruptcy, Site Tech and Site/Tech considered the sale and transfer of the patents to Daniel Egger as valid, consummated, and complete, and reflected this in numerous SEC statements and other corporate records. Site Tech and Site/Tech

EXHIBIT 6

maintained this view throughout the bankruptcy and disclosed the transfers in several bankruptcy filings. First, we explicitly identified the sale and transfer of the Patents to Daniel Egger in both Disclosure Statements, which described the effect of the debtor's plan for purposes of approval from the creditors. *See* Debtor's First Amended Disclosure Statement at ¶ 5.5, attached as Exhibit A ("In September 1998, the Company also sold its V-Search technology and related patents."). Second, we listed the September 1998 transfer of the Patents to Daniel Egger as a transfer of the debtor's property within a year in the debtor's Statement of Financial Affairs. *See* Statement of Financial Affairs at ¶ 10 (Other Transfers), attached as Exhibit B. Finally, Site Tech and Site/Tech deliberately excluded the Patents in the debtor's property schedules describing intellectual property assets held by the debtor. *See* Schedule B at ¶ 21 (listing patents, copyrights, and other intellectual property), attached as Exhibit C. We did this because we believed that the Patents had been the subject of a valid transfer to Daniel Egger in September 1998 and thus were not owned by Site Tech at the time it filed for bankruptcy. We also did not amend the debtor's schedules to list the Patents after Site Tech and Site/Tech merged in December 2000, because Site Tech and Site/Tech did not believe that the Patents were held by the subsidiary at the time of the merger or became Site Tech's property as a result of the merger. Rather, both Site Tech and Site/Tech had conceded that the Patents were transferred to Daniel Egger in September 1998. The purpose of listing this transfer, among other things, was to indicate to all interested parties in the bankruptcy that the Patents were transferred to Daniel Egger prior to the bankruptcy and thereby give such parties an opportunity to challenge the validity of the assignment and recover the Patents for the benefit of the Debtor's estate. Such disclosures confirmed that, absent the successful prosecution of an action to recover the Patents, the Patents would not be available for distribution to creditors and other stakeholders.

3.      On April 25, 2000, Site Tech filed its First Amended Plan of Reorganization, attached as Exhibit D.  Site Tech also filed its First Amended Disclosure Statement for the plan on that same date.  The bankruptcy court entered an order approving the disclosure statement on April 26, 2000.  The order approving the disclosure statement allowed Site Tech to mail the amended plan and disclosure statement to its creditors and interest holders in order to solicit their support for the plan.  Following a hearing, the bankruptcy court entered its Order Confirming First Amended Plan of Reorganization on June 15, 2000, attached as Exhibit E.  Paragraphs B and C of the confirmation order make explicit reference to the amended disclosure statement and the court's approval thereof.

4.      My understanding is that the defendants in this matter assert that the Patents and other former assets of Site/Tech were never assets of Site Tech because the documentation was insufficient to transfer these assets to Site Tech.  Both Site Tech and Site/Tech long considered the former assets of Site/Tech to have been transferred to Site Tech in connection with Site Tech's acquisition of Site/Tech in July 1997.  For that reason, we listed the former assets of Site/Tech as the assets of Site Tech in the debtor's schedules.  For example, the Site Sweeper product and technology that was a former asset of Site/Tech was listed in paragraph 21 of Schedule B as belonging to Site Tech.  It was sold by Site Tech in accordance with the plan and represented a substantial part of the consideration that resulted in a one hundred percent recovery for creditors and a substantial return of funds for the former shareholders of Site Tech.

5.      Had Site Tech and Site/Tech not conceded the validity of the transfers of assets from Site/Tech to Site Tech or the validity of the transfer to Daniel Egger, it would have threatened the overall success of the bankruptcy in paying off the creditors, approving and completing the plan, and obtaining a return for Site Tech's shareholders.  We would have been

3

involved in costly litigation with Daniel Egger, which I believe would not have been successful given that we had represented to Egger that we were properly assigning him the patents and given that he paid $100,000 for them. This would have depleted the resources of the estate for a losing effort. Even if we were successful in recovering the Patents, Daniel Egger would have had a substantial claim in the bankruptcy for the Patents. This would have certainly threatened the recovery we obtained for the shareholders, who would have been subordinate to Daniel Egger, and this also would have impacted whether the creditors would have been fully paid. Similarly, the failure to recognize the prior transfer of assets from Site/Tech to Site Tech could have potentially impacted the plan's sale of assets in the Star Base acquisition, which provided substantial benefits to all the stakeholders in the bankruptcy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __8, December__ , 2008
Myrtle Beach, South Carolina

4