# LICHTENSTEIN · KÖRNER & PARTNER
Rechtsanwälte · Steuerberater

Büro Stuttgart
Heidehofstr. 9
70184 Stuttgart

Prof. Dr. Erich Lichtenstein (-1976)
Dr. Eberhard Körner, M.C.J. (New York Univ.)
Carmen Lichtenstein
Klaus-Ulrich Link
Prof. Dr. Thomas Sambuc, LL. M. (Yale)
Dr. Ernst Wendler
Dr. Rolf Diekmann
Dr. Kerstin Gründig-Schnelle
Dr. Gereon Klöpping
Dr. Carsten Stoll
Dr. Ekkehard Stolz
Michael Nonnenmann
Ursula Stelzenmüller
Rechtsanwälte

Christian Heitmann-Lichtenstein
Dipl.-Kfm., Steuerberater

Büro Dresden
Bernhardstraße 104
01187 Dresden

Dr. Veronika Frey
Telefon (0351) 82 80 50
Telefax (0351) 82 80 599

Büro Alicante/Spanien
Explanada de España 3
E-03002 Alicante

Telephone 0034/965209899
Telefax 0034/965205744

**Vorab per Fax: 030 – 2888 4231**

Lichtenstein · Körner & Partner · Heidehofstr. 9 · 70184 Stuttgart

**Rechtsanwälte
Erdmann, Zacharias, Langhans**
Torstr. 222
10115 Berlin

Eingegangen 05. JAN. 2007
ANWALTSSOZIETÄT
ERDMANN ZACHARIAS-LANGHANS

Kopie    Anlage AG 1

Bestätigungskopie

| | |
|---|---|
| Datum: | 03.01.2007 |
| Unsere Akte: | SZ-06/02599 n-mz |
| Durchwahl: | 0711 / 4 89 79 - 24 |
| E-Mail: | ekkehard.stolz@lkpa.de |

**Facebook, Inc. ./. StudiVZ Ltd.**
**Ihre Akte: SVZ-002/2006**

Sehr geehrter Herr Kollege Erdmann,

wir zeigen an, dass uns die Facebook, Inc. in dieser Angelegenheit mit der Wahrnehmung ihrer Interessen beauftragt hat. Wir übergeben in der Anlage eine auf uns lautende Original-Vollmacht. Die Korrespondenz zwischen den Parteien, insbesondere das Schreiben unserer Mandantin vom 8.06.2006 und Ihre Antwort vom 21.06.2006, liegt uns vor.

In der Zwischenzeit haben sich neue Entwicklungen ergeben. Insbesondere hat unsere Mandantin festgestellt, dass viele Nutzer tatsächlich aufgrund des nahezu identischen Designs der irrigen Auffassung sind, die Website Ihrer Mandantin werde von unserer Mandantin oder zumindest mit deren Zustimmung betrieben. Ihre Mandantin wird sicherlich nachvollziehen können, dass unsere Mandantin gegen diese Herkunftstäu-

Kontoführung in Stuttgart:
Deutsche Bank AG (BLZ 600 700 24) 1330547
IBAN: DE94 6007 0024 0133 0547 00
SWIFT: DEUTDEDBSTG
Commerzbank AG (BLZ 600 400 71) 5158639
Baden-Württembergische Bank (BLZ 600 501 01) 2940838
Postbank (BLZ 600 100 70) 77080-700

Telefon (0711) 4 89 79-0
Telefax (0711) 4 89 79-35 + 4 89 79-36
e-Mail info@lkpa.de
Partnerschaftsgesellschaft
Sitz Stuttgart
Amtsgericht Stuttgart PR 25
USt. ID-Nr. DE 147522876

Price v. Facebook, Inc.    Doc. 43 Att. 1    Dockets.Justia.com

schung vorgehen muss, um zu verhindern, dass die Nutzer auf eine gemeinsame Herkunft schließen und die Website Ihrer Mandantin unserer Mandantin zurechnen. Daher fordert unsere Mandantin Ihre Mandantin auf, das Design der Website so abzuändern, dass keinerlei Verwechslungsgefahr mehr besteht. Im Einzelnen:

