# EXHIBIT C

Dockets.Justia.com

CMS Hasche Sigle
Partnerschaft von Rechtsanwälten
und Steuerberatern
Postfach 70 02 65
D-70572 Stuttgart
Schöttlestraße 8
D-70597 Stuttgart

Tel.: +49 (0) 711/97 64-0
Fax: +49 (0) 711/97 64-900
www.cms-hs.com

Dr Klaus Ikas
Unser Zeichen: sik-sad-sco/sstb
2008/11842
Sekretariat: Elvira Aldinger
Tel.: +49 (0) 711/9764-204
Fax: +49 (0) 711/9764-924
klaus.ikas@cms-hs.com

Stuttgart Regional Court
17. Zivilkammer
Urbanstraße 20
70182 Stuttgart

18 July 2008

# ACTION FOR A NEGATIVE DECLARATORY JUDGMENT

In the legal matter

**studivz Ltd.**, legally represented by its directors, Dennis Bemmann, Michael Brehm and Marcus Riecke, Saarbrückerstraße 38, 10405 Berlin

- Claimant -

Counsel:                        Rechtsanwälte CMS Hasche Sigle,
                                Schöttlestraße 8, 70597 Stuttgart

v

**FACEBOOK Inc.**, legally represented by its board members Mark Zuckerberg, Jim Breyer, Peter Thiel and Marc Andreessen, 471 Emerson Street, CA 94301-1605 Palo Alto, USA

- Defendant -

Agent for service of process:    C T Corporation System, 818 West Seventh St, Los
                                Angeles, CA 90017

for a declaratory decision (copyright, trade mark law, German Unfair Competition Act
(*Gesetz gegen den unlauteren Wettbewerb*))

Ann Stewart-Bendorf
Öffentlich bestellte
und beeidigte
Urkundenübersetzerin
der englischen Sprache für
Baden-Württemberg
Stuttgart

Dispute value: preliminary estimate: EUR 100,000

we hereby inform you that we are litigation counsel for the Claimant and request on behalf of the Claimant that the statement of claim and the three <u>certified English translations attached</u> be served in accordance with the Hague Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters both <u>by registered letter with return confirmation-of-receipt coupon</u> and also via the <u>Central Authority to the agent for service of process of the Defendant.</u> We also request that a date be set for an oral hearing and we request that such date be no later than <u>four months</u> after service of the statement of claim. In the oral hearing we shall **r e q u e s t** that

1. the Court pronounce a declaratory decision stating that

   a) the Claimant does not infringe the following rights of the Defendant through operation of website www.studivz.net.

      -      The Defendant's rights under German trade mark number 306632713; and/or

      -      the Defendant's rights under the German Copyright Act (*Urheberrechtsgesetz*) in the graphic design of the <u>www.facebook.com</u> website, in the current version pursuant to Exhibit K 3 and/or the previous version pursuant to Exhibit K 4, in each case in the German and/or English version, and/or in software produced for operation thereof and/or in the data accessible through this website; and/or

      -      the Defendant's rights under a nonregistered Community registered design in the graphic design of the <u>www.facebook.com</u> website in the current version pursuant to Exhibit K 3 and/or the previous version pursuant to Exhibit K 4, each in the German and/or English version;

   b) that the Claimant's www.studivz.net website does not constitute unfair imitation of the <u>www.facebook.com</u> website in the current version pursuant to Exhibit K 3 and/or the previous version pursuant to Exhibit K 4, each in the German and/or English version, pursuant to §§ 3, 4 no. 9 of the Unfair Competition Act;

   c) that the Claimant has not infringed the agreed conditions for the use of www.facebook.com website;

2. the Defendant bear the costs of the proceedings;

3. as far as costs are concerned the decision be declared provisionally enforceable – against provision of security (bank guarantee);

if necessary, the Claimant not be required to avert enforcement proceedings for costs against provision of security (bank guarantee).

**GROUNDS**

### I. Facts

1. <u>The parties</u>

The Claimant is a company established under the laws of England and Wales, registered in England, and is a company belonging to the German Holtzbrinck group. Its business premises are at Saarbrückerstraße 38, 10405 Berlin. It operates the studivz.net website which was developed in 2005. Extracts of a current colour printout of the website is attached as

**- Exhibit K 1 -.**

(still to be submitted)

At the moment there is no English version of the website.

