LEXSEE 1998 U.S. DIST. LEXIS 13524

**MARK LEVY, M.D. AND ELIZABETH LEVY, Plaintiffs, v. NORWICH UNION INSURANCE SOCIETY, and DOES 1 to 50, Defendants.**

No. C97-2533 MJJ

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1998 U.S. Dist. LEXIS 13524*

**August 5, 1998, Decided
August 5, 1998, Filed**

**DISPOSITION:** [*1] Motion to dismiss GRANTED.

**COUNSEL:** For MARK LEVY, M.D., ELIZABETH LEVY, Plaintiffs: Joseph Hoffman, Weinberg Hoffman & Casey, Larkspur, CA.

For NORWICH UNION INSURANCE SOCIETY, defendant: Mary Kay Vyskocil, Simpson Thacher & Bartlett, New York. NY. Seth A. Ribner, Simpson Thacher & Bartlett, Los Angeles, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**

ORDER OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION

INTRODUCTION

Defendant Norwich Union Life & Pension Limited (sued herein as "Norwich Union Insurance Society") ("Norwich Union") [1] has specially appeared in this action to contest the issue of personal jurisdiction and move for dismissal of plaintiffs' claims against it pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*. [2] For the reasons stated herein, the Court finds that it lacks personal jurisdiction over Norwich Union and, accordingly, DISMISSES this action WITH PREJUDICE.

1  According to defendant, no such entity as "Norwich Union Insurance Society" exits. Instead, the allegations of the complaint concern the alleged activities of the Norwich Union Life Insurance Society, a corporation organized under the laws of England. On or about June 15, 1997, all relevant business, assets, and liabilities of Norwich Union Life Insurance Society were transferred to Norwich Union Life & Pensions Limited, which is also a corporation organized under English law. For purposes of the instant motion to dismiss, the Court will refer collectively to Norwich Union Life Insurance Society and Norwich Union Life & Pensions Limited as "Norwich Union."

[*2]

2  Prior to the filing of Norwich Union's motion to dismiss for lack of personal jurisdiction with this Court, plaintiffs brought a motion which they styled as a "Motion for Court Order that Personal Jurisdiction is Proper." No such motion is contemplated or authorized under the Federal Rules of Civil Procedure and the Court hereby DENIES plaintiffs' motion on that basis. Moreover, the issues raised by plaintiffs' motion are addressed by Norwich Union's motion to dismiss for lack of personal jurisdiction pursuant to *Rule 12(b)(2)* which is the subject of the this order.

BACKGROUND

Plaintiffs Mark Levy, M.D. and Elizabeth Levy are residents of the State of California. Defendant Norwich

Union is an overseas insurance company based in the United Kingdom. Sometime prior to 1990, plaintiffs became underwriting members (or "Name(s)") at Lloyd's of London ("Lloyd's"). Lloyd's is an insurance marketplace where individual underwriters join together in syndicates to underwrite insurance risks from around the world. *Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1357* (2d Cir.), *cert.* [*3] *denied*, *510 U.S. 945, 126 L. Ed. 2d 333, 114 S. Ct. 385 (1993)*. To become a Name, a person must pledge their personal wealth and post security to guarantee their obligations to policyholders. Each Name contracts to assume liability for the risks underwritten by any syndicate of which they are a member.

Plaintiffs facilitated their participation at Lloyd's by promising to pay any resulting losses from their underwriting activities and by entering into a series of transactions with Norwich Union to secure that promise. Specifically, in order to secure their on-going Lloyd's obligations, plaintiffs purchased from Norwich Union a financial vehicle entitled the "Jersey Investment Plan" ("JIP") and then assigned to Norwich Union the assets invested in the JIP. As a result of that assignment, Norwich Union issued guarantees to Lloyds' on plaintiffs' behalf to secure plaintiffs' underwriting obligations.

The JIP purchased by plaintiffs is essentially a deferred annuity that allows for a guaranteed rate of return. According to Norwich Union the JIP is sold only through independent financial advisors on the Island of Jersey, and Norwich Union does not market the JIP or any [*4] other of its investment vehicles within the State of California, nor has it ever done so. The JIP specifically provides that it shall be deemed issued in the Island of Jersey and it is governed by English law.

Prior to the execution of plaintiffs' investment in the JIP, in February of 1990, plaintiffs met with Mr. Jonathon Hay in San Francisco. According to plaintiffs, during their meeting, Mr. Hay "solicited [plaintiffs] to invest in the Jersey Investment Plan . . . and he marketed it and represented that it was a prudent investment for [plaintiffs]. Mr. Hay further represented . . . that he was authorized to solicit [plaintiffs'] Norwich JIP investment, and he did in fact facilitate and effectuate [plaintiffs'] contract with Norwich." (Declarations of Dr. and Elizabeth Levy, P2.) Based on the representations of Mr. Hay, whom plaintiffs claim they understood to be Norwich Union's agent, plaintiffs signed a JIP Proposal. 3

3 There is a conflict in the evidence regarding where the JIP Proposal was actually signed. According to plaintiffs, the JIP Proposal was signed in Mill Valley, California. According to Norwich Union, the JIP Proposal was signed in London. For purposes of this motion, the Court will resolve the dispute in favor of plaintiffs and accept, as true, plaintiffs' declarations that the JIP Proposal was signed in Mill Valley, California, during plaintiffs' meeting with Mr. Hay.

