1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   JULIO C. AVALOS (STATE BAR NO. 255350)
    javalos@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025
    Telephone:     +1-650-614-7400
5   Facsimile:     +1-650-614-7401

6   THOMAS J. GRAY (STATE BAR NO. 191411)
    tgray@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza
8   Suite 1600
    Irvine, CA  92614-2558
9   Telephone:     +1-949-567-6700
    Facsimile:     949-567 6710
10
    Attorneys for Plaintiff
11  FACEBOOK, INC.

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                           SAN JOSE DIVISION

15

16
    FACEBOOK, INC.,                    Case No.  5:08-cv-03468 JF
17
                  Plaintiff,           **CORRECTED VERSION**
18
          v.                           **FACEBOOK'S OPPOSITION TO
19                                     DEFENDANTS' MOTIONS TO
    STUDIVZ LTD., HOLTZBRINCK          DISMISS FOR LACK OF PERSONAL
20  NETWORKS GmBH, HOLTZBRINCK         JURISDICTION AND** *FORUM NON
    VENTURES GmBH, and DOES 1-25,      CONVENIENS*
21
                  Defendants.          Date:        February 13, 2008
22                                     Time:        10:00 a.m.
                                       Room:        Courtroom 2, 5th Floor
23
                                       Judge:       Hon. Judge Jeremy Fogel
24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................... 1

II. SUMMARY OF RELEVANT FACTS .................................................................... 2

   A.  The StudiVZ Founders Travel To the United States and California and
       Copy Facebook ............................................................................................... 2

   B.  StudiVZ Founders Develop Knockoff Facebook Website .............................. 3

   C.  Holtzbrinck Defendants Purchase StudiVZ With Full Knowledge of
       StudiVZ's Infringement of Facebook's Intellectual Property and Contribute
       To and Further StudiVZ's Continued Infringement ........................................ 4

   D.  The Legal Proceedings ................................................................................... 4

   E.  Defendants' Counsel Admits To Withholding Evidence Demonstrating
       StudiVZ's Access of Facebook ...................................................................... 5

III. DEFENDANTS ARE SUBJECT TO THE PERSONAL JURISDICTION OF
     THIS COURT ......................................................................................................... 5

   A.  StudiVZ Has Purposefully Directed Activities Toward California ................. 6

       1.  Defendants' Motions to Dismiss Ignore Facebook's Factual
           Allegations And Misunderstand The Relevant Law ............................... 8

       2.  Defendants' Highly Interactive, Commercial Website Has
           Purposefully Directed Itself At California and United States Users ........ 10

       3.  StudiVZ's Trespass To Facebook's Servers Establishes Jurisdiction
           Under California Penal Code 502 ........................................................... 14

       4.  StudiVZ Has Contractually Submitted To The Venue, Jurisdiction
           and Law of This Court ........................................................................... 14

   B.  The Holtzbrinck Defendants Are Subject to the Personal Jurisdiction of
       This Court ..................................................................................................... 15

   C.  Exercise of Jurisdiction Over Defendants Is Reasonable ............................. 15

IV. THIS IS A CONVENIENT AND APPROPRIATE FORUM FOR THIS
    DISPUTE. ............................................................................................................. 18

   A.  Defendants Have Failed to Meet Their "Heavy Burden" to Prove That an
       Adequate Alternative Forum Exists .............................................................. 18

   B.  Facebook's Choice of Forum Is Entitled to Considerable Deference ............ 19

   C.  Defendants Have Not Met Their Burden of Showing that Litigating in This
       District Would Be Oppressive or Vexatious ................................................. 20

   D.  The Private and Public Factors Do Not Tilt Strongly in Favor of a Foreign
       Forum ............................................................................................................ 21

       1.  The Private Interest Factors Do Not Tilt Strongly in Favor of
           Germany ................................................................................................. 21

       2.  The Public Interest Factors Do Not Tilt Strongly in Favor of a
           Foreign Forum ....................................................................................... 23

   E.  Defendants Have Agreed To This Forum ..................................................... 25

**TABLE OF CONTENTS**
(continued)

Page

F.    The Court Should Utilize Its Discretion to Keep the Case ................................... 25

V.    CONCLUSION ........................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*AT&T* v. *Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996).................................................................. 5

*Allstate Life Ins. Co.* v. *Linter Group, Ltd.*,
    782 F. Supp. 215 (S.D.N.Y. 1992), *aff'd*, 994 F.2d 996 (2d. Cir. 1993)................................ 22

*Amini Innovation Corp.* v. *JS Imps., Inc.*,
    497 F. Supp. 2d 1093 (C.D. Cal. 2007) ........................................... 19, 23

*Anglo American Ins. Group* v. *Calfed Inc.*,
    940 F. Supp. 554 (S.D.N.Y. 1996) .................................................. 21

*Ballard* v. *Savage*,
    65 F.3d 1495 (9th Cir. 1995)........................................................ 20

*Bigio* v. *Coca-Cola Co.*,
    448 F.3d 176 (2d Cir. 2006)..................................................... 20, 22

*Bonny* v. *Society of Lloyd's*,
    3 F.3d 156 (7th Cir. 1993)........................................................ 25

*Boschetto* v. *Hansing*,
    539 F.3d 1011 (9th Cir. 2008)...................................................... 5

*Brayton Purcell LLP* v. *Recordon & Recordon*,
    361 F. Supp. 2d 1135 (N.D. Cal. 2005) ........................................... 6, 7

*Cairo, Inc.* v. *Crossmedia Services, Inc.*,
    2005 U.S. Dist. LEXIS 8450 ...................................................... 14

*Calder* v. *Jones*,
    465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 804 (1984) ......................... 1, 6, 7, 8, 9, 15

*Carnival Cruise Lines, Inc.* v. *Shute*,
    499 U.S. 585 (1991).............................................................. 14

*Cheng* v. *Boeing Co.*,
    708 F.2d 1406 (9th Cir. 1983)................................................... 18, 21

*Columbia Pictures Television* v. *Krypton*,
    106 F.3d 284 (9th Cir. 1997)..................................................... 6, 7

*Core-Vent Corp.* v. *Nobel Industries*,
    11 F.3d 1482 (9th Cir. 1993)................................................... 15, 16

*Country Kids n City Slicks, Inc.* v. *Sheen*,
    77 F.3d 1280 (10th Cir. 1996)..................................................... 7

*Cybersell, Inc.* v. *Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997)................................................... 13, 12

*Daventree Ltd. V. Republic of Azerbaijan*,
  349 F. Supp.2d 736, 756 (S.D. N.Y. 2004)..................................................................24

*Dole Food Co.,* v. *Watts*,
  303 F.3d 1104 (9th Cir. 2002)...........................................................................18, 24

*E. & J. Gallo Winery* v. *F. & P.S.p.A*,
  899 F. Supp. 465 (E.D. Cal. 1994).........................................................................19

*Feltner* v. *Columbia Pictures Television*,
  523 U.S. 340 (1998)...................................................................................................6

*Flowserve Corp.* v. *Midwest Pipe Repair*,
  2006 U.S. Dist. LEXIS 4315......................................................................................8

*GTE New Media Servs. Inc.* v. *Bellsouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ..............................................................................13

*Gates Learjet Corp.* v. *Gates Learjet Export Corp.*,
  743 F.2d 1325 (9th Cir. 1984)..................................................................................24

*Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Hamarain Co.*,
  284 F.3d 1114 (9th Cir. 2002)..................................................................................10

*Guidi* v. *Inter-Continental Hotels*,
  224 F.3d 142 (2d Cir. 2000).....................................................................................24

*Harris Rutsky & Co. Ins. Svcs.* v. *Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003)..................................................................................20

*Intercon, Inc.* v. *Bell Atlantic Internet Solutions, Inc.*,
  205 F.3d 1244 (10th Cir. 2000)..................................................................................8

*Iragorri* v. *United Technologies Corp.*,
  274 F.3d 65 (2d Cir. 2001)................................................................................18, 19

*Lake* v. *Lake*,
  817 F.2d 1416 (9th Cir. 1987)....................................................................................6

