

**Stephen S. Smith**
D: 310.785.6895
F: 310.201.2350
SSmith@GreenbergGlusker.com

January 14, 2009

**Via Email and First-Class Mail**

Thomas Gray, Esq.
Orrick, Herrington & Sutcliffe LLP
4 Park Plaza
Suite 1600
Irvine, CA 92614-2558

Re: *Facebook, Inc. v. StudiVZ*

Dear Mr. Gray:

I am responding to your January 9, 2009 letter. For ease of reference, I will follow the format of your letter.

**Document Requests**



14, 28 and 29: These requests seek all documents related to any access by "YOU" of Facebook's website or account created by "YOU" to access Facebook's website or the use of any server to access Facebook's website. As studiVZ's responses stated, and as we have discussed, these requests are massively overbroad for many reasons. By way of example only, because of the definition of "YOU", the request purports to cover access by a huge number of people including access for wholly personal/private purposes. It also concerns the merits of the action rather than jurisdiction or forum. However, we consistently stated that we were willing to consider reasonable limitations to see if this request could be focused on legitimate jurisdictional issues.

First, concerning the number of people involved, Ms. Hurst said that Facebook was not interested in every person falling under the overbroad definition of "YOU". Instead, she said that Facebook was interested only in certain higher level individuals who were actually employed by studiVZ. We agreed to that limitation and gave her the relevant names and positions of the people she requested, plus their dates of employment at studiVZ, by telephone on December 3, 2008. Promptly thereafter, we sent her two organizational charts (one as of July

**Greenberg Glusker Fields Claman & Machtinger LLP**
1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067
T: 310.553.3610 | F: 310.553.0687

GreenbergGlusker.com

37106-00002/1671732.1

Dockets.Justia.com

18, 2008 -- the date on which Facebook filed its complaint, and an updated one as of January 1, 2009). We have complied with Facebook's request as to this issue.

Second, as to the subject matter of the request, initially Ms. Hurst refused to narrow these requests. Then, in late December, you for the first time offered to limit the request to "access" for purposes of studiVZ's "business." As that was still grossly overbroad, we continued to object. In response, you then offered to "limit" these requests to "access" for the purpose of engineering, design and programming of StudiVZ's websites.. We pointed out (as we have previously to Ms. Hurst) that any such suggestion was still overly broad because it does not relate to jurisdiction but instead relates solely to the merits of the dispute. For example, it would include discovery into all instances in which someone from studiVZ simply looked at Facebook's German website from that employee's desk in Germany for the purpose of seeing what its competitor was doing. Not only would such access not be wrongful (and is not even alleged to be wrongful), it has nothing whatsoever to do with jurisdiction or forum. It would have no tendency to establish wrongful conduct being committed in California or the United States. Nor would it have any tendency to show that Facebook even suffered any adverse effect in California or the United States.

We nonetheless made a generous offer to provide you with discovery into any business related "access" for the purpose of "copying" any Facebook material or whereby any such copying of Facebook material occurred (whether intended or not). That offer goes far beyond anything related to jurisdiction in that it was not limited to such access occurring only in California or the United States and was not limited to copying that actually caused a legally cognizable injury or "adverse effect" to Facebook in California or the United States.

You rejected that offer of compromise and instead continued to insist on the much broader -- and objectionable -- scope. Thus, we have no agreement.

<u>16:</u> This request concerns all services provided by any of the seven studiVZ websites to any of their users, including how they are provided. During our November 26, 2008 discussion with Ms. Hurst, she agreed that this request is "too broad" and would "reconsider what, if anything, we really need."

We then heard nothing more about this request until you disinterred it during your December 23, 2008 telephone call with Bill Walker and Aaron Bloom. In the December 23 and 30, 2008 and January 6, 2009 conversations, you variously stated that Facebook would "limit" the request to design, development, creation, implementation, and maintenance documents, which we noted was <u>much broader than even the original request that Ms. Hurst had already said was too broad</u>. Based on our January 6, 2009 conversation and your letter, it appears that Facebook currently seeks all documents concerning the "design, development, and creation" of

the seven listed websites, which is literally every single document about studiVZ's entire business.

In sum, your proposed "limitation", far from focusing the request at all, in fact broadens it considerably. Under Facebook's proposal, this request not only goes to the merits of the action, it again does not even focus on the harm that Facebook's complaint states that Facebook allegedly suffered, let alone the location of where some act or injury occurred.

