## Smith, Steve

**From:** Smith, Steve
**Sent:** Thursday, January 08, 2009 11:44 PM
**To:** 'tgray@orrick.com'
**Cc:** Walker, William; 'javalos@orrick.com'
**Subject:** Re: Depo Notices

Tom:

You really think I would have flown all the way over here (on my wedding anniversary by the way) if I thought there was any chance you would cancel?

And you think anyone is going to believe you canceled these depositions because of our disagreement as to the proper scope of only one issue -- access -- when there are numerous other issues we have been in total agreement about?

And you are silent as to the fact that this single issue is NOT an issue at all as to one of the deponents.

You just decided that you did not want to take the deposition. Perhaps you are unprepared. Perhaps you got busy on something else. Perhaps you intentionally sought to burden my client with the cost and inconvenience and me with the time.

But the conclusion is the same. You were looking for an excuse to cancel. So you invented one by sending me an email making a false representation as to some "agreement" we never in fact reached, knowing I would have to respond denying it. When I did, and after I was already here, you pull the plug.

See you in court.

And just so you don't falsely claim again that you did not know my travel plans, given your stated cancellation of these depositions, I will plan to fly back as soon as I can get a ticket.

Steve

---

**From:** Gray, Thomas
**To:** Smith, Steve
**Cc:** Walker, William; Avalos, Julio
**Sent:** Thu Jan 08 22:56:18 2009
**Subject:** RE: Depo Notices

Steve,

Once again, I disagree with the vast majority of what you set forth below. I will not try to address all of the issues in this email, but will do so in separate correspondence.

As for the depositions, because of your actions and positions, we were forced to cancel them. When you landed today you stated you were too tired to talk and then put me off until tomorrow. I told you we needed to talk today. Curiously, instead of resting or calling me to discuss the issue, you took the time to write your long-winded (and somewhat unintelligible) screed below. By stalling and refusing to discuss the issue with me today, you have forced me to cancel the depositions. We could not wait until Friday California time, which would have been after the close of business locally. We would have incurred nearly $10,000 in court reporter and other fees that we would not have been able to avoid. Besides, you have made your position quite clear about the limited scope of the depositions.

Price v. Facebook, Inc.  Doc. 82 Att. 9

1/26/2009

At this point we obviously have reached an impasse as to the scope of discovery, including the depositions. On Tues we had a long and detailed conversation about the substance of the deposition testimony and I expressed my concerns about going forward with the depos if we could not discuss the "access" to Facebook's site and IP. Without such a deal, it made no sense to fly 1/2 way around the world and incur over $50,000 in fees and expenses. Apparently, you were aware that we had no agreement as to the depositions by the time we hung up on Tues. Despite knowing my concerns and apparently believing there was no agreement, at no time during the call on Tuesday or before you got on the plane on Wed. did you raise the issue and confirm that the depositions would go forward. I, on the other hand, believed we had an agreement regarding the scope of the deposition testimony. So, there was no reason for me to threaten to cancel the depositions or discuss your travel plans (which I truly was not aware of on Tues or Wed. despite your email). Indeed, I spent the better part of Tues and Wed. preparing and making arrangements for the depositions. I only learned of your position regarding the scope of the depos Wed. night when I received your response to my email. While you sent the email shortly before 5 pm, I was unavailable and did not get the email until much later. I then needed to call Julio (who was also on the Tues call) and others and responded as quickly as I could. Despite your suspicions, there was no intent to "sandbag" you. The bottom line is that you got on the plane at your own peril knowing that there was no deal worked out with respect to the scope of the deposition testimony. You could have avoided this by raising the issue, which was apparently only known to you (and your side) until last night.

On another note, I would like to discuss some other issues with you tomorrow after 9 am PST (6 pm German time). Let me know when you are available and we can set up a call in number.

Tom

---

**From:** Smith, Steve [mailto:ssmith@ggfirm.com]
**Sent:** Thursday, January 08, 2009 12:17 PM
**To:** Gray, Thomas
**Cc:** Walker, William; Avalos, Julio
**Subject:** RE: Depo Notices

Tom:

I do not understand what you are doing. Do you want to cancel the depositions?

