Price v. Facebook, Inc. Doc. 90 Att. 5

# EXHIBIT 6

Dockets.Justia.com

# LICHTENSTEIN · KÖRNER & PARTNER
Rechtsanwälte · Steuerberater

**Büro Stuttgart**
Heidehofstr. 9
70184 Stuttgart

Prof. Dr. Erich Lichtenstein (-1976)
Dr. Eberhard Körner, M.C.J. (New York Univ.)
Carmen Lichtenstein
Klaus-Ulrich Link
Prof. Dr. Thomas Sambuc, LL. M. (Yale)
Dr. Ernst Wendler
Dr. Rolf Diekmann
Dr. Kerstin Gründig-Schnelle
Dr. Gereon Klöpping
Dr. Carsten Stoll
Dr. Ekkehard Stolz
Michael Nonnenmann
Ursula Stelzenmüller
Rechtsanwälte

Christian Heitmann-Lichtenstein
Dipl.-Kfm., Steuerberater

**Büro Dresden**
Bernhardstraße 104
01187 Dresden

Dr. Veronika Frey
Telefon (0351) 82 80 50
Telefax (0351) 82 80 599

**Büro Alicante/Spanien**
Explanada de España 3
E-03002 Alicante

Telephone 0034/965 20 98 99
Telefax 0034/965 20 57 44

**Vorab per Fax: 030 – 2888 4231**

Lichtenstein · Körner & Partner · Heidehofstr. 9 · 70184 Stuttgart

**Rechtsanwälte
Erdmann, Zacharias, Langhans**
Torstr. 222
10115 Berlin

Datum: 03.01.2007
**Unsere Akte:** SZ-06/02599 n-mz
Durchwahl: 0711 / 4 89 79 - 24
E-Mail: ekkehard.stolz@lkpa.de

**Facebook, Inc. ./. StudiVZ Ltd.
Ihre Akte: SVZ-002/2006**

Sehr geehrter Herr Kollege Erdmann,

wir zeigen an, dass uns die Facebook, Inc. in dieser Angelegenheit mit der Wahrnehmung ihrer Interessen beauftragt hat. Wir übergeben in der Anlage eine auf uns lautende Original-Vollmacht. Die Korrespondenz zwischen den Parteien, insbesondere das Schreiben unserer Mandantin vom 8.06.2006 und Ihre Antwort vom 21.06.2006, liegt uns vor.

In der Zwischenzeit haben sich neue Entwicklungen ergeben. Insbesondere hat unsere Mandantin festgestellt, dass viele Nutzer tatsächlich aufgrund des nahezu identischen Designs der irrigen Auffassung sind, die Website Ihrer Mandantin werde von unserer Mandantin oder zumindest mit deren Zustimmung betrieben. Ihre Mandantin wird sicherlich nachvollziehen können, dass unsere Mandantin gegen diese Herkunftstäu-

Konten in Stuttgart:
Deutsche Bank AG (BLZ 600 700 24) 1 330 547
IBAN: DE94 6007 0024 0133 0547 00
SWIFT: DEUTDEDBSTG
Commerzbank AG (BLZ 600 400 71) 5 158 639
Baden-Württembergische Bank (BLZ 600 501 01) 2 940 838
Postbank (BLZ 600 100 70) 77 080-700

Telefon (0711) 4 89 79-0
Telefax (0711) 4 89 79-35 + 4 89 79-36
e-Mail info@lkpa.de
Partnerschaftsgesellschaft
Sitz Stuttgart
Amtsgericht Stuttgart PR 25
USt. ID-Nr. DE 147522876

schung vorgehen muss, um zu verhindern, dass die Nutzer auf eine gemeinsame Herkunft schließen und die Website Ihrer Mandantin unserer Mandantin zurechnen. Daher fordert unsere Mandantin Ihre Mandantin auf, das Design der Website so abzuändern, dass keinerlei Verwechslungsgefahr mehr besteht. Im Einzelnen:

## I. Tatsächliche Verwechslungen

Die nachfolgenden Anlagen übergeben wir nur exemplarisch. Wie Ihrer Mandantin ebenfalls aus zahlreichen Zeitschriftenartikeln und Internetkommentaren bekannt ist, gibt es vielfältige Nachweise dafür, dass die Nutzer auf eine gemeinsame Herkunft schließen, nachdem Ihre Mandantin das Design der Website unserer Mandantin nahezu identisch kopiert hat.

Unabhängige Quellen, wie beispielsweise WIKIPEDIA, nehmen Bezug auf die Ähnlichkeit der Websites. Als **Anlage 1** übergeben wir den WIKIPEDIA-Ausdruck zu Facebook, bei dem vermerkt ist, dass es im deutschsprachigen Raum die Internetplattform Studi-Verzeichnis gibt, die sich nicht nur sehr stark am Konzept von Facebook orientiere, **„sondern auch grafisch aussieht wie eine Kopie von Facebook"**. Bei der Darstellung Ihrer Mandantin in WIKIPEDIA wird die Website Ihrer Mandantin als **„der deutschsprachige Klon"** der Website unserer Mandantin beschrieben.

