

LEXSEE 1998 U.S. DIST. LEXIS 11141

**CLAUDE P. BAMBERGER INTERNATIONAL, INC., Plaintiff, v. ROHM and HAAS COMPANY, a corporation of the State of Delaware, ATOHAAS AMERICA, INC., a corporation of the State of Delaware; RESIN MANAGEMENT CORP., a corporation of the State of Florida, PETER C. BLYTH, individually and JOHN DOES 1 through 10, being fictitious names for persons whose identities are unknown, Defendants.**

Civ. No. 96-1041 (WGB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*1998 U.S. Dist. LEXIS 11141*; *40 Fed. R. Serv. 3d (Callaghan) 667*

**March 31, 1998, Decided
April 1, 1998, Filed; April 1, 1998, Entered on the Docket**

**NOTICE:** **[\*1]** NOT FOR PUBLICATION

**DISPOSITION:** Bamberger's appeal denied and Magistrate Cavanaugh's December 5, 1997 Order affirmed.

**COUNSEL:** For Plaintiff: Dennis F. Gleason, Esq., John N. Bain, Esq., CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, Roseland, New Jersey.

For Rohm and Haas Company, Atohaas Americas, Inc., Defendants: Richard D. Shapiro, Esq., HELLRING LINDEMAN GOLDSTEIN & SIEGAL, Newark, New Jersey.

For Resin Management Corp., Peter C. Blyth, Defendants: Richard M. Eittreim, Esq., McCARTER & ENGLISH, Newark, New Jersey.

**JUDGES:** WILLIAM G. BASSLER, U.S.D.J.

**OPINION BY:** WILLIAM G. BASSLER

**OPINION**

*OPINION*

BASSLER, DISTRICT JUDGE:

Plaintiff Claude P. Bamberger International, Inc. ("Bamberger") appeals Magistrate Judge Dennis M. Cavanaugh's December 5, 1997 Order denying Bamberger's motion to compel production of documents and answers to interrogatories from Defendants, pursuant to *Federal Rule of Civil Procedure 37*. This Court has jurisdiction pursuant to *28 U.S.C. Sections 1331* (federal question) and 1367 (pendent), or pursuant to *28 U.S.C. Section 1332* (diversity). For the reasons set forth below, Bamberger's appeal is **denied** and Judge Cavanaugh's December 5, 1997 Order is **[\*2]** **affirmed**.

I. *BACKGROUND*

The parties are referred to the Court's December 29, 1997 Opinion for further background. Since the 1940s, Bamberger purchased acrylic scrap from Defendants Rohm and Haas Company and Atohaas America, Inc. (collectively, "R&H"). Since 1989, however, R&H has increasingly sold to Defendant Resin Management Corp. ("Resin") the scrap it once sold to Bamberger. R&H has done so even though Bamberger has allegedly offered higher prices for the scrap than Resin and Resin allegedly was not capable of effectively using the scrap. (Corrected

Page 2

1998 U.S. Dist. LEXIS 11141, *2; 40 Fed. R. Serv. 3d (Callaghan) 667

Memorandum in Support of Appeal Pursuant to Local Rule 72(1)(A) ("Moving Mem.") at 8.) From these alleged facts, Bamberger has concluded that Resin, or its sole shareholder, Defendant Peter C. Blyth, has done something improper in order to lure R&H to shift business from Bamberger to Resin. It has alleged that Blyth and Resin offered R&H kickbacks or other inducements. (Complaint § 68; Declaration of David W. Opderbeck ("Opderbeck Decl."), Ex. B., Transcript of Proceedings of November 14, 1997 before Magistrate Judge Cavanaugh ("Tr.") at 3.) Bamberger also provides various other theories that might explain R&H's actions, [*3] in an effort to justify its discovery requests. (Moving Mem. at 10-11.)

Plaintiff sought very broad discovery in an effort to prove its claims. Bamberger sought financial information regarding the members of Blyth's immediate and extended family. (*See, e.g.*, Tr. at 28.) Bamberger also sought basically every business and financial record of Resin and Blyth, without regard to whether they were related to facts underlying Plaintiff's claims, and for periods well before the controversy began to brew. Magistrate Judge Cavanaugh held two hearings on these discovery requests. At these hearings, Judge Cavanaugh explained that the requests were overbroad. (*See, e.g.*, Tr. at 14, 16.) He also stated that he would not order such broad discovery on Bamberger's mere speculation, and asked Bamberger for any facts to support its theories. (Tr. at 3, 6-11, 14, 17-18.) When Bamberger failed to do so, Judge Cavanaugh denied most of the discovery requests in an Order dated December 5, 1997. This appeal follows.

