

LEXSEE 2008 U.S. DIST. LEXIS 1352

**SYNTHES (U.S.A.), a Pennsylvania partnership, Plaintiff, v. G.M. DOS REIS JR. IND. COM. DE EQUIP. MEDICO A/K/A GMREIS, a Brazilian corporation, Defendants.**

Civil No. 07-CV-309-L(AJB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

*2008 U.S. Dist. LEXIS 1352*

**January 8, 2008, Decided
January 8, 2008, Filed**

**SUBSEQUENT HISTORY:** Application denied by *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 2008 U.S. Dist. LEXIS 12392 (S.D. Cal., Feb. 20, 2008)*

**PRIOR HISTORY:** *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico, 2007 U.S. Dist. LEXIS 56787 (S.D. Cal., Aug. 2, 2007)*

**COUNSEL:** [*1] For Synthes (U.S.A.), a Pennsylvania partnership, Plaintiff: Jeffrey M Olson, LEAD ATTORNEY, Matthew S Jorgenson, Sidley Austin, Los Angeles, CA.

For GM Dos Reis Jr Ind Com De Equip Medico, a Brazilian corporation also known as GMReis, Defendant: Matthew C Lapple, LEAD ATTORNEY, Heller Ehrman, San Diego, CA.

**JUDGES:** M. James Lorenz, United States District Court Judge.

**OPINION BY:** M. James Lorenz

**OPINION**

**ORDER (1) SUSTAINING OBJECTIONS; (2) MODIFYING ORDER REGARDING JURISDICTIONAL DISCOVERY; AND (3) SETTING BRIEFING SCHEDULE**

This patent infringement case was referred to Magistrate Judge Anthony J. Battaglia for determination of non-dispositive pretrial matters, including discovery, pursuant to *Federal Rule of Civil Procedure 72(a)* and Civil Local Rule 72.1(b). Plaintiff Synthes (U.S.A.) ("Synthes") timely filed Objections to the Magistrate Judge's Order re: Jurisdictional Discovery ("Order"). Defendant G. M. dos Reis Jr. Ind. Com. de Equip. Mexico a/k/a GMReis ("GMReis") filed a response, and Plaintiff was granted leave to file a reply. For the reasons which follow, Plaintiff's objections are **SUSTAINED,** and the Order re: Jurisdictional Discovery is **MODIFIED** as explained below.

Prompted by GMReis' motion to dismiss for [*2] lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)*, which is pending before this court, Synthes sought certain document discovery, a *Rule 30(b)(6)* deposition of GMReis' person most knowledgeable on certain topics, as well as depositions of Gerald Marins dos Reis Jr. and Jose Luiz Linda Lecumberri, who submitted declarations in support of the motion. After GMReis failed to produce the requested discovery, Synthes filed a motion to compel. GMReis responded with motions for a protective order and to stay discovery during the pendency of the motion to dismiss.

The Magistrate Judge granted in part and denied in

part Synthes' motion to compel, granted in part and denied in part GMReis' motion for a protective order and denied GMReis' motion to stay discovery. While Synthes was granted the right to obtain jurisdictional discovery, its document discovery was limited to documents and activities occurring on or after the date when the patent-in-suit issued. In addition, jurisdictional discovery was to be conducted according to the laws of Brazil, because GMReis is a Brazilian corporation and the requested documents and witnesses are located in Brazil. Synthes objects [*3] to the Order insofar it requires jurisdictional discovery to comply with Brazilian law and limits discovery to the period after the patent-in-suit issued.

District court review of magistrate judge orders on non-dispositive motions is limited. Discovery motions, such as the motions at issue here, are considered non-dispositive. See *28 U.S.C. § 636(b)(1)(A)*; Civ. Loc. R. 72.1(b). A district court judge may reconsider a magistrate judge's ruling on a non-dispositive motion only "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *28 U.S.C. § 636(b)(1)(A)*; *Fed. R. Civ. Proc. 72(a)*. This essentially amounts to an abuse of discretion standard. *See Foster v. Skinner, 70 F.3d 1084, 1087 (9th Cir. 1995)* ("An abuse of discretion occurs if the district court does not apply the correct law or rests its decision on a clearly erroneous finding of fact.").

