Price v. Facebook, Inc. Doc. 95



LEXSEE 2007 U.S. DIST. LEXIS 84814

**BROOKE CREDIT CORPORATION, Plaintiff, v. LOBELL INSURANCE SERVICES, L.L.C., PAUL ROY EUGENE ELEAZAR, JR., Defendants.**

Case No. 06-2577-CM-GLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

*2007 U.S. Dist. LEXIS 84814*

**November 15, 2007, Decided
November 15, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by *Brooke Credit Corp. v. Lobell Ins. Servs., LCC, 2008 U.S. Dist. LEXIS 20450 (D. Kan., Mar. 13, 2008)*

**PRIOR HISTORY:** *Brooke Credit Corp. v. Lobell Ins. Servs., LLC, 2007 U.S. Dist. LEXIS 75734 (D. Kan., Sept. 30, 2007)*

**COUNSEL: [\*1]** For Brooke Credit Corporation, a Kansas corporation, Plaintiff: Amy E. Hatch, Dirk P.C. Lawson, Robert J. E. Edwards, LEAD ATTORNEYS, Polsinelli Shalton Flanigan Suelthaus, P.C. -- KC, Kansas City, MO.

For Lobell Insurance Services, LLC, a Louisiana limited liability company, Paul Roy Eugene Eleazar, Jr., Defendants: Brett C. Coonrod, LEAD ATTORNEY, The Law Office of Smith/Coonrod, Kansas City, MO.

**JUDGES:** Gerald L. Rushfelt, U.S. Magistrate Judge.

**OPINION BY:** Gerald L. Rushfelt

**OPINION**

## MEMORANDUM AND ORDER

Plaintiff Brooke Credit Corporation brings this action against Defendants Lobell Insurance Services, LLC ("Lobell Insurance Services") and Paul Roy Eugene Eleazar, Jr. ("Eleazar"), alleging conspiracy to tortiously interfere with a contract, tortious interference with a contract, conversion, and requesting replevin. This matter is before the Court for consideration of Plaintiff Brooke Credit Corporation's Motion to Compel Discovery Responses (doc. 38). Plaintiff requests an order to compel Defendants to provide full and complete responses to Interrogatories Nos. 4, 10, and 11, and Requests for Production Nos. 6-7, 10, 13-14, 18, 20-21, and 27. As set forth below, Plaintiff's Motion to Compel Discovery is granted **[\*2]** in part and denied in part.

### I. Background Facts

Plaintiff alleges that in 2004 and 2005 it lent Lobell-Dixon Insurance Agency, L.L.C. ("Lobell-Dixon") an amount in excess of $ 1.35 million. Lobell-Dixon and its agent, owner and operator Rhonda Lobell ("Lobell"), used the loan proceeds to purchase, *inter alia*, insurance customer lists and accounts from Brooke Franchise Corporation, as well as the right to operate a Brooke Insurance franchise with locations in three cities in Louisiana. The loans were secured by, among other things, all of Lobell-Dixon's personal property. The most valuable components were the insurance customer accounts, and the proceeds thereof; as these were the primary assets that could be sold to another franchisee, should Lobell-Dixon fail to repay its loan. Lobell-Dixon and Lobell also agreed to a non-solicitation provision, barring Lobell-Dixon and Lobell from soliciting or diverting, directly or indirectly, Lobell-Dixon customer accounts to any other insurance

agency for a period of three years after default.

Plaintiff brought suit after its alleged discovery that Defendants Lobell Insurance Services and Eleazar (collectively, "Defendants"), who is Lobell's significant [*3] other, conspired with Lobell to divert Lobell-Dixon's customers and to convert Plaintiff's collateral to Lobell Insurance Services. Plaintiff alleges that Lobell helped Eleazar form Lobell Insurance Services with the intent that Lobell-Dixon's employees and customers would simply transfer (or be transferred) to Lobell Insurance Services. Lobell-Dixon would then be a shell entity unable to repay the $ 1.35 million loan and the collateral would be converted to Lobell Insurance Services.

