

LEXSEE 2009 U.S. DIST. LEXIS 2720

**KEVIN L. KEITHLEY, et al., Plaintiffs, v. HOMESTORE.COM, INC., et al, Defendants.**

No. C-03-04447 SI (EDL)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2009 U.S. Dist. LEXIS 2720*

**January 7, 2009, Decided
January 7, 2009, Filed**

**PRIOR HISTORY:** *Keithley v. Homestore.com, Inc., 2008 U.S. Dist. LEXIS 92822 (N.D. Cal., Nov. 6, 2008)*

**COUNSEL:** [*1] For Kevin L. Keithley, Plaintiff: Scott Richard Mosko, LEAD ATTORNEY, Robert Francis McCauley, Finnegan, Henderson, Farabow, Garrett & Stanford Research Park, Palo Alto, CA.

For Tren Technology Holdings LLC, Plaintiff: Scott Richard Mosko, LEAD ATTORNEY, Finnegan, Henderson, Farabow, Garrett & Stanford Research Park, Palo Alto, CA; Scott Richard Mosko, Finnegan, Henderson, Farabow, Garrett & Stanford Research Park, Palo Alto, CA.

For The Home Store.Com, Inc., Defendants: Douglas R. Wilner, Jitendra Malik, PRO HAC VICE, Bruce J. Rose, Jud Graves, Alston & Bird LLP, Atlanta, GA; Jennifer L. Shoda, Snyder Miller & Orton, San Francisco, CA; Luther Kent Orton, Snyder Miller & Orton LLP, San Francisco, CA; S. Benjamin Pleune, Bank of America Plaza, Charlotte, NC.

For National Association of Home Builders of the United States, Defendant: Douglas R. Wilner, Jitendra Malik, PRO HAC VICE, Alston & Bird LLP, Atlanta, GA; Jennifer L. Shoda, Snyder Miller & Orton, San Francisco, CA; Luther Kent Orton, Snyder Miller & Orton LLP, San Francisco, CA; S. Benjamin Pleune, Bank of America Plaza, Charlotte, NC.

For National Association of Home Builders of the United States, National Association of Realtors, [*2] The Home Store.Com, Inc., Counter-claimants: Jennifer L. Shoda, Snyder Miller & Orton, San Francisco, CA; S. Benjamin Pleune, Attorney at Law, Charlotte, NC.

Kevin L. Keithley, Counter-defendant, Pro se, Menlo Park, CA.

For Kevin L. Keithley, Counter-defendant: Scott Richard Mosko, LEAD ATTORNEY, Finnegan, Henderson, Farabow, Garrett & Stanford Research Park, Palo Alto, CA.

**JUDGES:** ELIZABETH D. LAPORTE, United States Magistrate Judge.

**OPINION BY:** ELIZABETH D. LAPORTE

**OPINION**

**ORDER AWARDING SANCTIONS**

On November 6, 2008, following a hearing on October 17, 2008, the Court granted in part Defendants' Motion for Sanctions, stating that it would award monetary sanctions consisting of additional fees and costs incurred by Defendants as a result of Plaintiffs' late production of documents and loss of documents, and declining to recommend an adverse inference jury

instruction, or terminating or evidentiary sanctions. The Court ordered briefing regarding Defendants' reasonable fees and costs attributable to the sanctionable conduct. On October 31, 2008, Defendants filed a Statement of Incurred Costs. On November 5, 2008, the Court granted Defendants leave to lodge supporting documentation and billing records in camera. Plaintiffs [*3] filed an opposition to Defendants' Statement of Incurred Costs on November 10, 2008, and Defendants filed a reply on November 12, 2008. On November 19, 2008, Judge Illston granted Defendants' Motion for Summary Judgment as to Noninfringement and Invalidity based on Indefiniteness.

