| | |
|---|---|
| 1 | I. NEEL CHATTERJEE (STATE BAR NO. 173985)<br>nchatterjee@orrick.com |
| 2 | JULIO C. AVALOS (STATE BAR NO. 255350)<br>javalos@orrick.com |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1000 Marsh Road |
| 4 | Menlo Park, CA 94025<br>Telephone: +1-650-614-7400 |
| 5 | Facsimile: +1-650-614-7401 |
| 6 | THOMAS J. GRAY (STATE BAR NO. 191411)<br>tgray@orrick.com |
| 7 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>4 Park Plaza |
| 8 | Suite 1600<br>Irvine, CA 92614-2558 |
| 9 | Telephone: +1-949-567-6700<br>Facsimile: 949-567 6710 |
| 10 | |
| 11 | Attorneys for Plaintiff<br>FACEBOOK, INC. |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STUDIVZ LTD., HOTLZBRINCK NETWORKS GmBH, HOLTZBRINCK VENTURES GmBH, and DOES 1-25,<br><br>　　　　　Defendant. | Case No. 5:08-cv-03468 JF<br><br>**FACEBOOK, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Date: March 3, 2009<br>Time: 10:00 a.m.<br>Room: Courtroom 2, 5th Floor<br><br>Judge: Honorable Magistrate Judge Howard R. Lloyd, for Discovery Purposes |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

    A. Nature of the Dispute; Facebook Requires Evidence Of Defendants' "Accessing" Of Facebook .................................................................... 2

    B. Defendants Agree Then Refuse To Produce "Access" and "Development" Discovery ........................................................................ 3

    C. Defendants Agree Then Refuse To Allow "Access" and "Development" Deposition Testimony ................................................................ 5

III. SANCTIONS AGAINST FACEBOOK ARE NOT WARRANTED ............................. 11

    A. The Cases Cited By Defendants Do Not Justify Sanctioning Facebook .............. 11

    B. Facebook Has Acted In Good Faith And Was Justified In Cancelling The Depositions ........................................................................... 13

        1. Facebook Repeatedly Attempted To Clarify The Scope Of The Depositions And Raised It Concerns Well Before Mr. Smith Boarded The Flight To Germany .................................................. 13

        2. Access Of Facebook's Website And Intellectual Property Is An Important Issue With Respect To Personal Jurisdiction Discovery .......... 14

        3. Facebook Was Justified In Cancelling Mr. Weber's Deposition .............. 15

    C. Mr. Smith Boarded The Plane To Germany At His Own Peril Knowing There Was No Agreement Regarding The Scope Of The Depositions ................ 15

IV. CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Calder* v. *Jones*,
    465 U.S. 783, 104 S.Ct. 1482 .................................................................. 3, 4, 5, 6, 8, 9, 15

*Delozier* v. *First Nat'l Bank of Gatlinburg*,
    109 F.R.D. 1612 ........................................................................................................ 12

*Donini Int'l, S.P.A.* v. *Satec LLC*,
    2006 U.S.Dist. LEXIS 11416 .................................................................................... 12

*Luna Gaming-San Diego LLC* v. *Dorsey & Whitney LLP*,
    2009 U.S.Dist. LEXIS 5906 ...................................................................................... 11

*Pine Lakes Int'l County Club* v. *Polo Ralph Lauren Corp.*,
    127 F.R.D. 471 .......................................................................................................... 12

*Renfro* v. *Spartan Computer Services, Inc.*,
    2008 U.S.Dist. LEXIS 19912 .................................................................................... 12

*Schulz* v. *Talley*,
    1991 U.S.Dist. LEXIS 20071 .................................................................................... 12

## I. INTRODUCTION

Defendants' Motion for Sanctions is without merit. At all times Facebook has acted in good faith and was justified in cancelling the depositions of Messrs. Brehm and Weber. Defense Counsel, however, was a victim of his own gamesmanship and unprofessional behavior, behavior that is itself the subject of a pending motion for sanctions before the Court. By his own recollection, five days before the start of any scheduled depositions, Defense counsel wrote and sent an email in which he stated that "no agreement" had been reached as to the one condition necessary for two depositions scheduled for the following week to take place. After sending this email and therefore necessarily being fully aware of the uncertainty surrounding the scheduled depositions, Defense counsel inexplicably boarded a plane for Germany. Counsel's reasons for doing so are unknown, to Facebook, although given his sanctionable behavior to this point, it seems clear that he intended to have Facebook incur the cost of flying to Frankfurt and then forcing Facebook to waste its time in pursuing two pointless depositions. Facebook's decision not to travel to Germany for the scheduled depositions is not sanctionable. Indeed, it would have been unreasonable and illogical to travel around the world to attend depositions for which even the most basic element—the proper scope of questioning—remained in flux. Facebook cancelled the deposition with adequate notice and significant justification.

