1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   JULIO C. AVALOS (STATE BAR NO. 255350)
    javalos@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
4   Menlo Park, CA  94025
    Telephone:      +1-650-614-7400
5   Facsimile:      +1-650-614-7401

6   THOMAS J. GRAY (STATE BAR NO. 191411)
    tgray@orrick.com
7   ORRICK, HERRINGTON & SUTCLIFFE LLP
    4 Park Plaza
8   Suite 1600
    Irvine, CA  92614-2558
9   Telephone:      +1-949-567-6700
    Facsimile:      949-567 6710
10
    Attorneys for Plaintiff
11  FACEBOOK, INC.

12                          UNITED STATES DISTRICT COURT

13                       NORTHERN DISTRICT OF CALIFORNIA

14                                 SAN JOSE DIVISION

15

16  FACEBOOK, INC.,                           Case No.  5:08-cv-03468 JF

17                    Plaintiff,

18         v.                                  **FACEBOOK'S REPLY IN SUPPORT
                                               OF ITS MOTION FOR SANCTIONS**
19
    STUDIVZ LTD., HOLTZBRINCK               Date:         March 3, 2009
20  NETWORKS GmBH, HOLTZBRINCK             Time:         10:00 a.m.
    VENTURES GmBH, and DOES 1-25,         Room:         Courtroom 2, 5th Floor
21                                          Judge:        Honorable Magistrate Judge
                     Defendant.                              Howard R. Lloyd, for
22                                                           Discovery Purposes

23

24

25

26

27

28

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS .............................................................................................. 2

    A.   Defendants' Counsel Makes False Representations Regarding Discovery
         To Be Produced................................................................................................ 2

         1.   Defendants' Counsel Introduces A Quid Pro Quo For Discovery.............. 2

         2.   Defendants' Counsel Agrees to Provide Information Relating to
              StudiVZ Employee User Accounts Used in the Official Scope of
              StudiVZ Business................................................................................. 4

    B.   Relying on Defense Counsel's Representations As To Forthcoming
         Discovery Relating to Defendants' Accessing of Facebook, Facebook
         Counsel Informs The Court That The Parties Have Resolved Most
         Discovery Issues............................................................................................... 5

    C.   Defendants Serve Discovery That Is Devoid of Any Of The Documents
         Defendants' Counsel Had Represented Facebook Would Be Receiving............... 6

    D.   Defendants Insist on Meeting and Conferring in Bad Faith And Continue to
         Withhold Discovery ......................................................................................... 6

    E.   Defendants' Counsel Once Again Changes The Terms For Producing
         Discovery ........................................................................................................ 7

III. ANALYSIS ..................................................................................................................... 8

    A.   The Court May Sanction Parties or Individual Attorneys Based on Bad
         Faith Conduct Throughout A Litigation Or When Attorneys Are 'Remiss'
         In Complying With Their Discovery Obligations.................................................. 8

    B.   Facebook's Request For An Adverse Inference Should Be Granted.................... 10

    C.   Facebook's Request for a Special Master Should Be Granted ........................... 13

IV. CONCLUSION ............................................................................................................... 14

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*In re Akros Installations*,
  834 F.2d 1526 (9th Cir. 1987)..................................................................................... 8

*Avent v. Solfaro*,
  223 F.R.D. 184 (S.D.N.Y. 2004) ................................................................................ 9

*Matter of Beverly Hills Bancorp*,
  752 F.2d 1334 (9th Cir. 1984)..................................................................................... 8

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S. Ct. 2123 (1991) ......................................................................... 10

*Henry v. Sneiders*,
  490 F.2d 315 (9th Cir. 1974), *cert. denied*, 419 U.S. 832 (1974) ........................... 11

*Lasar v. Ford Motor Co.*,
  399 F.3d 1101 (9th Cir. 2005) ..................................................................................... 8

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997)........................................................................................ 9

*Qualcomm Inc. v. Broadcom Corp.*,
  2008 U.S. Dist. LEXIS 911 .......................................................................................... 8

*Roadway Express v. Piper*,
  447 U.S. 752 (1980) ...................................................................................................... 8

*Schmidt v. Levi Strauss & Co.*,
  2006 U.S. Dist. LEXIS 97975...................................................................................... 11

*Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992)................................................................................. 10, 11

**FEDERAL STATUTES**

Rule 11 ...................................................................................................................................... 3

