| | |
|---|---|
| 1 | I. NEEL CHATTERJEE (State Bar No. 173985) |
| | nchatterjee@orrick.com |
| 2 | JULIO C. AVALOS (STATE BAR NO. 255350) |
| | javalos@orrick.com |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 1000 Marsh Road |
| 4 | Menlo Park, CA 94025 |
| | Telephone: 650-614-7400 |
| 5 | Facsimile: 650-614-7401 |
| 6 | THOMAS J. GRAY (STATE BAR NO. 191411) |
| | tgray@orrick.com |
| 7 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 4 Park Plaza |
| 8 | Suite 1600 |
| | Irvine, CA 92614-2558 |
| 9 | Telephone: +1-949-567-6700 |
| | Facsimile: 949-567 6710 |
| 10 | |
| | Attorneys for Plaintiff |
| 11 | FACEBOOK, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| FACEBOOK, INC., | | Case No. 5:08-cv-03468 JF |
| | Plaintiff, | **DECLARATION OF JULIO C. AVALOS IN SUPPORT OF FACEBOOK'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS** |
| | v. | |
| STUDIVZ LTD., HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH AND DOES 1-25, | | Date: March 3, 2009 <br> Time: 10:00 a.m. <br> Room: Courtroom 2, 5th Floor |
| | Defendants. | Judge: Honorable Magistrate Judge Howard R. Lloyd, for Discovery Purposes |

OHS West:260612292.1

DECL. OF J. AVALOS IN SUPPORT OF FACEBOOK'S
REPLY RE: MOTION FOR SANCTIONS
No. 5:08-CV-03468 JF

I, Julio C. Avalos, declare as follows:

1. I am an attorney with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for Plaintiff Facebook, Inc.. I make this Declaration in support of Facebook's Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and *Forum non conveniens*. I am an active member in good standing of the California State Bar. Except as set forth herein, I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify thereto.

2. On November 26, 2008, I, along with my colleague Annette Hurst, met and conferred with Defendants' counsel Stephen S. Smith and his partner William Walker. The conference was the first substantive meet and confer on Facebook's outstanding discovery requests relating to personal jurisdiction. The parties spent close to two hours discussing Facebook's discovery request-by-request.

3. Having previously encountered disagreements with opposing counsel over what was and was not said during a telephone call or a meet and confer, I took verbatim notes of the discussion between Ms. Hurst and Mr. Smith. Text placed in quotation marks was directly transcribed by me unless otherwise noted.

4. Towards the beginning of the conference, Mr. Smith stated: "Let me give you my kind of preamble on what I'm going to do, what I'm not going to do and why. You and I are continuing to have a basic beginning disagreement about the scope of proper discovery on this issue [personal jurisdiction] that just relates to something you think I'm wrong about. What I assert is the burden on your client to establish a prima facie case. You state in your letter that we don't cite anything. That's not technically correct. Our opposition was in fact filed before your motion was withdrawn. We cite five or six cases and we stand by that position. Notwithstanding, I'm going to give a bunch of stuff. However, I'm not going to give other things because I view this as a fishing expedition. I think the Plaintiff is required to say why they specifically believe why they think they are entitled to jurisdiction, general or specific. Much of your discovery—and I'll use Holtzbrinck here—is a fishing expedition as to whether either holding company has general contacts with California or nationwide that could possibly give contacts sufficient for

general jurisdiction. I don't think you've done anything to justify discovery on that, to the contrary, you have no freaking idea as to whether Holtzbrinck has any contacts and we believe you violated Rule 11. I'm not just throwing that position out the window."

5. Ms. Hurst responded, "I don't want to cut you off, but the problem is that none of that means anything to me. Until we get to the specific request, and what you will do, I have no idea what that means. I disagree with you on the Rule 11 point, et cetera. Until I see how the rubber meets the road, I have no idea how what you just said means anything. Tell me what you're willing to do and then I can evaluate whether that is sufficient." Mr. Smith stated, "I don't understand the ambiguity. I responded already." Ms. Hurst stated, "You did not. Every one of your responses is subject to a million different objections." Mr. Smith said, "Despite all of the boilerplate objections, the offers in the responses are the things we are willing to provide now. I'm not going to give you stuff and then have you move to compel anyway." Ms. Hurst responded, "I'm not going to waive anything. This is a complete waste of time." Mr. Smith responded, "The offers we made – I need to be met with something. This is a compromise process." Ms. Hurst stated, "I have absolutely no way of knowing the adequacy of your proffers because I don't have the actual facts. It would be insane for me to agree in advance. Apart from everything else, you're going to limit this to jurisdictional issues. I am not going to be in a position later when you're holding me up and I can't get discovery as to the merits of the case." The parties then turned to discussion of individual discovery requests.

