ENTSCHEIDUNGEN
BUNDESGERICHTSHOFE

HERAUSGEGEBEN VON
DEN MITGLIEDERN DES BUNDESGERICHTSHOFES
UND DER BUNDESANWALTSCHAFT



CARL HEYMANNS VERLAG KG
KÖLN · BERLIN

Germany (West). Bundesgerichtshof.

# ENTSCHEIDUNGEN DES BUNDESGERICHTSHOFES IN ZIVILSACHEN

## BGHZ

### 118. BAND



1993

CARL HEYMANNS VERLAG KG
KÖLN · BERLIN

LOS ANGELES COUNTY LAW LIBRARY

Price v. Facebook, Inc.    Doc. 132



Dockets.Justia.com

a) § 265 Abs. 2 ZPO gilt auch im Rechtsstreit auf Vollstreckbarerklärung eines ausländischen Urteils nach § 722 ZPO (Abgrenzung zu BGHZ 92, 347).

b) Der Umstand, daß ein rechtskräftiges ausländisches Urteil nach dem Recht des erlassenden Staates ausnahmsweise vernichtbar ist, schließt die Vollstreckbarerklärung gemäß § 722 ZPO so lange nicht aus, bis das Urteil im Erststaat aufgehoben ist.

c) Die Tatsache allein, daß einem US-amerikanischen Urteil eine pre-trial discovery vorausgegangen ist, hindert dessen Anerkennung in Deutschland nicht.

d) Kann ein ausländisches Urteil wegen einzelner Ansprüche im Inland nicht für vollstreckbar erklärt werden, so hindert das die Vollstreckbarerklärung im übrigen nicht.

e) Bei Anwendung des § 328 Abs. 1 Nr. 4 ZPO ist auch auf Ausmaß und Bedeutung der Inlandsbeziehung des Sachverhalts abzustellen, der dem ausländischen Urteil zugrunde liegt.

f) Gewährt das ausländische Recht einen Anspruch auf Ersatz von Heilungskosten ohne Rücksicht darauf, ob der Verletzte gegenwärtig die bestimmte Absicht hat, sich der Heilbehandlung zu unterziehen, so begründet das kein Anerkennungshindernis im Sinne von § 328 Abs. 1 Nr. 4 ZPO.

g) Spricht ein zuständiges ausländisches Gericht dem ausländischen Prozeßbevollmächtigten des obsiegenden ausländischen Klägers aufgrund des dort geltenden Rechts ein Erfolgshonorar von 40 % aller eingehenden Schadensersatzleistungen zu, so begründet das für sich allein in Deutschland kein Anerkennungshindernis.

h) Ein US-amerikanisches Urteil auf Strafschadensersatz (punitive damages) von nicht unerheblicher Höhe, der ne-

33

…bs. 2 ZPO gilt auch im Rechtsstreit auf Voll…
…ärung eines ausländischen Urteils nach § 722…
…nzung zu BGHZ 92, 347).

…nstand, daß ein rechtskräftiges ausländisches…
… dem Recht des erlassenden Staates ausnahms…
…htbar ist, schließt die Vollstreckbarerklärung…
… ZPO so lange nicht aus, bis das Urteil im …
…gehoben ist.

…tsache allein, daß einem US-amerikanischen…
…re-trial discovery vorausgegangen ist, hindert…
…kennung in Deutschland nicht.

…ein ausländisches Urteil wegen einzelner…
…n Inland nicht für vollstreckbar erklärt werden…
…as die Vollstreckbarerklärung im übrigen nicht…

…vendung des § 328 Abs. 1 Nr. 4 ZPO ist auch auf…
… Bedeutung der Inlandsbeziehung des Sachver…
…ellen, der dem ausländischen Urteil zugrunde…

…rt das ausländische Recht einen Anspruch auf…
…Heilungskosten ohne Rücksicht darauf, ob der…
…genwärtig die bestimmte Absicht hat, sich der…
…ung zu unterziehen, so begründet das kein…
…gshindernis im Sinne von § 328 Abs. 1 Nr. 4…

…ein zuständiges ausländisches Gericht dem aus…
…Prozeßbevollmächtigten des obsiegenden auf…
…Klägers aufgrund des dort geltenden Rechts ein…
…rar von 40 % aller eingehenden Schadensersatz…
…u, so begründet das für sich allein in Deutsch…
…nerkennungshindernis.

…-amerikanisches Urteil auf Strafschadensersatz…
…images) von nicht unerheblicher Höhe, der ne…
…en der Zuerkennung von Ersatz für materielle und immaterielle Schäden pauschal zugesprochen wird, kann insoweit …Deutschland regelmäßig nicht für vollstreckbar erklärt werden.

…Zur Anerkennung eines US-amerikanischen Urteils auf …lung eines für inländische Verhältnisse außerordentlich …hen Schmerzensgeldbetrages (damages for pain and suffering).

…In Deutschland kann ein ausländisches Urteil unabhän…davon für vollstreckbar erklärt werden, ob es Art. 5 …1 Satz 2 oder Art. 38 EGBGB entspricht.

ZPO §§ 265 Abs. 2, 328, 722, 723; BGB §§ 249, 253, 847;
EGBGB (1986) Art. 5 Abs. 1 Satz 2, Art. 38.
IX. Zivilsenat. Urt. vom 4. Juni 1992
i. S. G. D. S. (Kl.) w. E. S. (Bekl.).
IX ZR 149/91.

I. Landgericht Düsseldorf
II. Oberlandesgericht Düsseldorf

Der Kläger begehrt, ein US-amerikanisches Schadensersatzurteil in der Bundesrepublik Deutschland für vollstreckbar zu erklären. Er ist Staatsangehöriger der Vereinigten Staaten von Amerika. Der Beklagte hat seit der Geburt die deutsche und erwarb dazu die US-amerikanische Staatsbürgerschaft. Beide Parteien lebten in S./Kalifornien.

Am 10. Mai 1984 verließ der Beklagte, der von einem US-amerikanischen Gericht wegen sexuellen Mißbrauchs von Jugendlichen zu einer langjährigen Freiheitsstrafe verurteilt worden war, die USA. Er lebt nunmehr in Deutschland, wo er über Grundvermögen verfügt.

Durch Urteil des Superior Court of the State of California in and for the County of San Joaquin (im folgenden: Superior Court) vom 24. April 1985 wurde dem – 1968 geborenen – Kläger unter dem Decknamen »John Doe« gegen den Beklagten ein Schadensersatzanspruch in Höhe von US-Dollar 750 260 zuerkannt. Das Urteil enthält keine ins einzelne gehende Darstel-

lung des ihm zugrundeliegenden Sachverhalts und der Entscheidungsgründe. Jedoch erschließt sich aus dem Protokoll der Gerichtsverhandlung vor dem Superior Court, daß der Verurteilung sexuelle Verfehlungen des Beklagten gegenüber dem zur Tatzeit noch nicht 14 Jahre alten Kläger in St. zugrunde liegen (gemeinsames Masturbieren in fünf Fällen) und daß sich die gesamte, dem Kläger zugesprochene Urteilssumme zusammensetzt aus US-Dollar 260 als Ersatz für Heilaufwendungen (past medical damages), US-Dollar 100 000 für künftige medizinische Versorgung (future medical), US-Dollar 50 000 für eine voraussichtlich erforderliche Unterbringung des Klägers (cost of placement), US-Dollar 200 000 für erlittene Ängste, Schmerzen, Leiden und sonstige Schäden dieser Art (anxiety, pain, suffering and general damages of that nature) und US-Dollar 400 000 Strafschadensersatz (exemplary and punitive damages). Ferner ordnete der Superior Court in seinem Urteil an, daß dem amerikanischen Rechtsanwalt des Klägers 40 % aller Gelder zustehen, die dieser im Namen des Klägers von dem Beklagten erhalte.

Das Landgericht hat das Urteil des Superior Court zuzüglich Zinsen für vollstreckbar in Deutschland erklärt. Auf die Berufung des Beklagten hat das Oberlandesgericht (dessen Urteil in RIW 1991, 594 ff. = VersR 1991, 1161 ff. = RuS 1991, 339 ff. veröffentlicht ist) die Vollstreckbarerklärung in Höhe von US-Dollar 275 325 aufrechterhalten und die Klage im übrigen abgewiesen. Mit seiner hiergegen gerichteten Revision erstrebt der Beklagte die vollständige Abweisung der Klage, während der Kläger mit seiner Revision die Wiederherstellung des landgerichtlichen Urteils ohne Zinsen begehrt.

Beide Rechtsmittel hatten nur teilweise Erfolg.

Aus den Gründen:

A. Zur Revision des Beklagten

I.