## I. Tatsächliche Verwechslungen

Die nachfolgenden Anlagen übergeben wir nur exemplarisch. Wie Ihrer Mandantin ebenfalls aus zahlreichen Zeitschriftenartikeln und Internetkommentaren bekannt ist, gibt es vielfältige Nachweise dafür, dass die Nutzer auf eine gemeinsame Herkunft schließen, nachdem Ihre Mandantin das Design der Website unserer Mandantin nahezu identisch kopiert hat.

Unabhängige Quellen, wie beispielsweise WIKIPEDIA, nehmen Bezug auf die Ähnlichkeit der Websites. Als **Anlage 1** übergeben wir den WIKIPEDIA-Ausdruck zu Facebook, bei dem vermerkt ist, dass es im deutschsprachigen Raum die Internetplattform Studi-Verzeichnis gibt, die sich nicht nur sehr stark am Konzept von Facebook orientiere, „**sondern auch grafisch aussieht wie eine Kopie von Facebook**". Bei der Darstellung Ihrer Mandantin in WIKIPEDIA wird die Website Ihrer Mandantin als „**der deutschsprachige Klon**" der Website unserer Mandantin beschrieben.

Aufgrund der hohen Ähnlichkeiten des Website-Designs gab und gibt es zahlreiche tatsächliche Verwechslungen. Beispielhaft übergeben wir als **Anlage 2** eine E-Mail vom 30.06.2006 des Nutzers Dominik Kopp, der anfragt, ob „StudiVZ.com is the official version of your great website, as it is exactly like yours". Die Ähnlichkeiten und die dadurch hervorgerufene Fehlvorstellung, unsere Mandantin stehe hinter der web site Ihrer Mandantin, sind Gegenstand zahlreicher Beiträge und Kommentare in Internetforen. Beispielhaft übergeben wir als **Anlage 3** eine Gegenüberstellung des Designs der Websites und der Kommentator kommt zu dem Schluss, dass das Design und die ganze Aufmachung beinahe identisch ist. Als **Anlage 4** übergeben wir weitere Kommentare von Internetnutzern, die sich mit der Design-Identität und der Ähnlichkeit der Struktur der Websites beschäftigen. Die Nutzer kommen also zu dem Ergebnis, dass die Website Ihrer Mandantin eine offensichtliche Kopie der Website unserer Mandantin darstellt und ironisch wird die Website Ihrer Mandantin als „Fakebook" beschrieben.

Jüngst wurde Ihre Mandantin zudem in zahlreichen Presseveröffentlichungen harsch kritisiert aufgrund von Problemen mit dem Datenschutz, Beschwerden im Zusammenhang mit dem Kontaktieren weiblicher Mitglieder und im Zusammenhang mit der Aufmachung einer Einladung für eine Party im Stil des Naziorgans „Völkischer Beobachter". Unsere Mandantin möchte diese Probleme nicht weiter kommentieren. Ihre Mandantin wird jedoch sicherlich verstehen, dass unsere Mandantin sicherstellen muss, dass die Website Ihrer Mandantin nicht dem Unternehmen unserer Mandantin zugerechnet wird im Lichte der tatsächlich entstandenen Irreführung und im Lichte des Rufes Ihrer Mandantin und der genannten Presseveröffentlichungen.