The Defendant, whose registered office is in California, operates the facebook.com website which was developed in 2004. Extracts of a current colour printout of the homepage of this website is attached as

**- Exhibit K 2 -.**

The Defendant's website has only ever existed in English. According to wikipedia it was not translated into other languages, including German, until the spring of 2008. We have attached an extract of the German version which can be accessed under the internet address de.facebook.com as

**- Exhibit K 3 -.**

(still to be submitted)

Before the Defendant gave the website its current design the website was designed as shown in

**- Exhibit K 4 -.**

The platforms of the parties are social networks which enable people to maintain and establish personal contacts.

2. Official warnings (*Abmahnungen*)

The Defendant maintains that the Claimant has infringed its rights in the design of the studivz.net website. For this reason it instructed its Californian lawyers to write to Verlagsgruppe Georg von Holtzbrinck GmbH; this letter was dated 9 July 2008.

**- Exhibit K 5 -.**

Verlagsgruppe Georg von Holtzbrinck GmbH is the general partner (*Komplementärin*) of Georg von Holtzbrinck GmbH & Co. KG, which holds the majority of the shares in the Claimant via subsidiaries. Amongst other things, the letter demands that the graphic design of the studivz.net user interface be changed within 30 days and that all content, design and functions be deleted which were taken from the facebook.com website.

This is the third and not the first official warning from the Defendant.

The first official warning from the Defendant to the Claimant regarding the design of the studivz.net website was sent by German law firm Lovells on 8 June 2006.

Evidence:  Letter from Defendant of 8 June 2006 (copy)

**- Exhibit K 6 -.**
(still to be submitted)

The Claimant did not comply with this official warning. The Defendant did not pursue the official warning through the courts. This was probably because of talks

which were held between the Claimant's then shareholders and the applicant regarding the acquisition of the Claimant by the Defendant.

After these talks had failed and the Claimant had been sold to the Holtzbrinck group, on 3 January 2007 the Defendant sent the Claimant a second official warning.

Evidence:   Letter from law firm Liechtenstein & Körner of 3 January 2007 (copy)

- **Exhibit K 7 -.**
(still to be submitted)

In that letter it again complained that its rights were being infringed by the studivz.net website. Again the Claimant did not comply. Again, the Defendant did not respond with judicial action.

On the contrary, the Defendant seemed more interested in acquiring the Claimant. In so doing it wishes to obtain access to the German target group of studivz.net. In the second quarter of 2008 negotiations therefore took place between it and the Holtzbrinck group on sale of the Claimant to the Defendant. After the negotiations had broken off, Defendant then tried again to further its interest in acquisition by sending another, i.e. the third, official warning (Exhibit K 5).

Thus, the Defendant has issued three official warnings (*Abmahnungen*) regarding the same accusations within the two-year period. It is currently alleging infringement of its copyrights and trade mark rights and unfair imitation of its facebook.com website and infringement of its terms of use.

3.  Production of studivz.com website

In its most recent official warning (Exhibit K 5) the Defendant maintains that its rights of use, which are protected by copyright, have been infringed by the Claimant allegedly copying the user interface of the Defendant's website. Absolutely no details were provided regarding the specifics of the infringement. There is merely a blanket allegation that the user interface of the Claimant's website gives the impression of slavishly imitating the user interface of the Defendant's website, which - according to the Defendant - could only have occurred through unauthorised access to the Defendant's server.

A comparison between the Defendant's website (Exhibits K 3 and 4) and the Claimant's website (Exhibit K 1) shows without a doubt that the user interfaces of both websites differ in all important design features. The structure, design, colouring and linguistic content of the two websites differ substantially. For this reason alone the allegation is unjustified.

The Claimant has absolutely no knowledge of the computer program which is operated on the Defendant's server and which generates the Defendant's website. At no time have the Claimant, its representatives and employees had access to knowledge of this computer program and its source code.

Evidence: 1.   Statement from Dr Jan Wergin, to be summoned through the Claimant
2.   Testimony of Dennis Bemmann, director of Claimant, to be summoned by Claimant

Mr Bemmann was personally involved in the development of studivz.net. The computer program which is operated on the Claimant's server and which generates the Claimant's website was created independently from scratch by a team of developers of the Claimant.