[*5] As was the case with many U.S. Names, plaintiffs' underwriting at Lloyd's proved disappointing, and Lloyd's eventually made a demand against the guarantees issued by Norwich Union on plaintiffs' behalf. Pursuant to its contractual obligation, Norwich Union paid the demands made by Lloyd's.

Thereafter, on June 6, 1997, plaintiffs filed a lawsuit against Norwich Union in the Superior Court of California in and for the County of Marin. The form complaint filed by plaintiffs alleges causes of action for fraud, negligence, and violations of unparticularized federal securities and state insurance laws. (Complaint, at 2-9.) The case was removed to this Court on July 9, 1997.

DISCUSSION

A. Legal Standard

A motion to dismiss for lack of personal jurisdiction is based on *Rule 12(b)(2) of the Federal Rules of Civil Procedure*. Although the Rule itself does not prescribe the procedure for resolving such a motion, the case law indicates that a court has two options. First, it can decide the motion on the basis of the affidavits or declarations submitted in response to the motion. Second, it can hold an evidentiary hearing. S.A. Wright & Miller, Federal Practice and Procedure: Civil § 1351 [*6] at 248 n.7 (citations omitted). Regardless of the procedure used, it is the plaintiff who bears the burden of establishing jurisdiction. 4 *Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995)*; *Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984)*. In determining whether a plaintiff has met its burden, uncontroverted allegations in the complaint must be taken as true, and "'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor . . .,'" *AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)* (quoting *WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989))*.

4   When a court makes its determination on the basis of affidavits or declarations alone, plaintiff's burden is satisfied by a simple *prima facie* showing of personal jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986)*. However, when a court rules after holding an evidentiary hearing, plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)*.

 [*7]

A federal court analyzing a challenge for want of personal jurisdiction over a nonresident defendant "turns on two independent considerations: whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant, and whether assertion of personal jurisdiction accords with constitutional principles of due process." *Data Disc, Inc. v. Systems Tech Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977)* (citing *Amba Marketing Sys., Inc., v. Jobar Int'l, Inc., 551 F.2d 784, 786 (9th Cir. 1977)*).

The California long-arm statute provides that a court may exercise jurisdiction on any basis not inconsistent with the State Constitution or the Constitution of the United States. *Cal. Civ. Proc. Code § 410.10*. The Ninth Circuit has consistently found that California's jurisdictional statute is coextensive with federal due process requirements; as a result, jurisdictional inquiries under state law and federal due process standards merge into one analysis. *See, e.g., FDIC v. British-American Ins. Co. Ltd., 828 F.2d 1439, 1441 (9th Cir. 1987)*; *Pacific Atlantic Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1327 (9th Cir. 1985)*; [*8] *Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991)*.

The exercise of jurisdiction over nonresident defendants violates the protections created by the Due Process Clause unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)*.

In *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*, the Supreme Court found that "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id. at 297*. Jurisdiction [*9] is proper where the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum state. *McGee v. International Life Ins. Co., 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957)*.

The exercise of jurisdiction may either be general or specific. General jurisdiction can be asserted when the nonresident defendant's activities within a state are substantial or continuous and systematic, because the relationship with the state is sufficient even if the cause of action is unrelated to the defendant's forum-related activities. *Data Disc, 557 F.2d at 1287*. Specific jurisdiction, on the other hand, is found when the cause of action arises out of or relates to the defendant's activities within the forum. *Id.*

The Ninth Circuit has articulated a three-part test for specific jurisdiction: (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or [*10] results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Pacific Atlantic Trading Co., 758 F.2d at 1327*. Each of these conditions is required before the court may properly exercise jurisdiction. *Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981)*.

The first two requirements "are closely related because they focus on the relationship of the defendant and the claim to the forum state." *Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058, 1062 (9th Cir. 1985)*. Once the first two requirements are established, a rebuttable presumption arises that the exercise of jurisdiction is reasonable. *Haisten v. Grass Valley Medical Reimbursement, 784 F.2d 1392, 1396 (9th Cir. 1986)*. At that point, the burden is on defendant to present "a compelling case that jurisdiction would be unreasonable." *Id. at 1397* (citing *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 477-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174).

B. Analysis

Norwich Union argues that it lacks the requisite minimum contacts [*11] with the State of California to justify this Court's exercise of personal jurisdiction. [5] It supports that position with an affidavit which states in pertinent part as follows:

. Norwich Union is neither licensed nor qualified to conduct business in California and has never transacted any business within the State of California. (Fish Affid., PP3, 4.)

. Norwich Union does not own, lease, use or possess any real or personal property of any kind in the State of California. (*Id.*, P9.)

. Norwich Union maintains no bank account and has no telephone listing anywhere in the State of California. (*Id.*, P10.)