*Lehman* v. *Humphrey Cayman, Ltd.*,
  713 F.2d 339 (8th Cir.1983), *cert. denied*, 464 U.S. 1042 (1984)........................22

*Licciardello* v. *Lovelady*,
  2008 U.S. App. LEXIS 21376 ....................................................................................7

*Life Alert Emergency Response, Inc.* v. *Lifealert Security, Inc.*,
  2008 U.S. Dist. LEXIS 105851..................................................................................12

*In re Livent, Inc. Sec. Litig.*,
  78 F. Supp. 2d 194 (S.D.N.Y. 1999)........................................................................21

*Manu Int'l S.A.* v. *Avon Products, Inc.*,
  641 F.2d 62 (2d Cir. 1981)................................................................................19, 20

*Maritz, Inc.* v. *Cybergold, Inc.*,

947 F. Supp. 1328 (E.D. Mo. 1996)..................................................................................... 13

*McDonough v. Fallon McElligott, Inc.*,
1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037 (S.D. Cal. Aug. 5, 1996) ........................ 9

*Norex Petroleum Ltd.* v. *Access Indus., Inc.*,
416 F.3d 146 (2d Cir. 2005) .................................................................................................. 19

*Overseas Programming Cos., Ltd.* v. *Cinematographische Commerz-Anstalt*,
684 F.2d 232 (2d Cir. 1982) .................................................................................................. 23

*Panavision Int'l.* v. *Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ...................................................................................... 6, 7, 15

*Pebble Beach Co.* v. *Caddy*,
453 F.3d 1151 (9th Cir. 2006) ............................................................................... 9, 10, 12, 13

*Peregrine Myanmar* v. *Segal*,
89 F.3d 41 (2d Cir. 1996) ...................................................................................................... 24

*Peridyne Tech. Solutions, LLC* v. *Matheson Fast Freight, Inc.*,
117 F. Supp. 2d 1366 (N.D. Ga. 2000) .................................................................................... 8

*Piper Aircraft Co.* v. *Reyno*,
454 U.S. 235 (1981) ......................................................................................................... 19, 25

*R. Maganlal & Co.* v. *M.G. Chem. Co., Inc.*,
942 F.2d 164 (2d Cir. 1991) .................................................................................................. 21

*Rano* v. *Sipa Press, Inc.*,
987 F.2d 580 (9th Cir. 1992) ................................................................................................... 9

*Ravelo Monegro* v. *Rosa*,
211 F.3d 509 (9th Cir. 2000) ...................................................................................... 18, 19, 21

*Real Good Toys, Inc.* v. *XI Mach, Ltd.*,
163 F. Supp. 2d 421 (D. Vt. 2001) .......................................................................................... 7

*Reid- Walen* v. *Hansen*,
933 F.2d 1390 (8th Cir. 1991) ............................................................................................... 22

*Schwarzenegger* v. *Fred Martin Co.*,
374 F.3d 797 (9th Cir. 2004) ............................................................................................... 5, 6

*Securities and Exchange Comm'n* v. *Ross*,
504 F.3d 1130 (9th Cir. 2007) ............................................................................................... 14

*Securities Investor Protection Corp.* v. *Vigman*,
764 F.2d 1309 (9th Cir. 1985) ............................................................................................... 19

*Sinatra* v. *National Enquirer*,
854 F.2d 1191 (9th Cir. 1988) ......................................................................................... 16, 17

*Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*,
127 S. Ct. 1194 (2007) .......................................................................................................... 18

*Terracom* v. *Valley Nat'l Bank*,
49 F.3d 555 (9th Cir. 1995)...................................................................................... 16

*Universal City Studios, Inc.* v. *Film Ventures Int'l, Inc.*,
543 F. Supp. 1134 (C.D. Cal. 1982)............................................................................ 7

*Wiwa* v. *Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000)........................................................................................ 20

*Zippo Mfg. Co.* v. *Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997)............................................................................ 13

**STATE CASES**

*Astor Holdings, Inc.* v. *Roski*,
2002 WL 72936 (S.D.N.Y. Jan. 17, 2002)................................................................. 22

*Autodesk, Inc.* v. *RK Mace Engineering, Inc.*,
2004 WL 603382 ....................................................................................................... 7

*Hunt* v. *Superior of San Diego County*,
81 Cal. App. 4th 901 (2000) ..................................................................................... 14

*Wyatt Tech. Corp* v. *Smithson*,
2005 WL 6132329 ..................................................................................................... 6

# I. INTRODUCTION

The Court should deny Defendants' requests to dismiss this case based on personal jurisdiction and *forum non conveniens* arguments. Based on the little discovery provided and evidence garnered, Facebook has learned that at least one of the founders of Defendant StudiVZ, Mr. Dariani, came to the United States in 2005 and was looking for the next hot internet idea. Upon arrival in the U.S. he learned of an incredibly popular and successful social networking site, Facebook. He quickly decided he would take such a site back to Germany with him. He contacted his friend, Mr. Bemmann, another co-founder of StudiVZ. Evidence indicates that Mr. Bemmann was also in the U.S. in 2005, when the two undoubtedly started copying Facebook's design and functionality. Within months, StudiVZ had investors and launched a German language site that competed directly against Facebook in German speaking countries.

Defendants now come to the Court and claim that there are not enough connections with this forum to support personal jurisdiction. Nonsense. First, it appears that the initial idea to clone Facebook was formed while both founders of StudiVZ were in the United States. Additionally, Defendants admit that as of 2005, they knew Facebook was in California. They also concede that employees of Defendants repeatedly accessed Facebook for "commercial purposes." Indeed, the wholesale copying of Facebook's design and functionality could only have occurred from repeated, unauthorized access to Facebook's site and intellectual property. Under the *Calder* effects tests, Defendants clearly directed their activities at this forum and personal jurisdiction is proper. In addition, Defendants have utterly failed to satisfy their heavy burden of overcoming Facebook's choice of forum.

Accordingly, Facebook respectfully requests that the Court deny Defendants' motions. Alternatively, if the Court is inclined to grant Defendants' motions, Facebook respectfully requests that the Court grant Facebook's soon-to-be filed Motion to Enlarge Time in order to allow Facebook an opportunity to receive the discovery that Defendants have improperly blocked and delayed for months.

## II.    SUMMARY OF RELEVANT FACTS

### A.    The StudiVZ Founders Travel To the United States and California and Copy Facebook

Facebook is the most popular social networking website in the world and one of the most trafficked websites of any kind.  The Facebook website and service launched in February 2004 on the Harvard University campus.  *See* Declaration of Julio Avalos In Support of Facebook's Opposition to Defendants' Motions to Dismiss ("Avalos Decl.") ¶ 2.  Within months, it had become a nationwide phenomenon.  *Id.*  In June 2004, Facebook relocated to Palo Alto, California.  *Id.* ¶ 3. Just over a year later, Fortune magazine reported that Facebook had eclipsed the six-million user mark.  *Id.* ¶ 4.

Around this same time, two German university students traveled to the United States on internships.  The first, Ehssan Dariani worked at a start-up company named Spreadshirt, Inc..  *See* Declaration of Clemens Mayer-Wegelin In Support of Facebook's Opposition to Defendants' Motions to Dismiss ("Mayer-Wegelin Decl.") ¶ 2.  In addition to working at his internship, Mr. Dariani admitted that while in the United States, he was "looking for the next big thing."  Mayer-Wegelin Decl. ¶ 2; **Exhibit A**.  As part of his internship at Spreadshirt, Mr. Dariani was tasked with spending $100,000 in marketing and advertising funds on the ascendant Facebook.  *Id.* ¶ 9.  "When I saw student networks in the USA, I wanted to have that in Germany," Mr. Dariani has stated.  *Id.* ¶ 5; **Exhibit D**.  While in the U.S., upon looking at Facebook for the first time, Mr. Dariani has admitted to thinking, "Wow, super, it's a lot of fun.  I want to have that too, there's no such thing in Germany."  *Id.* ¶ 8.  According to Mr. Dariani, "That's when I thought, 'That's good, adopt it, do it.'"  *Id.* ¶ 2.  Shortly thereafter, he contacted his friend, Dennis Bemmann, and the two started working on their company, StudiVZ.  *Id.* ¶ 8.

The second German student, Dennis Bemmann, a young computer programmer, went to work for a San Jose, California-based technology company named Xilinx, headquartered less than 25 miles from Facebook headquarters.  *Id.* ¶ 11; **Exhibit H**.    According to the International Herald Tribune, as an intern for Xilinx, Mr. Bemmann "helped to design Internet routing equipment in Colorado and California."  Avalos Decl.  ¶ 5;  **Exhibit 1**.  It appears that he was

also in the U.S. in 2005.

According to StudiVZ's responses to Facebook's interrogatories, it was during this time, "in 2005," that StudiVZ first learned that Facebook resided in California. *Id*. ¶ 6; **Exhibit 2**. The evidence suggests that it was also during this time that Messrs. Dariani and Bemmann began to gain access to Facebook in order to copy Facebook's intellectual property and business model.

Only registered users were (and still are) permitted to access the Facebook service. In order to register, users must agree to Facebook's Terms of Use. Under the Terms of Use, registrants contract that they "understand that the [Facebook] Web site is available for your personal, non-commercial use only." *See* Facebook Complaint ("Compl.") (Dkt. #1) ¶ 23. Registrants are further required to acknowledge their understanding that:

> All content on Web site, including but not limited to design, text, graphics, other files, and their selection and arrangement (the "Content") are the proprietary property of Thefacebook or its licensors. All rights reserved. The Content may not be modified, copied, distributed, framed, reproduced, republished, downloaded, displayed, posted, transmitted, or sold in any form or by any means, in whole or in part, without Web site's prior written permission. You may download or print a copy of any portion of the Content solely for your personal, non-commercial use, provided that you keep all copyright or other proprietary notices intact. You may not republish Content on any Internet, Intranet or Extranet site or incorporate the information in any other database or compilation. Any other use of the Content is strictly prohibited. All trademarks, logos, trade dress and service marks on the Web site are either trademarks or registered trademarks of Thefacebook or its licensors and may not be copied, imitated, or used, in whole or in part, with the prior written permission of Thefacebook.

*Id*. ¶ 24. By assenting to Facebook's Terms of Use, Facebook users also "consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to, venue and jurisdiction in the state and federal courts of California." *Id*. ¶ 25.

**B.      StudiVZ Founders Develop Knockoff Facebook Website**

At the end of their internships in 2005, Messrs. Dariani and Bemmann traveled back to Germany and continued to access Facebook's servers in order to copy Facebook's look and feel. Within months they received initial financing and developed and launched StudiVZ, a competing social networking site that looked nearly identical to Facebook. Avalos Decl. ¶ 7; **Exhibit 3** (screenshots of the two sites). The knockoff site, located at www.studivz.net, was launched in approximately October 2005. Mr. Dariani has admitted publicly that in developing the StudiVZ look and feel, StudiVZ "may have oriented [themselves] along the Facebook layout." Avalos

Decl. ¶ 8; **Exhibit 4**.  Mr. Dariani has also admitted that the StudiVZ founders "oriented themselves strongly toward Facebook as a tested business model" when developing StudiVZ.  Mayer-Wegelin Decl. at ¶ 8.  In a recent meet and confer, even Defendants' own counsel stated that it was clear that the StudiVZ websites "had at least been inspired by Facebook."  Avalos Decl. ¶ 10.  The Facebook and StudiVZ sites were confusingly identical and StudiVZ soon became the most popular social networking site in Germany and throughout Europe.

### C.     Holtzbrinck Defendants Purchase StudiVZ With Full Knowledge of StudiVZ's Infringement of Facebook's Intellectual Property and Contribute To and Further StudiVZ's Continued Infringement

Facebook sent its first cease and desist letter to StudiVZ on June 8, 2006.  *Id.* ¶ 9; **Exhibit 5**.  Two months later, Defendant Holtzbrinck Ventures became a 15% equity holder of StudiVZ.  *See* Declaration of Martin Weber In Support of Defendants' Motion to Dismiss For Lack of Personal Jurisdiction and Forum non conveniens ("Weber Decl.") (Dkt. #46) ¶ 5.  Facebook sent another cease and desist letter on January 3, 2007.  Avalos Decl. ¶ 10; **Exhibit 6**.  Nine months later, in October 2007, Defendant Holtzbrinck Networks became an 85% equity holder in StudiVZ.  Weber Decl. ¶ 5.  Under Holtzbrinck Ventures' and Holtzbrinck Networks' (herein collectively referred to as the "Holtzbrinck Defendants") ownership, StudiVZ continued to infringe upon Facebook's intellectual property, copying new features added to Facebook since StudiVZ's launch, such as Facebook's popular "chat" feature.  Avalos Decl. ¶ 11.  With full knowledge obtained from Facebook's cease and desist letters, the Holtzbrinck Defendants either explicitly or implicitly authorized the continued improper access to Facebook's servers by StudiVZ programmers and engineers and continued infringement of Facebook's intellectual property, expanding StudiVZ's influence from Germany into most of Europe.  *Id.* ¶ 12.

### D.     The Legal Proceedings

On July 9, 2008, Facebook's U.S. counsel sent StudiVZ a cease and desist letter.  *Id.* ¶ 13; **Exhibit 7**.   On July 18, 2008, Facebook brought the instant suit against Defendants for trade dress infringement, violation of the Computer Fraud and Abuse Act, violation of California Penal Code 502(c), breach of contract and breach of the covenant of good faith and fair dealing.  Unbeknownst to Facebook, StudiVZ filed a preemptive declaratory action against Facebook in

German civil court just hours before. Defendants subsequently moved to dismiss on the grounds that the Court lacked personal jurisdiction and for *forum non conveniens*.

### E. Defendants' Counsel Admits To Withholding Evidence Demonstrating StudiVZ's Access of Facebook

During this case's extensive meet and confer process, Defendants' counsel essentially admitted that he was withholding evidence regarding StudiVZ's intentional acts aimed at Facebook's servers. *Id*. ¶ 14. According to Defendants' counsel, it was going to be "undisputed" that StudiVZ accessed Facebook and "did what you claim they did." *Id*. Defendants' counsel later attempted to clarify this statement by explaining that he had evidence (again, which he was withholding) demonstrating that many StudiVZ employees, had, in the authorized scope and conduct of their employment, accessed Facebook for "commercial purposes." *Id*. ¶ 15. This evidence, Defendants' counsel continued, includes, among other things, the names of the StudiVZ employees charged with accessing Facebook as well as the Facebook user accounts used by those StudiVZ employees to access the Facebook site. *Id* ¶ 14. Defendants continue to withhold this and other discovery. *Id*. ¶ 15. Defendants' actions are the subject of a motion to compel that Facebook intends to file on January 20, 2009.

### III. DEFENDANTS ARE SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT.

When opposing a jurisdictional challenge made absent an evidentiary hearing, a plaintiff is required only to make a *prima facie* showing of personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id*., citing, *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*., citing, *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. at 1015-16. Courts apply a three-part test to determine if a district court may exercise specific jurisdiction over a defendant:

(1)"The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform (some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id*., citing, *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

### A. StudiVZ Has Purposefully Directed Activities Toward California

Under the first part of the jurisdictional test, a plaintiff must establish that defendants "either purposefully availed themselves of the privilege of conducting activities in [California], or purposefully directed their activities toward [California]." *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005). "Purposeful availment and purposeful direction are two distinct concepts." *Wyatt Tech. Corp v. Smithson*, 2005 WL 6132329, at *3, Case No. CV 05-1309 WMB (C.D. Cal. Aug. 30, 2005). For causes of action sounding in tort, including those for intellectual property infringement, a purposeful direction analysis is most appropriate. *See Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004); *Wyatt Tech.*, 2005 WL 6132329 at *3; *see also Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998).

In analyzing purposeful direction, courts apply an "effects" test. *See Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed. 804 (1984). The *Calder* effects test has three elements: the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state. *See Panavision Int'l. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In *Columbia Pictures Television v. Krypton*, 106 F.3d 284, 289 (9th Cir. 1997) (rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279 (1998)), the Ninth Circuit held that defendants' willful infringement of plaintiff's copyrights, combined with defendants' knowledge that plaintiff had its principal place of business in California, satisfied the *Calder* effects test. As the court summarized: "[Plaintiff] alleged, and the district court found, that [defendant] had willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of

business in the Central District.  <u>This fact alone is sufficient to satisfy the 'purposeful availment'</u> <u>requirement</u>."  *Id.* at 289 (emphasis added); *see also Brayton Purcell*, 361 F. Supp. 2d, at 1141 (observing that, "In *Columbia Pictures*, the Ninth Circuit essentially deemed the effects/purposeful direction test satisfied when the defendant is being sued for copyright infringement, the plaintiff brings suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there.").

Since *Columbia*, "a number of courts have found that willful infringement of intellectual property is sufficient to meet the requirements of the effects test." *Autodesk, Inc. v. RK Mace Engineering, Inc.*, 2004 WL 603382, at *5, Case No. C-03-5128 VRW (N.D. Cal. March 11, 2004) (noting that "courts often presume irreparable injury upon a prima facie showing of copyright infringement" and that therefore "Defendant's admission that it copied plaintiff's software without permission is thus sufficient for jurisdictional purposes to show that plaintiff has likely suffered substantial harm") (*citing*, *Country Kids 'n City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996));  *Universal City Studios, Inc. v. Film Ventures Int'l, Inc.*, 543 F. Supp. 1134, 1139 (C.D. Cal. 1982); *Real Good Toys, Inc. v. XI Mach, Ltd.*, 163 F. Supp. 2d 421, 424-25 (D. Vt. 2001) (finding the *Calder* effects test met where plaintiffs alleged that defendants had "knowingly and willfully infringed upon the copyright and trade dress of a Vermont corporation, knowing that the 'brunt of the injury' would be sustained in Vermont.").

It is clear, even in the face of StudiVZ's wholly improper refusal to produce responsive personal jurisdiction discovery, that StudiVZ committed a series of intentional acts, aimed at California, with knowledge that the acts would result in harm in California.  As evidenced by the public statements of Mr. Dariani, and those of Defendants' own counsel, StudiVZ's founders and its employees systematically accessed Facebook in the course and conduct of their employment in order to copy Facebook's intellectual property and develop a competing knockoff social networking site.  This is all that is required to satisfy *Calder.  See Licciardello v. Lovelady*, 2008 U.S. App. LEXIS 21376, *20, Case No. 07-14086 (11th Cir. October 10, 2008) (holding that the out-of-state Defendant's unauthorized use of the plaintiff's trademark and misappropriation of his name and reputation for commercial gain satisfied the *Calder* effects test); *Panavision Int'l,* 141

F.3d at 1321-22 (affirming the exercise of jurisdiction in a trademark infringement action over a nonresident defendant whose sole contact with the forum was his posting of plaintiff's trademarks on his internet website); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1248-49 (10th Cir. 2000) (holding that out-of-state defendant's continued transmission of email over plaintiff's servers caused injury to plaintiff in its home state); *Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.,* 117 F. Supp. 2d 1366, 1371-73 (N.D. Ga. 2000) (exercising jurisdiction over non-resident defendants who accessed plaintiff's computer system over the Internet in furtherance of their tortious activity); *Flowserve Corp. v. Midwest Pipe Repair,* 2006 U.S. Dist. LEXIS 4315, *10, Case No. 3:05-cv-1357-N (N.D. Tex. 2006) (jurisdiction proper over a "hacker" who accessed plaintiff's servers, where the servers were related to plaintiff's claims).

### 1. Defendants' Motions to Dismiss Ignore Facebook's Factual Allegations And Misunderstand The Relevant Law

StudiVZ's Motion to Dismiss largely ignores the factual allegations in Facebook's complaint as well as Facebook's theories of jurisdiction. Instead, in the motions, and throughout the meet and confer process, Defendants focus on more attractive (to them)—albeit irrelevant— observations regarding its minimum contacts with California, such as its lack of ownership of any real property in the state or its lack of a California business license. Although these facts sometimes bear on personal jurisdiction, they are not relevant to this case, where Facebook asserts that StudiVZ's employees have intentionally and unlawfully accessed Facebook's web site and intellectual property in violation of their contractual and statutory obligations under state and federal law.

To the extent that StudiVZ discusses the *Calder* "effects" test, they largely do so only to argue that StudiVZ's operation of its infringing, knockoff websites does not rise to the level of an "intentional act that was 'expressly aimed' at California." StudiVZ's Motion to Dismiss, at 12:28—13:2. This argument misses the point completely. Facebook's primary *Calder* predicate is StudiVZ's commission of a series of intentional acts aimed at California that caused harm in California and that StudiVZ knew would cause harm in California. Thus, Facebook's claims

arise out of, or directly result from, StudiVZ's forum-related activities, satisfying the second prong of the specific jurisdiction test. Facebook's *Calder* analysis does not hinge simply on StudiVZ's mere operation of a knockoff website in another country, although this too would suffice to establish this Court's personal jurisdiction over them. *See* Section III.A.3, *infra*.

Defendants' mischaracterization or misunderstanding of Facebook's factual allegations renders much of their brief moot. For instance, Defendants' intentional, unauthorized and illegal access of Facebook's California servers for the purpose of committing theft from those servers—and subsequent actual theft from those servers—simply cannot be likened, as StudiVZ unavailingly attempts to do, to a case in which specific jurisdiction was sought over a photographer whose photos ended up in a magazine whose nationwide distribution included California, *see McDonough v. Fallon McElligott, Inc.*, 1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037 (S.D. Cal. Aug. 5, 1996) (StudiVZ Mot. to Dismiss at 15:17—16:5), or another where specific jurisdiction was denied over the foreign owner of an infringing work who profited from the publication of the work in magazines he knew would be published in, among other places, California. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1992) (StudiVZ Mot. to Dismiss at 15:7—15:16). In these instances, the defendant did not purposefully target his activity at California, whereas in the instant case there is no question that StudiVZ did in fact commit several torts aimed at the state, almost certainly while in the United States.

StudiVZ briefly argues that StudiVZ's conduct was not "expressly aimed" at California because Facebook's website is available everywhere. StudiVZ Mot. to Dismiss at 14:6-19, *citing*, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). But the Court need not reach this issue to assert personal jurisdiction over StudiVZ. StudiVZ's argument once again misses the mark and ignores Facebook's allegations that StudiVZ intentionally trespassed to Facebook's servers and stole valuable intellectual property contained thereon. Facebook has asserted claims, including the Computer Fraud and Abuse Act and the Penal Code 502(c) claims, that relate directly to StudiVZ's unauthorized and improper access of Facebook's computers, system and data. Facebook's allegations that StudiVZ intentionally committed a series of torts to Facebook's servers are enough to meet the *Calder* "effects" test.

## 2. Defendants' Highly Interactive, Commercial Website Has Purposefully Directed Itself At California and United States Users

The Court has personal jurisdiction over Defendants stemming from their tortious acts knowingly aimed at California. However, even were this Court to ignore StudiVZ's intentional acts, the Court would still have personal jurisdiction over StudiVZ based on StudiVZ's implementation and continued maintenance of an interactive website expressly aimed at California users.

According to StudiVZ's responses to interrogatories and StudiVZ's own jurisdictional challenge, StudiVZ has over 11,000 users in California. Avalos Decl. ¶ 6; **Exhibit 2**. Each one of these users maintains a profile page on one of the StudiVZ websites. Like Facebook, in order to create a profile page, in order to become a StudiVZ user at all, a person must first register. Contrary to the representations in StudiVZ's Motion to Dismiss, the StudiVZ websites do far more than simply passively allow user registration. The StudiVZ registration pages possess dynamically-created interactive prompts that are particularly geared to guide American[1] and Californian users through their registration process. For instance, when a would-be StudiVZ user signals that she is from the United States, the StudiVZ Registration page changes to include a drop-down menu that lists a number of the fifty states.[2] Avalos Decl. ¶ 17; **Exhibit 8**. These states do not appear by accident. Like anything else on a webpage, they were written by a company programmer, *in anticipation that American users would want to register on the site*.

Once a user selects his or her state of residence or domicile, yet another drop down menu appears and asks users to select which university within the state the user attends. *Id.* ¶ 18;

---

[1] As Defendants have shirked their legal obligation to produce personal jurisdiction discovery, Facebook has not received discovery relative to StudiVZ's nationwide contacts and users. However, it is well-established that even if Facebook is unable to show purposeful direction as to California, Facebook can still establish jurisdiction if StudiVZ has purposefully directed its actions at the United States. *See Pebble Beach*, 453 F.3d at 1158-59. "This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2)." *Id.*, citing, *Glencore Grain Rotterdam B.V. v. Shivnath Rai Hamarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). As it has raised claims under federal law, Federal Rule 4(k)(2) is available to Facebook to the extent that the Court determines that StudiVZ is not subject to the personal jurisdiction of any state court of general jurisdiction and the exercise of jurisdiction would comport with due process.

[2] This illustrates what is meant by a "dynamically-created" interactive prompt. It is one that does not initially appear on a particular webpage. The prompt is created by the website's programming language according to responses and information entered by users and registrants.

**Exhibit 9**. Not all colleges or universities within a state are represented in these drop-down menus. The selection of colleges and universities included within the registration page appears to be driven by requests from registrants to have their respective schools added to StudiVZ's site. Avalos Decl. ¶ 19. In other words, when a student attending an American university not listed on the registration page wishes to register as a member of one of the StudiVZ websites, that student is asked to e-mail the university or college's complete name, its abbreviation, its state, city, postal code and school website to StudiVZ. *Id*.; **Exhibit 10** (depicting the Estudiln.net "Help" page with these instructions in the Spanish language). While StudiVZ webmasters are processing the request, would-be users are nevertheless permitted to register and access the site. *Id*. A student whose school does not yet appear in the drop-down menu is encouraged to register as a student from a listed university while the request is processed. *Id*. Such students are instructed to change their listing to the correct school at a later date. *Id*. Once a university-add request is processed, the StudiVZ service adds that university to its permanent drop-down menu, allowing future registrants from that school to select it. *Id*.

StudiVZ's targeting of American and Californian users is thus systemic, continuous and interactive with American users. For example, on the Spanish StudiVZ site's registration page, students from the University of California at Hayward are expressly provided for. Avalos Decl. ¶ 18 , **Exhibit 9** (depicting a screenshot of the www.estudiln.net registration page featuring Hayward on a pull-down menu). Presumably, the Spanish-language StudiVZ site received requests from students of UC Hayward to add the university to its service, which StudiVZ acquiesced to by programming Hayward permanently into its source code. The only reason for doing so would be to cater and appeal to students from that university.

This degree of interactivity is a far cry from StudiVZ's own representation of its sites' interaction with American users. In carefully lawyered language, StudiVZ writes, "Nor has StudiVZ made any effort to specifically target California residents, and StudiVZ has not advertised to, *or otherwise initiated contact with*, any California residents." StudiVZ's Mot. to Dismiss at 13:10-14 (emphasis added). StudiVZ may not have "initiated contact" with its 11,013 California users, but once those users contacted it, it catered to them by writing new code into its

website so as to allow them to register on the site and become income-generating assets of the company. Indeed, in light of StudiVZ's protocol for adding California universities to its drop-down menus, it would appear that StudiVZ's representation that it has not "made any effort to specifically target California residents" is blatantly false.

Accepted as true, these allegations are more than sufficient to establish that StudiVZ's websites are sufficiently interactive to grant the Court personal jurisdiction. According to StudiVZ's own motion, Ninth Circuit law categorizes web sites along a "'sliding scale' approach under which jurisdiction is 'directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." StudiVZ Mot. to Dismiss at 12:10-18, citing, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). It is well-established that no jurisdiction may be exercised over a website owner "who does nothing more than register a domain name and post an essentially passive website and nothing else is done to encourage residents of the forum state." *Pebble Beach*, 453 F.3d, at 1157. StudiVZ seeks to paint itself as something akin to such a passive site:

> While not solely "passive" sites that do nothing but post information, StudiVZ's social networking sites fall much closer to the passive end of the spectrum than they do to commercial websites that sell goods or services to California residents. There is no charge to use StudiVZ's websites. Moreover, to the extent the sites are 'interactive,' the vast majority of the interaction occurs among the sites' registered users, not between users and the site. StudiVZ simply provides the conduit for the users' interaction among themselves."

StudiVZ Mot. to Dismiss at 13:2 — 9.

StudiVZ ignores the fact that it entered into contracts with each and every one of its 11,013 California users by way of its Terms of Use. It is well-established that "an interactive website through which the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet justifies a court's exercise of personal jurisdiction." *Life Alert Emergency Response, Inc. v. Lifealert Security, Inc.*, 2008 U.S. Dist. LEXIS 105851, at *9-*10, Case No. CV 08-3226 AHM (C.D. Cal. Dec. 29, 2008). It ignores the fact that it specifically changed its website programming so as to allow users from California and other states to register and use the StudiVZ websites. It ignores the fact that to do so it regularly interacts with servers in California. And it ignores the fact that

while these users are interacting among themselves, they are doing so by accessing Defendants'

sites while in California.

StudiVZ's assertion that it did not "charge" the California users for the use of the StudiVZ services is misleading and disingenuous. As is increasingly the case for most Internet websites, income is generated not by user fees but from advertisers who pay to have advertisements placed on a webpage. Avalos Decl. ¶ 20; **Exhibit 11**. The more users and "hits" a website has, the more a website is able to charge companies wishing to advertise on the site. *Id.* Although StudiVZ's refusal to cooperate with the production of personal jurisdiction discovery precludes exact numbers, when negotiating with advertisers, StudiVZ presumably includes its California and other American users in the total. StudiVZ is thus able to charge more for its advertising space and effectively generates income from each of its American users.

In sum, StudiVZ is not merely a passive website of the kind seen in the two cases cited most in its jurisdictional challenge. In *Pebble Beach*, the defendant merely set up a domain name and ran a website with no contact whatsoever with California, 453 F.3d at 1157. In *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000), the court declined to exercise jurisdiction over a defendant who provided a website with interactive yellow pages that users could access in their respective forums. Unlike these websites, StudiVZ operates a highly interactive online service that regularly transacts business with thousands of individually targeted California residents and thousands more across the country. It is well-established that the exercise of personal jurisdiction is appropriate in such cases. *See Cybersell*, 130 F.3d at 418, citing, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (finding purposeful availment based on defendant's interactive website and contracts with 3000 individuals and seven Internet access providers in Pennsylvania allowing them to download electronic messages that formed the basis of the suit); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1332-33 (E.D. Mo. 1996) (cited in *Cybersell*, 130 F.3d at 418) (website users were encouraged to add their address to a mailing list that basically subscribed the user to the service).

3.     **StudiVZ's Trespass To Facebook's Servers Establishes Jurisdiction Under California Penal Code 502**

By knowingly accessing and without permission taking, copying or making use of data from Facebook's computer servers, StudiVZ violated California Penal Code section 502(c). Cal. Pen. Code §502(c). California Penal Code section 502(j) specifically provides for jurisdiction over a defendant if that defendant accessed a computer, computer system or computer network in violation of section 502(c). Cal. Pen. Code §502(j) ("For purposes of brining a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system or computer network in each jurisdiction."). Thus, the exercise of jurisdiction is appropriate over Defendants.

4.     **StudiVZ Has Contractually Submitted To The Venue, Jurisdiction and Law of This Court**

As noted above, by agreeing to the Facebook Terms of Use, Defendants, by and through its founders, employees acting within the scope of their employment, as well as other agents, have contractually submitted to the venue, jurisdiction and law of this Court. Courts routinely enforce such provisions when determining personal jurisdiction. *See*, *e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991) (upholding forum selection clause printed on cruise ship ticket); *Securities and Exchange Comm'n v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (observing that "consent to jurisdiction sometimes occurs unwillingly or even inadvertently," including through a "variety of legal arrangements" such as "a forum selection clause in a contract"); *Hunt v. Superior of San Diego County*, 81 Cal. App. 4th 901, 908 (2000) ("Although the forum selection clause here is contained in an adhesion contract, that clause in an adhesion contract is enforceable even though the defendant did not actually read it."). Forum selection clauses found online are valid and enforceable. *See*, *e.g.*, *Cairo, Inc. v. Crossmedia Services, Inc.*, 2005 U.S. Dist. LEXIS 8450, *12-14, Case No. C 04-04825 JW (N.D. Cal. Apr. 1, 2005). Thus, for yet another reason, this Court may exercise personal jurisdiction over Defendants.

### B. The Holtzbrinck Defendants Are Subject to the Personal Jurisdiction of This Court

The Holtzbrinck Defendants invested in StudiVZ in 2007. Since obtaining control they have continued and expanded StudiVZ's ongoing infringement with knowledge thereof and with knowledge that doing so would harm Facebook in California. Avalos Decl. ¶¶ 9, 10 and 12. These assertions would, if proven, plainly be sufficient to establish personal jurisdiction because Defendants would have *knowingly harmed a California resident in California. See Licciardello v. Lovelady*, 2008 U.S. App. LEXIS 21376, *20, Case No. 07-14086 (11th Cir. October 10, 2008) (holding that the out-of-state Defendant's unauthorized use of the plaintiff's trademark and misappropriation of his name and reputation for commercial gain satisfied the *Calder* effects test); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321-22 (9th Cir.1998) (affirming the exercise of jurisdiction in a trademark infringement action over a nonresident defendant whose sole contact with the forum was his posting of plaintiff's trademarks on his internet website).

### C. Exercise of Jurisdiction Over Defendants Is Reasonable

Defendants make much of the fact that it would be "unreasonable" to hale them into California court. *See* StudiVZ Mot. to Dismiss at 16:8 -14. But this is but one factor a court should consider and not determinative by itself. Indeed, Federal courts routinely exercise personal jurisdiction over foreign defendants.

To determine the reasonableness of exercising personal jurisdiction over foreign defendants, the Ninth Circuit requires the consideration of seven factors. *See Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). These factors weigh heavily in Facebook's favor:

(i) Purposeful Interjection: In their Motions to Dismiss, both StudiVZ and the Holtzbrinck summarily conclude that they have not purposefully engaged in any activities in California. StudiVZ Mot. to Dismiss at 16:28 – 17:3; Holtzbrinck Mot. to Dismiss 13:7—13. This is untrue. With full knowledge that Facebook was located in California, Defendants intentionally trespassed to Facebook's servers and there perpetrated theft in violation of both state and federal law thereby causing harm to Facebook in California. In addition, as discussed above,

Defendants have over 11,000 users in California with whom they have interacted and entered into user agreements. Accordingly, this factor favors a finding that the exercise of jurisdiction would be reasonable.

(ii) <u>Burden on Defendant</u>: Defendants argue that "[t]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Id.* at 17:4—5, citing, *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). However, in *Core-Vent*, the Ninth Circuit made clear that the asymmetry to which it was referring was unique to that case, as defendants "are individuals with little to no physical contacts with California," while "Core-Vent, on the other hand, is a large international corporation with worldwide distribution of its products." *Core-Vent*, 11 F.3d at 1489. The asymmetry present in *Core-Vent* is absent here. Defendants are part of one of the largest and wealthiest media conglomerates in the world, Verlagsgruppe Georg von Holtzbrinck. The Holtzbrinck companies own hundreds of assets around the world, including the New York publishing powerhouse, Macmillan Press. Defendants are at no distinct financial disadvantage in litigating this case in California. Even in *Core-Vent*, where the parties were truly asymmetrical, the Court refused to declare this factor for the individual doctors, writing, "[w]hile defending the lawsuit in California would be difficult for the Swedish doctors, it would not be impossible." *Core-Vent*, 11 F.3d at 1489. Further, as *Core-Vent* itself made clear, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Core-Vent*, 11 F.3d at 1489, citing, *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). Defendants' conclusory position would effectively preclude courts from ever exercising personal jurisdiction over foreign defendants. Given the parity between the parties, the lack of a particularized burden to any of the Defendants, and the particularly brazen nature of Defendants' tortious acts, this factor favors a finding that the exercise of jurisdiction would be reasonable.

(iii) <u>Conflict With Sovereignty</u>: Exercise of personal jurisdiction over Defendants would not conflict with the sovereignty of Germany. Defendants again fail to cite to any particularized concerns unique to this case. In fact, they cite only to their status as foreign nationals as grounds to conclude that the exercise of personal jurisdiction in this case would clash with German

sovereignty. To the extent that any conflict could exist, that conflict would seem outweighed by the reason for which personal jurisdiction would be exercised by the Court in the first place: Defendants trespassed to California property and committed willful intellectual property theft on a massive, unabashed scale. Accordingly, this factor favors a finding that the exercise of jurisdiction would be reasonable.

(iv) <u>Forum State's Interest</u>: It is well-established that "California maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured." *Core-Vent*, 11 F.3d at 1489, citing, *Sinatra*, 854 F.2d at 1200. Despite this truism, Defendants somehow conclude that "California has no interest in adjudicating this dispute." StudiVZ Mot. to Dismiss at 18:15—16; Holt. Mot. to Dismiss at 14:27—28. California's interest in this case is considerable and unambiguous. Facebook resides in Palo Alto, California. Avalos Decl. ¶ 3. The computer servers upon which Defendants trespassed are located in California. *Id*. Moreover, California employees have suffered harm in California. And Facebook has asserted a California Penal Code violation against Defendants. This factor weighs heavily in favor of finding that the exercise of personal jurisdiction would be reasonable.

(v) <u>Efficient Resolution of the Controversy</u>: As discussed in Section IV. D., *infra*, Defendants take a one sided and incorrect view that all witnesses and evidence in this case are likely to be located in Germany. Facebook witnesses will need to be deposed concerning the development of the Facebook site, the similarities of the two sites, and the harm and damages suffered by Facebook. Documentary evidence regarding these issues is located here in California. Third-party witnesses located here in the United States are likely to play a role in this litigation, as the StudiVZ founders both decided to copy Facebook—and perhaps even began copying Facebook—while working as interns for American companies. Xilinx, Mr. Bemmann's employer during the period in question, is located just miles from the Court. To the extent that witnesses and documents will be needed from Germany, advances in technology have gone far to mitigate the burdens associated with producing and reviewing such evidence. *Id*. Accordingly, this factor weighs in favor of finding that the exercise of personal jurisdiction would be reasonable.

(vi) <u>Plaintiff's Interest in Effective Relief</u> and (vii) <u>Existence of an Alternative Forum</u>:

1    These factors favor exercise of personal jurisdiction.  *See infra*. Section IV.

2    **IV.    THIS IS A CONVENIENT AND APPROPRIATE FORUM FOR THIS DISPUTE.**

3        *Forum non conveniens* is an "exceptional tool" that  must be "employed sparingly."

4    *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir. 2000).  Thus, Defendants' motion should be

5    denied unless they can prove that it would be **oppressive and vexatious** for Defendants to litigate

6    in the United States.  *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir. 1983).  Defendants bear

7    the heavy burden of making "a clear showing of facts . . . which establish such oppression and

8    vexation" that they are "out of proportion to plaintiff's convenience."  *Ravelo Monegrom,* 211

9    F.3d at 514.  *See also Dole Food Co., v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Sinochem

10   Int'l Co. v. Malaysia Int'l Shipping Corp*., 127 S. Ct. 1184, 1191  (2007).  Here, Defendants have

11   not come close to satisfying their "heavy burden.".

12       **A.    Defendants Have Failed to Meet Their "Heavy Burden" to Prove That an
             Adequate Alternative Forum Exists.**

13       As a threshold issue for a *forum non conveniens* motion, a Defendant must prove that an

14   adequate alternative forum must exist.  *Iragorri v. United Technologies Corp.,* 274 F.3d 65 (2d

15   Cir. 2001).  Defendants have completely failed to satisfy this prerequisite of proving that

16   Germany is an adequate alternative forum exists.  Indeed, Defendants merely state in conclusory

17   fashion that "it is undisputed that Germany law recognizes and provides remedies for plaintff's

18   purported claims."  Facebook disagrees and disputes this important issue. Facebook has asserted

19   uniquely American claims – the federal Computer Fraud and Abuse Act claim and the violation

20   of California Penal Code section 502(c) claim.  Defendants have made no effort to discuss, much

21   less proffer evidence, that Facebook would be able to pursue adequate remedies for these statutes

22   that offer wide-ranging and broad protections.  Moreover, the general tort law of the European

23   countries, as well as the limited discovery, is ill-suited for a complex computer trespass case such

24   as this.  In addition, it is undisputed that Germany does not allow for punitive damages.

25   Consequently, there is a significant dispute as to whether Facebook can receive adequate

26   remedies to compensate it, and to punish Defendants for their wrongful and intentional acts

27   directed at Facebook.  Again, Defendants have the burden of presenting the facts and evidence to

28

overcome this threshold issue. They failed to do so. On reply, Defendants should not be permitted to belatedly present evidence and new theories to try to resurrect their unsupported arguments. Accordingly, Defendants have not met, and cannot meet, their heavy burden with respect to this issue and their *forum non conveniens* argument should be summarily denied.

### B. Facebook's Choice of Forum Is Entitled to Considerable Deference.

When evaluating whether litigating in a forum would be oppressive or vexatious, the *forum non conveniens* inquiry starts with a strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *See also Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 154 (2d Cir. 2005) (vacating dismissal where district court failed to afford proper deference to foreign plaintiff's choice of forum); *Manu Int'l S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981) ("[e]mphasis on the district court's discretion . . . must not overshadow the central principle of the *Gilbert* doctrine that '**unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed**.'"); *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985); *Ravelo Monegro*, 211 F.3d at 513 ("There is a strong presumption in favor of the plaintiff's choice of forum"); *E. & J. Gallo Winery v. F. & P.S.p.A,* 899 F.Supp. 465, 466 (E.D. Cal. 1994). This is even more so where the plaintiff has filed suit in the district where there is sufficient connection with its choice of forum, such as residency of Plaintiff. *Amini Innovation Corp. v. JS Imps., Inc.,* 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007).

Here, Facebook's choice is entitled to substantial deference. "The greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference will be given to the plaintiff's forum choice." *Iragorri,* 274 F.3d at 71-72 (emphasis added). There can be no doubt that Facebook is connected to this forum. It resides here. Its employees, some of whom will be witnesses, are here. Its documents are here. Its servers are here. Its outside counsel for this case has offices in this District and some of the attorneys handling the matter reside and work in this District. Consequently, Facebook has numerous and significant connections to this forum.

In addition, The lawsuit itself also has a significant connection to this forum.  Because

Facebook resides here, the harm Facebook suffers is felt here, not merely in Germany as

Defendants argue.  Additionally, Defendants accessed Facebook's servers located in this District.

Facebook has a asserted violations of California Penal Code section 502(c) and the federal

Computer Fraud and Abuse Act.  This Court has a strong interest in adjudicating these claims.

Since substantial deference should be given to Facebook's choice of forum, this action

should be dismissed "only if the chosen forum is shown to be genuinely inconvenient and the

selected forum significantly preferable." *See Bigio v. Coca-Cola* Co., 448 F.3d 176, 179 (2d Cir.

2006).  Here, Defendants have not, and cannot, make such a showing.

**C.      Defendants Have Not Met Their Burden of Showing that Litigating in This District Would Be Oppressive or Vexatious.**

Even if Defendants could show that there was an adequate alternative forum and even if

no deference were given to Facebook's choice of forum, Defendants' motion to dismiss must still

be denied because Defendants have not and cannot establish that trying this case in this Court

would be "oppressive" or "vexatious."  As set forth above, Defendants are part of the Holtzbrinck

publishing conglomerate.  They have substantial resources and can easily absorb the costs of a

trial in California.  Consequently, litigating here will not be "oppressive" to them.  *See Wiwa v.*

*Royal Dutch Petroleum Co*., 226 F.3d 88, 99 (2d Cir. 2000) (even though disputed events did not

occur in the forum state, defendant foreign corporations would not be subject to great

inconvenience in litigating there given the defendants' wealth and far-flung business empire).

Additionally, "[m]odern advances in communications and transportation," such as

electronic communications and low international airfares, have "significantly reduced the burden

of litigating in another country." *Harris Rutsky & Co. Ins. Svcs. v. Bell & Clements Ltd*., 328 F.3d

1122, 1132-33 (9th Cir. 2003) (observing that litigating in California posed only a limited burden

to a London-based company); *see also Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995)

("the advent of 'modern transportation' certainly has made the burden of defending in a foreign

forum more palatable"), and *Manu, Int'l S.A., v. Avon Prods.* 641 F.2d 62, 65 (2d Cir. 1981)

(transportation of witnesses from Taiwan to New York was not unacceptable inconvenience).

OHS West:260584432.1

Along these lines, the vast amount of document discovery these days involves the exchange of electronic data, documents, and files. The use of tapes, disks and even electronic mail has made the transfer of information extraordinarily easy – even if sent from remote locations. Additionally,"[D]ocuments can be scanned and placed on a secure website for viewing by counsel for the parties and by the court," making the location of documentary evidence "far less important than it might have been in the past." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999). In the current case, Defendants have already produce documents in electronic form. Defendants fail to explain how trying a case in this District will be oppressive.

**D.      The Private and Public Factors Do Not Tilt Strongly in Favor of a Foreign Forum.**

The Supreme Court has set forth private and public interest factors that courts should assess in considering *forum non conveniens* motions. These factors must "tilt strongly" in favor of a foreign forum in order for a motion to be granted. *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991) (citing *Gilbert*, 330 U.S. at 508). The overall standard remains whether litigating in this District is oppressive or vexatious. The private and public factors merely provide the Court with a framework for exercising its discretion. *Cheng*, 708 F.2d at 1411; *Ravelo Monegro*, 211 F.3d at 514.

**1.      The Private Interest Factors Do Not Tilt Strongly in Favor of Germany.**

The "private interest" factors are: (1) residences of the parties and witnesses, (2) forum's convenience to the litigants, (3) access to physical evidence and sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) cost of bringing witnesses to trial, (6) enforceability of the judgment, and (7) all other practical problems that make trial of a case easy and inexpensive." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).

In applying these factors, courts must, as discussed above, consider changes in transportation and technology that have significantly reduced the burden on a party of trying a case outside of one's own country. *See Anglo American Ins. Group v. Calfed Inc.,* 940 F. Supp. 554, 564 (S.D.N.Y. 1996) (finding that the "development of worldwide travel … means that mere distance alone is not a sufficient basis on which to conclude that a forum is inconvenient"); *Reid-*

1 *Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991); *Lehman v. Humphrey Cayman, Ltd*., 713

2 F.2d 339 (8th Cir.1983), *cert. denied*, 464 U.S. 1042 (1984); ("[T]he time and expense of

3 obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace

4 modes of communication and travel."); *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp.

5 215, 225 (S.D.N.Y. 1992), *aff'd,* 994 F.2d 996 (2d. Cir. 1993) ("[I]n light of the advances in

6 transportation and communication since 1947, the year *Gulf Oil* was decided, [the ease of access

7 to sources of proof] will be accorded less weight in this Court's calculus.").

8       Here, the first factor - the residence of parties and witnesses - favors this District.

9 Facebook's witnesses will all be from this District or the United States. Defendants witnesses

10 will be in Germany. Between the parties, the factor is neutral. But as discussed above, there may

11 be third party witnesses who worked with either Mr. Dariani in Pennsylvania or Mr. Bemmann in

12 California and/or Colorado and who have relevant information regarding the initial creation and

13 development of the StudiVZ site – which appears to have occurred on U.S. soil. This tips the

14 balance in favor of this forum.

15       Defendants have also failed to meet their burden with respect to the second and third

16 factors – convenience to litigants and access to proof. As the Ninth Circuit has stated "[a]ny

17 court, whether in the United States or in [Germany], will necessarily face some difficulty in

18 securing evidence from abroad." *Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1182 (9th*

19 *Cir. 2006),* 433 F.3d at 1182. But, because of the advances in technology and the ability to use

20 videotaped depositions, that difficulty is neither oppressive nor vexatious in this case. *See Astor*

21 *Holdings, Inc. v. Roski*, 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002) (the location of records

22 is "not a compelling consideration when records are easily portable"). Again, at most these

23 factors are neutral.

24       Defendants similarly fail to meet its burden with respect to the fourth and fifth factors –

25 the ability to compel testimony and the cost of bringing witnesses to trial. The testimony of

26 foreign witnesses can readily be secured in this District. Germany is a signatory to the Hague

27 Convention and letters rogatory are available to facilitate efficient discovery. *See Bigio,* 448 F.3d

28 at 179 ("to the extent there are witnesses abroad who are beyond the court's subpoena power,

1    their testimony can be provided by depositions taken pursuant to letters rogatory"); *see also*

2    *Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt,* 684 F.2d 232, 235

3    (2d Cir. 1982) (availability of letters rogatory is relevant in deciding the issue).

4         The sixth factor - enforceability of the judgment - again is neutral.  Germany will enforce

5    a judgment from the United States.  Facebook does not anticipate a problem in this regard.

6    Defendants do not even address the issue.  Finally, Defendants do not meet their burden as to the

7    seventh factor.  There is no practical problem with trying the case in this District.  Defendants

8    raise the issue of translation costs.  But this is a red herring.  To the extent that Defendants

9    produce German language documents in this case, Facebook will bear the costs of translating

10   them.  Since many of the Defendants, as well as their German counsel, are fluent in English, there

11   likely is little need for Defendants to spend money on procuring formal translations.  See Gray

12   Decl. ¶ 3.  Worse yet, if the case is transferred to Germany – it further drives up Facebook's costs

13   because it will be forced to translate all of its English language documents and materials into

14   German so that they can be filed or used in the proceedings.

15       In sum, Defendants have completely failed to establish that the private interest factors "tilt

16   strongly" toward Germany.  Rather, they take a myopic one-sided view that because all of their

17   witnesses are in Germany, the case should be tried in Germany.  Defendants ignore the fact that

18   all of Facebook's witnesses, documents and experts will be here in the U.S.  A complete analysis

19   reveals that Defendants merely propose shifting costs and inconveniences to Facebook.  This is

20   not proper and does not support dismissal pursuant to *forum non conveniens*.  *See Amini*

21   *Innovation*, 497 F.Supp. 2nd 1093, 1110-1111 (finding that a transfer of venue is generally

22   inappropriate if it merely shifts costs from defendants to plaintiff).

23   **2.    The Public Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum.**

24       The public interest factors are "(1) the local interest of lawsuit; (2) the court's familiarity

25   with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the

26   costs of resolving a dispute unrelated to this forum." *Lueck,* 236 F.3d at 1147 (quoting *Gilbert,*

27   330 U.S. at 508-09).  Once again, Defendants completely fail to meet their heavy burden of

28   showing that these factors tilt strongly in their favor.

With respect to the first factor, a court should look to see if there is a local interest, not compare the local interest to the interest of another forum. "[W]e ask **only** if there is a local interest in the controversy, **not whether another forum also has an interest.**" *Tuazon,* 433 F.3d at 1182 (emphasis added) (rejecting *forum non conveniens* argument notwithstanding the Philippines' interest in the case). This District has a strong local interest in this case. Facebook is a resident of this District, it employs numerous people in this District and its harm was felt in this District. *See Dole Food Co., Inc.* 303 F.3d at 1119 (noting California's strong interest in the lawsuit because one of the parties was a California-based corporation). In addition, this Court has a strong interest in protecting its corporate citizens from others who improperly access their computer systems and infringe their technology. Finally, Facebook has asserted California and federal statutory computer trespass and trade dress claims. This Court has an interest in adjudicating such issues. *See Gates Learjet Corp. v. Gates Learjet Export Corp.*, 743 F.2d 1325 (9th Cir. 1984) (forum had an interest in protecting companies from trademark infringement).

The second factor - governing law - also strongly favors this forum. Again, Facebook has asserted purely U.S. claims, including violations of California Penal Code section 502(c) and the federal Computer Fraud and Abuse Act and Lanham Act trade dress violations. "Public interest ordinarily favors the enforcement of the federal law . . . in the United States courts." *Daventree Ltd. V. Republic of Azerbaijan,* 349 F. Supp.2d 736, 756 (S.D. N.Y. 2004). Here, the Computer Fraud and Abuse Act and Penal Code 502 claims should be tried in a U.S. court. Despite Defendants' claims, there are no choice of law disputes. Defendants cling to earlier cease and desist letters from 2006 and 2007. But they ignore the letter Facebook sent in July 2008, just prior to filing suit and the actual claims set forth in Facebook's Complaint.

The third factor is "not implicated" when, as here, the local forum has "strong interest in this litigation." *See, e.g., Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996). The fourth factor – court congestion – is not as relevant here because there are relatively few judicial vacancies. *See Guidi v. Inter-Continental Hotels*, 224 F.3d 142, 147 n. 5 (2d Cir. 2000). Defendants have made no showing that Germany's courts are less congested. Finally, the fifth factor is also irrelevant, since this dispute is substantially related to this forum.

Defendants rely heavily on the fact that their witnesses speak German and claim that this will unduly delay the trial. Defendants' arguments are, at best, specious. While arranging for the depositions of Messrs Brehm and Weber, Defendants' witnesses, defense counsel specifically stated that the witnesses spoke fluent English and that a translator likely would <u>not</u> be needed – except for a few word here and there. Gray Decl. ¶ 3. In addition, StudiVZ's founders, Messrs. Dariani and Bemmann appear to speak fluent English based on videos available on the Internet. Defendants' claims of significant delays because its witnesses speak German are misleading and vastly overblown. Overall, the public interest factors do not "tilt strongly" in favor of transfer.

### E.   Defendants Have Agreed To This Forum.

As set forth above in Section III.A.4., Defendants have agreed to the forum selection provision contained in Facebook's Terms of Use. These clauses are valid and enforceable. Defendants have not offered any arguments to overcome the provisions. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 159-61 (7th Cir. 1993).

### F.   The Court Should Utilize Its Discretion to Keep the Case.

The *forum non conveniens* determination is committed to the sound discretion of the trial court. *Piper*, 454 U.S. at 257. Here, we have Defendants who came to the U.S. to find the next hot internet idea. They discovered Facebook and immediately started copying the entire look and feel and functionality of the site. They went back to Germany and launched a German language clone of Facebook. When Facebook confronted them, they filed a preemptory Declaratory Judgment action in an effort to select the most convenient and favorable forum. This Court should not let them succeed at manipulating the judicial process. Facebook has filed valid U.S.-based claims that it should be permitted to pursue against Defendants in this forum. Defendants have completely failed to carry their burden of showing that this is an oppressive and vexatious forum. Facebook's choice of forum should be upheld.

## V.   CONCLUSION

Accordingly, this Court should deny Defendants' motions. Alternatively, if the Court is inclined to grant Defendants' motions, Facebook respectfully requests that the Court grant Facebook's soon-to-be filed Motion to Enlarge Time in order to allow Facebook an opportunity to receive the discovery that Defendants have improperly blocked and delayed for months.

Dated: January 21, 2009

ORRICK, HERRINGTON & SUTCLIFFE LLP


/s/ Thomas J. Gray
THOMAS J. GRAY
Attorneys for Plaintiff
FACEBOOK, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OHS West:260584432.1

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 21, 2009.

Dated:  January 21, 2009

Respectfully submitted,

_____
/s/ Thomas J. Gray
Name of Attorney