<u>23:</u> This request seeks all code that "YOU wrote, programmed OR helped to develop" relating to all seven studiVZ sites. The overbreadth of this request, and its obvious relation to the merits rather than to jurisdiction, are clear. You provided no reasoned explanation of how this request relates to jurisdiction or forum issues.

<u>25:</u> This request, "ALL COMMUNICATIONS that RELATE TO FACEBOOK, its website, OR the servers it uses, used, accesses OR accessed", is a classic, improper, "catch-all" request that suffers from many problems, including but not limited to the fact that it is merits-based, overbroad, and seeks personal/private information.

As with Request Nos. 14, 28 and 29, we offered to provide documents relating to any copying of material from Facebook's website in connection with the "design, development and creation" of studiVZ (if any), any copying of Facebook's trade dress (if any), or other misconduct as alleged in the other claims in Facebook's complaint (if any). You did not agree to that, and again wished to reserve Facebook's ability to move to compel as to the entire request, which is improper and to which studiVZ cannot agree.

<u>27:</u> We have responded fully to this request, stating that there are no such documents.

<u>30:</u> This requests documents used to respond to Facebook's interrogatories. We have agreed to produce all documents used to respond to Facebook's interrogatories.

### Interrogatories

<u>10:</u> This interrogatory parallels Document Request No. 14 and seeks all "occurrences" when "YOU AND/OR ANY PERSON on YOUR behalf" ever accessed Facebook, the purposes of such access, any communications related to any such occurrences, identification of every particular Facebook user, and the e-mail accounts of those individuals. Again, this interrogatory suffers from many problems. For example, it is grossly overbroad, compound, seeks private information of individuals (which, as I have explained, is a big problem under German law), does not even try to limit itself to the claims in Facebook's complaint, and is not only merits-based, and not related to jurisdiction or forum issues, it seeks a host of information that is not reasonably calculated to lead to the discovery of admissible evidence. As with the document requests dealing with access to Facebook, we remain open to reasonable suggestions as to how to focus and limit the interrogatory to eliminate the above issues. On November 26, 2008, we

agreed to identify studiVZ individuals who accessed Facebook in the course and scope of their employment and to say why they did so, and reiterated that on January 6, 2008. You rejected that proposal.

14: This "catch-all" interrogatory demands "ALL USERS OF FACEBOOK employed by OR formerly employed by YOU, including without limitation, any PERSONS who are OR were full-time or part-time employees, independent contractors or agents of YOU, AND their respective e-mail addresses." This interrogatory is also grossly overbroad, compound, seeks private information of individuals (which, as I have explained, is a big problem under German law), does not even try to limit itself to the claims in Facebook's complaint, and is not only merits-based, and not related to jurisdiction or forum issues, it also seeks a lot of information that is not reasonably calculated to lead to the discovery of admissible evidence. On November 26, 2008, we agreed to identify studiVZ individuals who accessed Facebook in the course and scope of their employment and to say why they did so, and reiterated that on January 6, 2008. You rejected that proposal.

15 and 16: Together, these two interrogatories demand the identities of "ALL PERSONS responsible in any manner for the design, programming and maintenance of" the seven studiVZ websites, along with their "job descriptions, authorities, dates in these positions, duties and responsibilities." During the November 26, 2008 meet and confer session with Ms. Hurst, she stated that an organizational chart showing certain higher level individuals would suffice. As stated above, we agreed to that limitation and provided the relevant names to her by telephone on December 3, 2008, and then promptly thereafter in the form of the two organizational charts mentioned above.

In connection with these remaining disputes, I would like to reemphasize two additional issues that Bill Walker and I have raised during our conversations. The first is privacy. Many of the eight document requests and four interrogatories that remain in dispute call for sensitive personal/private information. As Bill and I have advised, German law is very strict about protecting privacy rights and provides criminal, and other penalties and liabilities, for violating them. StudiVZ, as a German company that only does business in Germany, simply cannot subject itself to these penalties and liabilities under German law, including possible criminal prosecution, for violations of privacy rights. Our proposed compromises alleviate those risks, and so we urge Facebook to reconsider them.

We also noted the extreme expense involved in responding to the remaining document requests as a matter of e-discovery. We have preserved nearly 12 terabytes of information, and searches for even limited amounts of information through that entire database would be very expensive. The costs of simply maintaining this system for one year and running a handful of searches would exceed $1.5 million. The e-discovery costs of this case could easily dwarf the attorneys' and other fees and costs in this matter. StudiVZ therefore simply cannot agree to be subjected to the kind of grossly overbroad document demands that Facebook has propounded,

and to its huge associated expense. Facebook may not achieve by the discovery process that which Facebook wants, but ultimately will not get, out of its litigation strategy -- the destruction of studiVZ and the resulting takeover by Facebook of the social networking market in German-speaking Europe. Instead, it really is necessary for Facebook to be precise and focused.

We remain open to suggestions as to reasonable limitations of the remaining disputed requests and interrogatories.

### The Remaining Holtzbrinck Defendants

We have requested the dismissal of these entities multiple times. As to the two remaining Holtzbrinck entities, during the November 26, 2008 meet and confer, Ms. Hurst stated that Facebook would wait to see the revised interrogatory responses (that we have now provided), plus certain corporate documents (that have been produced), to decide what to do. The time is now more than ripe for Facebook to do the right thing and dismiss these two entities from the lawsuit without prejudice. Facebook had, and has, no basis to sue them, and did not bother to sue them in Facebook's pending German lawsuit.

I had agreed to postpone the hearing of the Holtzbrinck motion to dismiss *in order to allow Facebook to incorporate whatever information it learned as a result of the deposition of Martin Weber*. But you then canceled Martin Weber's deposition for absolutely no reason after I was already in Germany. During our email exchange disagreeing about the scope of the "access" issue as to studiVZ, I repeatedly reminded you that the issue had nothing to do with Mr. Weber. You *never* contested that point, yet canceled his deposition anyway. As a result, there is no longer any reason to continue the hearing of the Holtzbrinck motion to dismiss. I have offered as a compromise to nonetheless move the Holtzbrinck motion to dismiss for a couple of weeks, if you would agree in turn to allow the studiVZ motion to dismiss *as to forum non conveniens only to also be heard at the same time*. The personal jurisdiction portion of studiVZ's motion to dismiss, over which our discovery disagreements relate, could then be postponed as long as you need in order to have your motion to compel as to studiVZ personal jurisdiction (which you have informed me you intend to file) resolved before Facebook's opposition to that portion of the motion would be due.

Without explanation, you have rejected that offer as well. I have asked you repeatedly how any of our disputes concern to do with Holzbrinck, but you have provided no answer. I have also asked you repeatedly what any of our discovery disputes have to do with forum non conveniens, to which again you have provided no answer. Nonetheless, you wish to postpone both motions to dismiss as to both issues.

We will not agree to that, and if you refuse to meet us half-way, we will not agree to move either motion to dismiss at all. These dates were chosen months ago, after meeting and conferring with your colleague, Warrington Parker. The only reason for even raising the

possibility of continuing the hearing dates was (1) to obtain the deposition of Mr. Weber as to the Holtzbrinck entities and (2) to obtain other depositions and additional discovery *related to personal jurisdiction* as to studiVZ. You simply canceled the deposition of Mr. Weber for no reason, and Facebook has never asked for any further discovery of any kind from the Holtzbrinck entities. So there is no basis for continuing that motion to dismiss. Further, you have (before our call today) *never* said that Facebook was missing any discovery or needed additional discovery as to forum non conveniens. Today, when you finally contended that something was missing or needed (after I raised the point), you could not identify what that something was.

All of this simply confirms that Facebook has never had any basis for hauling the defendants into this court and that Facebook cannot figure out how to justify doing so. Facebook canceled the deposition of Martin Weber because it does not want the Holtzbrinck motion to dismiss to be heard. Facebook has refused to have the hearing of the forum non conveniens portion of the studiVZ motion heard at the same time as the Holtzbrinck motion because Facebook fears losing both motions on that issue.

As to the remaining subjects in your letter, your statement that it is our goal to get our clients dismissed without conducting any discovery is incorrect, and is, in any event, belied by our clients' conduct. We have bent over backwards to reach compromise on all issues and have served you with supplemental responses to the interrogatories and document demands that go far beyond what could possibly relate to jurisdiction or venue. We agreed to present Messrs. Weber and Brehm for deposition without any pending deposition notices, and I told you in writing that you could ask both witnesses any question that could possibly have anything to do with jurisdiction or venue, only to have you cancel the depositions immediately thereafter, when I was already in Germany.

It is, indeed, our goal to get our clients dismissed from this meritless case as soon as possible, and to have any litigation take place in Germany, which is the only proper forum. As mentioned above, we provided our supplemental document responses to you on Friday, January 9. Your request to have a court reporter at future meet and confer sessions is posturing and grandstanding. We will nonetheless agree to it as long as Facebook pays the costs as we have never sought to confirm a non-existent "agreement" reached during a meet and confer discussion.

Very truly yours,

Stephen S. Smith