You and Julio did know of my travel plans. My email of Monday, January 5, 2009 at 2:54 p.m. stated in the first paragraph that I was leaving for Germany Wednesday evening, and it was stated again during the meet and confer on Tuesday.

Then, let's examine the basis for your threat to cancel.

None of this discussion has anything to do with Martin Weber. You (Annette) asked for his deposition o occur in January. We gave you his date. You accepted it. You have absolutely no basis to now threaten to cancel his deposition.

As to Michael Brehm you have no basis either. Michael Brehm was never even noticed for deposition. We offered him to testify as to jurisdiction and venue issues because he was our declarant on that issue and is the person most knowledgeable at StudiVZ about that issue. We never offered to produce him for any other issues. From the date we filed the motions to dismiss until the holidays, there had never even been a request from Facebook's counsel as to specific topics of his deposition (other than jurisdiction and venue generally). Then, during the holidays you started asking whether we would allow him to testify about this topic and that topic. You followed the outline as set forth in Facebook's interrogatories and documents demands, almost as though those were 30(b)(6) topics, even thought the 30(b)(6) notices had been withdrawn. During those discussions we offered to compromise on a lot, have answered the vast majority of the interrogatories and have produced or will produce many of the documents requested. We did this as good faith meet and confer in an attempt to compromise to avoid disputes. But you kept wanting more compromise with no agreement from your side about whether any of these compromises would be good enough to avoid motion practice.

Through it all -- from the time that Warrington and then Annette first asked for Michael Brehm's deposition until now -- counsel for the parties have not been able to come to agreement on some of the document demands. Because those demands were being used by you as "topics" for the deposition, we have likewise not been able to come to agreement on those topics for the same reason. I made my latest offer as described in my email yesterday on Tuesday in an attempt to put the issue to bed, but again you rejected that offer.

So, although we have agreed to produced Michael Brhem to testify about any and all issues of personal jurisdiction and venue and have even offered to go somewhat beyond that in order to avoid what should be wholly unnecessary motion practice, you now threaten --after I am Germany -- to cancel the deposition altogether supposedly because you only now realize that you are not going to be able to ask any question you want.

That is disingenuous. It has always been known to you that you were not getting to ask any question you wanted. We had a two hour long conversation about that very issue as recently as Tuesday. You read the Calder rule much more broadly than I do, to the point that there is no distinction in your mind between litigating personal jurisdiction versus litigating the whole case. That has been a fundamental disagreement between counsel for three full months now. So for you to cite that disagreement as a ground to cancel now is bad faith and strongly indicates that you simply do not want to take the deposition.

And then let's look at the timeline. A strong argument can be made that you are trying to sandbag me.

In anticipation of our meet and confer on Tuesday, you wrote me an email while I was still on vacation, to which I responded as soon as I was back. I noted in my email on Monday that there was no agreement as to the scope of some of the topics you wished to examine Mr. Brehm about. I said that we would talk about them so that we could avoid wasting time "at the deposition" fighting about it. You did not say or even imply at that time that you might actually cancel the depositions altogether if we did not reach agreement on those remaining issues. Then, during the meet and confer on Tuesday, we again were able to make some progress, but were unable to come to agreement as to a number of issues, not just "access." Again, you did not threaten to cancel the depositions.

You then did not send the deposition notices with your email supposedly "confirming" what I had said during the Tuesday call on Tuesday or even on Wednesday morning. Instead, you waited until 4:03 p.m. on Wednesday, the same Wednesday when I was leaving for Germany. Even in that email you did not say that the depositions would be canceled. You only said that you had considered canceling them when you (mistakenly) thought that Bill was taking the position that the depositions would be limited to the declarations only.

At that point I was on my way out of the office to pick up a few things I needed for this trip -- like a coat for the cold in Germany. But I delayed so that I could write a response, which I did within less than 1 hour, correcting the record, and then left the office. When I left, I had no reason to believe that you had canceled or would cancel the depositions.

My flight did not actually leave until 9:00 p.m. I had my Blackberry with me and was answering emails all the way until I got on the plane. You said nothing in response to my email until 9:33 p.m., after I had taken off, when my phone was off and in the overhead compartment. Given that you knew I was leaving "Wednesday evening," it looks like you intentionally waited until I was likely already gone to send that email. I of course did not se it until I landed this evening in Munich.

This is the bottom line. I will be at your office in Frankfurt at 9:30 a.m. on Monday morning and again on Tuesday morning with Messrs. Brehm and Weber. They will testify about any and all issues that are reasonably related to jurisdiction and/or venue. I will do everything possible to take an expansive view of those issues within reason, because I believe that it is obvious that there is no personal jurisdiction here and that venue is much better in Germany. If you approach an area that goes into a solely merits based arena, then I will object. And if there is some ambiguity, I will do my best to work with you so that you get what you need for jurisdiction and venue without the deposition turning into a free for all about the case as a whole. But since we do not have any pre-established agreement, and because I have not yet heard the questions and have not seen you lay any foundation yet, I am not going to simply agree to allow you to ask anything you want about the case in advance. I do not think that is even required in a normal case where jurisdiction is not an issue. Indeed, it is a very rare case where counsel have agreed in advance about all proper versus improper deposition topics or questions.

And that is what makes your threat hollow. We have not come to total agreement as to the scope of Brehm's deposition. But that has always been the case and is not a basis to cancel a deposition, especially after opposing

counsel has already flown half-way around the world to prepare his witnesses and attend those depositions

I am going to bed. We can talk about it tomorrow. If you intend to cancel the depositions now, I cannot stop you. But I will seek sanctions from you and your client for all of the costs and fees associated with me making this trip.

Best,

Steve.

---

**From:** Gray, Thomas [mailto:tgray@orrick.com]
**Sent:** Thursday, January 08, 2009 10:23 AM
**To:** Smith, Steve
**Cc:** Walker, William; Avalos, Julio
**Subject:** RE: Depo Notices

I am sorry you did not sleep well on the plane, but at this point it is already Thurs. and we need to resolve this (if possible) ASAP so we all know whether these depos are going forward Mon and Tues. At this point it doesn't look good based on your email last night. I don't think we can wait until tomorrow. If you want to talk later after you have had a chance to rest, let me know.

Also, I don't think you ever shared with us your travel plans for Germany.

Tom

---

**From:** Smith, Steve [mailto:ssmith@ggfirm.com]
**Sent:** Thursday, January 08, 2009 10:07 AM
**To:** Gray, Thomas
**Cc:** Walker, William; Avalos, Julio
**Subject:** Re: Depo Notices

Tom:

I just landed in Germany and am on my way to the hotel. I did not sleep well (i.e. at all) on the plane and want to go to bed. I told you days ago that I was flying out Wednesday evening. Why can't this wait until tomorrow?

Steve

---

**From:** Gray, Thomas
**To:** Gray, Thomas ; Smith, Steve
**Cc:** Walker, William; Avalos, Julio
**Sent:** Thu Jan 08 09:55:22 2009
**Subject:** RE: Depo Notices

Steve or Bill,

Will we be able to have a call this morning or early afternoon?

Tom

---

**From:** Gray, Thomas
**Sent:** Wednesday, January 07, 2009 9:33 PM
**To:** 'ssmith@ggfirm.com'

**Cc:** 'wwalker@ggfirm.com'; Avalos, Julio
**Subject:** Re: Depo Notices

Steve,

First, unlike your email below, I was not merely trying to make a record, as you suggest. I truly thought we made some progress yesterday and that it made sense to go forward with the depos.

Obviously we disagree about a number of things that were said last week and yesterday. While I agree with some (not all) of your description of the access and copying discussion, my understanding was that portion of the call was regarding the document requests, which clearly have different issues regarding possible burden and costs. We had lengthy discussions about the Weber and Brehm depos and even discussed questions that you thought were ok. As to Weber, you seemed comfortable with all questions related to access (presumably bc he doesn't know anything about what StudiVZ did). You never stated that the depo testimony was contingent on working out an agreement as to all discovery, including doc requests and rogs. Anyway, if that is your position now, it is news to me and Julio.

While it does not look good for the depositions going forward based on your newly asserted position, we should talk tomorrow morning to see if we can salvage this. Are you available at 11 am?

Tom
-----------------------------
Please excuse any typos or odd words, my BlackBerry's SureType keypad isn't always that intuitive.

---

**From:** Smith, Steve
**To:** Gray, Thomas
**Cc:** Walker, William ; Avalos, Julio
**Sent:** Wed Jan 07 16:44:02 2009
**Subject:** RE: Depo Notices

Tom:

Thank you for the deposition notices. But the rest of your email is an attempt to "make a record" that is not entirely accurate. So I feel compelled to respond.

First, Bill and Aaron tell me that they never said that the depositions would be limited to only the facts contained in the declarations. They said that the depositions would be limited to issues pertaining to jurisdiction and venue, and noted that these two witnesses were chosen as declarants for the motions to dismiss because they have the most knowledge of that issue. While they noted that these witnesses were not being produced as 30(b)(6) witnesses, they agreed that these witnesses would necessarily be testifying about, and were the most knowledgeable about, personal jurisdiction, which issues coincidentally are included within the previously withdrawn 30(b)(6) notices. So you have always (truthfully) been told that you are getting the two individuals most knowledgeable about those issues -- by me and Bill to Annette, by Bill and Aaron to you, and now again by me to you.

Second, you are again mischaracterizing what I offered to do as an "agreement." I do not know how many more times I could have possibly repeated the point -- I was willing to agree to a limitation on scope along the lines of what you describe below if and only if you also agreed. I am not and have never been willing to agree, only to have you not agree and move to compel anyway. I have said that to you (and to Warrington and Annette before you) more times than I can count. What I said was that I would not agree to discovery (i.e., documents, facts or deposition testimony) as to "access" generally which, among other things, is grossly overbroad. Then we discussed narrowing that issue further. You wanted access related to "design, development and creation." That was as far as you were willing to "narrow" it. I offered a further narrowing to access that led to copying. You refused to agree to that. I then invited you to come back with something that was between your offer and my offer for me to consider. You have not done that. So at the moment, there is no agreement on questions related to access.

1/26/2009

Best,

Steve



**IRS Circular 230 Disclosure**
**To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax related penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.**
This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

---

**From:** Gray, Thomas [mailto:tgray@orrick.com]
**Sent:** Wednesday, January 07, 2009 4:03 PM
**To:** Smith, Steve
**Cc:** Walker, William; Avalos, Julio
**Subject:** FW: Depo Notices

Steve,

Per my email of yesterday attached are the deposition notices for the depositions of Messrs. Brehm and Weber that will take place next week at Orrick's offices in Frankfurt, Germany. Obviously, this is somewhat of a formality, since the defendants and the witnesses have agreed to voluntarily appear.

Also, I might add that I was concerned that we might not go forward with the depositions based on the meet and confer that I had with Bill Walker last week. Based on Bill's statements, it seemed like you were only going to allow Messrs. Brehm and Weber to testify about the issues raised in their declarations filed in support of the defendants' motion. It makes sense to go forward with the depositions, however, based on your comments yesterday that you would allow the witnesses to testify about whether StudiVZ's accessed the Facebook site or IP in order to copy (to be loosely defined) the Facebook site or in furtherance of the other claims alleged by Facebook in the complaint. I appreciate your clarification regarding that issue.

See you next week in Frankfurt.

1/26/2009

Tom

---

**From:** Cloyd, Valerie
**Sent:** Wednesday, January 07, 2009 3:50 PM
**To:** Gray, Thomas
**Subject:** Depo Notices


**Valerie Cloyd**
Assistant to
Thomas J. Gray, Thomas S. McConville,
Benjamin S. Lin and Nic Merrin
**Orrick, Herrington & Sutcliffe LLP**
4 Park Plaza, Suite 1600
Irvine, California 92614-2558
Telephone: (949) 567-6700
Facsimile: (949) 567-6710
vcloyd@orrick.com
*What lies behind us and what lies before us are small matters compared to what lies within us.*
*--Ralph Waldo Emerson*

---

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

---

NOTICE TO RECIPIENT: THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW. IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED. PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit
http://www.orrick.com/

1/26/2009