Aufgrund der hohen Ähnlichkeiten des Website-Designs gab und gibt es zahlreiche tatsächliche Verwechslungen. Beispielhaft übergeben wir als **Anlage 2** eine E-Mail vom 30.06.2006 des Nutzers Dominik Kopp, der anfragt, ob „StudiVZ.com is the official version of your great website, as it is exactly like yours". Die Ähnlichkeiten und die dadurch hervorgerufene Fehlvorstellung, unsere Mandantin stehe hinter der web site Ihrer Mandantin, sind Gegenstand zahlreicher Beiträge und Kommentare in Internetforen. Beispielhaft übergeben wir als **Anlage 3** eine Gegenüberstellung des Designs der Websites und der Kommentator kommt zu dem Schluss, dass das Design und die ganze Aufmachung beinahe identisch ist. Als **Anlage 4** übergeben wir weitere Kommentare von Internetnutzern, die sich mit der Design-Identität und der Ähnlichkeit der Struktur der Websites beschäftigen. Die Nutzer kommen also zu dem Ergebnis, dass die Website Ihrer Mandantin eine offensichtliche Kopie der Website unserer Mandantin darstellt und ironisch wird die Website Ihrer Mandantin als „Fakebook" beschrieben.

Jüngst wurde Ihre Mandantin zudem in zahlreichen Presseveröffentlichungen harsch kritisiert aufgrund von Problemen mit dem Datenschutz, Beschwerden im Zusammenhang mit dem Kontaktieren weiblicher Mitglieder und im Zusammenhang mit der Aufmachung einer Einladung für eine Party im Stil des Naziorgans „Völkischer Beobachter". Unsere Mandantin möchte diese Probleme nicht weiter kommentieren. Ihre Mandantin wird jedoch sicherlich verstehen, dass unsere Mandantin sicherstellen muss, dass die Website Ihrer Mandantin nicht dem Unternehmen unserer Mandantin zugerechnet wird im Lichte der tatsächlich entstandenen Irreführung und im Lichte des Rufes Ihrer Mandantin und der genannten Presseveröffentlichungen.

## II.　Ansprüche

Ihre Mandantin schuldet unter mehreren rechtlichen Gesichtspunkten die Unterlassung der Nutzung des gegenwärtigen Designs:

### 1.　Markenrechtliche Ansprüche

Unsere Mandantin hat Markenschutz für das Design ihrer Website für die einschlägigen Dienstleistungen beantragt und erlangt. Wir übergeben zu Ihrer sofortigen Information die Registerauszüge der Marken Nr. 306 63 270 und Nr. 306 63 271. Das Deutsche Patent- und Markenamt hat also – entgegen Ihren Ausführungen in Ihrem Schreiben vom 21.06.2006 – die Eignung dieses Designs, als Herkunftshinweis für die einschlägigen Dienstleistungen zu dienen, bejaht und die Marken folgerichtig registriert. Die Dienstleistungen sind identisch und das Design der Website Ihrer Mandantin ist mit den registrierten Bildmarken hochgradig ähnlich mit der Folge, dass Verwechslungsgefahr im Sinne des § 14 Abs. 2 Nr. 2 MarkenG besteht.

Im Hinblick auf die Marke Nr. 306 63 270 ist das Design der Website Ihrer Mandantin insofern ähnlich, als ebenfalls im oberen Bereich zwei Linien in identischer Größe vorhanden sind, wobei die obere Linie in einer dunkleren Farbe als die untere Linie gehalten ist. Dieses Design-Element hat Ihre Mandantin nachgeahmt. Bezüglich der Marke Nr. 306 63 271 gibt es die zusätzliche Ähnlichkeit dahingehend, dass die Menü-Buttons am unteren Ende des Kastens angeordnet sind und zwei Linien auf der linken Seite mit den Menü-Buttons darunter.

Bekanntlich ist die Frage, ob Verwechslungsgefahr besteht, eine Rechtsfrage, und allein die Möglichkeit reicht aus, um Unterlassungsansprüche zu begründen. Tatsächliche Verwechslungen wie hier belegen in jedem Fall Verwechslungsgefahr und das Design der Website Ihrer Mandantin ist so ähnlich, dass viele Nutzer irrtümlich annehmen, StudiVZ sei die deutsche Version von Facebook.

Im Ergebnis verletzt mithin das derzeitige Design die Markenrechte unserer Mandantin, da es Verwechslungsgefahr hervorruft. Mithin ist Ihre Mandantin unter markenrechtlichen Gesichtspunkten verpflichtet, eine strafbewehrte Unterlassungserklärung bezüglich des derzeitigen Designs abzugeben und den Auftritt der Website so zu ändern, dass die Gefahr von Verwechslungen ausgeschlossen ist.

2. Unlauterer Wettbewerb

Daneben bestehen Unterlassungsansprüche unserer Mandantin nach §§ 4 Nr. 9 a), 3, 8 Abs. 1 UWG. Ihre Mandantin führt durch die Nachahmung des Designs eine vermeidbare Täuschung der Abnehmer über die betriebliche Herkunft herbei. Wir nehmen Bezug auf die beigefügten Anlagen und unsere obigen Ausführungen, welche belegen, dass zahlreiche Benutzer tatsächlich davon ausgehen, zwischen Ihrer Mandantin und unserer Mandantin bestünden geschäftliche Beziehungen. In Ihrer Antwort auf die Abmahnung hatten Sie ausgeführt, dass es an einem Wettbewerbsverhältnis der Parteien fehle, da unsere Mandantin ausschließlich Mitglieder in den USA und Ihre Mandantin ausschließlich Mitglieder in Deutschland habe. Diese Annahme ist falsch. Unsere Mandantin hat deutsche Mitglieder und Mitglieder, welche an deutschen Universitäten studieren, so dass ein Wettbewerbsverhältnis zwischen den Parteien besteht.

3. Urheberrechtliche Ansprüche

Das Design der Website unserer Mandantin ist eine persönliche geistige Schöpfung im Sinne des § 2 UrhG. Das Design mit den Strukturen und der Anordnung der Menü-Buttons und der Linien ist fantasievoll, und zugleich ist dieses Design sehr präzise und übersichtlich angeordnet als das Ergebnis einer individuellen, schöpferischen Tätigkeit. Der Umstand, dass dieses Design von Ihrer Mandantin auch von anderen Wettbewerbern kopiert wurde, ist der beste Beleg dafür, dass es eine sehr gelungene, kreative Schöpfung darstellt. Sie hatten in Ihrem Schreiben vom 21.06.2006 ausgeführt, dass

das Design ein übliches Webdesign darstellt und nicht schutzfähig ist. Diese Behauptung ist offenbar auf die falsche Annahme gestützt, dass ein sehr präzises, übersichtliches, ansprechend „reduziertes" Design nicht in den Genuss des Urheberrechtsschutz kommen kann. Diese Annahme ist unzutreffend. Die Rechtsprechung hat mehrfach betont, dass gerade der Harmonie zwischen dem Design und den funktionellen Erfordernissen eine schöpferische Leistung zugrunde liegen kann. Diese Rechtsprechung trägt dem Umstand Rechnung, dass es viel schwieriger ist, ein „reduziertes" und zugleich attraktives Design zu schaffen als ein Design zu entwickeln mit zusätzlichen ornamentalen Elementen. Im Lichte dieser Rechtsprechung führen insbesondere die folgenden Design-Elemente in ihrer Gesamtkombination dazu, dass das Design als Ganzes eine persönliche geistige Schöpfung darstellt:

- Die obere Linie im oberen Bereich der Website hat eine dunklere Farbe mit der Marke FACEBOOK und den Buttons für Log-in, Register und Help.

- Darunter befindet sich eine Linie in einer helleren Farbe mit dem Slogan „Welcome to FACEBOOK".

- Auf der linken Seite befindet sich der Log-in Button in der dunklen Farbe der oberen Linie und zudem die E-Mail und Passwort-Kästchen.

- Die Buttons bezüglich About, Block, Developers, Job usw. sind in der helleren Farbe der unteren Linie am unteren Ende der Seite angeordnet.

Wir weisen beispielhaft darauf hin, dass der Wettbewerber Unisocial.org. nach Beanstandung durch unsere Mandantin sein Web-Design geändert hat, um Verwechslungen auszuschließen und um eine Urheberrechtsverletzung zu vermeiden.

4. Geschmacksmusterschutz

Schließlich genießt das Design unserer Mandantin den Schutz des nicht eingetragenen Gemeinschaftsgeschmacksmusters gemäß Art. 11 der EU-Verordnung Nr. 6/2002. Das Design der Website unserer Mandantin ist neu und eigenartig aufgrund der oben beschriebenen Design-Merkmale. Das Design der Website Ihrer Mandantin führt nicht zu einem unterschiedlichen Gesamteindruck beim informierten Benutzer und wird vom

Schutzumfang des nicht eingetragenen Gemeinschaftsgeschmacksmusters unserer Mandantin eingeschlossen.

Wir fordern Ihre Mandantin auf, die Nutzung des derzeitigen Designs einzustellen und die beigefügte strafbewehrte Unterlassungserklärung bis zum

**09.01.2007 (hier eingehend)**

abzugeben. Unsere Mandantin behält sich sämtliche Ansprüche vor, insbesondere auch Schadenersatzansprüche. Dass diese Schadenersatzansprüche eine beträchtliche Höhe erreichen können, wird Ihrer Mandantin angesichts des Erfolgs der Website unserer Mandantin bekannt sein.

Abschließend weisen wir zudem darauf hin, dass Ihre Mandantin offenbar auch die Geheimhaltungsvereinbarung bezüglich der Verhandlungen unserer Mandanten verletzt hat und offenbar der Geheimhaltung unterliegende Informationen aus diesen Verhandlungen auch anderen Verhandlungspartnern zugänglich gemacht hat. Auch insoweit behält sich unsere Mandantin sämtliche Schadenersatzansprüche wegen der Verletzung der Geheimhaltungsvereinbarung vor.


Mit freundlichen kollegialen Grüßen

Dr. Stolz
Rechtsanwalt