II. *DISCUSSION*

A. *Standard of Review*

In reviewing a magistrate's decision, the Court shall "set aside any portion of the magistrate's order found to be clearly erroneous [*4] or contrary to law." L. Civ. R. 72(c)(1)(A); *see 28 U.S.C. § 636(b)(1)(A)*; *Fed. R. Civ. P. 72(a)*; *see also Haines v. Liggett Group, Inc., 975 F.2d 81, 92 (3d Cir. 1992)*.

As interpreted by the Supreme Court, the clearly erroneous standard is met "when although there is evidence to support [a decision], the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948)*; *accord Haines, 975 F.2d at 92*.

B. *Bamberger's Discovery Requests*

Bamberger argues that Judge Cavanaugh improperly required plaintiff to prove its case before being entitled to relevant discovery. (Moving Mem. at 4-6.) The Court disagrees. "Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa., 103 F.3d 294, 299 (3d Cir. 1996)*; *see also Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1326 (Fed. Cir. 1990)* ("The discovery rules are [*5] designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request . . . .") (footnote omitted) (citations omitted); *Strait v. Mehlenbacher, 526 F. Supp. 581, 584 (W.D.N.Y. 1981)* ("It appears that defendants are attempting to utilize the discovery rules as a 'fishing expedition' to find some basis of their civil rights claim. This is plainly in violation of the Federal Rules.") (citations omitted); *Lamar Printing, Inc. v. Minuteman Press Int'l, Inc., 1981 U.S. Dist. LEXIS 12490*, No. C 81-05 A, 1981 WL 2080, at *3 (N.D. Ga. May 14, 1981) ("Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact."); *In re Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)* ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy [*6] and to explore matter which does not appear germane merely on the theory that it might become so.'") (citations omitted).

Despite the various theories offered to support its discovery requests, it offers no facts to support them. Rather, since Bamberger is unaware of a legitimate reason for R&H's decision not to sell scrap to it, it infers that there must be an illegitimate reason. As expressed by Bamberger:

> Simply stated, this case presents a clear cut case of [R&H] selling scrap to Resin at prices *less than it has been offered by plaintiff* to the *virtual exclusion* of Bamberger from its most important

Page 3

1998 U.S. Dist. LEXIS 11141, *6; 40 Fed. R. Serv. 3d (Callaghan) 667

supplier for more than 40 years, *all without logical explanation.* Simply stated, *no one sells for less when it can sell for more under the same conditions.*

(Moving Mem. at 8 (emphasis in original).) Judge Cavanaugh clearly recognized this problem in the September 25, 1997 hearing when he stated to counsel for Bamberger:

> I mean, you just can't have suspicions . . . . It sounds really like, well, what [R&H is] saying in your mind doesn't make good business sense, therefore, there must be something much more sinister to this.

(Opderbeck [*7] Decl., Ex. A., Transcript of Proceedings of September 25, 1997 before Magistrate Judge Cavanaugh at 13.) Rather than deny this statement, Bamberger's counsel agreed, stating: "That's exactly right, Judge. It just doesn't square." (*Id.*)

In yet another example of Bamberger's speculative assertions, M. Siou, a representative of Bamberger, explains why Bamberger believed that Albert Caeser, of R&H, was involved in the alleged improper activities:

> Question: What is the basis for that suspicion?
>
> Answer, from the witness: It started in [Matamoros], which is one of [R&H]'s plants, when we were cut off overnight without any valid explanation or reason, after we have serviced the plant attentively for a few years . . . And when [Caeser] became president of [R&H] in 1993, we find that a few years later, the same thing happens to us at Bristol and Louisville. It's like the exact same pattern. The same person is involved. So I must conclude that it had something to do with him.
>
> Question: Is your suspicion based on anything else?
>
> Answer: yes.
>
> Question: Please explain.
>
> Answer: There is a proverb, "a fish starts to sink at the head."
>
> Question: That's the information you're [*8] relying on?
>
> Answer: Well, this is in addition to the first information I gave you. And, thirdly, I had a conversation with Wayne Davis in December 1995, and he mentioned, perhaps a slip of the tongue, that, "this is Albert [Caeser]'s business, and he had delegated to Joe Pawlokowski (phonetic)." He did not say Ato Haas; he says Albert [Caeser].

(*Id.* at 20-21 (quoting Deposition of M. Siou, at 148 *et seq.*).) Accordingly, since Bamberger impermissibly sought "to go on a fishing expedition to see if the speculative complaint that [it] has filed has any basis in fact," its discovery requests were properly denied. *Lamar Printing*, 1981 WL 2080, at *3.

Additionally, even if this reason offered by Judge Cavanaugh did not justify denying Bamberger's discovery requests, the Court would still affirm Judge Cavanaugh's ruling. Bamberger completely ignores the fact that Judge Cavanaugh offered an additional basis for denying these discovery requests--that Bamberger's requests overbroad in that they were not limited to seeking documents or records relating to this dispute, but also sought information regarding any transaction into which Defendants ever entered. For example, [*9] one discovery request in dispute seeks:

> All financial records of Resin Management Corp., Alaric, Inc., and/or Peter C. Blyth, and any entity in which any had or have a controlling interest from January 1, 1985 until the present, including without limitation financial statements, records of assets and liabilities, past and present indebtedness, cash flow, capital contributions and commitments for capital contributions.

(Resin Management Corp. and Peter C. Blyth's Brief in Opposition to Plaintiff's Appeal of Magistrate Judge Cavanaugh's Order Dated December 5, 1997 ("Opp. Mem.") at 14.) Another request seeks:

> All records of [Resin], Alaric, Inc. and/or [Blyth], or any entity in which any had or have controlling ownership interest,

Page 4

1998 U.S. Dist. LEXIS 11141, *9; 40 Fed. R. Serv. 3d (Callaghan) 667

relating to the purchase, sale, resale, processing or dealing with off-grade acrylic material, including all shipping records, purchase price, sales price, customers, suppliers, commission or other compensation received by [Blyth], his designees or nominees for the period January 1, 1985 until present.

(*Id.*) Such requests are clearly overbroad. *See Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 121 (N.D. Ind.* **[*10]** *1991)* (denying as overbroad a discovery request seeking "'all writings relating to . . . any clean-ups, "removal" actions . . . "remedial action" . . . remedial investigation or feasibility study' involving [Defendant], regardless of whether the circumstances surrounding such action would bear any similarity to the subject matter of this case.") (omissions in original); *Zahorik v. Cornell Univ., 98 F.R.D. 27, 31 (N.D.N.Y. 1983)* ("[Plaintiffs] may not, however, conduct a general 'fishing expedition' into areas unrelated to their claims . . . ."). Thus, the Court concludes that Bamberger has failed to establish that Judge Cavanaugh's ruling was clearly erroneous.

III. CONCLUSION

In an effort to prove that something fishy was occurring, Bamberger not only sought to engage in a fishing expedition, but sought to "'drain the pond and collect the fish from the bottom.'" *Amcast Indus., 138 F.R.D. at 121* (quoting *In re IBM Peripheral EDP Devices Antitrust Litig., 77 F.R.D. 39, 41-42 (N.D. Cal. 1977))*. Additionally, they did so without knowing whether there were even any fish in the pond. Denial of Bamberger's discovery requests, therefore, was not clearly erroneous. **[*11]** *Id.* Accordingly, Bamberger's appeal is **denied** and Magistrate Cavanaugh's December 5, 1997 Order is **affirmed**.

An appropriate Order accompanies this Opinion.

Dated: March 31, 1998

WILLIAM G. BASSLER, U.S.D.J.

*ORDER*

This matter having come before the Court on an appeal from Magistrate Judge Cavanaugh's December 5, 1997 Order; and

The Court having considered the submissions of counsel; and

The Court having decided this matter pursuant to *Fed. R. Civ. P. 78*; and

For good cause shown;

It is on this 31 day of March, 1998 ORDERED that Judge Cavanaugh's December 5, 1997 Order is AFFIRMED.

WILLIAM G. BASSLER, U.S.D.J.