The Order limits permissible discovery to the time period after the issuance of the patent-in-suit. (Order at 10.) Because specific jurisdiction is "based on the relationship between the defendant's forum contacts and the plaintiff's claim," *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Yahoo! Inc., 433 F.3d 1199, 1205 (9th Cir. 2006)*, [*4] the Order correctly concludes that facts predating the patent are irrelevant for purposes of specific personal jurisdiction. (Order at 9-10 ("Request Nos. 1-18 are overly broad and should be limited to the time period after issuance of the patent-in-suit . . ., *as GMReis activities prior to this date would not constitute infringement.*") (emphasis added).) However, the Order does not consider the issue whether the same discovery may be relevant for purposes of general personal jurisdiction. (*See* Mem. of P.&A. in Supp. of Pl. Synthes' Mot. to Compel Jurisdictional Disc., filed May 17, 2007 ("Mot. Below"), at 16.) Because the magistrate court "did not exercise its discretion in this regard, the issue of whether or not it should have presents a legal question which is subject to de novo review." *First Pac. Bank v. Gilleran, 40 F.3d 1023, 1027 (9th Cir. 1994)*.

General jurisdiction exists "over a defendant who has had continuous and systematic contacts with the forum state," *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 n.1 (9th Cir. 2003)*, "even if the action is unrelated to those contacts," *Bancroft & Masters, Inc. v. Augusta Nat'l. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)*. [*5] *See also Trintec Indus. v. Pedre Promotional Prods. 395 F.3d 1275, 1279 (Fed. Cir. 2005)* (defining specific and personal jurisdiction). It is undisputed that GMReis had contacts with the United States [1] prior to the issuance of the patent-in-suit. (*See* Order at 8.) These contacts are relevant to the issue of general jurisdiction. Accordingly, to the extent Synthes challenges the temporal limitation of jurisdictional discovery to the time after the issuance of the patent-in-suit, its objection is sustained, and the Order is modified in this regard. Consistent with the Order, jurisdictional discovery, whether before or after the issuance of the patent-in-suit, is limited to the issues relevant to personal jurisdiction, that is the timing, quality, quantity and nature of GMReis' contacts with the United States.

> 1 GMReis has not objected to discovery of its contacts with the United States, as opposed to its contacts with the State of California. As a product of *Rule 4(k)(2)*, the courts may "look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum." *Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1158 (9th Cir. 2006)*.

The Order [*6] also requires Synthes to comply with the laws of Brazil to obtain jurisdictional discovery from GMReis. (Order at 12.) However, it does not cite legal authority in support of this conclusion. The conclusion is based on the "principles of comity and the relevant treaty provisions." (*Id.*) The principles of comity and treaty provisions are not discussed.

It is undisputed that Brazil does not allow depositions of its nationals on its soil by American attorneys for use in courts in the United States, even if the deposition were to take place before a United States consular officer, with the assistance of a Brazilian attorney, or in any other manner. (*See* Lapple Decl., filed May 24, 2005 ("Lapple Decl."), Exh. D & E.) [2] "Brazil is not a party to the Hague Convention on the Taking of

Evidence Abroad in Civil and Commercial Matters. The United States is not a party to the evidence provisions of the Inter-American Convention on Letters Rogatory." (*Id.* Exh. D.) "Judicial assistance between the United States and Brazil in civil . . . matters is governed by Article 5 . . . of the Vienna Convention of Consular Relations," which provides in relevant part for "transmitting judicial and extra-judicial [*7] documents or executing letters rogatory or commissions to take evidence for the courts of the sending State in accordance with international agreements in force or, *in the absence of such international agreements, in any manner compatible with the laws and regulations of the receiving State.*" (*Id.* Exh. E P 4 (emphasis added).) No agreements are in effect between the United States and Brazil for taking evidence abroad. Therefore, any request made pursuant to the Vienna Convention to obtain deposition testimony in Brazil must comply with the laws of Brazil. To do so, an American attorney must make a request for judicial assistance to the Ministry of Justice in Brazil. (*Id.* Exh. D.) Typically, such requests are made by letters rogatory submitted to the United States Department of State, Bureau of Consular Affairs for transmission through the diplomatic channels. (*See id.*) If and when the request is granted, the deposition is taken by Brazilian judicial authorities. (*Id.*) Neither party contends that Brazil precludes depositions of its nationals abroad according to the laws of the country where the deposition is held.

> 2  The court takes judicial notice of the United States Department of State's [*8] posting on its website at http://travel.state.gov/law/info/judicial/judicial_672.html regarding obtaining evidence in Brazil (*see* Lapple Decl. Exh. D) and Declaration of Edward A. Betancourt, Director of the Office of Policy Review and Inter-Agency Liaison in the Directorate of Overseas Citizens Services of the Bureau of Consular Affairs in the United States Department of State, referenced in the Department of State website, filed on May 24, 2001 in the United States District Court for the District of New Jersey, *Wheaton v. Porreca*, 00cv2205 (Lapple Decl. Exh. E).

In United States District Courts, the determination whether discovery should proceed under the Federal Rules or some other law is made based on a balancing test endorsed in *Societe Nationale Industrielle Aerospatiale v. United States District Court, 482 U.S. 522, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987). See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1474-75 (9th Cir. 1992)*. The Order does not indicate whether this balancing test was considered. Accordingly, the appropriateness of requiring compliance with Brazilian law for purposes of jurisdictional discovery is reviewed de novo. *See First Pac. Bank, 40 F.3d at 1027.*

In its opposition to Synthes' [*9] objections, GMReis disputes the relevance of *Aerospatiale* because the choice in *Aerospatiale* was between the evidence-gathering provisions of the Hague Convention and the Federal Rules, whereas the Hague Convention is inapplicable in this case. No legal authority is cited in support of this argument. The distinction argued by GMReis was deemed irrelevant in *Richmark Corporation v. Timber Falling Consultants,* where the Ninth Circuit followed the *Aerospatiale* balancing test in a case which did not involve the Hague Convention. *See 959 F.2d 1468*. Furthermore, the Advisory Committee Notes to the 1993 Amendments to *Federal Rule of Civil Procedure 28* refer attorneys to *Aerospatiale* "[f]or a discussion of the impact of . . . treaties upon the discovery process, and of the application of principles of comity upon discovery in countries *not signatories to a convention.*" (Emphasis added.) GMReis' argument is therefore unavailing.

GMReis further disputes *Aerospatiale*'s applicability because personal jurisdiction was not disputed therein, whereas it is disputed in this case. *Aerospatiale* expressly acknowledged that personal jurisdiction over the foreign defendant was undisputed. *482 U.S. at 524, 525* [*10] (personal jurisdiction not questioned by defendant). It did not address the issue whether the balancing test it endorsed would apply in a case where personal jurisdiction is disputed and discovery is sought to establish personal jurisdiction over the foreign defendant. Neither party cites a Ninth Circuit decision on point, and the court is aware of none. The court therefore looks to other circuits. Synthes relies on the Third Circuit opinion *In re Automotive Refinishing Paint Antitrust Litigation, 358 F.3d 288 (3d Cir. 2004)* ("*Automotive*"). Although *Automotive* references a "split of authorities among federal district courts and state courts regarding the extension of *Aerospatiale* to jurisdictional discovery," it does not reference any split in the circuits. *See Automotive, 358 F.3d at 301*. Neither party cites to any alternative federal circuit court decision, and this court is not aware of any. *Automotive* held that "there should be

no exception to the *Aerspatiale* holding for jurisdictional discovery" and that "the *Aerospatiale* balancing test applies equally to jurisdictional discovery." *Id. at 302, 305*.

The primary basis for the holding of *Automotive* is the court's authority to determine [*11] whether it has personal jurisdiction over defendants: 3

> a trial court has authority to determine its jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)* ("By submitting to the jurisdiction of the Court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction"). Because the District Court has jurisdiction over these foreign defendants to the extent necessary to determine whether they are subject to personal jurisdiction, we see no legal barrier to exercising the discretion given to trial courts by *Aerospatiale* in cases of jurisdictional discovery.

*Automotive, 358 F.3d at 302*. The court also noted that it would not be unfair to foreign defendants to undertake the *Aerospatiale* balancing test before determining which rules to apply for jurisdictional discovery because they voluntarily appeared in the court to challenge jurisdiction and had availed themselves of the Federal Rules for that purpose. *Id. at 303*. The distinction between jurisdictional, as opposed to "merits," discovery was held without a difference because [*12] "[n]o one would dispute that if jurisdiction discovery yields no evidence sufficient to establish personal jurisdiction, the court must dismiss the underlying action against the appellants, rather than deciding which set of procedural rules to apply." *Id. at 303* & n.18. "The undisputed presence of personal jurisdiction in *Aerospatiale* is, therefore, tangential to its holding and irrelevant to the issue of whether *Aerospatiale* applies also to jurisdictional discovery." *Id. at 303*. The court finds the reasoning of *Automotive* persuasive, and therefore applies the *Aerospatiale* balancing test to jurisdictional discovery in this case. 4

> 3  Synthes advanced this argument in support of its motion to compel. (*See* Mot. Below at 17; Reply in Supp. of Pl. Synthes' Mot. to Compel Jurisdictional Disc. and Opp'n to GMReis' Cross Mot. for a Protective Order, filed May 29, 2007 (Reply Below"), at 11-12.)
>
> 4  GMReis also argues the court should not apply *Aerospatiale* because Synthes did not cite it in its briefing before the Magistrate Judge. The argument is rejected. GMReis itself cited *Aerospatiale*. (Def. GMReis' Opp'n to Pl. Synthes' Mot. to Compel Jurisdictional Disc. and Cross Mot. for a Protective Order, [*13] filed May 24, 2007 ("Opp'n Below"), at 11, 13.) In response, Synthes relied on the *Aerospatiale* holding that "evidence gathering procedures under international treaties are 'permissive supplements' to the procedures under the Federal Rules . . . ." (Reply Below at 2; *see also id.* at 11 n.6.)

*Aerospatiale* holds that the concept of international comity requires a "particularized analysis of the respective interests of the foreign nation and the requesting nation." *482 U.S. at 543-44*. The factors relevant to the comity analysis are:

> (1) the importance to the . . . litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* n.28 *quoting* Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986). This list of factors is [*14] not exhaustive, and the following additional factors are considered relevant in the Ninth Circuit:

> the extent and the nature of the hardship

that inconsistent enforcement would impose upon the person, and the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

*Richmark, 959 F.2d at 1475* (internal quotation marks, ellipsis, brackets and citation omitted).

*Importance of the Discovery Requested:* "Where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign . . . laws. Where the evidence is directly relevant, however, we have found this factor to weigh in favor of disclosure." *Richmark, 959 F.2d at 1475* (internal quotation marks and citations omitted). In this case, the requested discovery is directly relevant to the outcome of the dispositive motion pending before the court. If the court determines it has personal jurisdiction, the case will continue, and if it determines personal jurisdiction is lacking, the case will be dismissed. The importance of the [*15] discovery to this case therefore weighs in favor of proceeding under the Federal Rules.

*Specificity of the Request:* "A second consideration in evaluating a discovery request is how burdensome it will be to respond to that request." *Richmark, 959 F.2d at 1475*. In this case, discovery is limited to the facts pertinent to personal jurisdiction, the threshold issue which determines whether this case will continue. Generally, jurisdictional discovery is less intrusive than merits-based discovery. *See Automotive, 358 F.3d at 303*. To the extent GMReis contended the discovery requests were onerous because they extended beyond personal jurisdiction, the Magistrate Judge and this court have addressed the issue elsewhere. (*See* Order at 9 and *supra.*) In its opposition to Synthes' objections to the Order, GMReis does not maintain the objections should be overruled because discovery under the Federal Rules is unduly onerous. [5] Accordingly, this factor does not favor application of Brazilian law.

    5  In its briefing before the Magistrate Judge, GMReis argued that depositions in the United States of the two GMReis representatives who provided declarations in support of motion to dismiss would be burdensome. [*16] It did not argue the same with respect to the document requests. (*See* Opp'n Below at 11.) GMReis argued that the depositions would be onerous due to short-notice travel and lodging arrangements and disruptions of work schedules. (*Id.*) The Order requiring compliance with the laws of Brazil, however, was not based on the alleged onerousness, but on the "principles of comity and the relevant treaty provisions." (Order at 12.) Even if GMReis renewed its onerousness arguments in opposition to Synthes' objections, they would be insufficient to tip the scales. It is undisputed that the same GMReis representatives travel to the United States on business. (*See, e.g.,* Opp'n Below at 2-3.) Furthermore, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Harris Rutsky & Co. Ins. Servs., 328 F.3d at 1132-33*.

*Location of Information and Parties:* "The [*17] fact that all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business." *Richmark, 959 F.2d at 1475*. In this case, the documents and individuals are located in Brazil. Although it does not appear to be disputed that some GMReis representatives periodically travel to the United States on business, this factor weighs in favor of applying Brazilian law.

*Alternate Means of Obtaining Information:* "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law. . . . In this circuit, the alternative means must be 'substantially equivalent' to the requested discovery." *Richmark, 959 F.2d at 1475*. In this case the need for discovery was spurred in large part by the declarations of GMReis' representatives filed in support of motion to dismiss. It therefore appears that the information cannot be obtained elsewhere. GMReis does not suggest to the contrary. This factor therefore weighs against the application of Brazilian [*18] law.

*Balance of National Interests:* "This is the most important factor. We must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important

substantive policies or interests of either the United States or [Brazil]." *Richmark, 959 F.2d at 1476* (internal quotation marks and citation omitted). Unlike in *Richmark* and *Aerospatiale,* where foreign governments expressed their interest in precluding discovery under Federal Rules by filing either amicus briefs (*Aerospatiale, 482 U.S. at 523*) or issuing letters to the foreign defendant (*Richmark, 595 F.2d at 1476*), Brazil has made no such expressions of governmental interest in this case. GMReis' position is based on the undisputed assertion that "Brazil does not allow voluntary depositions of its citizens in Brazil by American attorneys for use in American court cases. Only Brazilian judicial authorities may take Brazil-based depositions intended for use in a foreign court." (Order at 11; *see also* Mot. Below at 17-18 & Opp'n Below at 10.) In Brazil, the process of obtaining evidence is normally conducted by a judicial officer rather than by private attorneys. (*See* Lapple [*19] Decl., Exh. E P 6 ("Ministry [of External Relations of Brazil] officials explained [the U.S. Embassy officials] that the taking of depositions for use in foreign courts constitutes an act of procedural law and that, as such, must be undertaken in Brazil only by Brazilian judicial authorities. The Ministry also cited as an implicit principle of Brazilian Constitutional Law that only Brazilian judicial authorities are competent to perform acts of a judicial nature in Brazil. In view of this position, Brazil has advised it would deem taking depositions in Brazil by foreign persons to be a violation of Brazil's judicial sovereignty.").) The argument that evidence-gathering in a foreign country by an unauthorized person might violate the "judicial sovereignty" of the host nation has been found unpersuasive to mandate the application of discovery procedures other than the Federal Rules. *Aerospatiale, 482 U.S. at 543*. Even "blocking statutes," such as a foreign criminal law providing that a corporation could not respond to discovery requests from another country which did not comply with the Hague Convention, *see Aerospatiale, 482 U.S. at 526 & n.6*, or a secrecy law prohibiting disclosure [*20] of certain information, *see Richmark, 959 F.2d at 1474*, do not deprive an American court of the power to order a party to produce evidence under the Federal Rules, although the production of the evidence may violate that statute and subject the defendant to penalties, *Aerospatiale, 482 U.S. at 543 n.29*; *Richmark, 959 F.2d at 1474*. Such statutes are "relevant to the court's particularized comity analysis only to the extent that [their] terms and [their] enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material." *Aerospatiale, 482 U.S. at 543 n.29*. GMReis does not maintain that Brazil adheres to a "blocking statute" and does not identify any interests Brazil may have in the nondisclosure of GMReis' contacts with the United States. On the other hand, the United States has an interest in "vindicating the rights of American plaintiffs," *Richmark, 959 F.2d at 1477*, and in protecting the patents issued by its Patent Office. The balancing of national interests therefore weighs in favor of applying the Federal Rules.

*Hardship to GMReis:* "The effect that a discovery order is likely to have on the foreign company is another factor to be considered." [*21] *Richmark, 959 F.2d at 1477*. This factor is concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in its own country for complying with a discovery request in a United States court. *See id. at 1477, 1475* ("inconsistent enforcement"). GMReis does not argue that discovery under the Federal Rules would subject it to the hardship of this type. Accordingly, this factor also weighs in favor of applying the Federal Rules.

*Likelihood of Compliance:* "If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance . . .." *Richmark, 959 F.2d at 1478*. At this stage in the proceedings, it is premature to conclude that GMReis could not be compelled to comply with discovery under the Federal Rules. Even if it were impossible to force GMReis to comply, this would not necessarily preclude ordering discovery under the Federal Rules. *See id.* "[A] clear statement that foreign corporations which avail themselves of business opportunities in the United States must abide by United States laws might have a substantial effect on the way [such] corporations do business in the United States in [*22] the future." *Id.* GMReis avails itself of marketing opportunities in the United States. (*See* Opp'n Below at 2-3.) Accordingly, this factor does not weigh against compelling discovery under the Federal Rules.

*Conclusion:* Weighing the foregoing factors, the court finds they favor jurisdictional discovery under the Federal Rules rather than under the laws of Brazil. Because Brazilian law subjects foreign attorneys who conduct depositions of Brazilian nationals in Brazil to potential arrest, detention, expulsion or deportation (*see* Lapple Decl. Exh. D), any depositions of Brazilian

nationals in this case are to be conducted in the United States.

For the foregoing reasons, Synthes' Objections to the Magistrate Judge's Order re: Jurisdictional Discovery are **SUSTAINED,** and the Order is **MODIFIED** as follows:

1. Jurisdictional discovery shall not be limited to the time period after the patent-in-suit issued. Consistent with the Magistrate Judge's Order, jurisdictional discovery shall be circumscribed to the facts relevant to personal jurisdiction.

2. Jurisdictional discovery shall proceed under the Federal Rules of Civil Procedure. Any depositions of Brazilian nationals in this case are to be conducted **[*23]** in the United States.

**IT IS FURTHER ORDERED** that Plaintiff's opposition to Defendant's motion to dismiss shall be filed and served no later than February 18, 2008. Defendant's reply in support of its motion to dismiss shall be filed no later than February 25, 2008. Upon the filing of the foregoing, the parties shall await further order of the court. In light of four prior joint motions to continue the briefing schedules and hearing dates on Defendant's motion to dismiss, the court will not entertain any further requests for continuances related to this motion.

**IT IS SO ORDERED.**

DATED: January 8, 2008

/s/ M. James Lorenz

M. James Lorenz

United States District Court Judge