On April 5, 2007, Plaintiff served its First Set of Interrogatories to Lobell Insurance Services and its First Request for Production of Documents. Defendants served their responses to the interrogatories and produced documents on May 21, 2007. Eleazar signed the responses on behalf of Lobell Insurance Services. Plaintiff claims that its review of the answers and production of documents shows that Defendants, improperly and without any legitimate basis, failed and refused to provide the vast majority of the information and documents requested.

After efforts to resolve this dispute without Court intervention, as required by *Federal Rule of Civil Procedure 37(a)(2)(A)* and D. Kan. Rule 37.2, Plaintiff filed [*4] the instant motion.

## II. Discovery Requests at Issue

### A. Interrogatory No. 4

Plaintiff's First Interrogatory No. 4 asks Defendants to "[i]dentify all customers of Lobell Insurance Services that were previously customers of Lobell-Dixon Insurance Services." Defendants object to the interrogatory as being unduly burdensome and incapable of a complete and accurate answer in that there is no complete list of former clients in their possession from which this information can be obtained and any response would involve speculation. Defendants further explain their difficulties in obtaining the information sought by Interrogatory No. 4:

> In order to determine which customers were former Lobell-Dixon customers it would be necessary to go through each file and, even then, the identity of those customers might not be able to be determined. While each file would contain a letter changing the agent of record, the letters generally do not state the identity of the customers' former agent. Employees of Lobell Insurance Services would likely be able to identify some of the customers that could not be otherwise identified from the file but the identification would likely be incomplete and speculative.

A party [*5] who objects to discovery as unduly burdensome has the burden to show facts to justify the objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. [1] This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents. [2] Discovery should be allowed unless the hardship imposed on the responding party is unreasonable in light of the benefits to be secured from the discovery. [3] In making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information. [4]

---

[1] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002)*; *Snowden v. Connaught Labs., Inc., 137 F.R.D. 325, 332 (D. Kan. 1991)*.

[2] *Id.*

[3] *G.D. v. Monarch Plastic Surgery, P.A.*, Civ. A. No. 06-2184-CM, 2007 U.S. Dist. LEXIS 5509, 2007 WL 201150, at *10 (D. Kan. Jan. 22, 2007).

[4] *Hoffman v. United Telecomms., Inc., 117 F.R.D. 436, 438 (D. Kan. 1987)*.

---

Defendants anticipate difficulties in trying to provide a complete and accurate answer to the interrogatory. They have failed to provide any sufficient facts, however, [*6] from which the Court can conclude that the effort required to answer the interrogatory is unduly burdensome. Discovery often involves effort and expenditure to review files and documents. The rules of discovery do not guarantee or provide some easy procedure. If Defendants do not currently possess a list of customers of the prior Lobell-Dixon Insurance Agency, they nevertheless by their own admission have alternative

ways to ascertain the requested information. Defendants have not met their burden to show that responding to this interrogatory is unduly burdensome in time and expense. They have provided no facts or figures, by affidavit or otherwise, to support their objection. In their opposing brief, moreover, they appear to object on grounds of irrelevancy--an objection that is waived by not having been asserted in their response to the interrogatory. The objections to Interrogatory No. 4 are overruled. Defendants shall serve a supplemental answer to Interrogatory No. 4.

**B. Interrogatory No. 10**

Interrogatory No. 10 asks: "Explain in detail how Lobell Insurance Services solicits insurance customers and state if it learned the names of any potential customers from Rhonda Lobell or any [*7] then Lobell-Dixon Insurance Agency employee, and, if so, what customers." Defendants' answer to Interrogatory No. 10 states:

> Lobell Insurance Services solicits insurance through "Yellow Pages" advertisements. Much of the customer solicitation is informal and is conducted by the agency's customer service representatives. These individuals were former employees of Lobell-Dixon and did not have a non-competition agreement. After moving to Lobell Insurance Services they notified Lobell-Dixon customers that they were now employed by the defendant. It is believed that defendant obtained some customers through those mailings but is unable to identify which customers as some customers of Lobell-Dixon are believed to have switched their insurance to Lobell Insurance Services without solicitation. The customer service representatives had personal relationships with many of the customers in the small towns where the agencies are located and it is believed that a number of Lobell-Dixon customers learned of their employment by Lobell Insurance Services through word-of-mouth and transferred their insurance to defendant as a result but defendant is unable to identify which customers did so. While [*8] the former employees of Lobell-Dixon may have known the names of their customers when they came to work for defendant, defendant did not learn of the names of any Lobell-Dixon customers from Rhonda Lobell or any employee who, at the time, was employed by Lobell-Dixon.

Plaintiff contends that Defendants' answer is incomplete and evasive in that Defendants do not identify or provide the names of former and/or current Lobell-Dixon customers who may have transferred to Lobell Insurance Services. Plaintiff maintains that the information sought by this interrogatory is relevant as it goes to its claims of civil conspiracy, conversion, and tortious interference with contractual obligation against Defendants. Plaintiff asks that Defendants be compelled to supplement their answer to this interrogatory.

Defendants argue that they should not be compelled to come up with information they do not have and would require them to speculate. The notices which may have been mailed out to Lobell-Dixon customers by former employees who are now employed by Lobell Insurance Services were sent out as a general mailing, which likely went to Lobell-Dixon customers among others. Defendants state that they do not [*9] know who those customers were.

The disputed portion of the interrogatory asks Defendants to "state if [they] learned the names of any potential customers from Rhonda Lobell or any then Lobell-Dixon Insurance Agency employee, and, if so, what customers." Defendants' answer to this interrogatory states: "While the former employees of Lobell-Dixon may have known the names of their customers when they came to work for defendant, defendant did not learn of the names of any Lobell-Dixon customers from Rhonda Lobell or any employee who, at the time, was employed by Lobell-Dixon."

The Court finds that the response to Interrogatory No. 10 adequately answers whether Defendants learned the names of any potential customers from Rhonda Lobell or any then Lobell-Dixon Insurance Agency employee. The motion is overruled as to Interrogatory No. 10.

**C. Interrogatory No. 11**

Interrogatory No. 11 asks Defendants to "[i]dentify all documents, assets and items, tangible and nontangible, including without limitation customers' names, addresses and accounts, customer lists, furniture, and/or accounts receivable, that Lobell Insurance Services received from Rhonda Lobell or Lobell-Dixon Insurance Agency." Defendants [*10] object to this interrogatory as being unduly burdensome and incapable of a complete and accurate answer to the extent it seeks customer lists and account information on former Lobell-Dixon customers in that there is no complete list of former clients in their possession from which this information can be obtained and any response would involve speculation. Defendants' answer further states:

> In order to determine which customers were former Lobell-Dixon customers it would be necessary to go through each file and, even then, the identity of those customers might not be able to be determined. While each file would contain a letter changing the agent of record, the letters generally do not state the identity of the customers' former agent. Employees of Lobell Insurance Services would likely be able to identify some of the customers that could not be otherwise identified from the file but the identification would likely be incomplete and speculative.
>
> Subject to and without waiving this objection, defendant states that Brooke was given the opportunity to take all customer files and all tangible property which was not the personal property of Rhonda Lobell. Brooke personnel did, in fact, take [*11] files and certain tangible property. The property that they did not take consisting of a few desks and computers was moved to the Lobell Insurance Services location.

As already discussed with regard to Interrogatory No. 4, the Court finds that Defendants have speculated an objection without adequate factual support for the supposedly additional effort required to provide an answer. They have not supported their objection that it is unduly burdensome. They have provided no affidavit or other evidence. They suggest a difficulty "to go through each file." The Court has no idea whether they mean two files, 200 files, 2,000 files, or some other number. The Court does not *sua sponte* speculate that so ambiguous a description indeed means enough files to equate with an undue burden of discovery. While Defendants may not currently possess a list of the customers of the prior Lobell-Dixon Insurance Agency, by their own admission they have alternative ways for ascertaining which of their customers may have formerly been customers of the Lobell-Dixon Insurance Agency. Defendants have not met their burden to show that responding to this interrogatory is unduly burdensome. The objection is overruled. [*12] Defendants shall serve a supplemental answer Interrogatory No. 11.

**D. Request No. 6**

Plaintiff's First Request for Production of Documents No. 6 seeks "[a]ll documents sent to or received from Rhonda Lobell, Lobell-Dixon Insurance Agency, and/or Agency Support Services concerning current or former Lobell-Dixon Insurance Agency customers." Defendants responded that they have no such documents.

Plaintiff argues that Rhonda Lobell admitted in her deposition that she provided documents to Defendants, and that one of the documents contained a list of Lobell-Dixon customers. It requests that Defendants be compelled to supplement their response and produce all responsive documents. Defendants claim that even though Rhonda Lobell, the former owner of Lobell-Dixon, testified that she gave them a list of Lobell-Dixon customers, they currently do not have any such list and it cannot be produced.

Defendants have stated in their response to Request No. 6 that they "have no such documents." The Court finds it to be an appropriate and adequate response to the request. Plaintiff has cited no authority, and the Court otherwise knows of none, that calls for compelling a party to realign its response simply [*13] because a nonparty witness may have given testimony that is arguably contradictory. Litigation includes many contradictions in what parties and witnesses say and do. The Court denies the motion to compel with regard to Request No. 6.

**E. Request Nos. 7 and 10**

Plaintiff's First Request No. 7 seeks production of "[a]ll documents referencing or concerning current or

former Lobell-Dixon Insurance Agency customers." First Request No. 10 asks Defendants to produce "[a]ll documents relating to, evidencing or referencing the agent of record for current or former Lobell-Dixon Insurance Agency customers."

Defendants object to these requests as being unduly burdensome and incapable of a complete and accurate answer for lack of a complete list of former clients from which this information can be obtained. They suggest any response would involve speculation. They also state that to determine which customers were former Lobell-Dixon customers would require reviewing each file and that, even then, the identity of those customers might not be ascertainable. While each file would contain a letter to change the agent of record, such letters generally do not state the identity of the former agent for a customer. [*14] Employees of Lobell Insurance Services would likely be able to identify some of the customers who could not otherwise be identified from the file, but the identification would likely be incomplete and speculative.

For reasons already discussed, Defendants have not met their burden to show that the additional effort described to produce the responsive documents would be unduly burdensome. If they do not possess a list of the customers of the prior Lobell-Dixon Insurance Agency, by their own admission they have alternative ways of identifying former customers of the Lobell-Dixon Insurance Agency. The Court directs Defendants to produce documents responsive to Request Nos. 7 and 10.

**F. Request Nos. 13 and 14**

Plaintiff's First Request No. 13 seeks "[a]ll documents sent to an address in Kansas." Request No. 14 asks for "[a]ll documents received from an address or postmarked in Kansas." Defendants object to these requests to the extent they seek documents sent to their counsel who is located in Kansas as these documents would be protected by the attorney-client privilege. They also object that the documents would be irrelevant to any attempt to establish jurisdiction in this case. Defendants [*15] state that, subject to these objections, they have no such documents other than communication with counsel.

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under *Fed. R. Civ. P. 26(b)(1)*, or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. 5 Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. 6

> 5 *Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 382 (D. Kan. 2005)* (citing *Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 652 (D. Kan. 2004)*; *Gen. Elec. Capital Corp. v. Lear Corp., 215 F.R.D. 637, 640 (D. Kan. 2003)*.
> 6 *Cardenas, 232 F.R.D. at 382-83*; *Steil v. Humana Kan. City, Inc., 197 F.R.D. 442, 445 (D. Kan. 2000)*.

The Court finds that the relevancy of Plaintiff's Request Nos. 13 and 14, seeking production of "[a]ll documents sent to an address in Kansas," and "[a]ll documents received from an address or postmarked [*16] in Kansas," is not readily apparent. Plaintiff thus bears the burden to show the relevancy of the discovery requests. Plaintiff argues these documents are clearly relevant to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. The Court denied that motion on September 30, 2007. Defendants have filed no answer to preserve the defense. The issue of personal jurisdiction thus appears to be moot. The Court finds Plaintiff has not met its burden to show the relevancy of these requests.

The Court further notes that the responses to Request Nos. 13 and 14 both state that Defendants "have no such documents other than communications with counsel." Communications with counsel may or may not be limited to those protected by attorney-client privilege. Defendants would have the burden of submitting a privilege log, as required by *Fed. R. Civ. P. 26(b)(5)*. That issue is not now before the Court. The significance of Defendants' response to Request Nos. 13 and 14, however, is simply to strengthen the absence of a showing by Plaintiff that the requested documents should be produced in discovery. The Court denies the motion to compel production of documents responsive to Request Nos. 13 [*17] and 14.

**G. Request No. 18**

Plaintiff's First Request No. 18 seeks production of "[d]ocuments sufficient to identify the customers of Lobell Insurance Services, including documents that show the mailing addresses for Lobell Insurance Services'

customers." Defendants' response to Request No. 18 states: "See objection and response to Interrogatory [7] number 7. In addition defendants object to this interrogatory on the ground that it seeks personal information of the agency's customers which defendants are prohibited from disclosing by federal law and regulations of the Louisiana Department of Insurance."

> [7] Although Defendants' response to Request No. 18 references their objection and response to *Interrogatory* number 7, it is clear to the Court that Defendants are actually referring to their objection and response to *Request* number 7.

Defendants' response to Request No. 7 objects to the request as being unduly burdensome and incapable of a complete and accurate answer, in that there is no complete list of former clients in their possession from which this information can be obtained, and any response would involve speculation. Defendants state that, in order to determine which customers were [*18] former Lobell-Dixon customers, it would be necessary to go through each file and that, even then, the identity of those customers might not be ascertainable. Although each file would contain a letter to change the agent of record, such letters generally do not state the identity of the former agent. Employees of Lobell Insurance Services would likely be able to identify some of the customers that could not be otherwise identified from the file, but the identification would likely be incomplete and speculative.

As already discussed, the Court finds that the additional effort that may be required to locate documents responsive to this request for production is not unduly burdensome. If Defendants do not possess a list of the customers of the prior Lobell-Dixon Insurance Agency, by their own admission they have alternative ways of ascertaining the requested information. Defendants have not met their burden to show that producing documents responsive to this request would be unduly burdensome.

Defendants also object that the request seeks personal information of their customers, which they are prohibited from disclosing by federal law and regulations of the Louisiana Department of Insurance. [*19] They cite no specific federal law and no specific regulation, however, to support such an objection. The Court otherwise knows of none. Subject to the provisions of the Stipulated Protective Order, Defendants shall produce documents responsive to Request No. 18.

### H. Request No. 20

Plaintiff's First Request No. 20 asks for "[a]ll documents, including e-mails, containing any reference to, or discussion of, soliciting, contacting or otherwise communicating with individuals and/or businesses to become customers of Lobell Insurance Services or current or former Lobell-Dixon Insurance Agency customers." Defendants responded to Request No. 20 as follows:

> Defendants have attached copies of the post cards mailed to all potential customers from the Gonzales office. Virtually identical postcards were mailed from the Laplace office but defendants no longer have a copy of these cards. These were not sent exclusively to Lobell-Dixon customers. Defendants have also attached copies of letters and faxes that were sent to some Lobell-Dixon customers although defendants cannot currently identify which all of the customers that received these letters. Defendants have also attached copies of Yellow Pages advertisements [*20] included in the Gonzales telephone book for 2006-2007. There were no Yellow Pages advertisements in the Laplace telephone book for that same period.

Plaintiff argues that Defendants have apparently not produced all responsive documents in their possession, custody, or control because they appear to limit their response just to certain documents sent to some current or former Lobell-Dixon customers. It asks that Defendants be compelled to supplement their response and provide all responsive documents, including e-mails. Defendants maintain that they have identified and produced all responsive documents to this request. They clarify in their briefing that they have not limited their production of documents as assumed by Plaintiff. With this clarification, the Court finds no occasion to compel Defendants to supplement their response to Request No. 20. The Court denies the motion to produce all documents responsive to Request No. 20.

### I. Request No. 21

Plaintiff's First Request No. 21 seeks "[a]ll

documents relating to, evidencing or referencing Rhonda Lobell's, or Lobell-Dixon Insurance Agency's, or Agency Support Services' termination of her/its relationship with Brooke Credit Corporation [*21] or Brooke Franchise, including without limitation documents sufficient to identify individuals or businesses that are or were customers of Rhonda Lobell, Lobell-Dixon Insurance Agency or Agency Support Services that are now customers of Lobell Insurance Services." Defendants' response to this interrogatory states that they have no documents regarding the termination of Rhonda Lobell or Lobell-Dixon's relationship with any Brooke entity. As to documents sufficient to identify Lobell-Dixon customers, Defendants refer to their responses and objections to Request Nos. 7, 10 and 17 of Lobell Insurance Services as stated in the answer to Interrogatory No. 7.

The Court accepts the response that Defendants have no documents regarding the termination of Rhonda Lobell or Lobell-Dixon's relationship with any Brooke entity. To the extent they have documents sufficient to identify Lobell-Dixon customers, however, Defendants shall produce them. The Court thus grants in part the motion to produce documents responsive to Request No. 21.

**J. Request No. 27**

Plaintiff's First Request No. 27 requests production of "[a]ll [*22] documents that mention Brooke Insurance, Brooke Credit Corporation, or Brooke Franchise." Defendants object to this interrogatory as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants state that they have no such documents other than those related to and obtained in conjunction with the previous and current lawsuit between the parties.

Plaintiff asserts a belief that Eleazar and Lobell Insurance Services have many documents in their possession, custody or control that mention Brooke Insurance, Brooke Credit Corporation, or Brooke Franchise. Plaintiff further states it is aware that Defendants have been encouraging customers to make complaints to the Louisiana Department of Insurance against Brooke Franchise, including submitting identical written complaints that likely were written for the customers by Defendants or their associates. It asks that Defendants be compelled to supplement their response to the request and to provide all responsive documents.

The Court grants the motion with respect to Request No. 27, to the extent of producing the documents that Defendants describe they do have, i.e. ". . . those related to and obtained [*23] in conjunction with the previous and current lawsuit between the parties." The Court otherwise denies the motion. Defendants otherwise state, ". . . they have no such documents. . ." responsive to the request. The asserted belief that Defendants have many documents in their possession, custody or control that mention the Brooke entities constitutes unsupported speculation. It does not adequately refute the assertion that Defendants have no such documents. The Court thus grants in part and denies in part the motion to compel production of documents responsive to Request No. 27.

**III. Sanctions**

Plaintiff requests, pursuant to *Fed. R. Civ. P. 37(a)*, that it be awarded its fees and costs incurred in bringing this Motion to Compel Discovery. Pursuant to *Fed. R. Civ. P. 37(a)(4)(A)*, when a motion to compel is granted or the requested discovery is provided after the motion to compel is filed, "the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the [*24] court finds that . . . the opposing party's . . . response or objection was substantially justified, or that other circumstances make an award of expenses unjust."

In this case, although the Court overrules some of Defendants' objections to the interrogatories and requests at issue, the Court finds that Defendants were substantially justified in making those objections and holds that an award of expenses would be unjust. Plaintiff's request for sanctions is therefore denied.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Discovery Responses (doc. 38) is granted in part and denied in part, as set forth herein. **Within thirty (30) days of the date of this Memorandum and Order,** Defendants shall serve supplemental answers or responses to Plaintiff's First Interrogatory Nos. 4 and 11, and Requests for Production Nos. 7, 10, 18, 21, and 27. The motion is otherwise denied.

Dated this 15th day of November 2007, at Kansas City, Kansas.

s/ Gerald L. Rushfelt							U.S. Magistrate Judge

Gerald L. Rushfelt