In the November 6, 2008 order, the Court awarded sanctions pursuant to *Federal Rule of Civil Procedure 37*. Specifically, the Court held that sanctions are warranted under *Rule 37(a)(5)(C)* for the instances in which Defendants' motions to compel were granted in part, and under *Rule 37(c)(1)* for the instances in which Plaintiffs' failure to timely produce documents constituted a failure to supplement prior discovery responses as required by *Rule 26(e)*. See *Fed. R. Civ. P. 37(a)(5)(C)* ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under *Rule 26(c)* and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."); *Fed. R. Civ. P. 37(c)(1)* ("If a party fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)*, the party is not allowed to use that information or witness to supply evidence on [*4] a motion, at a hearing or at a trial, unless the failure was substantially justified or harmless. In addition to or instead of this sanction, the court, on motion and after giving opportunity to be heard: (a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure, . . . ."). Defendants seek a total of $ 391,903.51 in sanctions based on two categories: (1) costs Defendants incurred in securing production of the late produced materials; and (2) costs Defendants incurred in examining and trying to make use of the late produced materials in the limited time available. Within these two categories, there are seven subcategories of fees and costs sought by Defendants. For the reasons stated below, the Court awards $ 205,507.53 plus the costs for lodging as described below in monetary sanctions based on Plaintiffs' conduct as described in the November 6, 2008 Order.

**1. Costs incurred in securing production of late produced materials**

**A. $ 11,204.78**

Defendants seek $ 11,204.78 for fees and costs relating to "investigating references by Plaintiffs in record to documents not yet produced, propounding [hard drive] request and associated meet and confers solely [*5] for purposes of getting Plaintiffs to comply with their discovery obligations. . . ." See Defs.' Statement of Incurred Costs at 2-3. Defendants explain that because prior to February 28, 2008, Plaintiffs had only produced approximately 2,000 pages of documents, and because Defendants then observed that Plaintiffs had documents in their possession during depositions that had not previously been produced by Plaintiffs, Defendants served the request seeking documents from Plaintiff's hard drive on February 28, 2008. That request stated:

> All desktops, laptops, hard drives, USB devices, servers, storage devices, or any other device capable of storing computer files or accessing the internet owned, possessed or in the custody of (1) Plaintiff Kevin Keithley in his corporate or personal capacity; (2) Plaintiff Tren Technologies Holdings, LLC; or (3) any officer of Tren Technologies Holdings, LLC, specifically, Mr. Ronald Keithley in his corporate or personal capacity.

Declaration of Jitendra Malik in Support of Defs.' Mot. to Compel (docket no. 567) Ex. 9 at 2.

Production in response to this request constituted the first time that Plaintiffs made an adequately thorough search for electronic [*6] information. See Nov. 6, 2008 Order at 4. There is no dispute that the bulk of Plaintiffs' document production in this case took place after the hard drive request was served. Defendants argue that the expenses relating to service of that request would not have been incurred had Plaintiffs produced the documents in a timely manner.

Defendants did not file a motion to compel seeking these documents. However, Defendants note that at least some of the relevant late produced documents would have been responsive to discovery requests served earlier in the case: No. 5: "All documents constituting or relating to all patentability, validity or enforceability analyses and opinions concerning the *'025 patent*, or the alleged

inventions discussed therein;" No. 12: "All documents relating to any alleged infringement of the *'025 patent* or alleged copying or use of any design or method or process asserted to fall within the scope of the *'025 patent*;" or No. 13: "All documents relating to Defendants." See Defs.' Mot. for Sanctions at 2, n. 3. Documents produced in response to the hard drive request, which broadly sought computer hardware and storage devices in the custody of Kevin Keithley, Ron Keithley [*7] or Tren Technologies (see Defs.' Mot. for Sanctions at 4), were likely responsive to one or more of the earlier discovery requests. Plaintiffs had an obligation to supplement their earlier discovery responses with any information of which they became aware. See *Fed. R. Civ. P. 26(e)*. The failure to do so is sanctionable under *Rule 37(c)(1)*, unless the failure was substantially justified or harmless. The Court has already found that the late production contained at least some relevant documents, and that the late production caused some prejudice. See Nov. 6, 2008 Order at 4. Further, there has been no showing of substantial justification for failing to search Plaintiffs' hard drives and to produce documents prior to service of the hard drive request.

Defendants would not have had to incur most of these fees and costs had Plaintiffs produced all documents in response to Defendants' earlier requests for production in a timely manner. However, Defendants would have had to incur fees and costs to review these documents even if they had been produced earlier, and may well have had to serve the hard drive request if Plaintiffs failed to produce documents. Accordingly, pursuant to *Rule 37(c)(1)*, [*8] the Court awards 75% of the amount sought, or $ 8,403.59, for reasonable expenses incurred relating to service of the hard drive request.

### B. $ 3,131.40

Defendants seek $ 3,131.40 in fees and costs related to "correspondence, meet and confers, and time spent reviewing the garage documents at Plaintiffs' counsel's offices." Defendants state that in response to Plaintiffs' refusal to produce the documents from Plaintiffs' garage, Defendants did not file a motion to compel, but instead served a Request to Permit Entry Upon Land for Inspection, seeking leave to examine the documents at Plaintiffs' garage. Plaintiffs agreed to produce the documents for inspection at Plaintiffs' counsel's office on April 28, 2008. Defendants argue that Plaintiffs then secretly added the documents to Plaintiffs' other document production a few weeks later, so Defendants incurred costs for reviewing the documents twice. Plaintiffs argue that Defendants sought copies of the garage documents, so the documents were openly included in a later production. The Court has already found that these documents had little if any relevance to this case, and that therefore Defendants did not show prejudice resulting from their [*9] late production. See Nov. 6, 2008 Order at 5-6. Accordingly, Defendants are not entitled to expenses pursuant to *Rule 37(c)(1)* because the failure to timely produce was harmless.

### C. $ 51,964.31

Defendants seek $ 51,964.31 in fees and costs relating to "the cost of the meet and confers, the cost to file the moving and reply papers and argue at the hearing" relating to Defendants' May 6, 2008 motion to compel documents improperly withheld as privileged. In that motion to compel, Defendants sought documents relating to communications between Plaintiffs and Joe Novosel, Don Levy, Scott Essex and Maureen Keithley, Kevin Keithley's wife, that Plaintiffs had withheld as protected by the attorney-client privilege and the marital privileges. On July 2, 2008, the Court granted in part Defendants' motion to compel, ordering production of communications with Don Levy on the ground that Plaintiffs had failed to show that the documents were protected by the attorney-client privilege. The Court denied production of communications with Scott Essex after reviewing the documents in camera and finding that the documents were irrelevant, and with Maureen Keithley on the ground that the communications were [*10] protected by a marital privilege. The Court also ordered Defendants to choose ten sample documents of communications with Joe Novosel for Plaintiffs to lodge in camera, and ordered Plaintiffs to file Mr. Novosel's declaration regarding his relationship with Plaintiffs, so that the Court could determine whether the Novosel communications were privileged. On August 4, 2008, after reviewing the sample Novosel documents in camera, the Court found that one of the ten documents was not privileged and must be produced to Defendants, but that the remainder of the documents were either privileged or irrelevant.

When a motion to compel is granted in part and denied in part, the Court may apportion expenses. See *Fed. R. Civ. P. 37(a)(5)(C)*. Here, even though

Defendants became aware of the documents pertaining to these third parties only through Plaintiffs' late production, the late production and the timing of the service of the privilege log containing these documents had little bearing on the need for Defendants to bring the motion to compel. No matter when the documents were produced, Plaintiffs would likely have submitted a privilege log and Defendants would have had to move to compel. Even [*11] though Defendants would not have been as rushed in doing so had the issue arisen earlier, the Court is not convinced that the fees and costs associated with this motion to compel were incurred because of the late production. Defendants seem to recognize that the delay in production did not cause these expenses: "Defendants are entitled to these costs because it was an additional expense they would not have had to bear had Plaintiffs been forthright and offered their reasons [for the privilege] in good faith." See Defs.' Reply in Support of Statement of Incurred Costs at 5. Accordingly, the Court does not apportion any of these fees and costs as sanctions.

**D. $ 45,574.80**

Defendants seek $ 45,574.80 in fees and costs relating to the "cost of identifying the missing documents, the meet and confers, the cost to file the moving and reply papers and argue at the hearing" relating to Defendants' June 20, 2008 Motion to Compel Production of Plaintiffs' Hard Drive and Electronic Media. In that motion to compel, Defendants sought further responses to interrogatories seeking facts relating to infringement, as well as further production in response to the hard drive request. [1] On August 11, 2008, [*12] the Court ordered Plaintiffs, inter alia, to certify that all documents responsive to the hard drive request had been produced, to produce a privilege log, and to provide a declaration from an information technology expert regarding the search done for documents on Plaintiffs' hard drive and other electronic media.

> 1 The amount of fees and costs sought in the motion for sanctions does not include time spent on the interrogatory issue.

Plaintiffs concede, as they must, that production from the hard drive in March and April 2008 was belated, but argue that the delayed search did not prejudice Defendants and that the late production did not cause Defendants to file their motion to compel. However, Plaintiffs' production of documents from their hard drive was not only late, thereby necessitating the hard drive request in the first place, but was also partially deficient, thereby causing Defendants to file the motion to compel. Specifically, there is no dispute that documents were missing from Plaintiffs' production in response to the hard drive request and that Plaintiffs did not substantively address the issue of the missing documents until *after* Defendants filed their motion to compel [*13] on June 20, 2008. Not until the time of their opposition to the motion did Plaintiffs provide a chart detailing the status of the missing documents and state that non-privileged documents would be produced, despite four earlier letters from Defendants prior to the filing of the motion to compel seeking Plaintiffs' explanation as to the missing documents, and Plaintiffs' counsel's statement at Kevin Keithley's May 9, 2008 deposition that he was reviewing documents for production. Even if, as Plaintiffs argue, Defendants filed their motion to compel without consulting Plaintiffs while the parties were on a discovery hiatus, Plaintiffs' deficient production and failure to timely respond to Defendants' letters would not be completely excused on that basis, particularly because the discovery hiatus was imposed after Defendants' letters. See Declaration of Jitendra Malik in Support of Defs.' Mot. to Compel (docket no. 567) at P 6; Ex. 1-4 (letters dated April 14, 2008, April 30, 2008, May 1, 2008 and May 2, 2008); Pls.' Opp. to Defs.' Mot. to Compel (docket no. 611) at 11 (stating that the parties agreed to the discovery hiatus on May 13, 2008). On the other hand, Defendants' letters, which [*14] apparently required extensive review of documents by Plaintiffs, were sent over a short period, and the parties had agreed to a discovery hiatus around that time. Plaintiffs were not entirely unreasonable in deciding to cease their review and production efforts in response to Defendants' letters for a time.

Because Defendants' motion to compel was not granted in full, the Court may apportion expenses pursuant to *Rule 37(a)(5)(C)*. Based on the facts described above, the Court apportions 50%, or $ 22,787.40, of the expenses to Plaintiffs as a sanction.

**E. $ 41,203.55**

Defendants seek $ 41,203.55 in fees and costs relating to the "cost of identifying missing PatentBridge documents, securing the declaration of Mark Holmes (CEO, PatentBridge) to refute Plaintiffs' claim that Holmes was operating as Mr. Keithley's counsel, the

meet and confers, the cost to file the moving and reply papers and argue at the hearing" on Defendants' July 18, 2008 Motion to Compel. Defendants state that in reviewing Plaintiffs' late produced documents, they found correspondence between PatentBridge and Kevin Keithley, and that those documents had not been listed on Plaintiffs' privilege log. Defendants obtained documents [*15] through a subpoena from PatentBridge and then filed a motion to compel these documents from Plaintiff. In that motion to compel, Defendants sought production of documents relating to PatentBridge on the grounds that Plaintiffs improperly asserted the attorney-client privilege with respect to those documents. On September 16, 2008, the Court granted in part Defendants' motion to compel with respect to the PatentBridge documents, holding that Plaintiffs waived the attorney-client privilege with respect to those documents, but that the waiver only applied to the documents that had already been produced.

Because Defendants' motion to compel was not granted in full, the Court may apportion expenses pursuant to *Rule 37(a)(5)(C)*. Here, Plaintiffs focus on the asserted lack of prejudice to Defendants resulting from the handling of the PatentBridge documents because upon learning of Mr. Holmes, Defendants were able to subpoena him before the original discovery cutoff, and were able to get his declaration to support their reply. More importantly, Plaintiffs note that Defendants received many documents they ordinarily might not have as a result of the Court's ruling on waiver.

Defendants respond [*16] that even though they were able to obtain documents and Mr. Holmes' declaration, they were precluded from engaging in further follow up with Mr. Holmes without sacrificing time that would have been better spent preparing for trial. Defendants should be compensated for the harm due to lack of time to conduct adequate discovery, but they have not justified recovery of fees and costs for the entire course of conduct leading up to the motion to compel. Rather, Defendants are only entitled to the fees and costs incurred for the re-depositions of Kevin Keithley and Sheldon Parker which resulted from the late production of the PatentBridge documents. This amount is addressed below in section 2.A. Otherwise, Defendants' request for costs under this category is denied.

**F. $ 144,122.51**

2

  2  This amount was revised upward in the November 13, 2008 summary of Defendants' billing records. See Summary of Billing Records at 21, n. 2.

Defendants seek $ 144,122.51 for fees and costs relating to "analysis of the Albagli certification, the meet and confers, cost to file the moving and reply papers and argue at the hearing [on the motion for sanctions], follow up activities of hearing (identifying relevant [*17] documents, responding to Plaintiffs' submission at October 17th hearing and drafting statement of incurred costs." These expenses encompass work done from April through November 2008.

After the August 5, 2008 hearing on Defendants' Motion to Compel Hard Drive, the Court ordered Plaintiffs to provide an explanation regarding the disposition of the documents identified by Defendants as missing from production. Plaintiffs produced Attorney David Albagli's certification in response to the Court's order. Defendants argue that a considerable amount of time was spent analyzing the Albagli certification, which Defendants argued contained several deficient explanations, some of which were noted by Defendants in their motion for sanctions. Plaintiffs argue that given the limited prejudice found by the Court relating to the late production, a request for the entire fees and costs for bringing the motion is not justified. Plaintiffs also note that Defendants could have cured any prejudice caused by the late production of documents by deposing Kevin Keithley, Sheldon Parker, Scott Tatro, Peter Bennett and Ron Keithley, and in fact Defendants did re-depose Kevin Keithley, Ron Keithley and Sheldon [*18] Parker after these documents were produced in 2008. Plaintiffs point out, however, that by the time the motion for sanctions was filed, discovery had closed and Defendants had therefore decided not to pursue depositions of third parties identified in the late production. Plaintiffs argue that Defendants should not be compensated for the prejudicial loss of opportunity, which Defendants chose to forego.

On November 6, 2008, the Court granted in part Defendants' motion for sanctions, holding that Plaintiffs' failure to timely produce documents and the loss of some documents had resulted in some prejudice to Defendants that warranted limited monetary sanctions, but did not justify evidentiary or terminating sanctions. Plaintiffs' failure to timely produce documents and to supplement

discovery requests pursuant to *Rule 26(e)* caused Defendants to incur expenses in bringing the motion for sanctions. As described above and in the Court's November 6, 2008 Order granting in part Defendants' motion for sanctions, however, even though Plaintiffs have not shown any substantial justification for the failure, the prejudice to Defendants was somewhat limited and Defendants only partially prevailed. **[*19]** See Nov. 6, 2008 Order at 5 (". . .some relevant documents were produced late, causing some prejudice, but far less than Defendants contend."); at 6 ("The resulting production of this electronic material, at least some of which is relevant, prejudices Defendants insofar as they were rushed to complete discovery.").

Accordingly, an award of sanctions for the entire amount of fees and costs incurred in bringing the motion for sanctions would be excessive. Defendants are, however, entitled to recover some of the fees and costs for bringing the motion for sanctions. According to Defendants' detailed summary of incurred fees and costs, Defendants incurred approximately $ 120,000 in fees and costs from August through November 2008 associated with the core functions of drafting, analyzing or preparing the motion for sanctions, rather than with more removed activities such as reviewing document production that took place from April through August 2008. The Court does not award this amount in full but reduces it to $ 90,000 because Defendants' Motion for Sanctions was only partially successful.

**2. Costs incurred in examining and trying to make use of late produced documents**

**A. $ 94,702.16**

Defendants **[*20]** seek fees and costs relating to "witness fees, subpoenaing, preparing for, and retaking depositions" of Kevin Keithley, Ron Keithley and Sheldon Parker, and attempting to depose Scott Tatro, Don Levy, Joe Novosel and Peter Bennett. The expenses were incurred as follows: (1) $ 11,606.00 for fees and costs associated with preparing documents for use at deposition, updating deposition indexes, configuring documents for use while attorneys travel, and other tasks related to organizing materials for deposition; (2) $ 72,281.71 for fees and costs associated with preparing for and taking the depositions of Kevin Keithley ($ 33,014.20), Ron Keithley ($ 31,925.91) and Sheldon Parker ($ 7,341.60); (3) $ 6,964.60 for fees and costs associated with coordinating, preparing and attempting to take Mr. Tatro's deposition; (4) $ 3,200.00 for costs associated with travel to attend depositions of Kevin Keithley, Ron Keithley, Sheldon Parker and Scott Tatro; and (5) $ 428.83 for costs associated with serving a subpoena on Sheldon Parker.

Specifically, Defendants re-deposed Kevin Keithley, Ron Keithley and Sheldon Parker to obtain testimony regarding the late produced documents. Defendants argue that they **[*21]** are entitled to all fees and costs associated with these depositions because the further depositions would not have been required had Plaintiffs timely produced the documents. Further, Defendants argue that their desire to minimize the travel burden by grouping depositions should not result in a reduced sanctions award. The Court agrees with Defendants that the bulk of the expenses comes from preparing for the depositions, which required rushed review of the late produced documents, and that the earlier depositions would likely have been different had all the documents been produced in a timely fashion.

Plaintiffs concede that some of the fees and costs associated with these depositions were incurred as a result of the late production, and that they stipulated to the additional depositions. Plaintiffs argue that the fees and costs for the depositions themselves should not be awarded, and that if those costs are awarded, they should be limited to 25% of the expenses sought to reflect the actual time spent at the depositions on the new documents. Plaintiffs have provided no support for this arbitrary percentage reduction. However, Plaintiffs argue, and the Court agrees, that Defendants' **[*22]** reimbursable expenses should be limited to the costs of a few nights' lodging. For example, Ron Keithley and Kevin Keithley were deposed on April 18 and 19, 2007, respectively, and again on May 8 and 9, 2008 and July 21 and 24, 2008, respectively, after further documents were produced. Plaintiffs note that in May, one of Defendants' counsel who conducted the depositions was already in California to attend a May 13, 2008 court hearing in this case. See Albagli Decl. P 7. Plaintiffs also note that in July, both attorneys who attended the Keithley depositions already had travel arrangements to be in California that week because a number of other depositions were being taken in this case. See Albagli Decl. P 8. Therefore, travel costs for these attorneys were not necessitated by the deposition, and only a few nights' hotel lodging is appropriately reimbursable. With respect to Sheldon Parker, Plaintiffs state that he was deposed on

May 22, 2007, and then again after the late produced documents on August 7, 2008 in Virginia for about two and one-half hours. See Albagli Decl. P 10. Plaintiffs note that there was another deposition in this case the next day in Washington, D.C. (see Albagli [*23] Decl. P 11), so the travel costs should be limited to one night's lodging in Virginia.

In the November 6, 2008 Order, the Court found little prejudice resulting from the inability to depose other third parties, including Scott Tatro, Don Levy and Peter Bennett. Specifically, the Court stated:

> Indeed, the primary prejudice claimed by Defendants is that they were unable to take important depositions from third parties such as Don Levy, Scott Tatro, Mark Holmes, Michael Starkweather and Peter Bennett as a result of the belated production. However, other factors led to some of these depositions not being taken. Moreover, the testimony that the witnesses could offer appears to be of such limited relevance that even if the documents had been produced earlier, Defendants might well have chosen to forego them under a rational cost/benefit approach to discovery.
>
> For example, the evidence shows that Defendants were unable to serve Mr. Levy with a deposition subpoena in July 2008 despite several attempts due to the facts that Mr. Levy was no longer at the address Defendants had for him, and that when Defendants obtained a business address, they discovered that Mr. Levy was out of town with his ill [*24] father during that time. See Second Supp. Taylor Decl. PP 4-11; Ex. 4-7. Defendants did not pursue his deposition after discovery closed on August 8, 2008, either through stipulation with Plaintiffs or through an extension of time from the Court.
>
> As to Mr. Tatro, Defendants argue that he has highly relevant information based on an October 2006 e-mail that he sent to Plaintiff Keithley stating that Plaintiff's *'025 patent* may be invalid in light of two earlier patents. See Malik Decl. Ex. 14. Yet Defendants' inability to depose Mr. Tatro flows from Mr. Tatro's hostility toward Defendants due to Defendants having filed a declaratory judgment action against him in 2007 relating to patents that are not at issue in this case. See Foxhall Decl. P 10. Ex. 9. Defendants' argument that he would have been less hostile had he been subpoenaed earlier in this case before he was actually sued by Defendants is not very persuasive as it assumes, inter alia, that he had no reason to expect to be sued. Moreover, Defendants did not refute Plaintiffs' point that one of the patents mentioned by Mr. Tatro was cited as prior art in Plaintiffs' *'025 patent* (see Oct. 17, 2008 Tr. at 16:17-19), rendering its [*25] importance to the validity analysis questionable. Moreover, Mr. Tatro's opinion about prior art would constitute extrinsic evidence, which is of limited value under Federal Circuit authority (see *Phillips v. AWH Corp., 415 F. 3d 1303, 1318-19 (Fed. Cir. 2005))*, and even less important than expert testimony. When questioned by the Court at the hearing, Defendants' counsel could not say whether they even wanted to proceed with Mr. Tatro's deposition. See Oct. 17, 2008 Tr. at 7:4-24 ("The Court: Do you even want to redepose [Tatro]? Mr. Orton: "I don't know, Your Honor. . . . The Court: So I would think as of today coming here to address me you would know whether you want to do it or not. Mr. Orton: "I don't, Your Honor.").
>
> \*\*\*
>
> Finally, as to Mr. Bennett, Defendants argue that he possessed highly relevant information based on a February 2005 e-mail exchange between Mr. Bennett and Plaintiff Keithley in which Mr. Bennett states that he has reviewed Plaintiffs' project and concluded that Plaintiffs should "refocus your design, the technologies and documentation," and that he was disengaging from the bidding

process with Plaintiff Keithley. See Malik Decl. Ex. 15. Again, to the extent that [*26] Mr. Bennett has an opinion regarding the validity of Plaintiffs' patent, any opinion would be merely extrinsic evidence, and even less useful extrinsic evidence than an expert's opinion. Moreover, the evidence shows that Defendants subpoenaed him in May 2008, before the discovery cutoff. See Second Supp. Taylor Decl. Ex. 8; Oct. 17, 2008 Tr. at 20:4-14. Further, the evidence shows that his unexpected personal problems, rather than anything that Plaintiffs did, derailed his deposition. See Taylor Decl. PP 12-20.

Nov. 6, 2008 Order at 6-8.

With respect to Scott Tatro, Defendants argue that had they known about Mr. Tatro four years earlier, before he became involved in litigation against Defendants, Defendants would have been able to depose him. However, it is not at all clear to the Court that Mr. Tatro would have cooperated had Defendants contacted him earlier in this case. Defendants only argue that they have been deprived of the ability to find out how willing Mr. Tatro would have been to cooperate with Defendants before he had a reason not to. Also, Plaintiffs point out that Defendants did not seek to enforce the deposition subpoena against Mr. Tatro, showing that Mr. Tatro's deposition [*27] was not very important. Further, it appears that Mr. Tatro would have been able to provide only extrinsic, nonexpert testimony, which would have been of limited value in this patent infringement matter. Accordingly, expenses related to Defendants' attempts to depose Mr. Tatro are denied pursuant to *Rule 37(c)(1)* because the inability to depose him was harmless.

Defendants also seek fees and costs associated with attempting to depose third parties such as Don Levy, Jose Novosel and Peter Bennett. With respect to Mr. Novosel, the Court has previously ruled that communications between Mr. Novosel and Kevin Keithley were privileged, so any deposition would not have yielded much discoverable information. See Aug. 4, 2008 Order Regarding In Camera Review of Documents from Plaintiffs' Privilege Log. With respect to Mr. Bennett, Defendants did not seek to enforce the subpoena against him. Moreover, as described above, the Court has already found that these witnesses would have limited, if any, relevant evidence, and that the failures to depose them did not necessarily arise from Plaintiffs' late production. Therefore, the inability to depose Mr. Bennett and Mr. Levy was harmless. To the extent [*28] that Defendants also seek costs associated with attempting to depose Michael Starkweather and Mark Holmes, the inability to do so was also harmless. Defendants unilaterally cancelled Mr. Starkweather's deposition when Defendants' counsel was informed while at the airport that Plaintiffs' counsel would not attend, apparently agreeing with Plaintiffs as to the insignificance of his deposition. In addition, Mr. Holmes was cooperating with Defendants and therefore could have been deposed, but Defendants chose not to do so.

Accordingly, the Court awards the expenses attributable to the Kevin and Ron Keithley and Sheldon Parker depositions ($ 72,281.71), the costs of preparing the documents for deposition ($ 11,606.00), and the subpoena costs for Mr. Parker ($ 428.83). Defendants are also entitled to the costs of the additional nights' lodging for the re-depositions of Kevin Keithley, Ron Keithley and Sheldon Parker as discussed above. Defendants shall provide evidence of their expenses for this lodging to Plaintiffs, which Plaintiffs shall also pay.

**Conclusion**

Accordingly, the Court awards monetary sanctions as stated in this Order in the amount of $ 205,507.53 plus the expenses of the additional [*29] nights' lodging as described above.

**IT IS SO ORDERED**.

Dated: January 7, 2009

/s/ Elizabeth D. Laporte

ELIZABETH D. LAPORTE

United States Magistrate Judge