For months, the parties have been unable to agree on the proper scope of personal jurisdiction discovery. Defendants have negotiated in bad faith, one day representing that the production of relevant discovery was imminent, the next stating that no such representation had ever been made or insisting that they would not comply with their discovery obligations unless Facebook first waived its right to ever move to compel additional discovery. Included within this ongoing dispute was the proper scope of deposition testimony for two personal jurisdiction witnesses. The depositions were scheduled to take place in Frankfurt, Germany on January 12 and 13, 2009. Given the ongoing discovery disputes—and the fact that Defendants were withholding all relevant personal jurisdiction documents—Facebook felt it prudent and beneficial to all involved if the parties were to reach an agreement as to the proper scope of deposition testimony prior to counsel flying to Germany to attend the depositions. Due to Defense

1 Counsel's own unavailability throughout the holiday season, the parties were unable to discuss
2 details regarding the scope of the depositions until Tuesday, January 6, the day before
3 Defendants' counsel left for Germany. At this meet and confer, which lasted nearly two hours,
4 Defense Counsel made various representations as to the scope of questioning which he would
5 agree to. Facebook felt that a compromise had been reached. The following day, Facebook
6 counsel sent an e-mail to Defendants stating (i) that prior to the January 6 conference, Facebook
7 had thought it likely that the depositions would need to be cancelled given the lack of agreement
8 as to the proper scope of personal jurisdiction testimony; but that (ii) based on the agreement
9 reached during the January 6 conference, the depositions would move forward. Defense counsel
10 responded by writing that no such agreement had been reached. For reasons unknown to
11 Facebook, shortly after writing this email—which explicitly recognized the parties had not
12 reached an agreement as to the critical issue – Defense counsel boarded a plane from Los Angeles
13 to Germany.

14 Facebook was forced to cancel the depositions the next day, only after Defense counsel
15 himself reneged on the agreement that would allow the depositions to move forward and refused
16 to meet and confer any further to see if a resolution could be reached. This is hardly sanctionable
17 conduct and Facebook accordingly requests that the Court deny Defendants' Motion for
18 Sanctions.

## II. STATEMENT OF FACTS

### A. Nature of the Dispute; Facebook Requires Evidence Of Defendants' "Accessing" Of Facebook

For months, the parties have attempted to resolve an ongoing dispute as to the proper scope of "personal jurisdiction discovery." As has been briefed in Facebook's Motions to Compel and for Sanctions pending before the Court, *see* Docket Nos. 91 and 86, respectively, Facebook alleges that Defendant StudiVZ Ltd. ("StudiVZ") illegally accessed Facebook's California-based servers and website in order to steal valuable intellectual property contained thereon which it then used in the development of a copycat knockoff website located at www.studivz.net. *See* Declaration of Julio C. Avalos In Support of Facebook's Opposition to

Defendants' Motion for Sanctions ("Avalos Decl.") ¶ 2. Facebook further alleges that Defendants Holtzbrinck Networks GmbH and Holtzbrinck Ventures GmbH (herein collectively referred to as the "Holtzbrinck Defendants") purchased StudiVZ with knowledge of StudiVZ's illegal activity and then contributed to and furthered StudiVZ's infringing behavior, including spearheading the development of a network of knockoff websites all infringing on Facebook's intellectual property. Unsurprisingly, the issue of StudiVZ's "accessing" of the Facebook site is central to both Facebook's jurisdictional and substantive arguments. Facebook believes that it is therefore entitled to discovery relating to StudiVZ's access of the Facebook website and the use of intellectual property stolen by way of that access in the creation, development, implementation and continued maintenance of the StudiVZ websites. Evidence that Defendants used Facebook's intellectual property to design and develop their company websites will establish that this Court has jurisdiction over Defendants pursuant to the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984).

### B. Defendants Agree Then Refuse To Produce "Access" and "Development" Discovery

On October 22, 2008, Defendants moved to dismiss Facebook's Complaint for lack of personal and *forum non conveniens*. In support of these motions, Defendants offered sworn declarations from Martin Weber and Michael Brehm, witnesses for the Holtzbrinck Defendants and StudiVZ, respectively.

On October 31, 2008, Defendants filed a Motion for Protective order seeking to stay discovery not related to "material issues in dispute regarding personal jurisdiction." *Id*. ¶ 3. On November 26, 2008, the parties conducted the first substantive meet and confer with respect to Facebook's discovery requests. *Id*. ¶ 4. Defendants' counsel, Stephen S. Smith, stated that with respect to discovery requests aimed at evidence relating to StudiVZ's accessing and copying of the Facebook website, he was considering stipulating to the fact that StudiVZ had intentionally accessed the Facebook website and "done what you claim they did." *Id*. Mr. Smith stated that he would produce the names, Facebook user accounts and other information related to StudiVZ's accessing of Facebook. *Id*. Specifically, Mr. Smith stated that he was "willing to give accounts

OHS West:260609109.2 - 3 - FACEBOOK'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO.: 5:08-CV-03468

1  used in the scope of StudiVZ, not all employees who have a Facebook account." *Id*. Later, Mr.
2  Smith said, "I think it's going to be undisputed that those people that had user accounts and used
3  them in connection with their employment did at least what you claim they did. We'll have a
4  huge fight as to whether that violates the anti-hacking statute. It's going to be undisputed that
5  there were some users who accessed Facebook." *Id*. ¶ 5. Mr. Smith stated that he "think about"
6  whether he would agree to produce discovery evidence related to his representations. *Id*.

Based on Mr. Smith's statements, Facebook believed that some headway had been made in resolving the "personal jurisdiction discovery" impasse. At the December 16, 2008 hearing on Defendants' Motion for Protective Order, Mr. Smith reaffirmed that he believed that Facebook was entitled to discovery that touched on both personal jurisdiction and the merits of this case. *Id* ¶ 8. Mr. Smith withdrew Defendants' request for a discovery stay. *Id*. Facebook was optimistic that the parties could resolve the dispute regarding personal jurisdiction discovery. *Id*. Unfortunately, Facebook's optimism was short-lived.

On December 18, 2008, StudiVZ produced a set of discovery consisting of 198 pages made up almost entirely of one contract. *Id*. ¶ 9. The Holtzbrinck Defendants produced a total of nine, heavily-redacted pages. *Id*. Neither production contained emails, letters nor communications of any kind. *Id*. Despite Mr. Smith's earlier representations regarding forthcoming evidence of StudiVZ's accessing and copying of Facebook's intellectual property, no such discovery was produced. *Id*. During subsequent meet and confers, Mr. Smith claimed that Facebook was either not entitled to "access" discovery or, in the alternate, that it was entitled to such discovery but that Defendants' would only produce it if Facebook agreed to waive its right to any additional discovery on the issue. *Id*. On January 6, 2009, Mr. Smith stated further that no "access" or "development" documents would be produced unless those documents also evidenced some additional predicate act related to Facebook's causes of action. *Id*. ¶ 13. For instance, a document demonstrating StudiVZ's accessing of Facebook in the course and conduct of StudiVZ business would not be produced unless it also contained some sort of smoking gun evidence that copying had also taken place. *Id*.

On January 27, 2009, based on Defendants' flip-flopping, contradictory statements and

1  overall inappropriate discovery tactics, Facebook was forced to move to compel adequate

2  discovery responses.  Docket No. 91.  Facebook also moved for sanctions based on Defendants'

3  continued bad faith discovery abuses.  Docket No. 86.

### C. Defendants Agree Then Refuse To Allow "Access" and "Development" Deposition Testimony

Together with their meet and confer efforts relating to the scope of personal jurisdiction discovery, the parties had also been negotiating the depositions of Messrs. Brehm and Weber, declarants on Defendants' Motions to Dismiss. *Id.* ¶¶ 11-13, 16.  Defendants advised Facebook that Mr. Brehm would be traveling around the world for three months beginning approximately January 14, 2009.  *Id.* ¶ 7.  Accordingly, the parties agreed to schedule the depositions before Mr. Brehm left.  *Id.*  On December 8, 2008, counsel for Facebook confirmed Defendants' offer to hold the depositions of Messrs. Brehm and Weber on the week of January 12, 2009 in Frankfurt, Germany.  *Id.*  At the time this agreement was made, Facebook continued to rely on the representations made by Mr. Smith at the November 26, 2008 meet and confer that Defendants would be producing discovery relevant to StudiVZ's accessing of the Facebook website and intellectual property.  *Id.*  However, after Defendants reneged on this offer, it became clear to Facebook's counsel that confirmation was needed regarding the scope of testimony Messrs. Brehm and Weber would be permitted to offer at their respective depositions.  *Id.* ¶ 9.

On December 23, 2008, the parties held a meet and confer to discuss their ongoing disputes.  *Id* ¶ 10.  Mr. Smith, lead counsel for Defendants, was unable to join the call.  *Id.*  In his place was his partner, William Walker, who professed to having an imperfect understanding of the status of the case and of the outstanding disputes.  *Id.*  Mr. Walker stated that a follow-up meet and confer should be held the following week and that he would try to contact Mr. Smith prior to that conference.  *Id.*  When the parties reconvened on December 30, Mr. Walker stated that he had not be able to speak with Mr. Smith or with Defendants, who were also on holiday until January.  *Id.* ¶ 11.  Facebook counsel asked Mr. Walker whether it was now Defendants' position that Facebook was not entitled to any discovery that touched simultaneously on jurisdiction and merits-related issues.  *Id.* ¶ 12.  Mr. Walker stated that this was not Defendants'

position, but that neither he nor Defendants was persuaded that discovery relating to the development and implementation of the StudiVZ website was relevant to a personal jurisdiction analysis. *Id*.

Facebook's counsel then stated that it sounded like the parties were at an impasse relating to the meaning of "personal jurisdiction discovery." *Id*. Facebook's counsel asked what "personal jurisdiction" topics Messrs. Brehm and Weber would be allowed to testify to. *Id.* ¶ 11. Mr. Walker responded that it was his understanding that they would be able to testify to the personal jurisdiction topics raised in their respective declarations made in support of Defendants' Motions to Dismiss. *Id*. The topics covered in these declarations related to general jurisdiction issues such as, among other things, a lack of property owned in California, a lack of licenses to do business in California and the fact that Defendants had never advertised in California. *Id*. ; *see also* Dkt. # 46 and 47. Mr. Walker indicated that he did not believe the witnesses would testify about accessing Facebook's website or Facebook's intellectual property. *Id.*

Based on Mr. Walker's statement, Facebook's outside counsel, Tom Gray, was concerned about the scope of the testimony and whether it made sense to conduct the deposition if Defendants were going to unilaterally and improperly limit the scope of the deposition. Therefore, on December 31, 2008, Mr. Gray emailed Mr. Smith and Mr. Walker to have an additional meet and confer session regarding, among other things, the scope of the deposition testimony of Messrs. Brehm and Weber. Specifically, Mr. Gray stated:

> In addition, yesterday Bill advised that Messrs Brehm and Weber were being offered as "personal jurisdiction" witnesses. We need to clarify if these witnesses are also being offered to testify as company witnesses regarding the topics set forth in Facebook's 30(b)(6) deposition notices that were served on Defendants in October. If not, we need to iron out what Messrs. Brehm and Weber will be prepared to testify about on Jan 12 and 13 - beyond the statements made in their declarations. Also, if not Messrs. Brehm and Weber, will SVZ offer other witnesses to testify on Jan 14 and/or 15 regarding the topics set forth in the 30(b)(6) notice? Obviously, we want to make the trip to Germany as productive as possible for all concerned.

Gray Decl. ¶ 2. Since Mr. Smith was still unavailable and Defendants were also on holiday until January 5, 2009, the meet and confer session was scheduled for January 6, 2009 in order to give

1  Mr. Smith a chance to discuss the various issues with his clients. As it turned out, this was the
2  day before Mr. Smith intended to fly to Germany – giving the parties a very small window of
3  opportunity to resolve their differences as to the scope of the deposition testimony.

4  On January 6, 2008, the parties held the meet and confer session and began by discussing
5  the upcoming depositions of Messrs. Brehm and Weber. Avalos Decl. ¶ 13. Given Mr. Walker's
6  representation of the discovery topics that these witnesses would be permitted to testify to and the
7  apparent gulf between the parties as to the proper metes and bounds of personal jurisdiction
8  discovery, Facebook counsel Tom Gray expressed concern that his trip to Germany to depose
9  Defendants' witnesses would be a waste of time and resources. *Id*. As Mr. Gray stated, "I don't
10 want to fly to Germany and find out that I'm not going to get answers. It sounded from my
11 conversations with Bill [Mr. Walker], that these guys were only going to testify about stuff in
12 their declarations. We want to ask him about his knowledge about [StudiVZ founders] [Dennis]
13 Bemmann, [Ehssan] Dariani, if they had access to Facebook source code to develop the site,
14 etc."[1] *Id*. While Mr. Gray did not "threaten" to cancel the depositions, he clearly indicated that
15 the scope of the depositions was a critical issue and that if the parties could not resolve the issue it
16 did not make sense to fly to Germany to conduct the depositions.

17 Mr. Smith stated that he would "allow" Mr. Weber, the witness for the Holtzbrinck
18 Defendants, to testify to his knowledge of StudiVZ's accessing of Facebook. Specifically, in
19 response to Mr. Gray's question, Mr. Smith then said, "Well – I'm willing to allow – No, you
20 know what? I'm willing to allow him to testify about that fully. Period. I think I'm willing to
21 allow him to testify about that fully. Period. I think I'm willing to allow him to testify about that.
22 I could fight you on this, but I don't have any particular reason to." Avalos Decl. ¶ 13. Mr.
23 Smith was so accommodating with respect to Mr. Weber because, as he later conceded, he
24 doubted that Mr. Weber knew anything about the topic. *Id*. ¶ 13.

25 After discussing Mr. Weber's deposition, the January 6, 2009 session then shifted to a
26 long and detailed discussion about what documents Defendants would produce. Avalos Decl. ¶¶

---

[1] Defendants have claimed that the two StudiVZ founders are no longer under their control and that they have no power to produce them as witnesses.

14, 15. Again, Mr. Smith refused to produce any design and development documents related to StudiVZ's accessing of Facebook's website or code – unless Facebook agreed to Defendants' narrow restrictions and waived its right to seek or compel additional documents. Specifically, Mr. Smith would agree to produce "smoking gun" evidence of StudiVZ's copying of Facebook's website or intellectual property. Facebook believed (and still believes) that it is entitled to a broader range of documents and refused to agree to Defendants' improper limitations. Due to this impasse related to document discovery the parties recognize that Facebook would have to file a motion to compel Defendants to produce documents. *Id*. ¶ 15.

The conference then focused on Mr. Brehm's testimony. Avalos Decl. ¶ 16. Mr. Brehm was an early employee of StudiVZ and has at times been referred to as a founder of StudiVZ, along with Messrs. Dariani and Bemmann. Clearly, as a "co-founder", Mr. Brehm has substantial knowledge about StudiVZ's early development of its website, including StudiVZ's access of Facebook's site and code in order to "model" the StudiVZ website after Facebook. Even though the parties had already reached their impasse related to document discovery, they had a lengthy discussion of the scope of Mr. Brehm's testimony. Mr. Smith indicated that he would refuse to allow Mr. Brehm to testify generally as to the design and development issues and StudiVZ's accessing of Facebook's website and/or code. During the discussion, Mr. Smith seemingly relented a bit and stated that he might try to limit any testimony regarding the accessing of Facebook to that which also had an additional predicate act such as "copying." *Id*. However, Mr. Smith said, "I'm using a broad definition of copying. I'm not going to slice it that thinly." *Id*. Mr. Smith then stated that it didn't necessarily have to "copying," but that testimony relating to access of Facebook or the development of the StudiVZ website would have to "link" in some way with causes of action plead in Facebook's Complaint. *Id*. Therefore, it appeared to Facebook's counsel that some relevant testimony would be gained regarding the *Calder* effects test issues and that the depositions could go forward. Importantly, this discussion and apparent agreement regarding Mr. Brehm's deposition occurred **after** the parties had already concluded that Facebook would have to file a motion to compel to get relevant documents from StudiVZ.

The parties then discussed Facebook's interrogatories. As with the document requests,

1  Defendants refused to answer interrogatories related to StudiVZ's accessing Facebook's site and
2  intellectual property.  Avalos Decl. ¶¶ 13-15.

3  Facebook would have to file a motion to compel to get responses to such interrogatories.
4  *Id.*  Significantly, at no time during the January 6, 2009 meet and confer session did Mr. Smith
5  indicate that his position with respect to documents and interrogatories would also apply to the
6  deposition testimony of Messrs. Brehm and Weber.  Indeed, throughout the telephone call he
7  seemed to take a different position with respect to the depositions compared to the documents,
8  which made sense in light of the different nature of depositions versus document discovery.
9  Because of Mr. Smith's seemingly different positions vis-à-vis the deposition testimony versus
10 the written discovery both Mr. Gray and Mr. Avalos believed that an agreement had been reached
11 as to the scope of Mr. Brehm's and Mr. Weber's testimony.[2]  Avalos Decl. ¶¶ 16 and 19.  In light
12 of the apparent agreement, Facebook's counsel began preparing for the upcoming depositions.
13 Indeed, combined Mr. Gray and Mr. Avalos spent numerous hours reviewing filings and exhibits,
14 investigating and otherwise preparing for the depositions.  Avalos Decl. ¶ 19; *see also*
15 Declaration of Thomas J. Gray In Support of Facebook's Opposition to Defendants' Motion for
16 Sanctions ("Gray Decl."), ¶ 3.  As it turns out, Facebook incurred thousands of dollars of attorney
17 fees that were essentially wasted because Mr. Smith later claimed that an agreement was never
18 reached during the January 6 meet and confer session.

19 The following day, January 7, 2009, Facebook counsel Mr. Gray sent an email to Mr.
20 Smith regarding the following week's depositions.  The email contained the deposition notices for
21 Messrs. Brehm and Weber and stated, in relevant part:

> I might add that I was concerned that we might not go forward with
> the depositions based on the meet and confer that I had with Bill
> Walker last week.  Based on Bill's statements, it seemed like you
> were only going to allow Messrs. Brehm and Weber to testify about
> issues raised in their declarations filed in support of the defendants'
> motion.  It makes sense to go forward with the depositions,
> however, based on your comments yesterday that you would allow

---

[2] To be clear, Facebook believed (and still believes) that it was entitled to ask a much broader range of questions and get complete responses from Messrs. Brehm and Weber.  But, in order to advance the otherwise stalled discovery on these issues, and get some information that could assist in opposing Defendants' motions to dismiss, Facebook agreed to Defendants' improper limitations as to the scope of the deposition testimony.

> the witnesses to testify about whether StudiVZ's [sic] accessed the
> Facebook site or IP in order to copy (to be loosely defined) the
> Facebook site or in furtherance of the other claims alleged by
> Facebook in the complaint. I appreciate your clarification
> regarding that issue.

Avalos Decl. ¶ 17. Mr. Smith responded, also via email, challenging Mr. Gray's summary of the meet and confer. "You are again mischaracterizing what I offered to do as an 'agreement,'" Mr. Smith began. "I do not know how many more times I could have possibly repeated the point – I was willing to agree to a limitation on scope along the lines of what you describe below <u>if and only if</u> you also agreed. I am not and have never been willing to agree, only to have you not agree and move to compel anyway . . . So at the moment, **there is no agreement on questions related to access**." *Id*. ¶ 18. Counsel for Facebook, both Mr. Gray, as well as Julio Avalos, who also participated in the January 6, 2009 meet and confer session, were both shocked by Mr. Smith's claim that no agreement had been reached as to the scope of the depositions. Avalos Decl. ¶ 18; Gray Decl. ¶ 4.

Rather than call Facebook's counsel to clarify if an agreement could be reached, Mr. Smith admits that he sent this email and then "left for the airport." Motion for Sanctions (Dkt. 83) 4:8-9.

After receiving Mr. Smith's email, Mr. Gray responded, stating that he was surprised by Mr. Smith's message and that he "truly thought we made some progress yesterday and that it made sense to go forward with the depos." Gray Decl. ¶ 4. Mr. Gray continued, "We had lengthy discussions about the Weber and Brehm depos and even discussed questions that you thought were ok. As to Weber, you seemed comfortable with all questions related to access (presumably bc he doesn't know anything about what StudiVZ did). You never stated that the depo testimony was contingent on working out an agreement as to all discovery, including doc requests and rogs. Anyway, if that is your position now, it is news to me." *Id*. Mr. Gray then wrote that "it does not look good for the depositions going forward based on your newly asserted position, we should talk tomorrow morning to see if we can salvage this." *Id*.

On January 8, 2009, Mr. Smith responded, "I just landed in Germany and am on my way to the hotel. I did not sleep well (i.e. at all) on the plane and want to go to bed. I told you that I

was flying out Wednesday evening. Why can't this wait until tomorrow?" *Id.* ¶ 5. Mr. Gray responded, "I am sorry you did not sleep well on the plane, but at this point it is already Thurs. and we need to resolve this (if possible) ASAP so we all know whether these depos are going forward Mon and Tues. At this point it doesn't look good based on your email last night. I don't think we can wait until tomorrow. If you want to talk later after you have had a chance to rest, let me know." *Id.* ¶ 5.

Mr. Smith never called. Rather, he took the time to write a multi-page email disagreeing with Facebook's version of agreements made as to the scope of the depositions and threatening sanctions against Facebook for costs and fees incurred in flying to Germany. *Id.* ¶ 6. He then apparently went to bed. *Id.* In light of Mr. Smith's refusal to meet and confer further about the depositions, that same day, January 8, 2009, Mr. Gray responded by confirming that Facebook counsel would not be flying out to Germany for the January 12 and 13 depositions. *Id.* Defendants were clearly not going to change their position, that "no questions about access" would be allowed.

### III. SANCTIONS AGAINST FACEBOOK ARE NOT WARRANTED.

#### A. The Cases Cited By Defendants Do Not Justify Sanctioning Facebook.

Federal law is squarely against Defendants' Motion. Accordingly, Defendants are forced to rely on dated, non-binding, out-of-circuit case law that is either inapplicable, distinguishable or simply at odds with more recent precedent. Federal law holds that sanctions under Rule 30(g) should only be applied where a deposition has been cancelled in bad faith or without sufficient justification. *See, e.g.*, *Luna Gaming-San Diego LLC v. Dorsey & Whitney LLP*, 2009 U.S. Dist. LEXIS 5906, *6 - *15, Case No. CV-2804-BTM (S.D. Cal. Jan. 27, 2009). In *Luna-Gaming*, counsel cancelled a scheduled deposition at the "last minute" the day before it was to take place. *Id.* at *9. The court held that "there was no bad faith or dilatory conduct," that counsel had a "sufficient justification" for cancelling the depositions on such short notice (a sudden illness), and that therefore sanctions or cost-shifting were inappropriate. *Id.* at *9-*10. As the Court summarized: "Many parties have to travel for depositions and it should be accepted as part of the costs of litigation." *Id.* at *10.

1    In a case with facts similar to those at issue here, the Southern District of New York similarly held that sanctions related to a cancelled deposition were inappropriate even where defendant attempted to cancel a deposition on two days' notice and where plaintiffs' counsel mistakenly still flew to the Netherlands to attend the deposition. *Donini Int'l, S.P.A. v. Satec LLC*, 2006 U.S. Dist. LEXIS 11416, *22-*23, Case No. 03 Civ. 9471 (S.D.N.Y. March 16, 2006). Courts throughout the United States have consistently denied Rule 30(g) sanctions where the cancellation, even on short notice, was otherwise justified. *See*, *e.g.*, *Renfro v. Spartan Computer Services, Inc.*, 2008 U.S. Dist. LEXIS 19912, *5 (D. Ka. March 6, 2008) ("While counsel for defendants cancelled the deposition of [witness] one day prior to the originally scheduled date, the reason for cancellation was justified under the circumstances."); *Schulz v. Talley*, 1991 U.S. Dist. LEXIS 20071, *14-*16, Case No. 90-0084-CV-W-8 (W.D.Mo. March 25, 1991) ("The court finds that even though it may award attorney's fees and reasonable expenses, it will not do so in this case because it appears that plaintiffs' counsel genuinely tried to notify defendants' counsel that the deposition was cancelled.").

Defendants' dated cases are irrelevant here. For instance, in *Pine Lakes Int'l County Club v. Polo Ralph Lauren Corp.*, 127 F.R.D. 471, 472 (D. S.C. 1989), the noticing party called to cancel the deposition the night before it was scheduled to take place but did not speak to anyone, left a voicemail that made no mention of the cancellation, and provided no reasonable justification for the cancellation. 127 F.R.D. at 472.

The credibility of Defendants' statement that "[c]ourts routinely include attorney's fees for the preparation of, and travel to, depositions as a sanction against parties who notice depositions that then do not go forward," is questionable, given the fact that Defendants are able to martial only a twenty-three-year-old Eastern District of Tennessee case as evidence of this "routine" practice. Def. Mot. for Sanctions 8:22-25, *citing*, *Delozier v. First Nat'l Bank of Gatlinburg*, 109 F.R.D. 1612, 165-66 (E.D. Tenn. 1986). Even Defendants' reliance on *Delozier* is misplaced. In that case, the deposition did in fact go forward and the sanction was for withholding of necessary documents at the deposition. 109 F.R.D., at 165-66.

In this case, Facebook acted in good faith to resolve the parties' dispute as to the scope of

depositions and only cancelled the depositions when Denfendants refused to discuss the subject – four days before the depositions. Based on the facts here, sanction against Facebook are not warranted.

**B. Facebook Has Acted In Good Faith And Was Justified In Cancelling The Depositions**

**1. Facebook Repeatedly Attempted To Clarify The Scope Of The Depositions And Raised It Concerns Well Before Mr. Smith Boarded The Flight To Germany.**

As set forth above, Facebook raised the issue as to the scope of the deposition testimony during the meet and confer process in December. When the depositions of Messrs. Brehm and Weber were initially set up in early December, Facebook believed that Defendants would be producing documents related to StudiVZ's access of Facebook's site and code to design and develop the infringing StudiVZ sites. After Defendants produced their minimal amount of document on December 18, 2008, it became clear that Defendants were going to withhold such documents and that Facebook would not have them prior to the depositions in Januaary. In light of this development, Facebook was eager to address and explicitly lay out the proper scope of personal jurisdiction deposition testimony. Accordingly, it met and conferred with Defendants on December 23, but Mr. Smith was unavailable.

During the meet and confer on December 30, 2008, Facebook raised the issue of the scope of Messrs. Brehm's and Weber's testimony. The answer from Defendants was less than satisfactory. Therefore, on December 31, 2008, Facebook specifically raised the question of whether it "made sense" to go forward with the depositions. During the January 6, 2009 meet and confer Facebook reiterated that it did not make sense to travel halfway around the world to conduct the depositions if Defendants' counsel was not going to allow the witnesses to testify as to StudiVZ's access of Facebook's site and intellectual property – issues central to Facebook's opposition to Defendants' motion to dismiss. of the depositions of Messrs. Brehm and Weber. Accordingly, they began preparing in earnest for the depositions, and incurred thousands of dollars in attorneys' fees. Fees that could have been avoided if Mr. Smith – Defendants' counsel – had stated during the January 6 session that there was no agreement. Mr. Smith inexplicably

remained silent, despite his supposed belief that no agreement was reached. Not until Facebook attempted to confirm the agreement did he claim that the parties actually never agreed to the scope of the deposition. This was **before** he went to the airport. Despite knowing that no agreement had been reached and knowing that this was an important issue for Facebook, Mr. Smith failed to call Facebook's counsel to either resolve the issue or conclude that the depositions should be cancelled. He simply boarded the plane.

Once in Germany, Mr. Smith then refused to call Mr. Gray to discuss the issue. Mr. Gray remained willing to try to reach an agreement and go forward with the depositions. Only after Mr. Smith refused to discuss the issue was Facebook forced to cancel the depositions – four days **before** the first deposition was scheduled to occur.

Defendants attempt to use against Facebook the fact that Facebook's counsel did not make any "threats" to cancel the depositions during the meet and confer process. But threats were not needed. Facebook, in good faith, raised the issue, the parties discussed the issue, and Facebook believed an understanding had been reached during the January 6, 2009 meet and confer session. Along those lines, Facebook's counsel was not aware of Defendants' counsel's travel plans during the January 6 meet and confer or the January 7th exchange of emails. Defendants' travel plans simply were not an issue because Facebook's counsel believed an understanding had been reached and that he too would soon be flying to Germany. Not until Defendants' counsel stated in an email on January 8th did Facebook's counsel realize that Defendants' counsel had already flown to Germany. Gray Decl. ¶ 5. Facebook, at all times, acted in good faith in an effort to resolve these issues.

### 2. Access Of Facebook's Website And Intellectual Property Is An Important Issue With Respect To Personal Jurisdiction Discovery.

Defendants attempt to minimize the importance of the testimony regarding StudiVZ's access of Facebook's website and/or intellectual property during the design and development of StudiVZ's site as merely one of many issues. In doing so, they mischaracterize the parties meet and confer sessions and the importance of the issue to Facebook. To be sure, there were some other issues discussed, but the bulk of the two-hour meet and confer session on January 6th was

1 spent discussing StudiVZ's access to Facebook's site and code. It was the only issue discussed as

2 to the scope of Mr. Brehm's and Mr. Weber's depositions. As Facebook repeatedly pointed out

3 to Defendants, discovery on the issue was central to Facebook's opposition to Defendants'

4 motions to dismiss. Such discovery and evidence, although intertwined with the merits of the

5 case, goes directly to the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482

6 (1984).

### 3. Facebook Was Justified In Cancelling Mr. Weber's Deposition.

Defendants' argue that Facebook should have flown to Germany to at least take the deposition of Mr. Weber is unavailing. The parties have been unable to agree on the proper scope of personal jurisdiction discovery. Defendants have consistently behaved in bad faith, withholding relevant, responsive and highly material evidence on the grounds that Facebook should first agree to waive its right to pursue additional discovery later on. *See* Avalos Decl. ¶ 15. Defendants have a very narrow view of what discovery is relevant to the personal jurisdiction issue and steadfastly, and improperly, refuse to produce additional discovery – despite telling this Court that they recognized that Facebook is entitled to discovery related to personal jurisdiction as well as merits. Given Defendants' flip-flopping and ever-changing conditions and representations, Facebook was justified in believing that Mr. Weber's deposition would be as much of a waste of time as Mr. Brehm's. Indeed, in his January 7, 2009 email, Mr. Smith clearly and unequivocally stated that he would not allow any testimony about "accessing" Facebook. He did not differentiate between Mr. Brehm and Mr. Weber.

### C. Mr. Smith Boarded The Plane To Germany At His Own Peril Knowing There Was No Agreement Regarding The Scope Of The Depositions.

Defendants claim that "Defense counsel would not have flown to Germany if he had <u>any</u> reason to suspect that Facebook would cancel the depositions." Def. Mot. for Sanctions 7:1-2 (emphasis in original). This statement is belied by the events and simply not credible. Defense counsel flew to Germany only after Facebook counsel reiterated that Facebook had considered cancelling the depositions after the December 30 meet and confer with Mr. Walker and had only not cancelled the depositions "based on your [Mr. Smith's] comments yesterday that you would

allow the witnesses to testify about whether StudiVZ's [sic] accessed the Facebook site or IP in order to copy (to be loosely defined) the Facebook site or in furtherance of the other claims alleged by Facebook in the complaint." Prior to leaving for Germany, Mr. Smith wrote back to Mr. Gray denying that the one agreement that was allowing the depositions to take place had in fact never been reached. Regardless of whose version of the January 6, 2009 meet and confer is most accurate, by the afternoon of January 7 – **before** Mr. Smith boarded the flight to Germany – it was clear that Facebook only agreed to proceed with the depositions if it was going to be allowed to ask questions about StudiVZ's accessing Facebook to design and develop StudiVZ's competing site <u>and</u> that the parties had not reached an agreement on the issue. Any reasonable interpretation of the January 7 exchanges between the parties undercuts Defendants' argument that "Defense counsel would not have flown to Germany if he had <u>any</u> reason to suspect that Facebook would cancel the depositions." A prudent person would not have merely boarded the plane in light of the emails exchanged between Mr. Gray and Mr. Smith the afternoon of January 7th. Yet Mr. Smith did just that.

## IV. CONCLUSION

Accordingly, Facebook requests that the Court deny Defendants' Motion for Sanctions relating to the cancellation of the January 12 and 13 depositions of Martin Weber and Michael Brehm.

Dated: February 10, 2009　　　　　　　　　　ORRICK, HERRINGTON & SUTCLIFFE LLP

　　　　　　　　　　　　　　　　　　　　　／s/ Thomas J. Gray
　　　　　　　　　　　　　　　　　　　　　THOMAS J. GRAY
　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　FACEBOOK, INC.

# **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 10, 2009.

Dated: February 10, 2009　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Thomas J. Gray
　　　　　　　　　　　　　　　　　　　　　THOMAS J. GRAY