Rule 30(d)(1) .......................................................................................................................... 11

Federal Rule of Civil Procedure 37(b)(2)(a)(i)-(ii)................................................. 10, 11, 12

Rule 53(a)(1)(C)...................................................................................................................... 13

28 U.S.C. Section 1927 ........................................................................................................... 9

Fed. R. Civ. P. 26 ..................................................................................................................... 8

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

1

# TABLE OF AUTHORITIES

**Page**

2

3

# OTHER AUTHORITIES

4

67 Calif. L. Rev. 264, 268 (1979) .................................................................................................. 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

## I.  <u>INTRODUCTION</u>

Defendants' Motion in Opposition to Facebook's Motion for Sanctions itself proves the need for sanctions against them and certainly demonstrates the need for the appointment of a special master to oversee the remainder of the personal jurisdiction discovery process.  From the bizarre, inappropriately argumentative supporting "declaration" of Stephen S. Smith (which Facebook moves to strike in a concurrently-filed motion), to Defendants' continued insistence on misrepresenting even the most basic facts of the parties' ongoing discovery dispute, it is clear that Defendants have no desire to resolve anything in good faith.  Defendants seek simply to distract from the fundamental truth of this case, which is that Defendants stole Facebook's intellectual property, made millions of dollars using Facebook's IP and are now, by and through their counsel, trying to keep any incriminating evidence related to their theft from seeing the light of day.

Defendants illegally accessed the Facebook website and Facebook's servers in order to steal valuable intellectual property that they then used to build a network of Facebook knockoffs. This network has since become one of the largest in the world.  When it became clear that Facebook was about to bring suit in this Court, Defendants chose to forum shop and filed a pre-emptive declaratory action in Germany.  Defendants then filed motions to dismiss for lack of personal jurisdiction and *forum non conveniens*.  They have since engaged in a systematic strategy of dilatory, unprofessional behavior meant to get out of this case and back to their home forum having produced little or no personal jurisdiction discovery.  Rather than discussing this behavior and their unambiguous attempts to shirk their discovery obligations, Defendants' Opposition chooses instead to relitigate the arguments of its motions to dismiss and to rehash the conspiracy theories from its baseless motion for sanctions against Facebook.

Defendants' obfuscation notwithstanding, the questions before the Court are simple: Have Defendants and their counsel unreasonably and vexatiously multiplied the discovery proceedings in this case?  Have Defendants behaved in bad faith in withholding relevant, material discovery in their possession?  For answers, the Court need do little more than compare the frequent representations made by Defendants not only to Facebook but also to the Court itself regarding

1 forthcoming personal jurisdiction discovery to the actual discovery produced in this case.

2 Defendants do not deny that on December 16, 2008 they conceded to this Court that Facebook

3 was entitled to personal jurisdiction discovery that also touched on the merits of this case.

4 Defendants do not deny that as of the filing of this motion, more than two months after the fact,

5 no such discovery has been produced. But rather than completing the simple arithmetic dictated

6 by these facts, Defendants entreat the Court to engage in some strange alchemy where

7 withholding responsive documents and stringing along opposing counsel is to be equated with

8 good faith fulfillment of one's discovery obligations.

9 There is no incentive to Facebook in filing unnecessary discovery motions. Facebook has

10 no desire to further delay or unnecessarily increase the cost of litigation. Facebook, the aggrieved

11 party and victim of Defendants' rampant IP theft, wants only to receive the discovery to which it

12 is entitled. Unfortunately, hiding incriminating evidence does present certain incentives for

13 Defendants and Defendants and their counsel have cast the die in favor of doing so.

14 Defendants have engaged in bad faith and Facebook accordingly urges the Court to grant

15 Facebook's request for sanctions against Defendants and/or Defendants' counsel and that the

16 Court appoint a special master to oversee the personal jurisdiction discovery process.

17 **II.** **STATEMENT OF FACTS**

18     **A.** **Defendants' Counsel Makes False Representations Regarding Discovery To Be Produced**

19

20         **1.** **Defendants' Counsel Introduces A Quid Pro Quo For Discovery**

21 Despite Defendants' attempts to muddy the waters, the facts relevant to Facebook's

22 Motion for Sanctions are straightforward. On November 26, 2008, the parties held the first

23 substantive meet and confer on Facebook's outstanding discovery requests relating to personal

24 jurisdiction. Declaration of Julio C. Avalos In Support of Facebook's Reply In Support of Its

25 Motion for Sanctions ("Avalos Decl.") ¶ 2. Defendants were represented by Stephen S. Smith

26 and his partner William Walker. Facebook was represented by Annette Hurst and Julio Avalos.[1]

27 ─────────────────────
[1] Facebook's notes from the November 26, 2008 meet and confer are verbatim. Having had four

28 months of experience with opposing counsel's "negotiation" tactics, Facebook counsel felt that verbatim notes were necessary. Given Defendants' insistence on denying the representations

*Id.*

Towards the beginning of the conference, Mr. Smith stated:

"Let me give you my kind of preamble on what I'm going to do, what I'm not going to do and why. You and I are continuing to have a basic beginning disagreement about the scope of proper discovery on this issue [personal jurisdiction] that just relates to something you think I'm wrong about. What I assert is the burden on your client to establish a prima facie case. You state in your letter that we don't cite anything. That's not technically correct. Our opposition was in fact filed before your motion was withdrawn. We cite five or six cases and we stand by that position. Notwithstanding, I'm going to give a bunch of stuff. However, I'm not going to give other things because I view this as a fishing expedition. I think the Plaintiff is required to say why they specifically believe why they think they are entitled to jurisdiction, general or specific. Much of your discovery—and I'll use Holtzbrinck here—is a fishing expedition as to whether either holding company has general contacts with California or nationwide that could possibly give contacts sufficient for general jurisdiction. I don't think you've done anything to justify discovery on that, to the contrary, you have no freaking idea as to whether Holtzbrinck has any contacts and we believe you violated Rule 11. I'm not just throwing that position out the window."

*Id.* ¶ 4. At this point, Ms. Hurst interjected, saying, "I don't want to cut you off, but the problem is that none of that means anything to me. Until we get to the specific request, and what you will do, I have no idea what that means. I disagree with you on the Rule 11 point, et cetera. Until I see how the rubber meets the road, I have no idea how what you just said means anything. Tell me what you're willing to do and then I can evaluate whether that is sufficient." *Id.* ¶ 5. Mr. Smith responded, "I don't understand the ambiguity. I responded already." *Id.* Ms. Hurst stated, "You did not. Every one of your responses is subject to a million different objections." *Id.* Mr. Smith stated, "Despite all of the boilerplate objections, the offers in the responses are the things we are willing to provide now. I'm not going to give you stuff and then have you move to compel anyway." *Id.* Ms. Hurst responded, "I'm not going to waive anything. This is a complete waste of time." *Id.* Mr. Smith responded, "The offers we made – I need to be met with something. This is a compromise process." *Id.* Ms. Hurst stated, "I have absolutely no way of knowing the adequacy of your proffers because I don't have the actual facts. It would be insane for me to agree in advance. Apart from everything else, you're going to limit this to jurisdictional

made during that meet and confer, Facebook feels compelled to provide them in full detail. Defense counsel's unprofessional and sanctionable attempts to now claim that he did not make these statements provide the Court with some indication of what Facebook has been dealing with since the start of this litigation.

1 issues. I am not going to be in a position later when you're holding me up and I can't get

2 discovery as to the merits of the case." *Id*.

3    The parties then turned to discussion of individual discovery requests.

4        **2.    Defendants' Counsel Agrees to Provide Information Relating to**
         **StudiVZ Employee User Accounts Used in the Official Scope of**
5        **StudiVZ Business**

6    Shortly after Mr. Smith's preamble, the following exchange transpired:

7    Ms. Hurst:    Will you give us user accounts of Facebook users?

8    Mr. Smith:    Not quite. I'm willing to give you accounts used in the scope of StudiVZ,
                   not all employees who have a Facebook account.
9

10   Ms. Hurst:    Come on. You'll say [to the employees], "You've never used this at work,
                   right?" This is cutting it too fine. You have to identify everybody. The
                   scope and limitation is employees and contractors.
11
     Mr. Smith:    StudiVZ has hundreds of employees. Plus it's a violation of German law.
12

13   Avalos Decl. ¶ 6. The parties then discussed Mr. Smith's assertion that production of account

14   information would violate German law. *Id*. Following that discussion, the following exchange

15   occurred:

16
     Ms. Hurst:    Let me ask you something. If you tell me that you're going to limit it to
17                 people who used it in the course and scope of its employment, are you
                   going to give me any information?
18
     Mr. Smith:    Yes. I believe that there are four or five people who fall into that category.
19
     Ms. Hurst:    Was the initial StudiVZ site created before the site launched?
20
     Mr. Smith:    That is my understanding.
21
     Ms. Hurst:    Would you include the early accounts too?
22
     Mr. Smith:    If they had accounts, yes.
23

24   *Id*. ¶ 7. Eventually, the parties began discussing individual interrogatories. With respect to

25   Interrogatory Number 10:

26   Mr. Smith:    Willing to compromise. Also willing to do what I said with response to
                   No. 1 – I'm willing to say that they did access Facebook within the course
27                 and scope of their employment and identify why. But identifying each and
                   every access –
28

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

| | | |
|---|---|---|
| 1 | Ms. Hurst: | What about working on the site? |
| 2 | Mr. Smith: | Yes. |
| 3 | Ms. Hurst: | People and user accounts in creation with the site? |
| 4 | Mr. Smith: | That is correct and then of course you can depose those people if you wish. |
| 5 | | |

*Id.* ¶ 7.  After discussion of Facebook's Interrogatories, the parties turned to the requests for production.  With respect to Request for Production Number 14:

| | | |
|---|---|---|
| 8 | Mr. Smith: | My major problem is that I think this is where you cross from jurisdiction into merits.  I think given the causes of action, you're entitled to know whether there are contacts with California related to the claims you have plead. |
| 10 | Ms. Hurst: | There's no way to sort out the merits from the jurisdiction. |
| 12 | Mr. Smith: | I think it's going to be undisputed that those people that had user accounts and used them in connection with their employment did at least what you claim they did.  We'll have a huge fight whether that violates the anti-hacking statute.  It's going to be undisputed that there were some users who accessed Facebook. |
| 15 | Ms. Hurst: | Just because you're willing to stipulate to it, doesn't mean that I don't want to conduct jurisdiction discovery.  I'd be happy whether you proposed various stipulations, but I can't examine witnesses without documents. |
| 17 | Mr. Smith: | Let me think about it. |
| 17 | Ms. Hurst: | Think about it. |

*Id.* ¶ 9.  The parties then began discussing the remaining discovery.  *Id.*

**B.      Relying on Defense Counsel's Representations As To Forthcoming Discovery Relating to Defendants' Accessing of Facebook, Facebook Counsel Informs The Court That The Parties Have Resolved Most Discovery Issues**

On December 16, 2008, the Court held a hearing on Defendants' Motion for Protective Order seeking, in part, a stay of discovery unrelated to Defendants' motions to dismiss for lack of personal jurisdiction and *forum non conveniens*.  Defendants' counsel Mr. Smith stated that he now agreed that Facebook was entitled to personal jurisdiction discovery that touched on both jurisdictional and substantive issues.  *Id.* ¶ 10.  Mr. Smith then withdrew Defendants' request for a stay of discovery.  *Id.*  Relying on these representations and the unambiguous agreements reached with Defense counsel at the November 26 meet and confer, Ms. Hurst stated that she

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

1   believed that the parties had resolved and could continue to resolve their discovery issues without

2   judicial assistance.  *Id*.

3       As it turned out, Facebook's optimism—which unknowingly relied on Defendants' empty

4   promises and bad faith games—was misplaced.

5       **C.    Defendants Serve Discovery That Is Devoid of Any Of The Documents
            Defendants' Counsel Had Represented Facebook Would Be Receiving**

6

7       On December 18, 2008, only two days after informing the Court that Facebook was

8   entitled to discovery that touched on both jurisdictional and merits-based issues, Defendants

9   served a first round of documents wholly devoid of any of the documents that Mr. Smith agreed

10  to produce.  *Id.* ¶ 11.  Defendants did not produce any emails, letters or communications of any

11  kind.  Nor did the production contain any documents relating to StudiVZ's accessing of Facebook

12  or the development and creation of StudiVZ.  *Id*.

13      **D.    Defendants Insist on Meeting and Conferring in Bad Faith And Continue to
            Withhold Discovery**

14

15      Surprised by Defendants' scant production, Facebook immediately requested a meet and

16  confer.  *Id*. ¶ 12.  Defendants agreed.  The first such meet and confer took place on December 23,

17  2008.  *Id*. ¶ 13.  Defendants were represented by Mr. Smith's partner, William Walker.  *Id*.  Mr.

18  Walker confessed to having an imperfect understanding of the current state of things and

19  suggested that the parties reconvene the following week, so as to allow Mr. Walker the benefit of

20  having relayed Facebook's questions to both Mr. Smith and Defendants themselves.  *Id*.  Mr.

21  Walker also stated that Defendants would be filing supplemental interrogatory responses in the

22  near future.  *Id*.  Rather than filing its motion to compel on December 23, Facebook agreed to

23  another meet and confer scheduled for December 30.  *Id*.

24      On December 24, 2008, StudiVZ served supplemental interrogatory responses.  *Id*. ¶ 14.

25  These responses contained no information regarding StudiVZ's access of Facebook or the

26  creation and/or implementation of the StudiVZ websites.  *Id*.

27      The parties reconvened for a follow-up meet and confer on December 30.  Mr. Walker

28  stated that he had been unable to speak to either Mr. Smith or his clients.  *Id*. ¶ 15.  But Mr.

1  Walker remained vague as to Defendants' current position regarding personal jurisdiction

2  discovery and now stated that the parties should reconvene the following week for a meet and

3  confer at which Mr. Smith would be present. *Id.* Facebook counsel, by now skeptical of

4  Defendants' counsel motivations for continuing to hold meet and confer conferences,

5  nevertheless proceeded in good faith and agreed to the January 6, 2009 meet and confer. *Id.*

6  Because of this agreement, Facebook did not file its motion to compel on December 30.

7        **E.      Defendants' Counsel Once Again Changes The Terms For Producing
                   Discovery**

8

9        The parties met and conferred on January 6, 2009. The substance of that meet and confer

10  has been exhaustively briefed in various previously filed papers, most recently in those associated

11  with Defendants' Motion for Sanctions Against Facebook. (Dkt. # 83). Suffice it to say that

12  Defendants reached an agreement with Facebook regarding the scope of personal jurisdiction

13  deposition testimony only to claim the following day that no such agreement had been reached. It

14  is also worth noting that in the January 6, 2009 conference, Mr. Smith now claimed that no

15  discovery relevant to Facebook's *Calder* effects test theory of personal jurisdiction—i.e.,

16  documents related to Defendants accessing of Facebook and the use of Facebook intellectual

17  property in the creation, development and implementation of the StudiVZ websites—would be

18  produced unless (i) Facebook promised not to move to compel discovery in the future and/or (ii)

19  the discovery contained some sort of "smoking gun" evidence relating to the causes of action in

20  Facebook's complaint. Avalos Decl. ¶ 16. For instance, an e-mail demonstrating that the

21  Holtzbrinck Defendants continued to spearhead the global expansion of StudiVZ and its

22  infringing websites with knowledge that StudiVZ employees were regularly accessing Facebook

23  in the course of official business would not be produced unless it also contained something along

24  the lines of, "Let's copy this banner design from Facebook and use it on the new meinvz.net site

25  so as to confuse people into thinking that meinvz is associated with Facebook." Facebook

26  refused to agree to this limitation.

27

28

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

1    III.    **ANALYSIS**

2         A.    **The Court May Sanction Parties or Individual Attorneys Based on Bad Faith**
               **Conduct Throughout A Litigation Or When Attorneys Are 'Remiss' In**
3              **Complying With Their Discovery Obligations**

4              Defendants misunderstand the law regarding sanctionable discovery abuses.  It is well-

5    established that the so-called American rule that each litigant bear her own counsel fees "does not

6    apply when the opposing party has acted in bad faith." *Roadway Express v. Piper*, 447 U.S. 752,

7    765-66 (1980).  "'Bad faith' may be found, not only in the actions that led to the lawsuit, but also

8    in the conduct of the litigation." *Id*.  Further, as the Supreme Court has ruled, "[i]f a court may

9    tax counsel fees against a party who has litigated in bad faith, it certainly may assess those

10   expenses against counsel who willfully abuse judicial processes." *Id*., citing, Renfrew, Discovery

11   Sanctions: A Judicial Perspective, 67 Calif. L. Rev. 264, 268 (1979).  "Delay in litigation may

12   constitute bad faith in the conduct of an action." *In re Akros Installations*, 834 F.2d 1526, 1532

13   (9th Cir. 1987); *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1340 (9th Cir. 1984) (courts

14   have "inherent power to award fees under equity whenever justice requires").  The only

15   prerequisite for such sanctions to be assessed is that opposing counsel be "given fair notice and an

16   opportunity to be heard on the record." *In re Akros Installations*, 834 F.2d, at 1532.

17              The Federal Rules of Civil Procedure "provide for sanctions against individual attorneys

18   who are remiss in complying with their discovery obligations." *Qualcomm Inc. v. Broadcom*

19   *Corp*., 2008 U.S. Dist. LEXIS 911, *25, Case No. 05-CV-1958-B (S.D. Cal. Jan. 7, 2008).  As

20   the *Qualcomm* court noted:

21          Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible
            manner that is consistent with the spirit and purposes of Rules 26 through 37.  In addition,
22          Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of
            sanctions.  This subdivision provides a deterrent to both excessive discovery and evasion
23          by imposing a certification requirement that obliges each attorney to stop and think about
            the legitimacy of a discovery request, a response thereto, or an objection.  The term
24          "response" includes answers to interrogatories and to requests to admit as well as
            responses to production requests.
25

26   *Id*., citing, Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment).  "Regardless of

27   whether sanctions are imposed under the Federal Rules or pursuant to a court's inherent power,

28   the decision to impose sanctions lies within the sound discretion of the court." *Id*., citing, *Lasar*

1    *v. Ford Motor Co.*, 399 F.3d 1101, 1109-14 (9th Cir. 2005) (reviewing sanctions imposed under

2    the court's inherent power); *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir. 1997).  Thus,

3    under the court's inherent power, sanctions may be imposed even in the absence of an explicit

4    violation of a court order.

5              Finally, sanctions are appropriate where any attorney "so multiplies the proceedings in

6    any case unreasonably and vexatiously."  28 U.S.C. § 1927.

7              Defendants claim that sanctions are inappropriate in this matter "so as not to 'stifle the

8    enthusiasm or chill the creativity that is the very lifeblood of the law.'"  Def. Opp. Mot. (Dkt.

9    #96) 14:25-28, citing, *Avent v. Solfaro*, 223 F.R.D. 184, 188 (S.D.N.Y. 2004).  It is unclear what

10   "enthusiasm" or "creativity" Defendants are seeking to protect.  Defendants have methodically

11   engaged in a consistent pattern of obstruction and misrepresentation, hardly the sort of zealous

12   enthusiasm that deserves judicial protection.  Defense counsel's attempt to deny making various

13   statements that Facebook's counsel contemporaneously transcribed verbatim is unprofessional,

14   embarrassing and perjurous.

15             Facebook has no quarrel with Defendants' understanding of the Federal Rules or  28

16   U.S.C. Section 1927, which provides that "[a]ny attorney or other person admitted to conduct

17   cases in any court of the United States . . . who so multiplies the proceedings in any case

18   unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses,

19   and attorney's fees reasonably incurred because of such conduct."  Defendants simply argue that

20   they have not behaved in bad faith.  The record in this matter and the anemic discovery

21   production that Facebook has received dictate otherwise.

22             If Defendants were behaving in good faith, they would have, at the very least, turned over

23   that personal jurisdiction discovery that touched on the merits of this case that they agreed should

24   be produced.  If defendants were behaving in good faith, they would have turned over the

25   "access" documents that they have been promising since late-November 2008.  If defendants

26   were behaving in good faith, they would not have misrepresented to this Court that Facebook was

27   entitled to discovery they intended to later withhold.  If defendants were behaving in good faith,

28   they would not say one thing during one meet and confer and then refuse to keep to their word the

- 9 -

next. A litigant conducting discovery in good faith would not hold discovery hostage and

demand a full waiver of future discovery rights in exchange for its production.

### B. Facebook's Request For An Adverse Inference Should Be Granted

Defendants similarly misunderstand the law regarding adverse inferences relating to

withheld discovery. Defendants claims that the Court's sole power to make adverse inferences

relating to withheld discovery stems from Federal Rule of Civil Procedure 37(b)(2)(a)(i)-(ii).

Def. Opp. Mot. 16:5-11. Accordingly, relying on *Unigard Sec. Ins. Co. v. Lakewood Engineering

& Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992), Defendants argue that an adverse inference is

unavailable unless a party fails to "obey and order to provide or permit discovery." Defendants'

argument is flawed for two reasons.

First, Rule 37 is not the only source from which an adverse inference may derive. In

Defendants' own case of *Unigard*, the Ninth Circuit upheld the exclusion of certain withheld

evidence despite the fact that it found that no direct court order had been disobeyed. According

to *Unigard*, "[w]e find, however, that Unigard's evidence was properly excluded as an exercise of

the district court's inherent power. Courts are invested with inherent powers that are 'governed

not by rule or statute but by the control necessarily vested in courts to manage their own affairs so

as to achieve the orderly and expeditious disposition of cases." *Id*. at 368, citing, *Chambers v.

NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991). As *Unigard* continues: "This circuit has

recognized as part of a district court's inherent powers that the 'broad discretion to make

discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this

discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . .would

unfairly prejudice an opposing party." *Id*. (internal citations omitted).

Defendants have withheld incriminating evidence in bad faith. For instance, on January 6,

2009 when the parties were negotiating the personal jurisdiction depositions of Martin Weber and

Michael Brehm, Defendants' counsel inappropriately sought to create different standards for the

witness that it knew would probably not possess incriminating evidence from the witness it

believed would have knowledge of StudiVZ's rampant intellectual property infringement. Avalos

Decl. ¶ 17. Mr. Weber, the witness for the Holtzbrinck Defendants, would be permitted to testify

1  on StudiVZ's access of Facebook, period. *Id.* Mr. Smith stated that "I could fight you on this,

2  but I don't have any particular reason to . . . Mr. Weber didn't know anything about this." *Id.*

3  However, Mr. Brehm, the witness for StudiVZ, would not be permitted to so testify. Mr. Brehm

4  would only be allowed to answer questions regarding StudiVZ's accessing of Facebook if the

5  questions were also "tied" to some additional predicate act from Facebook's causes of action,

6  such as copying. *Id.*

7       Putting aside for the moment that it is wholly improper to instruct a deposition witness not

8  to answer questions unprotected by the attorney-client privilege, *see*, *e.g.*, *Schmidt v. Levi Strauss*

9  *& Co.*, 2006 U.S. Dist. LEXIS 97975, *4-*5, Case No. C04-01026 RMW (HRL) (N.D. Cal. Dec.

10 26, 2006) (holding that Rule 30(d)(1) only permits counsel to instruct a witness not to answer

11 when necessary to preserve a privilege, to enforce a limitation directed by the court to present a

12 motion and that counsel's instruction not to answer questions on grounds that they were vague,

13 hypothetical, speculative or harassing was improper), Mr. Smith's behavior clearly establishes his

14 bad faith efforts to hide incriminating evidence. Accordingly, the Court is well within its power

15 to order that a negative inference be drawn from Defendants' bad faith efforts.

16      Second, even were this Court to ignore its own inherent powers, it could still order an

17 adverse inference based on Rule 37. Again, Defendants' own case *Unigard* proves instructive.

18 According to *Unigard*, "[t]he definition of 'order' in Rule 37(b) has been read broadly,"

19 *Unigard*, 982 F.2d, at 368, so broadly, in fact, that it encompasses a Court's instruction in oral

20 proceedings. *Id.*, citing, *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974), *cert. denied*, 419

21 U.S. 832 (1974) (holding that Rule 37 sanctions may be imposed on a party for disobedience to a

22 court's request in oral proceedings so long as those proceedings give the party unequivocal notice

23 that a court has asked that certain documents be produced).

24      At the December 16, 2008 hearing on Defendants' Motion for Protective Order, this Court

25 asked Defendants' counsel Mr. Smith whether Defendants now agreed that Facebook was entitled

26 to personal jurisdiction discovery that also touched on the merits of this case. Avalos Decl. ¶ 10.

27 Mr. Smith stated that he did agree. *Id.* The Court then asked Mr. Smith whether he wished to

28 withdraw his request that the Court issue a protective order staying discovery. *Id.* Mr. Smith said

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

1  he did and the Court accepted his withdrawal.  *Id.*  The import of this exchange is clear:

2  Defendants were to produce discovery that touched on both personal jurisdiction and the merits of

3  this case, which they have since refused to do given that the evidence would be incriminating.  It

4  would be completely inefficient for the Court to have accepted Defendants' withdrawal of their

5  motion had the Court anticipated that Defendants would simply refuse to produce any discovery

6  whatsoever that touched on both personal jurisdiction and substantive issues.  Accordingly, the

7  Court may draw a negative inference from Defendants' withheld evidence even under the letter of

8  Rule 37.

9           A negative inference is especially justified in this case, where Defendants' bad faith

10  discovery obstruction has resulted in severe prejudice to Facebook.  As previously briefed, after

11  weeks of representing to Facebook that Defendants would agree to stipulate to providing

12  Facebook with extra time in which to oppose Defendants' motions to dismiss for lack of personal

13  jurisdiction and *forum non conveniens* based on the fact that Facebook had not yet received full

14  personal jurisdiction discovery, Defense counsel changed his mind two days before Facebook's

15  brief was due.  *See* Facebook's Motion To Enlarge Time Or To File A Supplemental Brief (Dkt. #

16  77).  Facebook nevertheless drafted and filed its opposition on January 16, 2009.  Given that the

17  brief had been drafted without the benefit of virtually any personal jurisdiction discovery,

18  Facebook moved the Court for additional time during which to conduct personal jurisdiction

19  discovery and for permission to file a supplemental brief based on that additional discovery.

20  Judge Fogel granted these requests.  *See* January 28, 2009 Order Granting In Part Motion to

21  Enlarge Time (Dkt. #92).

22           Defendants' strategy was to lie to Facebook all along regarding the continuance of the

23  January 16 deadline so as to prejudice Facebook into filing an opposition without the benefit of

24  discovery.  Even with Judge Fogel's continuance, given Defendants' bad faith obstruction tactics

25  and the time needed to translate documents, it is unlikely that Facebook will have sufficient time

26  to properly review documents prior to the new April 10 hearing date.  Facebook has been severely

27  prejudiced by Defendants' behavior and an adverse inference regarding the withheld evidence is a

28  proper remedy given the circumstances.

## C.     Facebook's Request for a Special Master Should Be Granted

As Defendants correctly point out, the appointment of a special discovery master is governed by Federal Rule of Civil Procedure 53(a).  Specifically, the appointment of a special master is warranted in this case by Federal Rule 53(a)(1)(C), which permits such an appointment to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  It has become abundantly clear that Defendants' bad faith tactics have stifled any possibility of oral meet and confer in this matter.  Defendants modus operandi in this matter has been to make certain discovery agreements during telephonic meet and confers only to later deny that any such agreements had been made.  Following such unprofessional behavior early in the case, Facebook's counsel began taking verbatim notes of the parties' meet and confers as part of its work product in order to eliminate the possibility that Defendants would later claim not to have said something they in fact did.  Regardless, Defendants have continued to play their games and Facebook's counsel no longer has any confidence that anything said by Defendants' counsel in a meet and confer may be trusted.

Judge Fogel has set a trial date of November 30, 2009 in this case.  The hearing on Defendants' motions to dismiss has already been extended once, to April 10, 2009.  Discovery has been outstanding since October and Defendants have yet to produce a single piece of paper relevant to Facebook's jurisdictional theories.  Defendants' argument that the number of unresolved discovery requests is outweighed by the number of resolved discovery requests is unavailing.  The disputed discovery requests comprise 100% of the Facebook's requests related to the *Calder* effects test.

Quite simply, Defendants have stalled and will continue to stall unless a special master is assigned to oversee the discovery process.  This Court is not benefitted by being dragged on a monthly basis into a battle between lawyers as to who said what and when.  Typically, counsel are able—and should be able—to resolve their discovery disputes as professionals and without judicial intervention.  Facebook has attempted to do so for months, but has been thwarted by Defendants' recalcitrant insistence on avoiding its discovery obligations.

The appointment of a special master, with his or her costs to be borne by Defendants, is the most efficient means of carrying out and finalizing the personal jurisdiction discovery process. Defendants know this, which is why they "do not consent to the appointment of special master."

## IV.     CONCLUSION

Accordingly, Facebook respectfully requests that the Court grant its Motion for Sanctions Against Defendants and appoint a special master to oversee the remainder of the personal jurisdiction discovery process.

Dated:  February 17, 2009                           ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                    /s/ Julio C. Avalos /s/
                                                    JULIO C. AVALOS
                                                    Attorneys for Plaintiff
                                                    FACEBOOK, INC.

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 17, 2009.

Dated: February 17, 2009.                    Respectfully submitted,

/s/ Julio C. Avalos /s/
JULIO C. AVALOS

OHS West:260610415.3

FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION
FOR SANCTIONS
CASE NO.: 5:08-CV-03468