6. Shortly after Mr. Smith's preamble, the following exchange transpired. Ms. Hurst asked, "Will you give us user accounts of Facebook users?" Mr. Smith responded, "Not quite. I'm willing to give you accounts used in the scope of StudiVZ, not all employees who have a Facebook account." Ms. Hurst: "Come on. You'll say, 'You've never used this at work, right?' This is cutting it too fine. You have to identify everybody. The scope and limitation is employees and contractors." Mr. Smith then said, "StudiVZ has hundreds of employees. Plus, it's a violation of German law." The parties then discussed Mr. Smith's assertion that production of account information would violate German law.

7. Following that discussion, the following exchanged occurred. Ms. Hurst said, "Let

me ask you something. If you tell me that you're going to limit to people who used it [meaning Facebook] in the course and scope of its employment, are you going to give me any information?" Mr. Smith responded, "Yes. I believe that there are four or five people who fall into that category." Ms. Hurst asked, "Was the initial StudiVZ site created before the site launched?" Mr. Smith answered, "That is my understanding." "Would you include the early accounts too?" Ms. Hurst asked. Mr. Smith responded, "If they had accounts, yes."

8. Following this exchange, the parties began discussing individual interrogatories. With respect to Interrogatory No. 10, the parties said the following. Mr. Smith said, "Willing to compromise. Also willing to do what I said with response to Number 1 – I'm willing to say that they did access Facebook within the course and scope of their employment and identify why. But identifying each and every access –" Ms. Hurst interjected, "What about working on the site?" Mr. Smith answered, "Yes." Ms. Hurst asked, "People and user accounts in creation with the site?" Mr. Smith answered, "That is correct and then of course you can depose those people if you wish."

9. After discussion of Facebook's Interrogatories, the parties turned to the requests for production. With respect to Request for Production Number 14, the following exchange occurred. Mr. Smith said, "My major problem is that I think this is where you cross from jurisdiction into merits. I think given the causes of action, you're entitled to know whether there are contacts with California related to the claims you have plead." Ms. Hurst said, "There's no way to sort out the merits from the jurisdiction." To which Mr. Smith answered, "I think it's going to be undisputed that those people that had user accounts and used them in connection with their employment did at least what you claim they did. We'll have a huge fight whether that violates the anti-hacking statute. It's going to be undisputed that there were some users who accessed Facebook." Ms. Hurst then said, "Just because you're willing to stipulate to it, doesn't mean that I don't want to conduct jurisdiction discovery. I'd be happy whether you proposed various stipulations, but I can't examine a witness without documents." Mr. Smith answered, "Let me think about it." Ms. Hurst responded, "Think about it." The parties then discussed the remaining discovery requests.

10. On December 16, 2008, I, along with Annette Hurst, attended the hearing on Defendants' Motion for Protective Order. At the hearing, Mr. Smith stated that he now agreed that Facebook was entitled to personal jurisdiction discovery that touched on both jurisdictional and substantive issues. Mr. Smith then withdrew Defendants' request for a stay of discovery. Given what had been said at the November 26, 2008 meet and confer, I was not surprised by Mr. Smith's statements or his withdrawal. Nor was I surprised when Ms. Hurst stated that the parties had resolved most of their outstanding discovery issues. At the time, I felt that Defendants, through their counsel, had agreed at the November 26 meet and confer to produce account information and other "access" of Facebook documents.

11. On December 18, 2008, two days after the hearing, Defendants served a first round of documents. The production contained no "access" documents of any kind, nor did it contain documents related to the development of StudiVZ. The production did not contain any documents that touched on both personal jurisdiction and merits-based issues.

12. I, along with Facebook's other outsides counsel, was surprised by Defendants' production. We requested a meet and confer to discuss it.

13. The first meet and confer took place on December 23, 2008. Defendants were represented by Mr. Smith's partner, William Walker. Mr. Walker confessed to having an imperfect understanding of the current state of things and suggested that the parties reconvene the following week, so as to allow Mr. Walker the benefit of having relayed Facebook's questions to both Mr. Smith and Defendants themselves. Mr. Walker also stated that Defendants would be filing supplemental interrogatory responses in the near future. Rather than filing its motion to compel on December 23, Facebook agreed to another meet and confer scheduled for December 30.

14. On December 24, 2008, StudiVZ served supplemental interrogatory responses. These responses contained no information regarding StudiVZ's access of Facebook as agreed to by Mr. Smith at the November 26, 2008 conference. Nor did the production contain documents that touched on both merits and personal jurisdiction issues.

15. On December 30, 2008, the parties reconvened for a follow-up meet and confer.

Mr. Walker stated that he had been unable to speak to either Mr. Smith or his clients. Mr. Walker remained vague as to Defendants' current position regarding personal jurisdiction discovery and stated that the parties should reconvene the following week for a meet and confer at which Mr. Smith would be present.

16. On January 6, 2009, I, along with my colleague Tom Gray, met and conferred with Defendants' counsel Stephen S. Smith and his partner William Walker. Mr. Smith stated that discovery related to StudiVZ's "commercial access" of Facebook would not be produced unless Facebook first agreed that it would not later move to compel further production. Facebook refused to make this agreement. Mr. Smith then said that "commercial access" documents would not be produced unless Facebook agreed that, in order to be related to personal jurisdiction, the documents needed to "tie" to a cause of action in Facebook's complaint. For instance, Mr. Smith stated that a document demonstrating a StudiVZ's commercial access of Facebook would not be produced unless it also contained an additional predicate act related to Facebook's complaint, such as copying.

17. At the conference, Mr. Smith stated that the Holtzbrinck Defendants' personal jurisdiction witness, Martin Weber, would be permitted to testify about his knowledge of StudiVZ's accessing of the Facebook site. Mr. Smith said, "I could fight you on this, but I don't have any particular reason to." Mr. Smith also said, "Mr. Weber didn't know anything about this." With respect to StudiVZ's personal jurisdiction witness, Michael Brehm, Mr. Smith said that he would not be permitted to testify as broadly as Mr. Weber. Mr. Smith stated that Mr. Brehm would be permitted to testify as to access permitted that the question also related to some additional predicate act tied to Facebook's complaint, such as copying. However, Mr. Smith said, he was going to use a "broad" definition of copying and was not going to "slice it that thinly."

18. Nearing the end of the January 6 meet and confer, my colleague Mr. Gray raised the issue of Facebook's upcoming January 16 deadline to oppose Defendants' motions to dismiss. Mr. Gray stated that it appeared unlikely that Facebook would receive the personal jurisdiction discovery that it sought prior to January 16 and that the parties should agree to take the hearing for Defendants' motions off calendar. Mr. Smith responded that he agreed to take the hearing off

calendar for Defendant StudiVZ, but would prefer not to do so with respect to the Holtzbrinck Defendants. He would agree to a continuance of a few weeks, but would not take the hearing off calendar because, he said, "I'm still hopeful that you guys will agree to voluntarily dismiss them. I'd agree to doing it without prejudice like we did for the other Holtzbrinck defendant. If you guys find out something later on, you'd be free to add them again, but for now my goal is to get them voluntarily dismissed without producing any discovery. I don't think they should be part of this case." Mr. Gray responded that he would prefer to take the Holtzbrinck Defendants' motions to dismiss hearing off calendar as well, but that the parties would talk about it again. The final word on the subject came from Mr. Gray, who sought confirmation that Mr. Smith would agree to take StudiVZ off calendar and grant a few week continuance with respect to the Holtzbrinck Defendants. Mr. Smith stated, "That's right, but just a few weeks, two or three weeks."

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of February, at Menlo Park, California.

                                                                    /s/ Julio C. Avalos /s/
                                                                           Julio C. Avalos

1 **CERTIFICATE OF SERVICE**

2     I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
3 and paper copies will be sent to those indicated as non registered participants on February 17,
4 2009.

5 Dated: February 17, 2009          Respectfully submitted,

6

                          /s/ Julio C. Avalos /s/
7                              Julio C. Avalos

OHS West:260612292.1      - 7 -      DECL. OF J. AVALOS IN SUPPORT OF FACEBOOK'S
REPLY RE: MOTION FOR SANCTIONS
No. 5:08-CV-03468 JF