Nach den unangefochtenen Feststellungen des Berufungsgerichts hat der Kläger im Verlauf des vorliegenden Rechtsstreits die ihm durch das Urteil des Superior Court zuerkannte Forde-

:liegenden Sachverhalts und der Entschei-
erschließt sich aus dem Protokoll der
'or dem Superior Court, daß der Verurtei-
ngen des Beklagten gegenüber dem zur
Jahre alten Kläger in St. zugrunde liegen
bieren in fünf Fällen) und daß sich die
ugesprochene Urteilssumme zusammen-
,0 als Ersatz für Heilaufwendungen (past
·Dollar 100 000 für künftige medizinische
dical), US-Dollar 50 000 für eine voraus-
Unterbringung des Klägers (cost of place-
000 für erlittene Ängste, Schmerzen, Lei-
iden dieser Art (anxiety, pain, suffering
of that nature) und US-Dollar 400 000
emplary and punitive damages). Ferner
ourt in seinem Urteil an, daß dem ameri-
lt des Klägers 40 % aller Gelder zustehen,
des Klägers von dem Beklagten erhalte-
das Urteil des Superior Court zuzüglich
ir in Deutschland erklärt. Auf die Beru-
das Oberlandesgericht (dessen Urteil in
:sR 1991, 1161 ff. = RuS 1991, 339 ff. ver-
treckbarerklärung in Höhe von US-Dol-
alten und die Klage im übrigen abgewie-
egen gerichteten Revision erstrebt der
ige Abweisung der Klage, während der
sion die Wiederherstellung des landge-
e Zinsen begehrt.
1atten nur teilweise Erfolg.

s den Gründen:
  Beklagten
        I.
htenen Feststellungen des Berufungsge-
1 Verlauf des vorliegenden Rechtsstreits
il des Superior Court zuerkannte Forde-

rung an seinen amerikanischen Rechtsanwalt als Treuhänder vorübergehend abgetreten, um sich vor Beeinflussungsversuchen durch den Beklagten zu schützen. Der Abtretungsempfänger ist mit der Einziehung durch den Kläger einverstanden.

Das Berufungsgericht ist der Ansicht, die Abtretung habe gemäß § 265 Abs. 2 ZPO die Prozeßführungsbefugnis des Klägers nicht beeinflußt. Auch einer Umstellung des Klageantrags dahin, daß das Urteil des Superior Court nunmehr für den neuen Forderungsinhaber vollstreckbar sein solle, bedürfe es nicht. Der Kläger habe nach wie vor ein schutzwertes Interesse daran, die Klage in unveränderter Form durchzusetzen.

Diese Ausführungen halten den Angriffen der Revision stand.

1. Zutreffend hat das Berufungsgericht die Prozeßführungsbefugnis des Klägers aus § 265 Abs. 2 ZPO hergeleitet und insoweit deutsches Verfahrensrecht angewandt (vgl. Stein/Jonas/Leipold, ZPO 10. Aufl. vor § 50 Rdn. 22; Wieczorek, ZPO 2 Aufl. § 722 Anm. C II b 2; Geimer, Internationales Zivilprozeßrecht – nachfolgend IZPR – Rdn. 2041 f.). Der Gegenansicht, die zur Prozeßführungsbefugnis allgemein auf die für den materiell-rechtlichen Streitstoff maßgebliche Rechtsordnung abstellen will (Grunsky ZZP 89, 241, 257 f.), kann jedenfalls insoweit nicht gefolgt werden, als sich die Prozeßführungsbefugnis – wie nach § 265 Abs. 2 ZPO – unmittelbar aus dem im deutschen Gerichtsstand anwendbaren Prozeßrecht ergibt. Wegen des Zwecks dieser Vorschrift, das Prozeßrechtsverhältnis vor materiell-rechtlichen Änderungen abzuschirmen, gilt sie für jedes von ihr erfaßte Verfahren (Riezler, Internationales Zivilprozeßrecht S. 427 f.; Schack, Internationales Zivilverfahrensrecht – nachfolgend IZVR – Rdn. 552; Nagel, Internationales Zivilprozeßrecht 3. Aufl. Rdn. 281).

Entgegen der Ansicht der Revision steht der Rechtsgrundsatz, daß § 265 ZPO für die Übertragung eines titulierten Anspruchs im inländischen Volltreckungsverfahren nicht gilt (BGHZ 92, 347, 349 f. m. w. Nachw.), der Prozeßführungsbefugnis des Klägers nicht entgegen. Das Urteil des Superior Court kann und soll hier nicht Grundlage einer Zwangsvollstreckung im Inland sein. Maßgeblicher Titel dafür ist allein die Entscheidung über die Vollstreckbarerklärung (vgl. BGH, Urt. v. 6. November

1985 – IVb ZR 73/84, JZ 1987, 203, 204; Zöller/Geimer, ZPO 17. Aufl. § 722 Rdn. 56, jeweils m.w.Nachw.; Stein/Jonas/Münzberg aaO § 722 Rdn. 23; Roth IPRax 1989, 14, 15). Mit der Abtretung der im Urteil des Superior Court zuerkannten Forderung hat der Kläger noch keinen nach deutschem Recht titulierten Anspruch übertragen. Ein solcher kann erst im Rechtsstreit nach § 722 ZPO entstehen. Dabei handelt es sich um einen ordentlichen Zivilprozeß und nicht um ein Verfahren der Zwangsvollstreckung (Geimer/Schütze, Internationale Urteilsanerkennung Bd. I 2. Halbbd. § 237 I; Zöller/Geimer aaO § 722 Rdn. 16 und 44 m.w.Nachw.). Der Umstand, daß sein Streitgegenstand unmittelbar das – nicht abgetretene – prozessuale Begehren auf Vollstreckbarerklärung ist, schadet entgegen der Meinung der Revision nicht, weil der Rechtsstreit der Sache nach die Durchsetzung der – abgetretenen – ausländischen Ansprüche in Deutschland vorbereiten soll. Infolgedessen ist, wie auch sonst im Erkenntnisverfahren § 265 ZPO anwendbar (Stein/Jonas/Schumann aaO § 265 Rdn. 15).

2. Es ist entgegen der Ansicht der Revision auch nicht zu beanstanden, daß das Berufungsgericht eine Umstellung des Klageantrags nicht für notwendig erachtet hat. Zwar führt eine nach Rechtshängigkeit vorgenommene Forderungsabtretung ungeachtet der nach § 265 Abs. 2 ZPO fortbestehenden Prozeßführungsbefugnis regelmäßig dazu, daß nur auf Leistung an den neuen Gläubiger geklagt werden kann (BGHZ 26, 31, 37; BGH, Urt. v. 18. März 1986 – X ZR 4/85, NJW-RR 1986, 1182). Der alte Gläubiger ist dann nicht mehr in der Lage, Leistung an sich selbst zu fordern, weil die Abtretung sachlich-rechtliche Wirksamkeit entfaltet. Einer Umstellung des Klageantrags bedarf es gleichwohl nicht, wenn der alte Gläubiger trotz der Abtretung die Ermächtigung zur Einziehung der Forderung behalten hat (RGZ 166, 218, 217). Ob dies der Fall ist, bestimmt sich nach den zwischen ihm und dem neuen Gläubiger getroffenen Vereinbarungen. Dabei handelt es sich um eine materiell-rechtliche Frage, die im Streitfall gemäß Art. 33 Abs. 1, 27 EGBGB nach ausländischem Recht zu beurteilen ist (vgl. Schack IZVR Rdn. 558), hier also nach kalifornischem Recht. Die Revision legt nicht in der Form des § 554 Abs. 3 Nr. 3 b ZPO dar, daß das

[Text partially obscured by scan artifact in the middle column]

... 73/84, JZ 1987, 203, 204; Zöller/Geimer, ZPO ... Rdn. 56, jeweils m.w.Nachw.; Stein/Jonas/Münz... 2 Rdn. 23; Roth IPRax 1989, 14, 15). Mit de... im Urteil des Superior Court zuerkannten Forde... läger noch keinen nach deutschem Recht titu... übertragen. Ein solcher kann erst im Rechtsstreit ... PO entstehen. Dabei handelt es sich um einen ... Zivilprozeß und nicht um ein Verfahren de... eckung (Geimer/Schütze, Internationale U... ng Bd. I 2. Halbbd. § 237 I; Zöller/Geimer aaO ... und 44 m.w.Nachw.). Der Umstand, daß sein... d unmittelbar das – nicht abgetretene – proze... auf Vollstreckbarerklärung ist, schadet entgegen ... er Revision nicht, weil der Rechtsstreit der Sache... chsetzung der – abgetretenen – ausländischen ... Deutschland vorbereiten soll. Infolgedessen ist ... im Erkenntnisverfahren § 265 ZPO anwendbar ... chumann aaO § 265 Rdn. 15).
egen der Ansicht der Revision auch nicht zu bean... las Berufungsgericht eine Umstellung des Klage... ür notwendig erachtet hat. Zwar führt eine nach ... eit vorgenommene Forderungsabtretung unge... § 265 Abs. 2 ZPO fortbestehenden Prozeßführ... regelmäßig dazu, daß nur auf Leistung an den ... er geklagt werden kann (BGHZ 26, 31, 37; BGH... z 1986 – X ZR 4/85, NJW-RR 1986, 1182). De... ist dann nicht mehr in der Lage, Leistung an sich ... rn, weil die Abtretung sachlich-rechtliche Wirk... et. Einer Umstellung des Klageantrags bedarf es ... ht, wenn der alte Gläubiger trotz der Abtretung ... ng zur Einziehung der Forderung behalten hat ... 3, 217). Ob dies der Fall ist, bestimmt sich nach ... ihm und dem neuen Gläubiger getroffenen Ver... Dabei handelt es sich um eine materiell-rechtliche ... treitfall gemäß Art. 33 Abs. 1, 27 EGBGB nach ... Recht zu beurteilen ist (vgl. Schack IZVR ... also nach kalifornischem Recht. Die Revision ... r Form des § 554 Abs. 3 Nr. 3 b ZPO dar, daß das ...

Berufungsgericht mit seiner Annahme, der Kläger sei nach wie vor zur Einziehung der Forderung aus dem Urteil des Superior Court in eigenem Namen und an sich selbst berechtigt, seine Verpflichtung zur Ermittlung entgegenstehenden amerikanischen Rechts (§ 293 ZPO) unberücksichtigt gelassen habe.

II.

Zu Unrecht rügt die Revision das Fehlen tatrichterlicher Feststellungen zu der Frage, ob das Urteil des Superior Court gemäß § 723 Abs. 2 Satz 1 ZPO nach dem für dieses Gericht geltenden Recht die formelle Rechtskraft erlangt hat (wird ausgeführt).

III.

1. Dem Beklagten ist die verfahrenseinleitende Klageschrift (»complaint«) rechtzeitig zugestellt worden, und er hat sich darauf – vor dem international zuständigen Gericht (§ 328 Abs. 1 Nr. 1, §§ 12 f., 32 ZPO) – auch eingelassen, § 328 Abs. 1 Nr. 2 ZPO. Daß die Klage unter einem Decknamen für den Kläger erhoben war, machte sie nicht unwirksam. Denn sie enthielt jedenfalls so viele Einzelangaben, daß der Beklagte sich dagegen in vollem Umfange verteidigen konnte. Aus ihr ergab sich, daß Streitgegenstand ein Anspruch auf Zahlung von Ersatz für materielle und immaterielle Schäden sowie von Strafschadensersatz wegen sexueller Handlungen sein sollte, die der Beklagte in seinem Hause in der Zeit von Februar bis August 1982 am minderjährigen Kläger angeblich vorgenommen hatte.

2. Der Beklagte hat das Gutachten eines amerikanischen Rechtsanwalts vorgelegt, das zu dem Ergebnis gelangt, das Urteil des Superior Court verstoße gegen die amerikanische Bundesverfassung und die Verfassung des Staates von Kalifornien, weil es unter Überschreitung der Rechtsprechungsbefugnis (»jurisdiction«) des Gerichts ergangen sei. Dies folge daraus, daß weder der Beklagte noch Rechtsanwalt J. zu der mündlichen Verhandlung vom 23. April 1985 geladen worden sei. Dem Beklagten könne die an Rechtsanwalt G. gerichtete Ladung nicht zugerechnet werden, weil dieser nicht wirksam zu seinem Prozeßbevollmächtigten bestellt worden sei. Das Urteil des

Superior Court sei deshalb nichtig und nicht vollstreckbar (»void and unenforceable«).

Das Berufungsgericht hat hierzu ausgeführt, die Frage der Nichtigkeit des kalifornischen Urteils sei im Rahmen des Verfahrens auf Verleihung der Vollstreckbarkeit von den deutschen Gerichten nur beschränkt zu überprüfen. Im Grundsatz seien ausländische Urteile zu respektieren. Dazu gehöre in erster Linie, den ausländischen Hoheitsakt als nach ausländischem Recht existent zu betrachten, sofern nicht seine Nichtigkeit auf der Hand liege. Von einer ganz offenkundigen und unzweifelhaften Nichtigkeit könne hier jedoch keine Rede sein. Es sei nicht Aufgabe des deutschen Richters, in Zweifelsfällen über die Vereinbarkeit US-amerikanischer Urteile mit der US-amerikanischen Bundesverfassung und der Verfassung der jeweiligen Einzelstaaten zu entscheiden.

Diese Ausführungen halten im Ergebnis einer rechtlichen Überprüfung stand.

a) Wirkungen eines ausländischen Urteils können allerdings nur dann auf das Inland erstreckt werden, wenn sie nach der Rechtsordnung des Staates, in dem das Urteil ergangen ist, überhaupt eintreten. Urteile, die nach der Rechtsordnung des Entscheidungsstaats schlechthin nichtig oder unwirksam (ungültig) sind, sind deshalb nicht gemäß §§ 722, 723 ZPO für vollstreckbar zu erklären (Martiny, Handbuch des internationalen Zivilverfahrensrechts – nachfolgend Handbuch – Bd. III/1 Rdn. 485; Stein-Jonas/Schumann aaO § 328 Rdn. 105; Geimer/Schütze aaO Bd. I/1 § 139 I 1; MünchKomm ZPO/Gottwald § 328 Rdn. 51; Nussbaum, 41 Columbia Law Review 221, 231). Ist das Urteil nach dem Recht des Erststaates hingegen lediglich anfechtbar, so schließt dies seine Anerkennung nicht aus, solange es nicht aufgehoben ist (Martiny, Handbuch Rdn. 486; Geimer IZPR Rdn. 2236; Geimer/Schütze aaO Bd. I/1 § 195 I; Zöller/Geimer aaO § 328 Rdn. 91 m.w.Nachw.). Das gilt – vorbehaltlich des § 328 Abs. 1 Nr. 4 ZPO – auch dann, wenn die Entscheidung, der im Inland die Vollstreckbarkeit verliehen werden soll, im Erlaßstaat in einem neuen Verfahren, wie etwa auf eine Verfassungsbeschwerde oder Wiederaufnahme des Verfahrens, beseitigt werden könnte (vgl. Martiny aaO Rdn. 489

t sei deshalb nichtig und nicht vollstreckbar nforceable«).
gsgericht hat hierzu ausgeführt, die Frage der kalifornischen Urteils sei im Rahmen des Ver eihung der Vollstreckbarkeit von den deutschen beschränkt zu überprüfen. Im Grundsatz seien rteile zu respektieren. Dazu gehöre in erster ändischen Hoheitsakt als nach ausländischem u betrachten, sofern nicht seine Nichtigkeit auf Von einer ganz offenkundigen und unzweifel eit könne hier jedoch keine Rede sein. Es sei es deutschen Richters, in Zweifelsfällen über die S-amerikanischer Urteile mit der US-amerikani rfassung und der Verfassung der jeweiligen Ein tscheiden.
rungen halten im Ergebnis einer rechtlichen and.
eines ausländischen Urteils können allerdings s Inland erstreckt werden, wenn sie nach der des Staates, in dem das Urteil ergangen ist, über Urteile, die nach der Rechtsordnung des Ent schlechthin nichtig oder unwirksam (ungültig) lb nicht gemäß §§ 722, 723 ZPO für vollstreck (Martiny, Handbuch des internationalen Zivil – nachfolgend Handbuch – Bd. III/1 Rdn. 485; amann aaO § 328 Rdn. 105; Geimer/Schütze 139 I 1; MünchKomm ZPO/Gottwald § 328 um, 41 Columbia Law Review 221, 231). Ist das m Recht des Erststaates hingegen lediglich schließt dies seine Anerkennung nicht aus, aufgehoben ist (Martiny, Handbuch Rdn. 486; dn. 2236; Geimer/Schütze aaO Bd. I/1 § 195 I; aO § 328 Rdn. 91 m.w.Nachw.). Das gilt – vor 328 Abs. 1 Nr. 4 ZPO – auch dann, wenn die er im Inland die Vollstreckbarkeit verliehen Erlaßstaat in einem neuen Verfahren, wie etwa ngsbeschwerde oder Wiederaufnahme des Ver t werden könnte (vgl. Martiny aaO Rdn. 489

m.w.Nachw.; Pohle JW 1936, 1873). Gegen derartig fehlerhafte Urteile muß grundsätzlich Abhilfe vor den Gerichten des Erlaßstaates aufgrund der dafür eröffneten Rechtsbehelfe gesucht werden. Die im Revisionsrechtszug vom Beklagten erhobene neue Behauptung allein, er habe inzwischen das Urteil des Superior Court von einem kalifornischen Gericht wegen Nichtigkeit angefochten, ist unerheblich. Der Beklagte legt nicht dar, daß das angegangene ausländische Gericht das Ersturteil aufgehoben habe.

Für die Abgrenzung zwischen der Nichtigkeit einer ausländischen Entscheidung und deren bloßer Aufhebbarkeit ist zu beachten, daß Fälle, in denen ein Urteil ohne Rechtswirkungen bleibt, auch in ausländischen Rechtsordnungen die Ausnahme bilden und in der Regel die Fehlerhaftigkeit einer Entscheidung lediglich dazu führt, daß diese mit Rechtsmitteln angefochten werden kann (vgl. Geimer/Schütze aaO Bd. I/1 § 139 I 3). Nach amerikanischem Recht gilt ebenfalls eine Vermutung für die Wirksamkeit des Urteils (Engelmann-Pilger, Die Grenzen der Rechtskraft des Zivilurteils im Recht der Vereinigten Staaten S. 59 m.w.Nachw.). Verfahrensfehler können grundsätzlich nur durch Rechtsmittel gegen das Urteil selbst (»direct attack«) geltend gemacht werden (vgl. Teply/Whitten, Civil Procedure S. 59, 665, 669 f.).

b) Nach diesen Grundsätzen ist es entgegen der Ansicht der Revision nicht zu beanstanden, daß das Berufungsgericht zu dem Ergebnis gelangt ist, das Vorbringen des Beklagten zur Frage der Nichtigkeit des Urteils des Superior Court stehe einer Vollstreckbarerklärung nicht entgegen (wird ausgeführt).

c) Der Senat ist gemäß §§ 559 Abs. 2 Satz 2, 565 Abs. 4 ZPO befugt, selbst die Schlüssigkeit der auf ausländisches Recht gestützten Behauptung nachzuprüfen, wenn – wie im Streitfall – Feststellungen des Berufungsgerichts hierzu fehlen. Denn die vom Beklagten nach § 554 Abs. 3 Nr. 3 Buchst. b ZPO erhobene Rüge einer Verletzung des § 293 ZPO durch das Berufungsgericht kann nur berechtigt sein, wenn die Behauptung in der Berufungsinstanz objektiv geeignet war, eine Pflicht des Tatrichters zur Ermittlung des ausländischen Rechts auszulösen. Dies hängt auch davon ab, ob die Parteien zu den Erkenntnisquellen



der ausländischen Rechtsordnung unschwer Zugang haben, dann müssen sie das ausländische Recht regelmäßig konkret darstellen (Senatsurteil v. 30. April 1992, vorstehend S. 164). Legt eine Partei das Privatgutachten eines ausländischen Sachverständigen vor und ergibt es nicht, daß der Ausgang des inländischen Prozesses von der mitgeteilten ausländischen Rechtslage abhängt, so hat das deutsche Gericht insoweit regelmäßig nicht von sich aus weiter nachzuforschen.

Danach stellt es hier im Ergebnis keinen Verstoß des Berufungsgerichts gegen § 293 ZPO dar, wenn es zur Frage der Nichtigkeit des Urteils des Superior Court nach amerikanischem Recht keine weiteren Ermittlungen vorgenommen hat.

3. Das Berufungsgericht hat die Umstände, die dazu führten, daß der Beklagte im Termin vom 23. April 1985 vor dem Superior Court nicht vertreten war, desweiteren gemäß § 723 Abs. 2, 328 Abs. 1 Nr. 4 ZPO auf ihre Vereinbarkeit mit dem verfahrensrechtlichen ordre public untersucht und ist dabei zu dem Ergebnis gelangt, ein unerträglicher Verstoß gegen wesentliche Grundsätze des deutschen Rechts liege nicht vor. Entgegen der Auffassung der Revision hält auch das einer rechtlichen Überprüfung stand.

a) Zutreffend hat das Berufungsgericht insoweit von einer Überprüfung der Frage abgesehen, ob der Beklagte aufgrund der am 16. Januar 1985 an Rechtsanwalt G. gerichteten Ladung nach den für den Zivilprozeß in Kalifornien geltenden Regeln ordnungsgemäß über den Termin vom 23. April 1985 benachrichtigt war. Der Superior Court hat dies ausdrücklich bejaht. Eine Nachprüfung der sachlichen Richtigkeit der Feststellung ist dem deutschen Gericht gemäß § 723 Abs. 1 ZPO (Verbot der révision au fond) im Verfahren über die Vollstreckbarkeit des ausländischen Urteils verwehrt (BGHZ 53, 357, 363).

b) Ein die Anerkennung ausschließender Verstoß gegen den ordre public im Sinne des § 328 Abs. 1 Nr. 4 ZPO n.F. läge vor, wenn die Anerkennung des Urteils des Superior Court zu einem Ergebnis führte, das mit den Grundrechten oder sonst offensichtlich mit wesentlichen Grundsätzen des deutschen Rechts unvereinbar wäre. Hiervon ist bei Verfahrensverstößen nur auszugehen, wenn die Entscheidung auf einem Verfahren beruht,

en Rechtsordnung unschwer Zugang haben,
ie das ausländische Recht regelmäßig konkret
itsurteil v. 30. April 1992, vorstehend S. 164).
. das Privatgutachten eines ausländischen Sach-
r und ergibt es nicht, daß der Ausgang des inlän-
es von der mitgeteilten ausländischen Rechts-
 hat das deutsche Gericht insoweit regelmäßig
us weiter nachzuforschen.

es hier im Ergebnis keinen Verstoß des Beru-
gen § 293 ZPO dar, wenn es zur Frage der Nich-
eils des Superior Court nach amerikanischem
iteren Ermittlungen vorgenommen hat. ..
ngsgericht hat die Umstände, die dazu führten,
te im Termin vom 23. April 1985 vor dem
 nicht vertreten war, desweiteren gemäß § 723
. 1 Nr. 4 ZPO auf ihre Vereinbarkeit mit dem
lichen ordre public untersucht und ist dabei zu
, ein unerträglicher Verstoß gegen wesent-
e des deutschen Rechts liege nicht vor. Entgegen
 der Revision hält auch das einer rechtlichen
and.

l hat das Berufungsgericht insoweit von einer
er Frage abgesehen, ob der Beklagte aufgrund
ar 1985 an Rechtsanwalt G. gerichteten Ladung
n Zivilprozeß in Kalifornien geltenden Regeln
 über den Termin vom 23. April 1985 benach-
r Superior Court hat dies ausdrücklich bejaht.
ng der sachlichen Richtigkeit der Feststellung ist
Gericht gemäß § 723 Abs. 1 ZPO (Verbot der
d) im Verfahren über die Vollstreckbarkeit des
Jrteils verwehrt (BGHZ 53, 357, 363).

ıerkennung ausschließender Verstoß gegen den
Sinne des § 328 Abs. 1 Nr. 4 ZPO n.F. läge vor,
ennung des Urteils des Superior Court zu einem
, das mit den Grundrechten oder sonst offen-
sentlichen Grundsätzen des deutschen Rechts
re. Hiervon ist bei Verfahrensverstößen nur aus-
 die Entscheidung auf einem Verfahren beruht,

das von den Grundprinzipien des deutschen Verfahrensrechts in einem Maße abweicht, daß es nach der deutschen Rechtsordnung nicht als in einer geordneten, rechtsstaatlichen Weise ergangen angesehen werden kann (BGHZ 48, 327, 331; 53, 357, 359 f.; 73, 378, 386; 98, 70, 73; BGH, Urt. v. 19. September 1977 – VIII ZR 110/75, WM 1977, 1230, 1231; Beschl. v. 11. März 1990 – XII ZB 71/89, NJW 1990, 1101; Senatsurt. v. 27. März 1984 – IX ZR 24/83, WM 1984, 748, 749). Das trifft hier nicht zu. Insbesondere verletzt das Verfahren des Superior Court nicht die Prinzipien, die dem Verfahrensgrundrecht auf rechtliches Gehör (Art. 103 Abs. 1 GG) zugrunde liegen. Dessen Schutz erstreckt sich nicht auf eine bestimmte, verfahrensrechtliche Ausgestaltung (BGH, Urt. v. 11. April 1979 – IV ZR 93/78, NJW 1980, 519, 531), etwa eine Terminsladung. Bei der Anwendung jener Verfassungsbestimmung zur Konkretisierung des gemäß § 328 Abs. 1 Nr. 4 ZPO maßgeblichen verfahrensrechtlichen ordre public ist vielmehr auf die Grundsätze abzustellen, die Art. 103 Abs. 1 GG schützen will. Dies ist einmal das Prinzip der Rechtsstaatlichkeit, das grundsätzlich verbietet, eine Entscheidung zu treffen, bevor der Betroffene Gelegenheit zur Äußerung hatte. Ferner verlangt das Gebot der Achtung der Menschenwürde, daß ein Beteiligter in der Lage sein muß, auf den Verfahrensablauf aktiv Einfluß zu nehmen (BVerfGE 63, 332, 337 m.w.Nachw.; BGHZ 48, 327, 333, bestätigt durch Beschl. des BVerfG v. 28. März 1968 – I BvR 740/67; BGH, Urt. v. 19. September 1977 – VIII ZR 120/75, aaO; Schmidt-Aßmann in Maunz/Dürig, GG Art. 103 Abs. 1 Rdn. 2 ff.). Diesen Erfordernissen hat das Verfahren vor dem Superior Court Rechnung getragen.

Dem Beklagten war die in Kalifornien gegen ihn anhängige Zivilklage des Klägers bekannt, und er hatte bereits geraume Zeit vor seiner Flucht aus den USA Rechtsanwalt J. zu seinem Prozeßbevollmächtigten bestellt, der ihn zunächst im amerikanischen Rechtsstreit auch vertrat. Damit war der Beklagte jedenfalls in der Lage, sich gegenüber der Klage vor dem kalifornischen Gericht zu verteidigen. Die nach seinem Verlassen der USA eingetretene weitere Entwicklung seiner Vertretung im amerikanischen Prozeß vermag eine Verletzung der Grundsätze



rechtlichen Gehörs nicht zu begründen. Nach den insoweit unangefochtenen Feststellungen des Berufungsgerichts erfolgte die als »Assoziierung« vorgenommene Einschaltung von Rechtsanwalt G. durch förmliche Erklärung des Rechtsanwalts J. an den Superior Court. Der Sache nach beabsichtigte Rechtsanwalt J. damit, einen Anwaltswechsel vorzunehmen. In der Folgezeit trat allein Rechtsanwalt G. vor dem Superior Court auf und wurde zu dem Termin vom 23. April 1985 geladen. Erst danach kam es zu seiner Entlassung als Rechtsanwalt des Beklagten.

Zu Recht führt das Berufungsgericht aus, es sei schon deutschen Rechtsvorstellungen nicht fremd, eine Partei unter diesen Umständen als ordnungsgemäß geladen anzusehen. Seinen Ausdruck findet das in der Vorschrift des § 176 ZPO, derzufolge Zustellungen im anhängigen Rechtsstreit an den bestellten Prozeßbevollmächtigten erfolgen müssen. Die Zustellung an einen von mehreren Prozeßbevollmächtigten genügt (Zöller/Stephan aaO § 176 Rdn. 13). Dabei kommt es entgegen der Ansicht der Revision nicht darauf an, ob der Rechtsanwalt tatsächlich Prozeßvollmacht hatte. Entscheidend ist im Hinblick auf den erforderlichen Vertrauensschutz für die Gegenseite und auf § 579 Abs. 1 Nr. 4 ZPO allein, ob er sich ausdrücklich oder durch schlüssiges Verhalten zum Prozeßbevollmächtigten bestellt hat (BGH, Beschl. v. 23. November 1978 – II ZB 7/78, VersR 1979, 155 m.w.Nachw.; v. 21. Mai 1986 – VIII ZB 17/86, VersR 1986, 993, 994; v. 22. Oktober 1986 – VIII ZB 40/86, NJW 1987, 440; MünchKomm ZPO/v. Feldmann § 176 Rdn. 4, 8). Eine spätere Beendigung des Mandats berührt die Wirksamkeit der Zustellung nicht. Das Interesse der Partei, für die ein nicht bevollmächtigter Rechtsanwalt aufgetreten ist, wird durch die je nach Lage des Falles bestehenden Möglichkeiten, das Urteil anzufechten oder sich an dem vollmachtlosen Vertreter schadlos zu halten hinreichend gewahrt (BGH, Beschl. v. 23. November 1978 – II ZB 7/78, aaO).

Darüber hinaus gewährleistet Art. 103 Abs.1 GG nur die – von Staats wegen ungehinderte – Gelegenheit, sich am Gerichtsverfahren zu beteiligen. Der Berechtigte kann sie durch schuldhaftes Verhalten verwirken oder von der Ausübung des Rechts

Gehörs nicht zu begründen. Nach den insoweit enen Feststellungen des Berufungsgerichts erfolgte ssoziierung« vorgenommene Einschaltung von lt G. durch förmliche Erklärung des Rechtsanwalts perior Court. Der Sache nach beabsichtigte Rechts mit, einen Anwaltswechsel vorzunehmen. In der t allein Rechtsanwalt G. vor dem Superior Court de zu dem Termin vom 23. April 1985 geladen. Erst es zu seiner Entlassung als Rechtsanwalt des Be-

führt das Berufungsgericht aus, es sei schon deut svorstellungen nicht fremd, eine Partei unter diesen als ordnungsgemäß geladen anzusehen. Seinen Aus t das in der Vorschrift des § 176 ZPO, derzufolge n im anhängigen Rechtsstreit an den bestellten Pro ächtigten erfolgen müssen. Die Zustellung an einen en Prozeßbevollmächtigten genügt (Zöller/Stephan dn. 13). Dabei kommt es entgegen der Ansicht der cht darauf an, ob der Rechtsanwalt tatsächlich Pro t hatte. Entscheidend ist im Hinblick auf den erfor ertrauensschutz für die Gegenseite und auf § 579 4 ZPO allein, ob er sich ausdrücklich oder durch Verhalten zum Prozeßbevollmächtigten bestellt hat hl. v. 23. November 1978 – II ZB 7/78, VersR 1979 achw.; v. 21. Mai 1986 – VIII ZB 17/86, VersR 1986 22. Oktober 1986 – VIII ZB 40/86, NJW 1987, 440 m ZPO/v. Feldmann § 176 Rdn. 4, 8). Eine spätere des Mandats berührt die Wirksamkeit der Zustel Das Interesse der Partei, für die ein nicht bevollmäch sanwalt aufgetreten ist, wird durch die je nach Lage estehenden Möglichkeiten, das Urteil anzufechten dem vollmachtlosen Vertreter schadlos zu halten gewahrt (BGH, Beschl. v. 23. November 1978 – II O).

hinaus gewährleistet Art. 103 Abs.1 GG nur die wegen ungehinderte – Gelegenheit, sich am Gerichts u beteiligen. Der Berechtigte kann sie durch schuld alten verwirken oder von der Ausübung des Rechts

absehen. Es stand allgemein im Machtbereich des Beklagten, sich in dem ihm bekannten Verfahren in Kalifornien weiter zu verteidigen. Für ihre eigene ordnungsmäßige Vertretung in einem ihr bekannten Gerichtsverfahren hat in erster Linie jede Partei selbst nach besten Kräften zu sorgen (BGH, Urt. v. 19. September 1977 – VIII ZR 120/75, aaO; Zöller/Geimer aaO § 328 Rdn. 156 f.). Durch Flucht konnte sich der Beklagte dieser Obliegenheit nicht wirksam entziehen. Er hat auch nicht darge tan, daß er die spätere Zurückhaltung des Rechtsanwalts J. in dem Prozeß sowie das Auftreten des Rechtsanwalts G. für ihn nicht hätte verhindern können. Dann erscheint aus rechtsstaatli cher Sicht das Ergebnis nicht unerträglich, daß der Superior Court später allein Rechtsanwalt G. als berechtigten Vertreter des Beklagten behandelt hat. Gegen das verfassungsrechtliche Gebot einer fairen Verfahrensgestaltung hat das Gericht hier durch nicht in erheblicher Weise verstoßen.

Nach alledem liegt in dem Unterlassen der Ladung des Beklagten und des Rechtsanwalts J. kein Verstoß gegen den ver fahrensrechtlichen ordre public. ....

4. Die Ausführungen, mit denen das Berufungsgericht einen Verstoß gegen den prozessualen ordre public angesichts der übrigen Umstände des Verfahrens vor dem Superior Court ver neint hat, sind ebenfalls frei von Rechtsfehlern.

a) Insbesondere geht das Berufungsgericht zutreffend davon aus, allein die Tatsache, daß dem Urteil des Superior Court eine Ladung des Beklagten zur »pre-trial discovery« vorausgegan gen sei, stehe einer Vollstreckbarerklärung nicht entgegen. Die Durchführung eines solchen Beweis- und Beweisermittlungs verfahrens zwischen Klageerhebung und mündlicher Verhand lung (»trial«) unter weitgehender Parteiherrschaft in den USA begründet für sich noch keinen Verstoß gegen den ordre public im Sinne des § 328 Abs. 1 Nr. 4 ZPO (ebenso Martiny, Hand buch Rdn. 1109; Schack, IZVR Rdn. 865; Stürner ZVglRWiss 81, 159, 200; Stiefel/Stürner VersR 1987, 819, 830 f.; Heiden berger RIW 1990, 804, 807; Zekoll, US-Amerikanisches Pro dukthaftpflichtrecht vor deutschen Gerichten – nachfolgend odukthaftpflichtrecht – S. 137 ff., 148 f. und RIW 1990, 302, 05; v. Westphalen PHI 1988, 18, 20; Veltins DB 1987, 2396,



2398; MünchKomm ZPO/Gottwald § 328 Rdn. 91; Gottwald ZZP 103, 257, 183; Hoechst, Die US-amerikanische Produzentenhaftung – nachfolgend Produzentenhaftung – S. 121; wohl auch Schütze in Festschrift für Stiefel – nachfolgend FS Stiefel – 697, 703 ff.; a.A. Schütze WM 1986, 633, 636 und wohl auch in Festschrift für Nagel – nachfolgend FS Nagel – 392, 401; vgl. ferner LG Berlin RIW 1989, 988, 990 und Greger ZRP 1988, 164, 166). Die bloße Möglichkeit, daß hierbei unter anderem eine nach deutschem Prozeßrecht unzulässige Ausforschung erreicht wird, erfüllt die Voraussetzungen des § 328 Abs. 1 Nr. 4 ZPO nicht. Insoweit gilt ebenfalls das Gebot (oben 3 b und BGHZ 48, 327, 333; BGH, Urt. v. 19. September 1977 – VIII ZR 120/75, aaO; MünchKomm ZPO/Gottwald § 328 Rdn. 85 f.; Zöller/Geimer aaO § 328 Rdn. 155), über die – sogar zwingenden – Einzelregelungen des deutschen positiven Rechts hinaus auf die Grundwerte abzustellen, die hierdurch geschützt werden sollen. Dabei sind nicht nur die deutschen Prozeßrechtsgrundsätze zu beachten (a.M. Schütze, Deutsch-amerikanische Urteilsanerkennung – nachfolgend Urteilsanerkennung – S. 169), sondern ist die Gesamtrechtsordnung zu berücksichtigen, einschließlich deutscher materiellrechtlicher Auskunftspflichten, die mit vergleichbarer Wirkung an die Stelle ausländischer Verfahrensregeln treten können (vgl. Schlosser IPRax 1987, 153, 154; Paulus ZZP 104, 397, 402 ff.; Schack IZVR Rdn. 740). Entscheidend ist sodann, ob das konkrete Ergebnis der Anwendung des ausländischen Rechts einschließlich damit möglicherweise verbundener völkerrechtswidriger Eingriffe in die Hoheitsrechte des Anerkennungsstaates (Schack aaO Rdn. 865; Stiefel/Stürner aaO) mit den so ermittelten wesentlichen Grundsätzen des deutschen Rechts und dem Wert der gerichtlichen Wahrheitsfindung an sich offensichtlich unvereinbar ist.

Dafür ist hier nichts dargetan. Im Gegenteil erstreckt sich nach den unangefochtenen Feststellungen des Berufungsgerichts die vom Superior Court an das Ausbleiben des Beklagten im »pre-trial discovery«-Verfahren geknüpfte Säumnisfolge nur auf die Tatsachen zum Anspruchsgrund, die schon durch das amerikanische Strafverfahren gegen den Beklagten aufgedeckt waren und die er bis heute nicht bestreitet. Deshalb ist es aus

Komm ZPO/Gottwald § 328 Rdn. 91; Gottwald 183; Hoechst, Die US-amerikanische Produzen nachfolgend Produzentenhaftung – S. 121; wohl in Festschrift für Stiefel – nachfolgend FS Stiefel – A. Schütze WM 1986, 633, 636 und wohl auch in Nagel – nachfolgend FS Nagel – 392, 401; vgl. fer RIW 1989, 988, 990 und Greger ZRP 1988, 164 ße Möglichkeit, daß hierbei unter anderem eine im Prozeßrecht unzulässige Ausforschung erreicht ie Voraussetzungen des § 328 Abs. 1 Nr. 4 ZPO t gilt ebenfalls das Gebot (oben 3 b und BGHZ 48 I, Urt. v. 19. September 1977 – VIII ZR 120/75 Komm ZPO/Gottwald § 328 Rdn. 85 f.; Zöller/ 328 Rdn. 155), über die – sogar zwingenden – Ein des deutschen positiven Rechts hinaus auf die bzustellen, die hierdurch geschützt werden sollen, cht nur die deutschen Prozeßrechtsgrundsätze zu 4. Schütze, Deutsch-amerikanische Urteilsaner chfolgend Urteilsanerkennung – S. 169), sondern trechtsordnung zu berücksichtigen, einschließlich teriellrechtlicher Auskunftspflichten, die mit ver irkung an die Stelle ausländischer Verfahrensre nnen (vgl. Schlosser IPRax 1987, 153, 154; Paulus 402 ff.; Schack IZVR Rdn. 740). Entscheidend ist s konkrete Ergebnis der Anwendung des ausländi einschließlich damit möglicherweise verbundener idriger Eingriffe in die Hoheitsrechte des Aner tes (Schack aaO Rdn. 865; Stiefel/Stürner aaO) nittelten wesentlichen Grundsätzen des deutschen em Wert der gerichtlichen Wahrheitsfindung an tlich unvereinbar ist.

uer nichts dargetan. Im Gegenteil erstreckt sich angefochtenen Feststellungen des Berufungsge Superior Court an das Ausbleiben des Beklagten liscovery«-Verfahren geknüpfte Säumnisfolge nur hen zum Anspruchsgrund, die schon durch das Strafverfahren gegen den Beklagten aufgedeckt e er bis heute nicht bestreitet. Deshalb ist es aus Rechtsgründen nicht zu beanstanden, daß das Berufungsgericht angenommen hat, das Urteil des Superior Court beruhe im Ergebnis nicht auf dem »pre-trial discovery«-Verfahren.

b) Entgegen einer teilweise vertretenen Ansicht (Schütze WM 1979, 1174, 1176) bestehen auch keine allgemeinen Bedenken gegen die Anerkennung US-amerikanischer Zivilurteile deswegen, weil diese grundsätzlich keine Kostenerstattung zugunsten der obsiegenden Partei vorsehen (Jestaedt RIW 1986, 95 f.). Für einen ausländischen Beklagten ist es sogar unter Berücksichtigung der ihn in jedem Falle treffenden, beträchtlichen Kostenlast nicht unzumutbar, sich auf ein solches Verfahren einzulassen.

Aus deutscher Sicht folgt die Verteilung der Kostenlast für streitige Verfahren je nach dem Verfahrensausgang aus dem Veranlassungsprinzip (BGHZ 60, 337, 343; Rosenberg/Schwab, Zivilprozeßrecht 14. Aufl. § 87 V 5, S. 500; Becker-Eberhard, Grundlagen der Kostenerstattung bei der Verfolgung zivilrechtlicher Ansprüche S. 25 ff.; Hommelsheim, Kostentragung und ausgleichung im amerikanischen Zivilprozeß, Diss. Bonn 1990 S. 65 f.). Es erscheint als ein Gebot der Billigkeit, nicht stets den jeweiligen Antragsteller als Veranlasser anzusehen, sondern denjenigen, der durch unberechtigtes Verhalten Anlaß zum Einschreiten der Gerichte geboten hat. Davon gibt es – vor allem aus sozialen Gründen – Ausnahmen (§ 12 a Abs. 1 Satz 1 ArbGG, § 193 Abs. 1 SGG). Im übrigen entspricht es vor allem der Zweckmäßigkeit, die Berechtigung der vorprozessualen Standpunkte der Parteien im wesentlichen schematisch am Prozeßausgang zu messen. In Einzelfällen, etwa nach § 91 a ZPO, kann das Ergebnis der prozessualen Kostenentscheidung, wenn es dem materiellen Recht widerspricht, durch eine hierauf zu stützende Klage berichtigt werden.

Demgegenüber wird der Ausschluß der Kostenerstattung gemäß der »American rule of costs« vor allem mit der Notwendigkeit begründet, den Zugang zu den Gerichten durch ein verringertes Kostenrisiko zu erleichtern (The American Law Institute, Enterprise Responsibility for Personal Injury Vol. II S. 174 f.; Hommelsheim aaO S. 81 f., 155 f.). Hierdurch wird teilweise zugleich die weitgehend fehlende Prozeßkostenhilfe ersetzt (Hommelsheim aaO S. 94 f.; Großfeld RabelsZ 1975, 5,

25). Zudem wird der Prozeßausgang als ein nicht hinreichend zuverlässiger Maßstab für die Berechtigung der vorprozessualen Standpunkte der Parteien angesehen (The American Law Institute aaO S. 274; Fleming, The American Tort Process S. 193 jeweils m.w.Nachw.; Hommelsheim aaO S. 67 ff.).

Danach bestimmen vor allem wertende und rechtspolitische Gesichtspunkte die unterschiedlichen Kostenregelungen. Aus deutscher Sicht verletzt der regelmäßige Ausschluß der Kostenerstattung im US-amerikanischen Zivilprozeß weder Grundrechte der Parteien noch grundlegende Gebote der Rechtsstaatlichkeit. Er ist hinzunehmen (ebenso MünchKomm ZPO/Gottwald § 328 Rdn. 21 a.E.; Zekoll 37 AmJCompL 301, 322 f.; vgl. auch Martiny, Handbuch Rdn. 1111). Fällen bewußten Mißbrauchs (dazu Stiefel/Stürner aaO S. 831) ist mit den dafür allgemein vorgesehenen Mitteln zu begegnen, soweit der Titel, der im Inland für vollstreckbar erklärt werden soll, darauf beruht.

Zudem beschwert gerade das Ergebnis dieser Anwendung der »American rule of costs« im vorliegenden Falle nicht den Beklagten.

5. Von der Verbürgung der Gegenseitigkeit (§ 328 Abs. 1 Nr. 5 ZPO) im Verhältnis zu Kalifornien nach geltendem Recht gehen die Parteien zutreffend selbst aus (vgl. dazu Schütze, Urteilsanerkennung S. 43 f. und JR 1986, 177 ff., 235; Geimer/Schütze aaO Bd. I 2 § 246 S. 1917 f.; Martiny, Handbuch Rdn. 1534; Hoechst, Produzentenhaftung S. 123; Brenscheidt RIW/AWD 1976, 554, 556, 558 jeweils m.w.Nachw.).

IV.

Soweit das Berufungsgericht die Höhe des dem Kläger im Urteil des Superior Court zuerkannten Ersatzes für selbst erlittene materielle und immaterielle Schäden gemäß §§ 713 Abs. 2 Satz 2, 328 Abs. 1 Nr. 4 ZPO an den Erfordernissen des materiellen ordre public gemessen hat, lassen seine Ausführungen Rechtsfehler zum Nachteil des Beklagten nicht erkennen.

1. Als Haftungsgrundlage nimmt der Superior Court einen Fall von »battery« an, also eine nicht – rechtswirksam – erlaubte absichtliche körperliche Berührung (zum Begriff vgl. Prosser, Handbook of die Law of Torts 2nd ed. S. 30 ff.; Kionka, Torts in

ird der Prozeßausgang als ein nicht hinreichend
Maßstab für die Berechtigung der vorprozessualen
der Parteien angesehen (The American Law Insti-
74; Fleming, The American Tort Process S. 193
Nachw.; Hommelsheim aaO S. 67 ff.).
timmen vor allem wertende und rechtspolitische
te die unterschiedlichen Kostenregelungen. Aus
t verletzt der regelmäßige Ausschluß der Kosten-
US-amerikanischen Zivilprozeß weder Grund-
teien noch grundlegende Gebote der Rechtsstaat-
hinzunehmen (ebenso MünchKomm ZPO/Gott-
n. 21 a.E.; Zekoll 37 AmJCompL 301, 322 f.; vgl.
, Handbuch Rdn. 1111). Fällen bewußten Miß-
Stiefel/Stürner aaO S. 831) ist mit den dafür allge-
nen Mitteln zu begegnen, soweit der Titel, der
vollstreckbar erklärt werden soll, darauf beruht.
chwert gerade das Ergebnis dieser Anwendung
n rule of costs« im vorliegenden Falle nicht den

Verbürgung der Gegenseitigkeit (§ 328 Abs. 1 Nr. 5
ältnis zu Kalifornien nach geltendem Recht gehen
utreffend selbst aus (vgl. dazu Schütze, Urteils-
S. 43 f. und JR 1986, 177 ff., 235; Geimer/Schütze
, 246 S. 1917 f.; Martiny, Handbuch Rdn. 1534;
luzentenhaftung S. 123; Brenscheidt RIW/AWD
6, 558 jeweils m.w.Nachw.).

### IV.

Berufungsgericht die Höhe des dem Kläger im
erior Court zuerkannten Ersatzes für selbst erlit-
e und immaterielle Schäden gemäß §§ 713 Abs. 2
s. 1 Nr. 4 ZPO an den Erfordernissen des mate-
public gemessen hat, lassen seine Ausführungen
um Nachteil des Beklagten nicht erkennen.
ungsgrundlage nimmt der Superior Court einen
ery« an, also eine nicht – rechtswirksam – erlaubte
örperliche Berührung (zum Begriff vgl. Prosser,
die Law of Torts 2nd ed. S. 30 ff.; Kionka, Torts in

a Nutshell S. 152 f.). Dem entspräche nach deutschem Recht
eine Verletzung des Körpers und/oder des Persönlichkeitsrechts
(§ 823 Abs. 1 BGB).

2. Anhaltspunkte dafür, daß die nach amerikanischem Recht
erfolgte Verurteilung des Beklagten zur Zahlung tatsächlich
angefallener Heilaufwendungen in Höhe von US-Dollar 260
gegen den ordre public verstoßen könnte, werden von der Revi-
sion nicht aufgezeigt und sind auch sonst nicht ersichtlich.

3. Das Berufungsgericht hat ferner insoweit eine Verletzung
des materiellen ordre public verneint, als der Superior Court
dem Kläger für eine zu erwartende psychologische Behandlung
US-Dollar 100 000 und für aus diesem Anlaß zu erwartende
Unterbringungskosten US-Dollar 50 000 unabhängig davon
zugesprochen hat, ob er sich tatsächlich für die Durchführung
einer Heilbehandlung entscheidet. Es hat festgestellt, daß der
Superior Court nach Anhörung eines Sachverständigen eine sol-
che Behandlung sowie die berechneten Kosten für objektiv nötig
hielt, und als entscheidend angesehen, daß auch der deutschen
Rechtsordnung in Ausnahmefällen die Ersatzfähigkeit »fiktiver«
Reparaturkosten nicht fremd sei.

Dieses Ergebnis ist aus Rechtsgründen nicht zu beanstanden.
Der Revision ist zwar zuzugeben, daß im deutschen Schadenser-
satzrecht dem Geschädigten bei Personenschäden – anders als
bei Sachschäden (BGHZ 66, 239, 241 ff. – keine Dispositionsbe-
fugnis darüber eingeräumt ist, ob er den zur Herstellung erfor-
derlichen Geldbetrag tatsächlich zur Schadensbeseitigung ver-
wenden will, und er deshalb keine »fiktiven« Behandlungsko-
sten ersetzt verlangen kann (BGHZ 97, 14, 18 ff.). Allein dies
hindert jedoch die Anerkennung des Urteils des Superior Court
nicht.

a) Die insoweit nach deutschem Recht maßgeblichen
§§ 249 ff. BGB gelten hier weder über Art. 5 noch über Art. 38
EGBGB.

aa) Gemäß Art. 5 Abs. 1 Satz 2 EGBGB geht zwar bei Dop-
pelstaatern die deutsche Staatsangehörigkeit auch dann vor,
wenn die sonstigen Anknüpfungstatsachen auf Auslandsrecht
verweisen. Diese Vorschrift regelt jedoch allein das für den deut-
schen Richter maßgebliche materielle internationale Privatrecht,

für das sie eine klare und einfache Anknüpfungsnorm schaffen soll. Hingegen kann nach der amtlichen Begründung der Bundesregierung (BR-Drucks. 222/83 = BT-Drucks. 10/504, jeweils S. 40 f.) die mehrfache Staatsangehörigkeit »im internationalen Verfahrensrecht ... zu anderen, teilweise erheblich abweichenden Folgen führen.« Im Rahmen der §§ 328, 722 f. ZPO gilt deshalb Art. 5 Abs. 1 Satz 2 EGBGB nicht (ebenso Palandt/Heldrich, BGB 51. Aufl. Art. 5 EGBGB Rdn. 5; Basedow NJW 1986, 2971, 2974; vgl. auch MünchKomm/Sonnenberger 2. Aufl. Art. 5 EGBGB Rdn. 12).

bb) Art. 38 EGBGB, demzufolge gegen einen Deutschen aus einer im Ausland begangenen unerlaubten Handlung keine weitergehenden Ansprüche geltend gemacht werden können als nach den deutschen Gesetzen, schließt die Vollstreckbarerklärung ebenfalls nicht aus. Für den Geltungsbereich des Art. 27 Nr. 1 EGÜbk hat der Bundesgerichtshof (BGHZ 88, 17, 24 mit zustimmender Anm. Kropholler JZ 1983, 905, 906) bereits entschieden, Art. 12 EGBGB a.F. – dem die Neuregelung des Art. 38 n.F. entspricht – könne nicht so verstanden werden, daß jede ausländische Verurteilung eines deutschen Schädigers, die dem ebenfalls deutschen Geschädigten weitergehende Ansprüche zuspricht als nach den deutschen Gesetzen begründet werden, gegen den deutschen ordre public verstoße und deshalb nicht anerkannt werden dürfe. Dem folgt der erkennende Senat auch für die Vollstreckbarerklärung ausländischer Urteile gemäß §§ 722, 723 ZPO. Sachliche Unterschiede bestehen insoweit nicht. Außerhalb des Geltungsbereichs des Art. 5 Nr. 3 EGÜbk steht dem Geschädigten ebenfalls eine Klage im ausländischen deliktischen Gerichtsstand frei (§ 328 Abs. 1 Nr. 1 ZPO; dazu oben III 1). Nicht nur gemäß Art. 29 EGÜbk, sondern allgemein nach § 723 Abs. 1 ZPO ist für die Vollstreckbarerklärung ausländischer Urteile festgelegt, daß sie nicht auf ihre Gesetzmäßigkeit zu überprüfen sind.

Gegen eine zwingende und uneingeschränkte Anwendung des Art. 38 EGBGB im Rahmen des § 328 Abs. 1 Nr. 4 ZPO spricht, daß die letztgenannte Vorschrift in der Neufassung des Gesetzes zur Neuregelung des Internationalen Privatrechts vom 25. Juli 1986 (BGBl I 1142, 1151) eine eigenständige, abschlie-

...ie klare und einfache Anknüpfungsnorm schaffen ...n kann nach der amtlichen Begründung der Bun... (BR-Drucks. 222/83 = BT-Drucks. 10/504, jeweils ...ehrfache Staatsangehörigkeit »im internationalen ...ht ... zu anderen, teilweise erheblich abweichen...hren.« Im Rahmen der §§ 328, 722 f. ZPO gilt des ...bs. 1 Satz 2 EGBGB nicht (ebenso Palandt/Hel... 1. Aufl. Art. 5 EGBGB Rdn. 5; Basedow NJW ...974; vgl. auch MünchKomm/Sonnenberger 2. Aufl. ...B Rdn. 12).

...EGBGB, demzufolge gegen einen Deutschen aus ...and begangenen unerlaubten Handlung keine wei... Ansprüche geltend gemacht werden können als ...tschen Gesetzen, schließt die Vollstreckbarerklä... s nicht aus. Für den Geltungsbereich des Art. 27 ... hat der Bundesgerichtshof (BGHZ 88, 17, 24 mit ... Anm. Kropholler JZ 1983, 905, 906) bereits ent-... 12 EGBGB a.F. – dem die Neuregelung des ...tspricht – könne nicht so verstanden werden, daß ...sche Verurteilung eines deutschen Schädigers, die ... deutschen Geschädigten weitergehende Ansprü... als nach den deutschen Gesetzen begründet wer... en deutschen ordre public verstoße und deshalb ...nt werden dürfe. Dem folgt der erkennende Senat ...ollstreckbarerklärung ausländischer Urteile gemäß ... ZPO. Sachliche Unterschiede bestehen insoweit ...alb des Geltungsbereichs des Art. 5 Nr. 3 EGÜbk ...schädigten ebenfalls eine Klage im ausländischen ...Gerichtsstand frei (§ 328 Abs. 1 Nr. 1 ZPO; dazu ... Nicht nur gemäß Art. 29 EGÜbk, sondern allge-... 723 Abs. 1 ZPO ist für die Vollstreckbarerklärung ... Urteile festgelegt, daß sie nicht auf ihre Gesetzmä-...erprüfen sind.

...e zwingende und uneingeschränkte Anwendung ...GBGB im Rahmen des § 328 Abs. 1 Nr. 4 ZPO ...ie letztgenannte Vorschrift in der Neufassung des ... Neuregelung des Internationalen Privatrechts vom ... (BGBl I 1142, 1151) eine eigenständige, abschlie-ßende Sonderregelung darüber enthält, was zur Versagung der Anerkennung aus Gründen der öffentlichen Ordnung führt. Zweck der Neufassung war es, die Vorschrift an Art. 27 Nr. 1 EGÜbk anzugleichen sowie sie in Einklang mit der neuen kollisionsrechtlichen ordre public-Klausel in Art. 6 EGBGB zu bringen (amtliche Begründung aaO S. 87 ff.). Die Loslösung der Urteilsanerkennung von der materiellen Kollisionsregel wird durch die gleichzeitige Abänderung des § 328 Abs. 1 Nr. 3 ZPO a.F. bestätigt, der die Beachtung bestimmter familienrechtlicher Normen des deutschen Internationalen Privatrechts zur Anerkennungsvoraussetzung erhoben hatte. Sie wurde gestrichen, weil sie eine Abweichung von der grundsätzlich ausgeschlossenen sachlichen Nachprüfung der fremden Entscheidung bedeutet und das Kollisionsrecht bei der Anerkennung fremder Entscheidungen zu sehr in den Vordergrund« gestellt habe (Amtliche Begründung aaO S. 88). Aus gleichartigen Gründen ist es regelmäßig hinzunehmen, wenn der – international zuständige – ausländische Richter aufgrund des für ihn allgemein geltenden Kollisions- und sonstigen materiellen Rechts entscheidet, ohne eine mögliche Besserstellung deutscher Schädiger durch das deutsche Kollisionsrecht zu beachten (ebenso Martiny, Handbuch Rdn. 1014 a.E., 1045 f. und 35 AmJCompL 721, 746; Palandt/Heldrich aaO Art. 38 EGBGB Rdn. 28 a E.; Soergel/Lüderitz, BGB 11. Aufl. Art. 12 Rdn. 67; Zekoll, Produkthaftpflichtrecht S. 29 ff., 159 f. und RIW 1990, 302, 303; Zöller/Geimer aaO § 328 Rdn. 169; von Bar, Internationales Privatrecht 1. Band Rdn. 638; Linke, Internationales Zivilprozeßrecht Rdn. 422; Stiefel/Stürner aaO S. 837; LG Berlin RIW 1989, 988, 989; a.A. MünchKomm/Kreuzer aaO Art. 38 EGBGB Rdn. 318; Schütze, FS Nagel S. 400; Schack, IZVR Rdn. 869 und VersR 1984, 422, 423 f.; wohl auch v. Westphalen PHI 1988, 18, 21). Die Spezialität des Art. 38 EGBGB allein im Verhältnis zu Art. 6 EGBGB berührt demgegenüber die Sonderstellung des selbständigen anerkennungsrechtlichen ordre public-Vorbehalts nicht. Der ordre public ist teilbar, je nachdem, ob der deutsche Richter selbst ausländisches Recht anzuwenden oder es als Ergebnis ausländischer Rechtsanwendung hinzunehmen hat (a.M. Schütze, Urteilsanerkennung S. 170).



Sachlich bedarf es nicht einer so starren Festlegung wie der des Art. 38 EGBGB, um im Anerkennungsverfahren die deutsche öffentliche Ordnung vor unerträglichen Auswirkungen ausländischer Urteile zuverlässig zu schützen. § 328 Abs. 1 Nr. 4 ZPO ermöglicht dies in einer Weise, die den Besonderheiten des Anerkennungsverfahrens besser gerecht wird. Das gilt insbesondere für Fälle wie den vorliegenden, in denen beide Parteien mindestens auch Angehörige des Urteilsstaates sind und dessen Gericht die zusätzliche deutsche Staatsangehörigkeit des Beklagten nicht immer kennt. Zudem können nach der verfahrensrechtlichen Vorbehaltsklausel die Auswirkungen des Umstands angemessen berücksichtigt werden, daß nicht nur der Tatort, sondern auch der Wohnsitz beider Parteien im Zeitpunkt der Klageerhebung im Ausland lag. Andererseits ermöglicht § 328 Abs. 1 Nr. 4 ZPO es hinreichend, auf das – in Art. 38 EGBGB zum Ausdruck gebrachte – Erfordernis einzugehen, daß die Haftpflicht im Inland gemeinverträglich sowie berechenbar bleiben muß. Ein Anreiz für den Geschädigten, vorzugsweise im ausländischen Gerichtsstand zu klagen, kann damit ebenfalls verringert werden (vgl. auch von Bar aaO Rdn. 409 f.).

b) § 328 Abs. 1 Nr. 4 ZPO hindert die Urteilsanerkennung wegen des hier fraglichen Schadensersatzanspruchs nicht. Mit dem materiellen ordre public ist ein ausländisches Urteil nicht schon dann unvereinbar, wenn der deutsche Richter, hätte er den Prozeß entschieden, aufgrund zwingenden deutschen Rechts zu einem anderen Ergebnis gekommen wäre als das ausländische Gericht (vgl. Zöller/Geimer aaO § 328 Rdn. 152 m.w.Nachw.). Maßgebend ist vielmehr, ob das Ergebnis der Anwendung des ausländischen Rechts zu den Grundgedanken der deutschen Regelungen und der in ihnen enthaltenen Gerechtigkeitsvorstellungen in so starkem Widerspruch steht, daß es nach inländischen Vorstellungen untragbar erscheint (sogen. ordre public international – BGHZ 50, 370, 375 f.; 75, 32, 43; BGH, Urt. v. 21. Januar 1991 – II ZR 50/90, NJW 1991, 1418, 1410). Dementsprechend verstößt es ebensowenig gegen die deutsche öffentliche Ordnung im Sinne von Art. 27 Nr. 1 EGÜbk, wenn das ausländische Recht die Haftung des Kraftfahrzeughalters neben der des Fahrers über die deutschen