## II. Ansprüche

Ihre Mandantin schuldet unter mehreren rechtlichen Gesichtspunkten die Unterlassung der Nutzung des gegenwärtigen Designs:

### 1. Markenrechtliche Ansprüche

Unsere Mandantin hat Markenschutz für das Design ihrer Website für die einschlägigen Dienstleistungen beantragt und erlangt. Wir übergeben zu Ihrer sofortigen Information die Registerauszüge der Marken Nr. 306 63 270 und Nr. 306 63 271. Das Deutsche Patent- und Markenamt hat also – entgegen Ihren Ausführungen in Ihrem Schreiben vom 21.06.2006 – die Eignung dieses Designs, als Herkunftshinweis für die einschlägigen Dienstleistungen zu dienen, bejaht und die Marken folgerichtig registriert. Die Dienstleistungen sind identisch und das Design der Website Ihrer Mandantin ist mit den registrierten Bildmarken hochgradig ähnlich mit der Folge, dass Verwechslungsgefahr im Sinne des § 14 Abs. 2 Nr. 2 MarkenG besteht.

Im Hinblick auf die Marke Nr. 306 63 270 ist das Design der Website Ihrer Mandantin insofern ähnlich, als ebenfalls im oberen Bereich zwei Linien in identischer Größe vorhanden sind, wobei die obere Linie in einer dunkleren Farbe als die untere Linie gehalten ist. Dieses Design-Element hat Ihre Mandantin nachgeahmt. Bezüglich der Marke Nr. 306 63 271 gibt es die zusätzliche Ähnlichkeit dahingehend, dass die Menü-Buttons am unteren Ende des Kastens angeordnet sind und zwei Linien auf der linken Seite mit den Menü-Buttons darunter.

Bekanntlich ist die Frage, ob Verwechslungsgefahr besteht, eine Rechtsfrage, und allein die Möglichkeit reicht aus, um Unterlassungsansprüche zu begründen. Tatsächliche Verwechslungen wie hier belegen in jedem Fall Verwechslungsgefahr und das Design der Website Ihrer Mandantin ist so ähnlich, dass viele Nutzer irrtümlich annehmen, StudiVZ sei die deutsche Version von Facebook.

Im Ergebnis verletzt mithin das derzeitige Design die Markenrechte unserer Mandantin, da es Verwechslungsgefahr hervorruft. Mithin ist Ihre Mandantin unter markenrechtlichen Gesichtspunkten verpflichtet, eine strafbewehrte Unterlassungserklärung bezüglich des derzeitigen Designs abzugeben und den Auftritt der Website so zu ändern, dass die Gefahr von Verwechslungen ausgeschlossen ist.

2. Unlauterer Wettbewerb

Daneben bestehen Unterlassungsansprüche unserer Mandantin nach §§ 4 Nr. 9 a), 3, 8 Abs. 1 UWG. Ihre Mandantin führt durch die Nachahmung des Designs eine vermeidbare Täuschung der Abnehmer über die betriebliche Herkunft herbei. Wir nehmen Bezug auf die beigefügten Anlagen und unsere obigen Ausführungen, welche belegen, dass zahlreiche Benutzer tatsächlich davon ausgehen, zwischen Ihrer Mandantin und unserer Mandantin bestünden geschäftliche Beziehungen. In Ihrer Antwort auf die Abmahnung hatten Sie ausgeführt, dass es an einem Wettbewerbsverhältnis der Parteien fehle, da unsere Mandantin ausschließlich Mitglieder in den USA und Ihre Mandantin ausschließlich Mitglieder in Deutschland habe. Diese Annahme ist falsch. Unsere Mandantin hat deutsche Mitglieder und Mitglieder, welche an deutschen Universitäten studieren, so dass ein Wettbewerbsverhältnis zwischen den Parteien besteht.

3. Urheberrechtliche Ansprüche

Das Design der Website unserer Mandantin ist eine persönliche geistige Schöpfung im Sinne des § 2 UrhG. Das Design mit den Strukturen und der Anordnung der Menü-Buttons und der Linien ist fantasievoll, und zugleich ist dieses Design sehr präzise und übersichtlich angeordnet als das Ergebnis einer individuellen, schöpferischen Tätigkeit. Der Umstand, dass dieses Design von Ihrer Mandantin auch von anderen Wettbewerbern kopiert wurde, ist der beste Beleg dafür, dass es eine sehr gelungene, kreative Schöpfung darstellt. Sie hatten in Ihrem Schreiben vom 21.06.2006 ausgeführt, dass

das Design ein übliches Webdesign darstellt und nicht schutzfähig ist. Diese Behauptung ist offenbar auf die falsche Annahme gestützt, dass ein sehr präzises, übersichtliches, ansprechend „reduziertes" Design nicht in den Genuss des Urheberrechtsschutz kommen kann. Diese Annahme ist unzutreffend. Die Rechtsprechung hat mehrfach betont, dass gerade der Harmonie zwischen dem Design und den funktionellen Erfordernissen eine schöpferische Leistung zugrunde liegen kann. Diese Rechtsprechung trägt dem Umstand Rechnung, dass es viel schwieriger ist, ein „reduziertes" und zugleich attraktives Design zu schaffen als ein Design zu entwickeln mit zusätzlichen ornamentalen Elementen. Im Lichte dieser Rechtsprechung führen insbesondere die folgenden Design-Elemente in ihrer Gesamtkombination dazu, dass das Design als Ganzes eine persönliche geistige Schöpfung darstellt:

- Die obere Linie im oberen Bereich der Website hat eine dunklere Farbe mit der Marke FACEBOOK und den Buttons für Log-in, Register und Help.

- Darunter befindet sich eine Linie in einer helleren Farbe mit dem Slogan „Welcome to FACEBOOK".

- Auf der linken Seite befindet sich der Log-in Button in der dunklen Farbe der oberen Linie und zudem die E-Mail und Passwort-Kästchen.

- Die Buttons bezüglich About, Block, Developers, Job usw. sind in der helleren Farbe der unteren Linie am unteren Ende der Seite angeordnet.

Wir weisen beispielhaft darauf hin, dass der Wettbewerber Unisocial.org. nach Beanstandung durch unsere Mandantin sein Web-Design geändert hat, um Verwechslungen auszuschließen und um eine Urheberrechtsverletzung zu vermeiden.

　　　　4. Geschmacksmusterschutz

Schließlich genießt das Design unserer Mandantin den Schutz des nicht eingetragenen Gemeinschaftsgeschmacksmusters gemäß Art. 11 der EU-Verordnung Nr. 6/2002. Das Design der Website unserer Mandantin ist neu und eigenartig aufgrund der oben beschriebenen Design-Merkmale. Das Design der Website Ihrer Mandantin führt nicht zu einem unterschiedlichen Gesamteindruck beim informierten Benutzer und wird vom

Schutzumfang des nicht eingetragenen Gemeinschaftsgeschmacksmusters unserer Mandantin eingeschlossen.

Wir fordern Ihre Mandantin auf, die Nutzung des derzeitigen Designs einzustellen und die beigefügte strafbewehrte Unterlassungserklärung bis zum

**09.01.2007 (hier eingehend)**

abzugeben. Unsere Mandantin behält sich sämtliche Ansprüche vor, insbesondere auch Schadenersatzansprüche. Dass diese Schadenersatzansprüche eine beträchtliche Höhe erreichen können, wird Ihrer Mandantin angesichts des Erfolgs der Website unserer Mandantin bekannt sein.

Abschließend weisen wir zudem darauf hin, dass Ihre Mandantin offenbar auch die Geheimhaltungsvereinbarung bezüglich der Verhandlungen unserer Mandanten verletzt hat und offenbar der Geheimhaltung unterliegende Informationen aus diesen Verhandlungen auch anderen Verhandlungspartnern zugänglich gemacht hat. Auch insoweit behält sich unsere Mandantin sämtliche Schadenersatzansprüche wegen der Verletzung der Geheimhaltungsvereinbarung vor.


Mit freundlichen kollegialen Grüßen

Dr. Stolz
Rechtsanwalt

## Unterlassungserklärung

Hiermit verpflichtet sich

StudiVZ Limited, Saarbrücker Str. 38, 10405 Berlin

gegenüber

Facebook, Inc., 156 University Avenue, Palo Alto, CA 94301, USA

es bei Meidung einer Vertragsstrafe in Höhe von

**EUR 5.500**

für jeden einzelnen Fall der Zuwiderhandlung zu unterlassen,

> für das Bereitstellen und/oder das Betreiben von Online-Gesprächsforen für registrierte Benutzer und/oder für das Bereitstellen des Zugangs zu Online-Gesprächsforen das beigefügte website-Design zu verwenden oder verwenden zu lassen.

Datum:_____        _____
                              StudiVZ Limited



# TRANSPERFECT

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

## CERTIFICATE OF ACCURACY

I, Pamela Boyle of TransPerfect Translations, Inc., do hereby declare that the document attached hereto is a true and accurate translation, from German into English, of a letter dated January 3, 2007 from Dr. Stolz of Lichtenstein Körner & Partners to Mr. Erdmann of Erdmann, Zacharias, Langhans in Berlin."

A copy of the final translation is attached.

I so declare under penalty of perjury under the laws of the State of California on this 21st day of October, 2008.

Pam Boyle
TransPerfect Translations, Inc

Sworn to before me this

21st day of October, 2008

_____
Signature, Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 20__

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

Copy

# LICHTENSTEIN · KÖRNER & PARTNERS

Attorneys · Tax Consultants

**Sent in advance by fax: 030 - 2888 4231**

Lichtenstein · Körner & Partners · Heidehofstr. 9 · 70184 Stuttgart

**Attorneys**
**Erdmann, Zacharias, Langhans**
**Torstr. 222**
**10115 Berlin**

Received

JAN. 05, 2007

LAW FIRM
ERDMANN ZACHARIAS-LANGHANS

[illegible stamp]

**Stuttgart Office**
Heidehofstr. 9
70184 Stuttgart

Prof. Dr. Erich Lichtenstein (-1976)
Dr. Eberhard Körner, M.C.J. (New York University)
Carmen Lichtenstein
Klaus-Ulrich Link
Prof. Dr. Thomas Sambuc, LL. M. (Yale)
Dr. Ernst Wendler
Dr. Rolf Diekmann
Dr. Kerstin Gründig-Schnelle
Dr. Gereon Klöpping
Dr. Carsten Stoll
Dr. Ekkehard Stolz
Michael Nonnenmann
Ursula Stelzenmüller
Attorneys

Christian Heitmann-Lichtenstein
Dipl.-Kfm (Degree in Business), Tax Consultant

**Dresden Office**
Bernhardstrasse 104
01187 Dresden

Dr. Veronika Frey
Telephone (03 51)82 80 50
Fax (03 51)82 80 599

**Alicante Office in Spain**
Explanada de España 3
E-03002 Alicante

Telephone 0034/9 65 20 98 99
Fax 0034/9 65 20 57 44

Date: 01/03/2007
Our File: SZ-06/02599 n-mz
Direct Line: 0711/4 89 79 - 24
E-Mail:
ekkehard.stolz@lkpa.de

**Facebook, Inc. ./. StudiVZ Ltd.**
**Your File: SVZ-002/2006**

Dear Mr. Erdmann,

We are informing you that Facebook, Inc. has commissioned us with the safeguarding of its interests in this matter. We are forwarding an original power of attorney in our name in the annex. The correspondence between the parties, in particular the letter from our client from 06/8/2006 and your reply from 06/21/2006, have been presented to us.

In the meantime new developments have arisen. In particular, our client has established that in fact many users, based on the nearly identical design, have the erroneous perception that your client's website is run by our client or at least operated with its approval. Your client will surely be able to understand that our

Accounts in Stuttgart:
Deutsche Bank AG (Bank Routing No. 600 700 24) 1330 547
IBAN: DE94 6007 0024 0133 0547 00
SWIFT: DEUTDEDBSTG
Commerzbank AG (Bank Routing No. 600 400 71) 5158 639
Baden-Württembergische Bank (Bank Routing No. 600 501 01) 2940 838

Telephone (07 11) 4 89 79-0
Fax (07 11) 4 89 79-35+4 89 79-36
e-mail info@lkpa.de

Professional Partnership
Seat Stuttgart
District Court Stuttgart PR 25

Postbank (Bank Routing No. 600 100 70) 77080-700 | VAT ID-No. DE 147522876

Postbank (Bank Routing No. 600 100 70) 77080-700 | VAT ID-No. DE 147522876

client must proceed against this misrepresentation of origin in order to prevent that the users conclude a mutual origin and attribute your client's website to our client. Therefore, our client requests that your client change the design of the website in such a manner that no likelihood of confusion exists whatsoever. In detail:

### I. Factual Confusion

We are only referring to the following annexes as examples. As your client knows as well from numerous magazine articles and Internet commentaries, there is a variety of evidence that the users conclude a mutual origin after your client has made a nearly identical copy of our client's design for the website.

Independent sources, such as for example WIKIPEDIA, reference the similarity of the websites. As **Annex 1** we are forwarding the WIKIPEDIA printout regarding Facebook, in which it is noted that the Internet platform Studi-Verzeichnis exists in German-speaking countries, which is not only based strongly on the Facebook concept **"but even graphically looks like a copy of Facebook."** In the depiction of your client in WIKIPEDIA, your client's website is described as **"the German-speaking clone"** of our client's website.

Based on the high degree of similarity of the website design, there were and are many actual cases of confusion. As an example we are forwarding as **Annex 2** an e-mail from user Dominik Kopp dated 06/30/2006, who asks whether "StudiVZ.com is the official version of your great website, as it is exactly like yours." The similarities and the resultant false perception that our client was behind the website of your client are the subject of numerous contributions and commentaries in Internet forums. As an example we are forwarding as **Annex 3** a comparison of the design of the websites, and the commentator comes to the conclusion that the design and the whole layout are nearly identical. As **Annex 4** we are forwarding further commentaries from Internet users who occupy themselves with the design identity and the structural similarities of the websites. The users also arrive at the result that your client's website constitutes an obvious copy of our client's website, and ironically your client's website is described as "Fakebook."

At that, most recently your client was harshly criticized in numerous press releases based on problems with data protection, complaints in conjunction with the contacting of female members and in conjunction with the appearance of an invitation for a party in the style of the Nazi publication "Völkischer Beobachter." Our client does not wish to comment further on these problems. However, your client will surely understand that our client has to ensure that your client's website is not attributed to our client's enterprise in light of the actually arisen deception and in light of the reputation of your client and the mentioned press releases.

## II.    Claims

Your client is obliged to cease and desist the utilization of the current design under several legal aspects:

### 1. Trademark Claims

Our client has applied for and obtained trademark protection for the design of its website for the corresponding services. We are forwarding you, for your immediate information, the register entries for trademarks no. 306 63 270 and no. 306 63 271. The German Patent and Trademark Office has thus approved, contrary to your explanations in your letter from 06/21/2006, the suitability of this design as an indication of origin for the corresponding services and has consequentially registered the trademark. The services are identical and your client's website is highly similar to the registered design marks with the consequence that likelihood of confusion as defined by § 14 para. 2 no. 2 of the Trademark Act exists.

With regard to trademark no. 306 63 270, the design of your client's website is similar to that effect that two lines are also present in identical size at the top, whereby the upper line is kept a darker color than the lower line. This design element was imitated by your client. In terms of trademark no. 306 63 271, additional similarity exists to that effect that the menu buttons are arranged at the lower end of the box and two lines on the left side with the menu buttons are below that.

As is well known, the question of whether the likelihood of confusion exists is a legal question, and alone the possibility suffices to substantiate a cease-and-desist claim. Actual confusion as presented herein proves likelihood of confusion in any case and the design of your client's website is so similar that many users erroneously assume that StudiVZ is the German version of Facebook.

As a result, the current design infringes on our client's trademark right, since it evokes likelihood of confusion. Consequently, your client, from a trademark aspect, is obligated to deliver a cease-and-desist declaration with a penalty clause with regard to the current design and to change the appearance of the website in such a way that the likelihood of confusion is eliminated.

### 2. Unfair Competition

In addition, our client's cease-and-desist claims exist in accordance with §§ 4 No. 9 a), 3, 8 para. 1 of the Unfair Competition Act. Through the imitation of the design, your client brings about a preventable deception of the consumers with regards to the operational origin. We are referring to the enclosed annexes and our above layout, which prove that numerous users actually assume that a business relationship exists between your client and our client. In your reply to the warning letter you had remarked that no competition exists between the parties, since our client exclusively has members in the USA and your client has members exclusively in Germany. This assumption is false. Our client has German members and members who study at German universities; therefore, competition does exist between the parties.

### 3. Copyright Claims

The design of our client's website is a personal and intellectual creation in terms of § 2 of the German Copyright Act. The design with the structure and layout of the menu buttons and the lines is imaginative, and at the same time this design is very precise and clearly arranged as the result of individual creative activity. The fact that this design was copied by your client and also by other competitors is the best proof that it presents a very successful, creative creation. You had explained in your letter from 06/21/2006 that the design represents a

common web design and is not capable of being copyright protected. This statement is evidently based on the false assumption that a very precise, clear, attractively "reduced" design could not benefit from copyright protection. This assumption is incorrect. Legal precedent emphasizes repeatedly that exactly the harmony between the design and the functional requirements can form the basis of creative achievement. This legal precedent accommodates the fact that it is much harder to create a "reduced" and at the same time attractive design than to develop a design with additional ornamental elements. In light of this legal precedent, the following design elements in particular, in their combination as a whole, lead to the conclusion that the design as a whole represents a personal intellectual creation:

- The upper line at the top of the website has a darker color with the trademark FACEBOOK and the buttons for log-in, register and help.

- Below that appears a line in a lighter color with the slogan "Welcome to FACEBOOK."

- On the left side is the log-in button in the dark color of the upper line, and in addition there are the e-mail and password boxes.

- The buttons regarding About, Block, Developers, Job, etc. are positioned in the lighter color of the lower line at the bottom of the page.

We, as an example, point out that the competitor Unisocial.org, after a complaint filed by our client, changed its web design in order to preclude confusion and in order to avoid copyright infringement.

    4. Design Patent Protection

Finally, our client's design enjoys the protection of the unregistered community design in accordance with article 11 of EU Act No. 6/2002. The design of our client's website is new and unique based on the design characteristics described above. The design of your client's website does not lead to a different overall impression for the informed user and is included in the scope of protection of our client's unregistered

community design.

We request that your client cease the use of the current design and deliver the attached cease-and-desist declaration with penalty clause by

**01/09/2007 (detailed here)**

Our client reserves all rights, in particular to claims for compensation. Your client must be aware that these claims for compensation could reach a substantial amount in light of the success of our client's website.

In conclusion, we are furthermore pointing out that your client apparently has also infringed on the confidentiality agreement with our client with regards to the proceedings and apparently made the information subject to confidentiality available to other negotiating parties. In this respect our client also reserves the right to all claims for compensation as a result of infringements on the confidentiality agreement.


Yours sincerely,
[signature]
Dr. Stolz
Attorney

# Cease-and-Desist Declaration

StudiVZ Limited, Saarbrücker Str. 38, 10405 Berlin

is herewith obligated

with respect to

Facebook, Inc., 156 University Avenue, Palo Alto, CA 94301, USA

in order to avoid a contract penalty in the amount of

**EUR 5,500**

for each individual case of noncompliance, to refrain from

> the provision and/or operation of online discussion forums for registered users and/or using or allowing the use of the enclosed website design for access to online discussion forums.

Date:_____   _____

StudiVZ Limited