Evidence: 1.   Statement from Dr Jan Wergin, product manager, to be summoned through the Claimant
2.   Testimony of Dennis Bemmann, director of Claimant, to be summoned by Claimant

There is therefore no correlation in the code of the computer programs of both parties.

4. Defendant's trade mark rights

In its most recent official warning (Exhibit K 5) the Defendant alleges that its trade marks are infringed but does not even state which trade marks these are.

Online research into registered trade marks of the Defendant which enjoy protection in Germany revealed that the Defendant only has one registered trade mark which is currently in effect. This is German figurative mark 3066327.

shows various horizontal bars, in which upper area a double bar is linked to an area on the left which shows a head.

Evidence:   Online printout from the DPinfo database of the German Patent and
            Trademark Office of 15 July 2008.

**- Exhibit K 8 -.**
(still to be submitted)

The uppermost area with the head on the left also formed the subject of another German figurative mark held by the Defendant, figurative mark no. 30663270.5. This mark was cancelled on 19 November 2007 pursuant to § 50 of the Trade Mark Act on the grounds of nullity owing to absolute obstacles to protection (*Nichtigkeit wegen absoluter Schutzhindernisse*).

Evidence:   Online printout from the DPinfo database of the German Patent and
            Trademark Office of 15 July 2008.

**- Exhibit K 9 –**
(still to be submitted)

The same mark is the subject of Community trade mark application 005841077. According to the status information displayed in the CTM online database, the trade mark has not yet been registered.

Evidence:   Online printout from the CTM-Online database of the Office for
            Harmonization of 15 July 2008

**- Exhibit K 10 –**
(still to be submitted)

5.  <u>Double-bar design of website is not an indicator of origin</u>

To the extent that one element of the Defendant's trade mark is a double bar, consisting of various shades, it should be noted that this is a design element which is absolutely usual for websites and also for network portals of this type. We submit as

**- Bundle of Exhibits K 11 –**
(still to be submitted)

the print-outs of the current homepages of various websites for social networks produced on 15 July 2008.

As these pages show, graphical elements of this type are a generally widespread design principle typically to be found at the upper edge of website. Users do not regard bars of this type of as an indicator of origin.

Evidence:   Expert report – consumer poll

Moreover, it is striking that other portals such as unister.de and elsa-germany.org/de, have also given their websites a three-section structure whereby the menu bars are generally at the edges of the pages with the actual content of the website in the centre. This is a typical website structure which is suggested in any manual on website design and structure. It is the result of the intended function.

Evidence:   1.   Scanned extract from manual
                The CSS Anthology: 101 Essential Tips, Tricks & Hacks
                (Paperback) by Rachel Andrew

                **- Exhibit K 12 -**

            2.   Expert report

6.  Alleged infringement of facebook.com's terms of use

The Defendant alleges an infringement of the terms of use for its website as a result of unauthorised access to the server. However, there are no agreements whatsoever between the parties which incorporate the Defendant's terms of use. For this reason alone the Claimant cannot have committed an infringement. Nor has the Claimant induced any third party to commit a breach of contract.

## II.   Procedural matters

1.  Service

We would suggest that the Statement of Claim be served via the Central Authority in accordance with the provisions of the Hague *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or*

*Commercial Matters[1]* and for the purpose of accelerating service be sent **in addition** by registered letter with return confirmation-of-receipt coupon. This complies with the Convention. Under German law double service is possible.

Under Article 2 of the Convention each contracting state is required to designate a **Central Authority** to carry out requests for service for other contracting states. In the USA the Central Authority is the US Department of Justice in Washington. However, in 2003 the US Department of Justice transferred the duties of the Central Authority to the company *Process Forwarding International*, which is registered in Seattle. This means that requests for service must be sent to *Process Forwarding International* at 633 Yesler Way, Seattle, WA 98104, USA. A copy of the letter from the USA of 21 August 2003 (see http://hcch.e-vision.nl) is attached as

**- Exhibit K 13 -.**

The documents to be served together with the exhibits must be translated and sent in duplicate with two copies of the "*request for service abroad*" form. An advance on costs of USD 95.00 (crossed cheque, bank transfer, credit card receipt, etc.) must also be enclosed. Otherwise the request for service will be disregarded and returned (see page 3, Exhibit K 13).

§ 183 (1) no. 1 of the German Code of Civil Procedure (*Zivilprozessordnung*) as read with Article 10 of the Convention also permits service to be made directly by **registered letter with return confirmation-of-receipt coupon**. Article 10 a) of the Convention also expressly states that judicial documents may be sent abroad by postal channels provided that the country of destination does not object. As the USA has not objected service can be made directly by registered letter with return confirmation-of-receipt coupon (see *Roth* in Stein/Jonas, ZPO, 22nd edition 2005, § 183 paragraph 11 with reference to acknowledgement of service in this manner by the US courts similarly in *Ackermann v. Levine* 788 F.2d 830, 838 ff.). Service shall be made to the **agent for the service of process named in the rubric.**

2. <u>Scheduling</u>

---

[1] Translator's note: For the purpose of this translation the Hague Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters will also be referred to hereinafter as the "Convention".

In view of the continuing official warnings from the Defendant the Claimant needs to have legal clarity as soon as possible, particularly since it is currently involved in a sale. For this reason we kindly request that when the Statement of Claim is served a date also be set for a hearing which should be no more than <u>four months</u> after service of the statement of claim.

## III. Legal appraisal

### 1. <u>Competence</u>

The court which would be competent for an action for performance if the rubric were the other way around, with the intention of gaining injunctive relief with respect to the contested product, would be the local court (Cologne Higher Regional Court GRUR 1978, 658 – *Immer jünger*).

The place of jurisdiction for a tortious act pursuant to § 32 of the German Code of Civil Procedure would apply to such action for performance. Such place of jurisdiction can be anywhere where the contested website can be accessed by a specific target group. It can be accessed throughout Germany, therefore also in Stuttgart.

In as far as the claim also refers to the German trade mark of the Defendant, the place of jurisdiction is also that specified in § 23 German Code of Civil Procedure (place of jurisdiction concerning assets). This emerges from § 96 (3) Trade Mark Act as the representatives appointed by the Defendant have their business premises in Stuttgart according to Exhibit K 8.

### 2. <u>Entitlement to Sue</u>

The Claimant is entitled to sue because it received official warnings from the Defendant in 2006 and 2007 and because now its parent company has been contacted with the unequivocal request to change its website otherwise the court action will be taken. It is clear that this court action will be taken against the Claimant as the latter developed and operates the website. The claim will therefore be made against Claimant.

### 3. <u>Standing to be Sued</u>

Ann Stewart-Bendorf
Öffentlich bestellte
und beeidigte
Urkundenübersetzerin
der englischen Sprache für
Baden-Württemberg
Stuttgart

It is just as clear that the Defendant is capable of being sued as all warning letters were sent by it or in its name.

4. Interest in a declaratory judgement

The Defendant is now complaining for the umpteenth time about the graphics on the user interface of studivz.net which has basically remained unchanged and the alleged takeover of functionalities provided here. The legal interest of the Claimant arises from the accusation made in the three warning letters of the infringement of intellectual property of the Defendant, of unfair competition and of breach of contract.

5. No claims from copyright law

The Claimant does not infringe any copyrights of the Defendant:

a) *Protection of the computer program generating the website of the Defendant pursuant to § 69a (1) as read with § 2 (1) no. 1 Copyright Act*

Although the computer program generating the website of the Defendant enjoys copyright protection pursuant to § 69a (1) as read with § 2 (1) no. 1 Copyright Act, this has not been infringed by the Claimant as the Claimant has not copied the computer program either in whole or in part. As a rule the computer program is localised on the servers of the provider which in turn are in well-secured special premises to which only a very small number of close employees have access. As the Defendant is a US company which has its registered office in Palo Alto/California the Claimant would have had to physically break into the server premises of the Defendant and overcome all security systems (alarm systems, passwords, etc.) in order to gain possession of the source code of the computer program of the Defendant. This is completely absurd and obviously not the case.

b) *No protection of the user interface of the Claimant as computer program pursuant to § 69a (1) as read with § 2 (1) no. 1 Copyright Act.*

aa) No computer program protected by copyright law

The user interface (Graphical User Interface) of the Defendant is not a computer program within the meaning of § 69a (1) Copyright Act. For a computer program to be considered to be a computer program within the meaning of the provision control commands are necessary, i.e. a number of commands which, after entry into a machine-readable carrier, are capable of making a machine with information-processing capabilities show, carry out or achieve a certain function, task or result. User interfaces, including the underlying HTML text, on the other hand are generated by running the program and are therefore only the result of the operation of the program but not of computer programs themselves (see e.g. Wandtke/Bullinger, Urheberrecht, 2nd ed., Munich 2006, § 69a marginal no. 3, 14 with further references.; Frankfurt/Main Higher Regional Court, decision of 22.03.2005, case no. 11 U 64/04).

The following considered deliberation of Düsseldorf Higher Regional Court (decision of 29.06.1999 (20 U 85/98)) demonstrates this: It is technically possible to create one and the same text or graphical reproduction on screen with various computer programs. Therefore one single website does not form a computer program not even as a "multimedia product". This is because the creative content of a multimedia product is incorporated in the thought communicated in language, pictures and possibly sound but not in the computer program required for operation and reproduction (see also Schricker/Loewenheim, UrhR, 2nd ed., § 2 marginal no. 201).

Therefore different computer programs from different providers can generate identical HTML source code texts as the source texts of HTML websites as "descriptive language" (and not programming language) only document the general structure and external appearance of an HTML website. The similarity or identity of source texts in an HTML website therefore does not lead to any conclusions about the similarity or identity of the underlying computer programs.

Evidence: expert report

bb) No infringement of rights

Therefore from the outset it can be said that the computer program of the Defendant has not been taken over for the reasons set out above under aa).

c) *No protection as database pursuant to § 87a and b Copyright Act (related property right)*

Nor in the present case is there any database protection pursuant to § 87a ff. Copyright Act

aa) No database

The legal definition of a database as set out in § 87a (1) sentence 1 Copyright Act is a collection of works, data or other independent elements which are systematically or methodically organised and can be accessed individually with the help of electronic means or otherwise the creation, review or illustration of which requires a considerable investment in terms of nature or scope.

Looking at the website of the Defendant the collective character required for a database is not present. The website of the Defendant only contains rudimentary information in this respect. At most it can be assumed that the website of the Defendant is a type of internet portal/forum or platform by means of which people are able to themselves develop social networks with other people. However, this in no way fulfils the statutorily defined conditions for a database.

Furthermore, the fact that this is a social network on which the members first have to register and log in means that it is not the Defendant which collects and organises any works, data or other independent elements. If at all, this is done by the registered users themselves by setting up their own profiles and providing their own details (pictures, text, films, etc.) independently publishing and managing data as is common practice on online social networks ("user-generated content").

However, if the users themselves decide when to publish, process and again remove which data and if the Defendant does not systematically or methodically organise the individual data under copyright law that is only

a collection of "raw data" alias "data piles" i.e. it is not a database (Wandtke/Bullinger, op. cit., § 87a marginal no. 17).

At the same time this means that the Defendant did not have to make any investment to procure this data. There are also no other indications whether, and if so what considerable investment in terms of nature or scope is supposed to have been made in this case in connection with the collection of the data. Consequently there is no database.

bb) No infringement of rights

There is no infringement of rights. There is no basis at all for claims owing to the infringement of rights of the producer of the database.

d) *No protection as database work pursuant to § 2 (2) as read with § 4 (2) Copyright Act*

No copyright has been infringed from the legal aspect either.

aa) No database work protected by copyright law

As far as content is concerned the legal definition of database works pursuant to § 4 (2) Copyright Act corresponds to the legal definition of the database pursuant to § 87a (1) sentence 1 Copyright Act (related property rights). In this respect reference is made to the above remarks.

Moreover, the Defendant has in no way illustrated that the selection and organisation of data constitutes a *personal intellectual creation* within the meaning of § 4 (1) as read with § 2 (2) Copyright Act. It is not even clear what type of details are meant at all which could have led in their selection and organisation to the creation of a work worthy of protection under copyright law. Therefore in this case the – compared with the related protected rights --additional copyright law condition of *personal intellectual creation* pursuant to § 4 (1) as read with § 2 (2) Copyright Act is not satisfied.

Ann Stewart-Bendorf
Öffentlich bestellte
und beeidigte
Urkundenübersetzerin
der englischen Sprache für
Baden-Württemberg
Stuttgart

Therefore the website of the Defendant is not a database work protected under copyright law. Such protection of its website can be excluded from the outset.

However, even if it were to be wrongly assumed that there is a *personal intellectual creation* within the meaning of copyright law the Defendant itself would not be the originator as it was not the Defendant but at best the registered users who were the originators of the respective *personal intellectual creation.*

bb) No infringement of rights

There is no infringement of rights. In this respect reference is made to the comments above.

e) *No other copyright law protection of user interface of Defendant*

Any other infringement of copyright law is also excluded in this case. The website of the Defendant does not constitute a work to be protected under copyright law outside the above categories, for example a written work, because the required level of creation has not been achieved by far. In other respects there is no infringement of any right owing to the lack of correspondence of the content of the website of the two parties.

6. No claims from trade mark law

The graphics on the studivz.net website do not infringe the sole trade mark of the Defendant's registered trade mark DE 306632713, which is protected in Germany **owing to the lack of risk of confusion.** Under current case law the risk of confusion is determined taking into consideration the distinctive nature of the trade mark and the similarity of the marks and the goods and services offered under such, taking into further consideration the interplay between these three criteria (see for example Ströbele/Hacker, Markengesetz, 8th ed. § 9 marginal no. 26).

The sole possible element indicating origin of the sole relevant trade mark of the Claimant is the head depicted top left. The other elements of the trade mark, i.e the bar-like areas, do not have any function indicating origin, as already illustrated. The internet user only sees this as geometrical areas with functional background

which are commonplace on internet pages. This applies most particularly to elements such as the square areas placed in pairs beside one another on the bottom and left-hand edges of the trade mark which are clearly supposed to represent menu buttons. Therefore at best the trade mark can be attributed **distinctive character** owing to the head element. However, even this is questionable, as is shown by the cancellation of the German figurative mark 306632705 owing to absolute obstacles to registration. However, even if one wished to attribute distinctive character to the upper double bar this could only be so slight that the protected area of the trade mark would be restricted to identical designs.

The sole possible element of the figurative mark of the Defendant capable of having distinctive character on its own, i.e. the head, is and was not used either in identical or similar form on studivz.net. As far as the other elements - which do not have individual distinctive character in the view of the claimant - of the trade mark are concerned, the buttons arranged in pairs beside one another are and were not used. The Claimant only uses a double bar in shades of red on the upper edge of its website. However, this has different proportions to the trade mark, i.e. the bars are of different widths and this is also clearly rounded off in the right upper corner. The bar design is also so to speak continued on the studivz.net website on the lower edge of the cage in a lighter red. On some pages (see Exhibit K 1) there are even more than three reddish bars. Overall the bar design on studivz.net can be clearly distinguished from the registered trade mark. If it were to be attributed any function indicating origin at all, the mark does not have **any similarity**. There is therefore no risk of confusion (§ 14 (2) no. 2 Trade Mark Act).

If the risk of confusion between the trade mark of the Defendant and the bar design on studivz.net were affirmed the Defendant would not be entitled to any trade mark claims either. Instead it would be the Claimant who would be the owner of such claims against the Defendant. This is because the Claimant then would have a **trade mark acquired by use** with older priority. It has been using the bar design about which the Defendant will presumably continue to make complaints since the start of studivz.net, i.e. from the beginning of autumn 2005. Within a very short time the website became the largest online community for students in this market. At the end of 2006 it already had more than one million users in the student circles concerned. This corresponds to a market saturation of 46 %.

Evidence: 1.    Screenshots with figures from the statistical federal offices of Germany, Austria and Switzerland 2005 to 2006

**- Bundle of Exhibits K 14 -**

2.      expert report

Owing to this high market saturation the web design of the Claimant as a trade
mark acquired by use gained outstanding trade mark law distinctive character.
Application for registration of the oldest trade mark of the Defendant on the other
hand was not made until 18.10.2006. Clearly the trade mark acquired by use of the
Claimant already existed on this date.

7.  No unfair competition law claims

a)  *No unfair imitation*

aa)  With respect to products not protected by intellectual property rights the
**principle of the freedom to imitate** applies under unfair competition
law. Imitation of products with "competition law originality" is only
unfair subject to the provisions set out in § 4 no. 9 of the Unfair
Competition Act. The Claimant does not satisfy these conditions. It is
therefore not acting unfairly.

bb)  The website of the Defendant does not have **the originality required
under unfair competition law**. Originality in terms of unfair competition
law is considered to exist if the specific design or certain features of the
product are appropriate to draw the attention of the appropriate market to
its origin or its special features (case law, see only BGH WRP 2007, 1076
text no. 25 - *Handtaschen*). When ascertaining the individual nature under
unfair competition law it is only the alleged **assumed** features which are
important and only those design features which are **externally**
recognisable (BGH GRUR 2002, 820, 822 – *Bremszangen*). The
Defendant did not illustrate in detail such features in its most recent letter
(Exhibit K 5). The only possible feature is the light/dark double bar on the
upper edge of the screen in the above trade mark. All the facts not
recognisable to the user on the screen, such as computer programs
running in the background, are therefore excluded from the outset. With
respect to the double bar, however it would not be the Unfair Competition
Act which would apply but trade mark law would take precedence as *lex*

*specialis* (Hefermehl/Köhler/Bornkamm, Unfair Competition Act 26th ed., § 4 marginal no. 9.9 with further references to case law.), as the Defendant is also claiming trade mark protection for this design element. Furthermore, the Defendant does not use this element on its current web site at all. Finally, this design principle can be found on numerous other online social networks which have existed in Germany for a long time such as unister.de, studentum.de, studentenforum.net, nurstudenten.de, uni24.de or el§a unter elsa-germany.org/de (see Exhibit K 11). A website with double bars on the upper edge of the screen therefore does not distinguish itself in any way whatsoever from other comparable internet offers. There is no indication to origin or the special nature of the product.

cc)  The studivz.net website does not lead to **avoidable confusion as to origin** either (§ 4 no. 9 a. of the Unfair Competition Act). The condition for falsification of origin is that the allegedly imitated product has a certain notoriety in the circles for which it is intended. The definitive date for this notoriety is the market introduction of the alleged imitation ((BGH GRUR 2002, 275, 277 – *Stufenleitern*; Hefermehl/Köhler/Bornkamm, Unfair Competition Act 26th ed., § 4 marginal no. 9.41). When studivz.net was introduced to the market at the end of 2005 facebook was not known to the circles addressed by studivz.net, i.e. students from German-speaking countries. Instead facebook.com was directed toward English-speaking students in English-speaking countries outside Germany. It is denied that facebook later achieved adequate notoriety in Germany, which anyway could only have become the case in the German version not available until 2008. In the end this is irrelevant because the German version did not go online until long after the definitive date.

dd)  For the above reasons set out under cc) the element of **exploitation of reputation** does not apply either (§ 9 no. 4 b. Unfair Competition Act).

ee)  Lastly the conditions of § 9 no. 4 c Unfair Competition Act do not apply either.

## 7. No claims from registered design law

In the second warning letter the Defendant also appealed to a community registered design within the meaning of Regulation (EC) 6/2002 not registered

with respect to the double bar used by the Claimant on its web site. There is no such right. This design element does not have either the required originality or the required novelty in view of other websites which use it (Exhibit K 11). Horizontal double bars at the upper edge of the screen of a website are nothing new. The version originally used by the Defendant does not have any special features worth mentioning either. Even if the element had been novel and had original character the statutory term of the community registered design of three years since first public access within the Community (Art. 11 (1) Regulation (EC) 6/2002) would have expired. This is because facebook.com has existed since 2004 and this website could be accessed from any internet connection in the Community, in particular by English users.

8. No breach of contract

There are no contractual relationships between the parties relating to the use of facebook. There are therefore no contractual claims in this respect.

Please find attached cheque payment on account of court fees in the amount of EUR 2,568.

Rechtsanwalt

Dr Ikas



I hereby certify that the above text is a true and accurate translation of a statement of claim dated 18 July 2008 written in the German language, presented to me and attached hereto.



Ann Stewart-Bendorf M.A. (Hons.) MCIL
Publicly appointed and sworn translator for English
for the courts in Baden-Württemberg
Stuttgart, 18.07.08