. Norwich Union does not pay taxes of any kind in the State of California. (*Id.*, P11.)

. Norwich Union has not appointed any agent for service of process in the State of California. (*Id.*, P12.)

. Norwich Union maintains no office, place of business or mailing address in the State of California. (*Id.*, P13.)

. Norwich Union maintains no officer, agent, distributor, servant, employee, broker, wholesaler or other representative within the State of California for the transaction of business of any nature. (*Id.*, P8.)

. Norwich Union [*12] has never entered into any contract to be executed or performed in whole or in part in the State of California. (*Id.*, P14.)

. Norwich Union has never marketed, advertised or otherwise promoted any of its products in the State of California. (*Id.*, P15.)

. Norwich Union has never authorized any agent to market, sell, advertise or promote any of its products, including but not limited to the JIP, in the State of California. (*Id.*, P16.)

[5] Plaintiffs do not contend that this Court has general jurisdiction over Norwich Union nor can they. As set forth more fully herein, Norwich Union lacks sufficient minimum contacts with the State of California to confer specific jurisdiction. As such, it certainly does not have the type of systematic and continuous contacts that would permit suit based on conduct unrelated to its alleged forum-related activities.

Thus, Norwich Union claims that it did not purposefully avail itself of the privilege of doing business in California and, therefore, could not have [*13] reasonably anticipated being haled into court in California to defend itself.

Plaintiffs, on the other hand, oppose dismissal of this action and assert that jurisdiction is proper based upon (1) the contacts of Mr. Hay, whom plaintiffs believe to be Norwich Union's agent; and (2) a series of correspondence which Norwich Union sent to plaintiffs in California. These alleged contacts, however, are insufficient to satisfy plaintiffs' burden of establishing that jurisdiction over Norwich Union is proper.

Contrary to plaintiffs' assertion, Mr. Hay was not the agent of Norwich Union. Instead, he was an Independent Financial Advisor and was plaintiffs' agent for purposes of purchasing the JIP. This conclusion is supported for two reasons. First, Norwich Union and Hay terminated any agency relationship that may have existed between them in 1988, prior to plaintiffs' purchase of the JIP. This termination was pursuant to The United Kingdom Financial Services Act of 1986 which confirmed that Independent Financial Advisors such as Hay are agents of the purchasers of the products marketed by the Independent Financial Advisors. Accordingly, Norwich Union informed Hay of new business terms pursuant [*14] to which "[Norwich Union is] canceling all UK agencies" including those with intermediaries based in the Channel Islands such as Hay. Mr. Hay expressly agreed to those new business terms--including the express term that "the intermediary is the agent of the client in relation to all aspects of the business." (Fish Reply Affd., PP8-9.) Second, Dr. Levy expressly acknowledged that Hay was *his* agent--not the agent of Norwich Union--in a letter dated October 10, 1991. Thus, plaintiffs' attempt to impute the contacts of Hay to Norwich Union under an agency relationship is belied by plaintiffs' own admission that Hay was plaintiffs' agent. [6]

6 Moreover, under U.S. law, nonexclusive sales representatives are agents for the buyers, such as plaintiffs herein, not the seller. *See Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 65 (9th Cir. 1973)* (actions of nonexclusive distributor not attributable to manufacturer because distributor agreements created no agency relationship).

Having found that **[*15]** the contacts of Hay cannot be imputed to Norwich Union, plaintiffs are left with a series of correspondence sent by Norwich Union to plaintiffs in California. As a matter of law, these *de minimis* contacts are precisely the type of isolated and random acts that have been held insufficient to establish the requisite purposeful availment necessary to exert jurisdiction over a non-resident defendant. 7 *See Peterson v. Kennedy, 771 F.2d 1244, 1261 (9th Cir. 1985)* (series of telephone calls and letters insufficient to confer jurisdiction).

7 Notwithstanding plaintiffs' allegation that "literally hundreds of advertisements, letters and/or faxes" have been received by plaintiffs in this forum, only ten examples of such correspondence have been submitted for the Court's consideration. (*See* Declaration of Mark Levy, P6.) Moreover, of those ten correspondence, only five were actually sent by Norwich Union to plaintiffs directly, the others were forwarded to plaintiffs from Hay, presumably, as a courtesy. (*See id.*) Moreover, those communications appear responsive, in part, to inquiries made by plaintiffs and, as such, do not give rise to the type of connection that would cause the Court to conclude that Norwich Union should have anticipated being haled into Court in California to defend itself.

**[*16]** As a result, the Court finds that plaintiffs have failed to meet their burden of establishing a *prima facie* showing of personal jurisdiction in this case. Norwich Union lacks the requisite minimum contacts to warrant this Court's exercise of jurisdiction. 8

8 The Court also DENIES plaintiffs' request for jurisdictional discovery. Although this Court has broad discretion to grant such a request, plaintiffs have failed to point to any facts that they believe, if discovered, would permit the exercise of jurisdiction over Norwich Union in this case.

CONCLUSION

For the foregoing reasons, Norwich Union's motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is ORDERED to close this file.

IT IS SO ORDERED.

Dated: August 5, 1998

MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE