rf es nicht einer so starren Festlegung wie der
3GB, um im Anerkennungsverfahren die deut-
Ordnung vor unerträglichen Auswirkungen
:teile zuverlässig zu schützen. § 328 Abs. 1 Nr. 4
: dies in einer Weise, die den Besonderheiten des
erfahrens besser gerecht wird. Das gilt insbeson-
:rie den vorliegenden, in denen beide Parteien
: Angehörige des Urteilsstaates sind und dessen
:usätzliche deutsche Staatsangehörigkeit des
: immer kennt. Zudem können nach der verfah-
Vorbehaltsklausel die Auswirkungen des
:nessen berücksichtigt werden, daß nicht nur der
: auch der Wohnsitz beider Parteien im Zeitpunkt
:ung im Ausland lag. Andererseits ermöglicht
:r. 4 ZPO es hinreichend, auf das – in Art. 38
:Ausdruck gebrachte – Erfordernis einzugehen,
:cht im Inland gemeinverträglich sowie berechen-
:ß. Ein Anreiz für den Geschädigten, vorzugs-
:dischen Gerichtsstand zu klagen, kann damit
:gert werden (vgl. auch von Bar aaO Rdn. 409 f.).
. 1 Nr. 4 ZPO hindert die Urteilsanerkennung
:fraglichen Schadensersatzanspruchs nicht. Mit
: ordre public ist ein ausländisches Urteil nicht
:vereinbar, wenn der deutsche Richter, hätte er
:tschieden, aufgrund zwingenden deutschen
: anderen Ergebnis gekommen wäre als das aus-
:ht (vgl. Zöller/Geimer aaO § 328 Rdn. 152
:Maßgebend ist vielmehr, ob das Ergebnis der
:s ausländischen Rechts zu den Grundgedanken
:egelungen und der in ihnen enthaltenen Gerech-
:ngen in so starkem Widerspruch steht, daß es
:en Vorstellungen untragbar erscheint (sogen.
:ernational – BGHZ 50, 370, 375 f.; 75, 32, 43;
:1. Januar 1991 – II ZR 50/90, NJW 1991, 1418,
:sprechend verstößt es ebensowenig gegen die
:liche Ordnung im Sinne von Art. 27 Nr. 1
:das ausländische Recht die Haftung des Kraft-
neben der des Fahrers über die deutschen

Höchstgrenzen hinaus und auch auf Schmerzensgeld ausdehnt
(BGHZ 88, 17, 15 f.), wie wenn es bei feststehender Schadenser-
satzpflicht eine pauschale Schätzung ihrer Höhe gestattet
(BGHZ 75, 167, 171 f.).

Im Rahmen von § 328 Abs. 1 Nr. 4 ZPO nimmt die deutsche
Rechtsordnung es hin, wenn der Verletzte Heilungskosten
ersetzt verlangen kann, ohne daß er gegenwärtig die bestimmte
Absicht hat, sich der Heilbehandlung zu unterziehen. Die abwei-
chende Regelung des deutschen Rechts, das für Personenschä-
den keine Dispositionsfreiheit kennt, beruht vor allem darauf,
daß ein Ersatz für nicht zu behandelnde und damit letztlich hin-
genommene körperliche oder geistig-seelische Schäden in Wahr-
heit eine Entschädigung für die fortdauernde Gesundheitsbeein-
trächtigung unter Umgehung von § 253 BGB darstellen würde
(BGHZ 97, 14, 19). Für einen Verstoß gegen die öffentliche Ord-
nung ist es jedoch unerheblich, ob das ausländische und das
inländische Recht auf widerstreitenden Prinzipien beruhen;
allein entscheidend ist, ob das konkrete Ergebnis der Anwen-
dung des ausländischen Rechts zu mißbilligen ist (BGHZ 39,
173, 177 m.Nachw.).

Daran gemessen, hat hier der Superior Court dem Kläger den
Ersatz von Heilungskosten zugesprochen, die auch nach deut-
schem Recht unter gleichen Voraussetzungen erstattungsfähig
sein könnten. Die Haftung des Beklagten dafür ist im Ergebnis
nicht als grob ungerecht zu mißbilligen. Der Grund für die früh-
zeitige Zuerkennung von Heilungskosten liegt darin, daß nach
US-amerikanischem Recht der gesamte mögliche Ersatz für
jeden Schadensfall in einer einheitlichen Summe (»lump sum«)
in einem einzigen Prozeß abschließend zuerkannt werden muß
(Fleming aaO S. 231; Kionka aaO S. 354). Wenn das kaliforni-
sche Recht hierzu dem Geschädigten die Dispositionsfreiheit
nicht nur bezüglich der Integrität seiner Sachen, sondern auch
seines Körpers sowie seiner geistig-seelischen Gesundheit ein-
räumt, wird dadurch keine schutzwürdige Position des Schädi-
gers beeinträchtigt: Für ihn hängt es auch nach deutschem Recht
allein vom freien Willen seines Opfers ab, ob die Heilungsko-
sten zu erstatten sind oder nicht. Die deutsche Rechtsordnung
insgesamt endlich wird durch die andersartige ausländische



Dockets.Justia.com

Form der Schadensabwicklung nicht unerträglich gestört, zumal eine wesentliche Haftungserweiterung im Inland hierdurch kaum zu besorgen ist.

4. Gegen die Zuerkennung von Schmerzensgeld (damages for anxiety, pain and suffering) aufgrund des ausgeurteilten Sachverhalts sind dem Grunde nach keine selbständigen Rügen erhoben.

5. Endlich hindert es die Anerkennung nicht, daß der Kläger nach dem Urteil des Superior Court 40 % aller eingehenden Gelder als Erfolgshonorar an seinen Rechtsanwalt abzuführen hat.

Zwar wäre nach deutschem Rechtsverständnis eine entsprechende Vereinbarung mit einem deutschen Rechtsanwalt in der Regel gemäß § 138 Abs. 1 BGB nichtig (vgl. BGHZ 34, 64, 70 ff.; Senatsurt. v. 31. Oktober 1991 – IX ZR 303/90, WM 1992, 279, 281 m.w.Nachw.). Dieser Grundsatz ist jedoch für deutsche Gerechtigkeitsvorstellungen nicht so wesentlich, daß er in jedem Falle weltweit unbedingte Geltung beansprucht. Der Bundesgerichtshof hat für Vergütungsvereinbarungen zwischen Deutschen und ausländischen Rechtsanwälten nach ausländischem Recht, die aufgrund deutschen materiellen internationalen Privatrechts auf ihre Vereinbarkeit mit Art. 30 EGBGB a.F. zu überprüfen waren, entschieden, daß eine Erfolgshonorarvereinbarung nicht am ordre public scheitern muß (BGHZ 22, 162, 166; 44, 183, 190 f.). Anders als im Falle BGHZ 51, 290, 293 ff., in dem einem ausländischen Rechtsanwalt – gemäß § 183 Abs. 1 BEG – die Befugnisse eines inländischen Rechtsanwalts zugebilligt worden waren, liegt dem Erfolgshonorar hier eine im Ausland geschlossene Vereinbarung einer ausländischen Partei mit ihrem ausländischen Rechtsanwalt für die Führung eines Prozesses im Ausland zugrunde. Wenn das ausländische Gericht nach dem von ihm anzuwendenden Recht eine solche Absprache durchsetzt, berührt das die deutsche öffentliche Ordnung nicht in unerträglicher Weise. Die Vertragsbeziehungen waren vollständig im Ausland abzuwickeln. Es steht grundsätzlich jeder Rechtsordnung frei, welche standesrechtlichen Beschränkungen sie ihrer eigenen Rechtsanwaltschaft auferlegt (vgl. Martiny Handbuch Rdn. 1111).

nsabwicklung nicht unerträglich gestört, zumal
 Haftungserweiterung im Inland hierdurch
en ist.

uerkennung von Schmerzensgeld (damages for
d suffering) aufgrund des ausgeurteilten Sach-
n Grunde nach keine selbständigen Rügen erho-

dert es die Anerkennung nicht, daß der Kläger
l des Superior Court 40 % aller eingehenden
gshonorar an seinen Rechtsanwalt abzuführen

ch deutschem Rechtsverständnis eine entspre-
rung mit einem deutschen Rechtsanwalt in der
38 Abs. 1 BGB nichtig (vgl. BGHZ 34, 64, 70 ff.;
Oktober 1991 – IX ZR 303/90, WM 1992, 279,
r.). Dieser Grundsatz ist jedoch für deutsche
rstellungen nicht so wesentlich, daß er in jedem
bedingte Geltung beansprucht. Der Bundesge-
r Vergütungsvereinbarungen zwischen Deut-
ndischen Rechtsanwälten nach ausländischem
und deutschen materiellen internationalen Pri-
re Vereinbarkeit mit Art. 30 EGBGB a.F. zu
n, entschieden, daß eine Erfolgshonorarverein-
 ordre public scheitern muß (BGHZ 22, 162,
) f.). Anders als im Falle BGHZ 51, 290, 293 ff.,
sländischen Rechtsanwalt – gemäß § 183 Abs. 1
nisse eines inländischen Rechtsanwalts zugebil-
en, liegt dem Erfolgshonorar hier eine im Aus-
ie Vereinbarung einer ausländischen Partei mit
chen Rechtsanwalt für die Führung eines Pro-
nd zugrunde. Wenn das ausländische Gericht
am anzuwendenden Recht eine solche Abspra-
berührt das die deutsche öffentliche Ordnung
glicher Weise. Die Vertragsbeziehungen waren
Ausland abzuwickeln. Es steht grundsätzlich
aung frei, welche standesrechtlichen Beschrän-
eigenen Rechtsanwaltschaft auferlegt (vgl. Mar-
Rdn. 1111).

Der jeweilige Beklagte des Schadensersatzprozesses kann dadurch nur insoweit betroffen werden, als das Erfolgshonorar mittelbar zugleich die Bemessung des zuerkannten Schadensersatzes mitbeeinflußt (ebenso Zekoll, Produkthaftpflichtrecht S. 118 f.). Das ist hier weder festgestellt noch ausgeschlossen. Sogar wenn der dem Kläger zugesprochene Schadensersatz zum Ausgleich tatsächlich erlittener Schäden (compensatory damages) mit Rücksicht auf die ihn treffende Kostenlast großzügig geschätzt worden sein sollte, wäre das allein aus deutscher Sicht noch kein unerträgliches Ergebnis. Denn wäre er in Deutschland auf Schadensersatz verklagt worden, so hätte der Beklagte den Kläger gemäß § 91 ZPO ebenfalls von Prozeßkosten freistellen müssen. Im Rahmen des inländischen ordre public ist es nicht zu beanstanden, wenn der Geschädigte neben einem vollen Ausgleich für erlittene Beeinträchtigungen eine Freistellung von den Prozeßkosten erlangt. Auf die Frage, wie diese Kosten im einzelnen errechnet worden sind, kommt es insoweit nicht entscheidend an.

Die Höhe der dem Anwalt vorliegend zugebilligten Erfolgsquote hindert ebenfalls nicht die Anerkennung. Der Superior Court hat sie ausdrücklich mit der Komplexität und Schwierigkeit der Rechtsverfolgung begründet. Soweit in BGHZ 44, 183, 190 f. der vereinbarte Anteil am Erstrittenen im Hinblick auf Art. 30 EGBGB a.F. herabgesetzt wurde, kann daraus zur Konkretisierung dessen, was unter Beachtung des ordre public im Sinne des § 328 Abs. 1 Nr. 4 ZPO hinzunehmen ist, für einen Fall mit dem hier fraglichen Auslandsbezug nichts hergeleitet werden (a.A. Stiefel/Stürner aaO S. 842). Die Höhe des zuerkannten Erfolgshonorars entspricht dem nach amerikanischen Verhältnissen Üblichen (vgl. Lange/Black aaO Rdn. 117; Fleming aaO S. 199; Stiefel/Stürner aaO S. 831 m.w.Nachw.; Kölnische Rück/Zeller, Zur Produkthaftpflicht aus Exporten nach USA und ihrer Versicherung Rdn. 51; v. Westphalen RIW/AWD 1981, 141, 147; Völz VersR 1987, 229, 235 f.; Sabella VersR 1990, 1186, 1191), wobei zu berücksichtigen ist, daß bei dieser Art der Vereinbarung der amerikanische Rechtsanwalt die Kosten der Rechtsverfolgung vorschießen muß und das Risiko des rechtlichen wie wirtschaftlichen Mißerfolgs trägt (vgl. Zekoll Produkt-



haftpflichtrecht S. 121 f.) Im Verhältnis zwischen dem Kläger und seinem Rechtsanwalt ist die Quote im Urteil, dessen Anerkennung verlangt wird, verbindlich festgelegt, ohne daß daran in dem hier – allein im Streit befindlichen – Verhältnis zum Beklagten etwas zu ändern wäre. Zu seinen Gunsten könnte das Anerkennungshindernis nach § 328 Abs. 1 Nr. 4 ZPO allenfalls eingreifen, wenn er als »compensatory damages« insgesamt einen Betrag zu zahlen hätte, der weit über das hinaus ging, was zum Ausgleich der vom Kläger tatsächlich erlittenen Schäden einschließlich eines angemessenen Kostenanteils erforderlich war. Hierfür ist um so weniger ersichtlich, als die Rechtsanwälte des Klägers jahrelang einen Prozeß mit hohem Streitwert und schwierigen Auslandsbeziehungen geführt haben, ohne bisher – soweit dargetan – irgendein Honorar empfangen zu haben.

## V.

Erfolg hat die Revision, soweit im Urteil des Superior Court zugunsten des Klägers ein Anspruch auf »exemplary and punitive damages« in Höhe von US-Dollar 400 000 tituliert ist. Hierzu hat das Berufungsgericht die Auffassung vertreten, eine Vollstreckbarerklärung könne – nur – in dem Umfang stattfinden, in dem durch diese Summe Anwaltskosten abgedeckt seien, deren Höhe jedoch ebenfalls einer ordre public-Kontrolle unterzogen werden müsse. Dies führe dazu, daß nicht die im Urteil des Superior Court ausgewiesene Höhe von 40 % der jeweiligen Urteilssumme, sondern lediglich eine solche von 25 % anerkannt werden könne. Demnach ergebe sich ein für vollstreckbar zu erklärender Teil der »punitive damages« in Höhe von US-Dollar 55 065.

Diese Ausführungen halten den Angriffen der Revision des Beklagten nicht stand. Ein ausländisches Urteil auf Strafschadensersatz von nicht unerheblicher Höhe, der über den Ausgleich erlittener materieller und immaterieller Schäden hinaus pauschal zuerkannt wird, kann insoweit in Deutschland regelmäßig insgesamt nicht für vollstreckbar erklärt werden.

1. »Punitive or exemplary damages« werden nach dem Recht der meisten Einzelstaaten der USA – einschließlich Kaliforniens

S. 121 f.) Im Verhältnis zwischen dem Kläger htsanwalt ist die Quote im Urteil, dessen Aner gt wird, verbindlich festgelegt, ohne daß daran allein im Streit befindlichen – Verhältnis zum zu ändern wäre. Zu seinen Gunsten könnte das indernis nach § 328 Abs. 1 Nr. 4 ZPO allenfalls n er als »compensatory damages« insgesamt zahlen hätte, der weit über das hinaus ging, was der vom Kläger tatsächlich erlittenen Schäden ines angemessenen Kostenanteils erforderlich um so weniger ersichtlich, als die Rechtsanwälte elang einen Prozeß mit hohem Streitwert und slandsbeziehungen geführt haben, ohne bisher- – irgendein Honorar empfangen zu haben.

## V.

Revision, soweit im Urteil des Superior Court Klägers ein Anspruch auf »exemplary and puni- in Höhe von US-Dollar 400 000 tituliert ist. Berufungsgericht die Auffassung vertreten, eine clärung könne – nur – in dem Umfang stattfin- ch diese Summe Anwaltskosten abgedeckt seien, och ebenfalls einer ordre public-Kontrolle unter- müsse. Dies führe dazu, daß nicht die im Urteil urt ausgewiesene Höhe von 40 % der jeweiligen sondern lediglich eine solche von 25 % aner- önne. Demnach ergebe sich ein für vollstreckbar Teil der »punitive damages« in Höhe von 65.

rungen halten den Angriffen der Revision des stand. Ein ausländisches Urteil auf Strafscha- nicht unerheblicher Höhe, der über den Aus- materieller und immaterieller Schäden hinaus nnt wird, kann insoweit in Deutschland regel- t nicht für vollstreckbar erklärt werden.

r exemplary damages« werden nach dem Recht zelstaaten der USA – einschließlich Kaliforniens

als weiterer Geldbetrag zum rein ausgleichenden Schadenser- satz zuerkannt, wenn dem Täter als erschwerender Umstand zu einem allgemeinen Haftungstatbestand ein absichtliches, bösar- niges oder rücksichtsloses Fehlverhalten zur Last fällt (Prosser aaO S. 9 f. m.Nachw.; Ed. note. in 70 Harvard Law Review S. 517; Kionka aaO S. 372 f.; Stoll, Gutachten für den 45. Deut- schen Juristentag 1964 Bd. I Teil 1 – nachfolgend Gutachten – S. 100; Großfeld, Die Privatstrafe S. 59 f.; Siehr RIW 1991, 705, 706 f.; v. Westphalen RIW/AWD 1981, 141, 143). Neuerdings kann schon eine bewußt fahrlässige, offenkundige Mißachtung der Sicherungsinteressen der Allgemeinheit ausreichen (Hoechst, Produzentenhaftung S. 73; Fleming aaO S. 217 f.; Madden, Products Liability 2nd ed. S. 317, 319; The American Law Institute aaO S. 248; Stiefel/Stürner aaO S. 835). Die Ver- hängung steht regelmäßig im freien Ermessen des Gerichts (Prosser aaO S. 11 m.Nachw.; Stoll in International Encyclope- dia of Comparative Law Vol. XI Part. 2 – nachfolgend Encyclo- pedia – Anm. 8-107 über Fußn. 803 und Gutachten S. 102; Kionka aaO S. 372; Großfeld aaO S. 66; Hoechst VersR 1983, 13, 14). Mit ihr werden bis zu vier Hauptzwecke verfolgt (vgl. Prosser aaO S. 9, 20; Ed. note. in 70 Harvard Law Review 517, 520 ff.; Kionka aaO S. 371 i. V. m. S. 364 f.; Stoll, Encyclopedia Anm. 8-109 und Gutachten S. 101 ff., 113 ff.; Zekoll, Produkt- haftpflichtrecht S. 68, 152; Stiefel/Stürner aaO S. 836; v. West- phalen RIW/AWD 1981, 141, 143 f., 146 f.; Völz aaO S. 231 f.): Der Täter soll für sein rohes Verhalten bestraft werden, auch damit mögliche Racheakte des Opfers selbst überflüssig werden. Täter und Allgemeinheit sollen präventiv von künftigem sozial- schädlichem Verhalten abgeschreckt werden, soweit das bloße Risiko der Kompensationspflicht keine ausreichende Verhal- tenssteuerung gewährleistet. Der Geschädigte soll für die auf sei- nem Einsatz beruhende Rechtsdurchsetzung – zur Stärkung der Rechtsordnung im allgemeinen – belohnt werden. Schließlich soll das Opfer eine Ergänzung zu einer als unzureichend emp- fundenen Schadensbeseitigung erhalten, wobei sich auch ande- rem eine fehlende soziale Absicherung auswirken kann (vgl. Zekoll, Produkthaftpflichtrecht S. 40, 158; Sabella aaO S. 1187 f.); auf diese Weise kommt auch ein Ausgleich für die nicht selb-



ständig erstattungsfähigen außergerichtlichen Kosten des Klägers (oben III 4 b) in Betracht.

Die Höhe der zuerkannten Beträge richtet sich nach dem Ermessen des Gerichts, das üblicherweise den Charakter der Verletzungshandlung, Art und Ausmaß der Beeinträchtigung für den Kläger (Großfeld aaO S. 63; Stiefel/Stürner aaO S. 835), aber auch die Vermögensverhältnisse des Schädigers berücksichtigt (Prosser aaO S. 11 f.; Ed. note in 70 Harvard Law Review 517, 528, jeweils m.w.Nachw.; Kionka aaO S. 374; The American Law Institute aaO S. 253; Zekoll, Produkthaftpflichtrecht S. 68). Teilweise wird ein Vielfaches der auszugleichenden sonstigen Schäden festgesetzt (Hoechst, Produzentenhaftung S. 73 f. und VersR 1983, 13, 14; so auch im Ausgangsfall bei Drolshammer/Schärer SJZ 1986, 309, 310). Zuweilen werden zugesprochene Schmerzensgeldbeträge (damages for pain and suffering) und Strafschadensersatz – anders als im vorliegenden Falle – nicht getrennt ausgewiesen, so daß eine einheitliche Summe zur Abgeltung anderer als materieller Schäden zugleich einen Schmerzensgeldanteil enthält (Großfeld aaO S. 62; Hoechst VersR 1983, 13, 15; vgl. aber auch Stoll, Encyclopedia Anm. 8-107 über Fußn. 801 und 802). Nicht einmal Verdienstausfallschäden werden – bei Jury-Entscheidungen – stets ausgesondert (Heidenberger RIW 1990, 804, 807).

Werden mehrere durch eine einzige Handlung geschädigt, so kann im allgemeinen jedem Opfer selbständig Strafschadensersatz in voller Höhe zuerkannt werden (Fleming aaO S. 220 f.; The American Law Institute aaO S. 260 f.).

2. Auf dieser Grundlage ist das Berufungsgericht zutreffend und unangefochten davon ausgegangen, daß es sich bei der Verurteilung des Beklagten zur Zahlung von »punitive damages« nicht um eine Kriminalstrafe handelt, die der Vollstreckbarerklärung gemäß § 722, 723 ZPO von vornherein entzogen wäre, sondern daß sie einen zivilrechtlichen Zahlungsanspruch zum Gegenstand hat. Hierfür bedarf es keiner Entscheidung darüber, ob diese Frage allein nach ausländischem Recht, allein nach deutschem Recht oder im Wege einer Doppelqualifikation nach beiden Rechtsordnungen übereinstimmend zu beantworten ist (vgl. hierzu Martiny, Handbuch Rdn. 500 und 35 AmJCompL

gsfähigen außergerichtlichen Kosten des Klä-
b) in Betracht.

· zuerkannten Beträge richtet sich nach dem
erichts, das üblicherweise den Charakter der
lung, Art und Ausmaß der Beeinträchtigung
roßfeld aaO S. 63; Stiefel/Stürner aaO S. 835),
mögensverhältnisse des Schädigers berücksich.
S. 11 f.; Ed. note in 70 Harvard Law Review
m.w.Nachw.; Kionka aaO S. 374; The Ameri-
e aaO S. 253; Zekoll, Produkthaftpflichtrecht
wird ein Vielfaches der auszugleichenden son-
festgesetzt (Hoechst, Produzentenhaftung
R 1983, 13, 14; so auch im Ausgangsfall bei
:härer SJZ 1986, 309, 310). Zuweilen werden
:hmerzensgeldbeträge (damages for pain and
rafschadensersatz – anders als im vorliegenden
:rennt ausgewiesen, so daß eine einheitliche
:ltung anderer als materieller Schäden zugleich
nsgeldanteil enthält (Großfeld aaO S. 62;
983, 13, 15; vgl. aber auch Stoll, Encyclopedia
Fußn. 801 und 802). Nicht einmal Verdienst-
erden – bei Jury-Entscheidungen – stets ausge-
berger RIW 1990, 804, 807).
re durch eine einzige Handlung geschädigt, so
nen jedem Opfer selbständig Strafschadenser-
he zuerkannt werden (Fleming aaO S. 220 f.;
aw Institute aaO S. 260 f.).
Grundlage ist das Berufungsgericht zutreffend
en davon ausgegangen, daß es sich bei der Ver-
klagten zur Zahlung von »punitive damages«
minalstrafe handelt, die der Vollstreckbarerklä-
!2, 723 ZPO von vornherein entzogen wäre,
einen zivilrechtlichen Zahlungsanspruch zu-
Hierfür bedarf es keiner Entscheidung darüber,
ein nach ausländischem Recht, allein nach deut-
r im Wege einer Doppelqualifikation nach bei-
:ngen übereinstimmend zu beantworten ist
iny, Handbuch Rdn. 500 und 35 AmJCompL

721, 730 f.; Schütze, Deutsches Internationales Zivilprozeßrecht
S. 138 und FS Nagel S. 394; Schack, IZVR Rdn. 820, jeweils
m.w.Nachw.). Sowohl aus US-amerikanischer wie aus deut-
scher Sicht ist eine Zivilsache anzunehmen.

Nach amerikanischem Rechtsverständnis werden »punitive
damages« ungeachtet ihrer Bestrafungs- und Abschreckungs-
funktion allgemein dem Zivilrecht zugeordnet (Junker, Disco-
very im deutsch-amerikanischen Rechtsverkehr S. 255; Kionka
aaO S. 373; Großfeld aaO S. 61 f.; Stürner/Stadler IPrax 1990,
157, 158, jeweils m.w.Nachw.). Mit dieser Begründung hat der
US Supreme Court einen Verstoß des Strafschadensersatzes
unter anderem gegen das Verbot der Doppelbestrafung ausge-
schlossen (vgl. Peterson IPrax 1990, 187 ff.; Ebke RIW 1990,
145f.).

Aus deutscher Sicht gilt nichts anderes. Danach sind Urteile in
Zivilsachen (§ 13 GVG), also jedenfalls Entscheidungen über
das Bestehen oder Nichtbestehen privater Rechte und Rechts-
verhältnisse gleichgeordneter Parteien (vgl. zu dieser Abgren-
zung GmS-OGB BGHZ 97, 312, 313 f.; 102, 280, 283 f.; 108,
284, 286 f.; BGH, Urt. v. 28. Februar 1991 – III ZR 53/90, NJW
1991, 1686, 1687), anerkennungsfähig. In diesem Sinne stellen
»punitive damages« grundsätzlich eine besondere Art des Scha-
densersatzes zwischen Privatpersonen dar, unabhängig von den
rechtspolitischen Erwägungen, aus denen dieser eingeführt wor-
den ist. Er wird auf Veranlassung eines Einzelnen beigetrieben.
Jedenfalls dann, wenn – wie vorliegend – der Strafschadenser-
satz an den Geschädigten selbst zu entrichten ist, handelt es sich
um den Gegenstand einer Zivilsache (OLG München NJW
1989, 3102 mit insoweit zustimmender Anm. v. Greger S. 3103;
Zöller/Geimer aaO § 328 Rdn. 77; Linke aaO Rdn. 374 a.E.;
Zekoll, Produkthaftpflichtrecht S. 151 und 37 AmJCompL 301,
324 f.; Schack, IZPR Rdn. 605, 818 und Einführung S. 35; Stie-
fel/Stürner aaO S. 837; Stürner/Stadler aaO S. 158; Siehr aaO
S. 808; v. Westphalen RIW/AWD 1981, 141, 143; Böhmer NJW
1990, 3049, 3051; für das Schweizer Recht: Zivilgericht Basel in
Basler JurMitt 1991, 31, 32 f.; Bezirksgerichtspräsidium von Sar-
gans bei Drolshammer/Schärer aaO S. 310 – a.A. Schütze FS
Nagel S. 397 und WM 1986, 633, 635; Wölki RIW 1985, 530,

11 BGHZ 118

533; wohl auch Stiefel RIW/AWD 1979, 509, 512; Hollmann RIW 1982, 784, 786; für das Schweizer Recht: Stojan, Die Anerkennung und Vollstreckung ausländischer Zivilurteile in Handelssachen Anm. 4.5.3 in Verbindung mit 4.5.2; Kaufmann-Kohler WiuR Jahrgang 35, S. 211, 244 in Verbindung mit 243). Ob etwas anderes anzunehmen ist, wenn die »punitive damages« an den Staat oder eine sonstige Institution fließen (vgl. hierzu Stiefel/Stürner aaO S. 837; Schubert PHI 1988, 38, 39), kann offenbleiben.

3. Die Vollstreckbarerklärung des US-amerikanischen Urteils, das die Verpflichtung zur Zahlung von »punitive damages« ausspricht, scheitert jedoch regelmäßig am materiellen ordre public gemäß §§ 723 Abs. 2 Satz 2, 328 Abs. 1 Nr. 4 ZPO (ebenso Zekoll, Produkthaftpflichtrecht S. 152 ff.; Schack IZVR Rdn. 869; Hoechst, Produzentenhaftung S. 122 und VersR 1983, 13, 16 f.; Schütze, Urteilsanerkennung S. 163, 169 ff. und IPS Nagel S. 399 f.; Greger NJW 1989, 3103, 3104 in Anm.; für das Schweizer Recht: Drolshammer/Schärer aaO S. 315 ff. - a.A. wohl v. Westphalen RIW/AWD 1981, 141, 148 f.).

a) Die moderne deutsche Zivilrechtsordnung sieht als Rechtsfolge einer unerlaubten Handlung nur den Schadensausgleich (§§ 249 ff. BGB), nicht aber eine Bereicherung des Geschädigten vor (Motive zu dem Entwurfe eines Bürgerlichen Gesetzbuches für das Deutsche Reich Bd. II S. 17 ff.). Frühere Privatstrafklagen, insbesondere wegen Beleidigung, sollten ausgeschlossen sein (Bericht der Reichstags-Kommission über den Entwurf eines Bürgerlichen Gesetzbuchs und Einführungsgesetzes S. 98). Das gilt unabhängig davon, ob der Ersatzanspruch vor dem Zivilgericht oder im Anhangsverfahren vor dem Strafgericht (§§ 403 ff. StPO) geltend gemacht wird. Die Bestrafung und – im Rahmen des Schuldangemessenen – Abschreckung sind mögliche Ziele der Kriminalstrafe (§§ 46 f. StGB), die als Geldstrafe an den Staat fließt, nicht des Zivilrechts.

Auch die Erwägung, dem Opfer als Kläger eine Vergünstigung zukommen zu lassen, findet ihre Erklärung in einem Verständnis des Privatrechts als Lebensordnung mit generalpräventiver Wirkung (Stürner, Festschrift für Stiefel S. 763, 783): Anstelle des Staates tritt der Einzelne als »privater Staatsanwalt«

:h Stiefel RIW/AWD 1979, 509, 512; Hollmann
:, 786; für das Schweizer Recht: Stojan, Die Aner-
:Vollstreckung ausländischer Zivilurteile in Han-
:m. 4.5.3 in Verbindung mit 4.5.2; Kaufmann-
:Jahrgang 35, S. 211, 244 in Verbindung mit 243),
:eres anzunehmen ist, wenn die »punitive dama-
:taat oder eine sonstige Institution fließen (vgl.
:Stürner aaO S. 837; Schubert PHI 1988, 38, 39),
:ben.

:ollstreckbarerklärung des US-amerikanischen
:e Verpflichtung zur Zahlung von »punitive dama-
:t, scheitert jedoch regelmäßig am materiellen
:emäß §§ 723 Abs. 2 Satz 2, 328 Abs. 1 Nr. 4 ZPO
:l, Produkthaftpflichtrecht S. 152 ff.; Schack IZVR
:chst, Produzentenhaftung S. 122 und VersR 1983,
:itze, Urteilsanerkennung S. 163, 169 ff. und FS
:.; Greger NJW 1989, 3103, 3104 in Anm.; für das
:ht: Drolshammer/Schärer aaO S. 315 ff. – a.A.
:ohalen RIW/AWD 1981, 141, 148 f.).

:erne deutsche Zivilrechtsordnung sieht als Rechts-
:erlaubten Handlung nur den Schadensausgleich
:B), nicht aber eine Bereicherung des Geschädigten
:u dem Entwurfe eines Bürgerlichen Gesetzbuches
:che Reich Bd. II S. 17 ff.). Frühere Privatstrafkla-
:dere wegen Beleidigung, sollten ausgeschlossen
:der Reichstags-Kommission über den Entwurf
:chen Gesetzbuchs und Einführungsgesetzes S. 98)
:hängig davon, ob der Ersatzanspruch vor dem
:der im Anhangsverfahren vor dem Strafgericht
:O) geltend gemacht wird. Die Bestrafung und – in
:chuldangemessenen – Abschreckung sind mögli-
:Kriminalstrafe (§§ 46 f. StGB), die als Geldstrafe an-
:st, nicht des Zivilrechts.

:rwägung, dem Opfer als Kläger eine Vergünsti-
:nen zu lassen, findet ihre Erklärung in einem Ver-
:rivatrechts als Lebensordnung mit generalpräven-
:g (Stürner, Festschrift für Stiefel S. 763, 783),
:taates tritt der Einzelne als »privater Staatsanwalt«

auf (The American Law Institute aaO S. 238; Junker aaO S. 96).
Das ist nach deutscher Rechtsauffassung mit dem Bestrafungs-
monopol des Staates und den dafür eingeführten besonderen
Verfahrensgarantien unvereinbar. Zwar läßt das deutsche Recht
mit dem Rechtsinstitut der Vertragsstrafe (§§ 339 ff.) in gewis-
sem Umfang Bestrafungsfunktionen im Privatrecht zu. Dies
setzt jedoch eine entsprechende rechtsgeschäftliche Vereinba-
rung zwischen den Parteien voraus und ist deshalb für die
Umschreibung der deutschen Grundsätze für die Deliktshaf-
tung bedeutungslos.

Die nach US-amerikanischem Verständnis im Interesse der
Allgemeinheit gerechtfertigte Bestrafungs- und Abschreckungs-
funktion der »punitive damages« kann insbesondere nicht mit
der Genugtuungsfunktion verglichen werden, die nach inländi-
schen Grundsätzen im Bereich der Zumessung von Schmerzens-
geld nach § 847 BGB und bei Verletzungen des allgemeinen Per-
sönlichkeitsrechts zu berücksichtigen ist (vgl. dazu Großer
Senat für Zivilsachen in BGHZ 18, 149. 154 ff.; BGHZ 26, 349,
353 ff.; 39, 124, 133; BGH, Urt. v. 16. Dezember 1975 – VI ZR
175/74, JZ 1976, 599, v. 11. Juni 1982 – VI ZR 247/80, NJW 1982,
2123). Zum einen steht bei der Bemessung des Schmerzensgel-
des nicht sie, sondern die Rücksicht auf Höhe und Maß der
Lebensbeeinträchtigung (Grad und Dauer der Schmerzen, Lei-
den und Entstellung) nach den übrigen Umständen des Einzelfal-
les zu entnehmen ist (vgl. BGH, Urt. v. 3. November 1959 – VI
ZR 193/58, VersR 1960, 252, 253). Zum anderen begründet die
Genugtuungsfunktion keinen unmittelbaren Strafcharakter des
Schmerzensgeldes (BGHZ 18, 149, 155). Sie ist vielmehr
untrennbar mit der dem Schmerzensgeldanspruch zugleich
innewohnenden Ausgleichsfunktion verknüpft (BGH, Urt. v.
6. Dezember 1960 – VI ZR 73/60, VersR 1961, 164 f.) und bringt
immer eine gewisse, durch den Schadensfall hervorgerufene per-
sönliche Beziehung zwischen Schädiger und Geschädigtem zum
Ausdruck (BGHZ 18, 149, 157). Dies ändert sich auch dann
nicht, wenn die Genugtuungsfunktion im Einzelfall in den Vor-
dergrund der Schmerzensgeldbemessung tritt, weil angesichts
der Unmöglichkeit eines Ausgleichs immaterieller Schäden nur



eine zeichenhafte Wiedergutmachung stattfinden kann (vgl. hierzu BGHZ 18, 149, 156 f.; BGH, Urt. v. 16. Dezember 1975 – VI ZR 175/74 – und v. 12. Juni 1982 – VI ZR 247/80, aaO). Das verkennt Kern (AcP 191, 247, 253 ff., 268, 272).

Für die Bestimmung des nach § 328 Abs. 1 Nr. 4 ZPO zu beachtenden ordre public kann die Genugtuungsfunktion eines Schmerzensgeldanspruchs nach deutschem Recht mithin nur herangezogen werden, soweit die »punitive damages« auch im materielle Schäden ausgleichen sollen (Stiefel/Stürner aaO S. 841; Siehr aaO S. 707; a.A. wohl v. Westphalen RIW/AWD 1981, 141, 147 ff.). Im Streitfall ist dies aber bereits durch gesondertes Zuerkennen einer Entschädigung für »pain and suffering« uneingeschränkt geschehen. Für ein darüber hinausgehendes Genugtuungsbedürfnis des Klägers ist sogar unter voller Berücksichtigung der hohen Bedeutung, die nach dessen Darstellung die körperliche Unversehrtheit in den USA genießt, nichts ersichtlich.

b) Anders kann es sich möglicherweise verhalten, soweit mit der Verhängung von Strafschadensersatz restliche, nicht besonders abgegoltene oder schlecht nachweisbare wirtschaftliche Nachteile pauschal ausgeglichen oder vom Schädiger durch die unerlaubte Handlung erzielte Gewinne abgeschöpft werden sollen (so Zivilgericht Basel in Basler JurMitt 1991, 31, 36 f.; vgl. auch Assmann BB 1985, 15, 23). In diesem Zusammenhang kommt allgemein auch die Abwälzung der Prozeßkosten oder anderer nicht selbständig ersatzfähiger Verzugsschäden auf den Beklagten in Betracht (vgl. Martiny, Handbuch Rdn. 507).

Jedoch enthalten hier weder das Urteil noch die Verhandlungsniederschrift des Superior Court zuverlässige Hinweise darauf, daß mit der Zubilligung von »punitive damages« die Gesamtprozeßkostenlast des Klägers erfaßt werden sollte. Der Anteil von 40 %, welcher seinem Rechtsanwalt als Vergütung zuerkannt wurde, fällt auf sämtliche tatsächlich entrichteten Schadensersatzbeträge unabhängig von ihrer rechtlichen Einordnung an. Die zum Ausgleich für Heilungskosten sowie als Schmerzensgeld (damages for pain and suffering) ausgewiesenen Summen sind auch nicht etwa so genau und knapp kalkuliert, daß sie nicht ihrerseits schon einen Kostenanteil umfassen

fte Wiedergutmachung stattfinden kann (vgl.
.8, 149, 156 f.; BGH, Urt. v. 16. Dezember 1975
· und v. 12. Juni 1982 – VI ZR 247/80, aaO). Das
(AcP 191, 247, 253 ff., 268, 272).
immung des nach § 328 Abs. 1 Nr. 4 ZPO zu
dre public kann die Genugtuungsfunktion eines
danspruchs nach deutschem Recht mithin nur
werden, soweit die »punitive damages« auch im
äden ausgleichen sollen (Stiefel/Stürner aaO
lO S. 707; a.A. wohl v. Westphalen RIW/AWD
f.). Im Streitfall ist dies aber bereits durch geson-
nen einer Entschädigung für »pain and suffering«
:t geschehen. Für ein darüber hinausgehendes
edürfnis des Klägers ist sogar unter voller
ng der hohen Bedeutung, die nach dessen Dar-
irperliche Unversehrtheit in den USA genießt,
:h.
inn es sich möglicherweise verhalten, soweit mit
g von Strafschadensersatz restliche, nicht beson-
ne oder schlecht nachweisbare wirtschaftliche
chal ausgeglichen oder vom Schädiger durch die
dlung erzielte Gewinne abgeschöpft werden sol-
icht Basel in Basler JurMitt 1991, 31, 36 f.; vgl.
BB 1985, 15, 23). In diesem Zusammenhang
ein auch die Abwälzung der Prozeßkosten oder
elbständig ersatzfähiger Verzugsschäden auf den
etracht (vgl. Martiny, Handbuch Rdn. 507).
alten hier weder das Urteil noch die Verhand-
rift des Superior Court zuverlässige Hinweise
it der Zubilligung von »punitive damages« die
kostenlast des Klägers erfaßt werden sollte. Der
%, welcher seinem Rechtsanwalt als Vergütung
rde, fällt auf sämtliche tatsächlich entrichteten
beträge unabhängig von ihrer rechtlichen Ein-
ie zum Ausgleich für Heilungskosten sowie als
d (damages for pain and suffering) ausgewie-
ind auch nicht etwa so genau und knapp kalku-
cht ihrerseits schon einen Kostenanteil umfassen

könnten. Die Erwägung des Gerichts – vor allem einer Jury –,
dünen Kostenausgleich zu schaffen, kann in den USA allgemein
schon zu erhöhten »compensatory damages« führen (Fleming
aaO S. 226; Zekoll, Produkthaftpflichtrecht S. 153 f.; v. Hülsen
RIW/AWD 1982, 1, 9).

Das Berufungsgericht hat nicht etwa in tatsächlicher Hinsicht
festgestellt, welche Erwägungen den Superior Court bei seiner
Entscheidung hinsichtlich der »punitive damages« im vorliegen-
den Einzelfalle geleitet haben. Es ist statt dessen einem Vor-
schlag von Stiefel und Stürner (VersR 1987, 829, 831; vgl. dage-
gen Schütze FS Nagel S. 397; Böhmer NJW 1990, 3049, 3051)
gefolgt, die für den Regelfall einem auf Strafschadensersatz lau-
tenden US-amerikanischen Urteil eine solche Ausgleichsfunk-
tion unterlegen und es in Deutschland begrenzt anerkennen
wollen.

c) Eine solche Verallgemeinerung wird aber weder von den
tatsächlichen Feststellungen des Berufungsgerichts noch von
den Behauptungen des Klägers getragen.

Erhebungen darüber, wie oft US-amerikanische Gerichte mit
der Verhängung von Strafschadensersatz unter anderem
bezwecken, Kläger von ihrer gesamten Last an außergerichtli-
chen Kosten freizustellen, fehlen (vgl. im Gegenteil Zekoll, Pro-
dukthaftpflichtrecht S. 117). In älteren Veröffentlichungen wird
ein solcher Beweggrund überhaupt noch nicht genannt (vgl. die
Nachweise bei Großfeld aaO S. 50, 52 f.). Sogar neuere Ent-
scheidungen erwähnen ein derartiges Motiv nur ausnahmsweise
(vgl. die Zusammenstellung bei v. Westphalen RIW/AWD 1981,
141, 144 ff.). Im Staate New York werden beispielsweise bei
der Jury-Belehrung allein Bestrafung und Abschreckung als
Zwecke der »punitive damages« genannt (vgl. Madden aaO
S. 317 Fn. 6).

Ohne eindeutig nachvollziehbare Hinweise des ausländi-
schen Gerichts selbst ist das um die Vollstreckbarerklärung
angegangene deutsche Gericht gehindert, die tatsächlichen
Beweggründe im Einzelfalle zu erforschen. Wie ausgeführt
(oben 1), kann ein solcher US-amerikanischer Spruch regelmä-
ßig auf mehreren verschiedenen Motiven jeweils allein oder in
Verbindung mit anderen beruhen, sofern er überhaupt den aner-



kannten ausländischen Rechtsgrundsätzen entspricht (insoweit zutreffend Stiefel/Stürner aaO S. 838). Um den Urteilsinhalt über dessen amtliche Begründung hinaus zu konkretisieren, müßte sich der inländische Richter notwendigerweise an die Stelle des ausländischen setzen. Dazu ist er, wie § 723 Abs. 1 ZPO erkennen läßt, nicht befugt. Darüber hinaus müßte eine solche Urteilsergänzung weitgehend auf Mutmaßungen beruhen, also die Rechtssicherheit gefährden.

Der Senat hält es auch nicht für zulässig, insoweit für das ausländische Urteil stets den für eine Anerkennung »günstigsten«, denkbaren Fall einer möglichst vollständigen Wahrung der Ausgleichsfunktion zu unterstellen (so aber im Ergebnis Stiefel/Stürner aaO S. 837, 840 f.). Das entspräche nicht der Rechtswirklichkeit, weil diese Sichtweise für den erkennenden Richter im Ausland belanglos war. Zudem liefe ein solcher Ansatz auf eine einseitige Besserstellung des Gläubigers im Verhältnis zum Schuldner ohne Rücksicht auf den tatsächlichen Inhalt des ausländischen Urteils, also möglicherweise auf eine Haftungserweiterung hinaus. Eine solche Betrachtungsweise wird nicht einmal durch die Rücksichtnahme auf den konkreten ausländischen Hoheitsakt geboten.

Unerheblich ist hierfür die Frage nach der Teilbarkeit einer Anerkennung des ausländischen Urteils, die auch der Senat grundsätzlich bejaht. Sie kann immer erst in Betracht kommen, wenn das ausländische Urteil, das eine einheitliche Rechtsfolge mit mindestens teilweise, möglicherweise aber vollständig ordre public-widrigem Inhalt ausspricht, selbst genügend Anhaltspunkte für eine sichere Aufspaltung in hinzunehmende oder für die deutsche Rechtsordnung schlechthin unverträgliche Rechtsfolgen enthält. Eine Aufteilung nach dem freien Ermessen des deutschen Anerkennungsrichters ist insoweit ausgeschlossen.

d) Statt dessen ist in derartigen Fällen auf den Schwerpunkt der nicht im einzelnen aufteilbaren Rechtsfolge abzustellen, die das ausländische Urteil als Einheit ausspricht. Vorrangig sind dabei die nach dem Urteil im jeweiligen Einzelfalle maßgeblichen Umstände auszuwerten. Legt das Urteil sie, wie hier, nicht offen, so ist das zugrundeliegende ausländische Rechtsinstitut als Ganzes zu erfassen. Entscheidend ist sodann, welche

ndischen Rechtsgrundsätzen entspricht (insowe[it]
efel/Stürner aaO S. 838). Um den Urteilsinhal[t]
amtliche Begründung hinaus zu konkretisieren,
er inländische Richter notwendigerweise an die
ländischen setzen. Dazu ist er, wie § 723 Abs. 1
n läßt, nicht befugt. Darüber hinaus müßte eine
ergänzung weitgehend auf Mutmaßungen beru[hen]
Rechtssicherheit gefährden.

ält es auch nicht für zulässig, insoweit für das aus[-]
eil stets den für eine Anerkennung »günstigsten[«]
ll einer möglichst vollständigen Wahrung der Aus[-]
m zu unterstellen (so aber im Ergebnis Stiefel/[...]
. 837, 840 f.). Das entspräche nicht der Rechtswirk[-]
diese Sichtweise für den erkennenden Richter im [...]
nglos war. Zudem liefe ein solcher Ansatz auf eine
sserstellung des Gläubigers im Verhältnis zum [...]
ne Rücksicht auf den tatsächlichen Inhalt des aus[-]
teils, also möglicherweise auf eine Haftungserwe[-]
. Eine solche Betrachtungsweise wird nicht einmal
cksichtnahme auf den konkreten ausländischen [...]
eboten.

h ist hierfür die Frage nach der Teilbarkeit einer
; des ausländischen Urteils, die auch der Senat
bejaht. Sie kann immer erst in Betracht kommen,
ländische Urteil, das eine einheitliche Rechtsfolge
as teilweise, möglicherweise aber vollständig ordre
em Inhalt ausspricht, selbst genügend Anhalts[-]
ne sichere Aufspaltung in hinzunehmende oder für
Rechtsordnung schlechthin unverträgliche Rechts[-]
t. Eine Aufteilung nach dem freien Ermessen des
erkennungsrichters ist insoweit ausgeschlossen[.]
ssen ist in derartigen Fällen auf den Schwerpunkt
einzelnen aufteilbaren Rechtsfolge abzustellen, die
che Urteil als Einheit ausspricht. Vorrangig sind
ch dem Urteil im jeweiligen Einzelfalle maßgebli[-]
de auszuwerten. Legt das Urteil sie, wie hier, nicht
das zugrundeliegende ausländische Rechtsinstitut
zu erfassen. Entscheidend ist sodann, welche

Anspruchsvoraussetzungen und/oder Besonderheiten der Rechtsfolge bei wertender Betrachtungsweise im Hinblick auf den deutschen ordre public das Rechtsinstitut im Regelfalle typischerweise bestimmen.

Bei dieser Sicht wird der US-amerikanische Strafschadensersatz geprägt durch die Momente der Bestrafung und Abschreckung (ebenso The American Law Institute aaO S. 231, 236, 247; Madden aaO S. 316; Kionka aaO S. 374; Fleming aaO S. 214; Zekoll, Produkthaftpflichtrecht S. 152 f., 156 und 37 AmJCompL 301, 325 ff.). Aus ihnen ist er geschichtlich hervorgegangen (Großfeld aaO S. 49 ff.; Ed. note in 70 Harvard Law Review 517, 518 ff.; Siehr aaO 705 f.), sie wirken auch heute noch regelmäßig mit auf die Festsetzung ein (Großfeld aaO S. 69 f.; Schütze, FS Nagel S. 397; vgl. auch die Einzelnachweise bei v. Westphalen RIW/AWD 1981, 141, 144 ff.). Maßgebliche Voraussetzung ist allein der gesteigerte Schuldvorwurf. Das Fehlen eines Rechtsanspruchs des Geschädigten zeigt das untergeordnete Gewicht seiner privaten Interessen. Da zudem keine meßbare allgemeine Beziehung der festzusetzenden Beträge zu den erlittenen Schäden besteht, tritt der Ausgleichsgedanke im Regelfalle zurück (ebenso Großfeld aaO S. 63; Siehr aaO S. 707).

e) Davon ausgehend, ist es mit wesentlichen Grundsätzen des deutschen Rechts offensichtlich unvereinbar, pauschal zuerkannten Strafschadensersatz von nicht unerheblicher Höhe im Inland zu vollstrecken.

aa) Zu den wesentlichen Grundsätzen des deutschen Rechts gehört der aus dem Rechtsstaatsprinzip folgende Grundsatz der Verhältnismäßigkeit, der auch in der Zivilrechtsordnung Geltung beansprucht (Stiefel/Stürner aaO S. 840 f.; Stürner/Stadler aaO S. 159; v. Westphalen PHI 1988, 18, 21 f.; LG Heilbronn RIW 1991, 343, 344; vgl. auch BVerfGE 34, 269, 285 f. und § 251 Abs. 2 BGB). Ihm trägt im Zivilrecht unter anderem der Kompensationsgedanke beim Schadensersatz Rechnung: Regelmäßig ist allein der Ausgleich der durch den rechtswidrigen Eingriff gestörten Vermögensverhältnisse der unmittelbar Beteiligten das angemessene Ziel des über den Eingriff geführten Zivilprozesses. Darauf sind dessen Verfahrens- und Beweisregeln zugeschnitten, die den Parteien einen vielfältig bestimmenden Ein-



fluß auf das Ergebnis einräumen. Ähnliche Regeln bestimmen den US-amerikanischen Zivilprozeß, bis hin zur Festlegung des maßgeblichen Sachverhalts durch die Parteien und zur Möglichkeit von Säumnisentscheidungen.

Hingegen fallen Sanktionen, die der Bestrafung und Abschreckung – also dem Schutz der Rechtsordnung im allgemeinen – dienen, nach deutscher Auffassung grundsätzlich unter das Strafmonopol des Staates. Er übt es im öffentlichen Interesse in einer besonderen Verfahrensart aus, in dem einerseits die Amtsermittlung eine höhere Gewähr für die Richtigkeit der Sachentscheidung bieten soll und andererseits die Rechte des Beschuldigten stärker geschützt sind. Aus hiesiger Sicht erscheint es unerträglich, in einem Zivilurteil eine erhebliche Geldzahlung aufzuerlegen, die nicht dem Schadensausgleich dient, sondern wesentlich nach dem Interesse der Allgemeinheit bemessen wird und möglicherweise neben eine Kriminalstrafe für dasselbe Vergehen treten kann (ebenso Greger NJW 1989, 3103 f. in Anm.).

So verhält es sich im Ergebnis mit dem vorliegenden Fall. Der verhängte Strafschadensersatz ist höher als die Summe aller zugesprochenen Ausgleichsbeträge. Sogar das hierauf anfallende Anwaltshonorar zusammen könnte nur gut ein Drittel der »punitive damages« ausmachen. Für einen sonstigen auszugleichenden Schaden ist nichts ersichtlich. Dann würde eine Vollstreckung den Beklagten übermäßig treffen.

bb) Die ohne festes Verhältnis zum eingetretenen Schaden nach dem Ermessen des Gerichts verhängten, teilweise außerordentlich hohen »punitive damages« haben in den USA im Ergebnis mit zu einem raschen Anstieg der gesamtwirtschaftlichen Schadensersatzlast bis an die Grenze des kalkulierbaren und versicherbaren Risikos geführt (vgl. Zekoll, Produkthaftpflichtrecht S. 84 ff., 155 f.; Hoechst VersR 1983, 13, 15; Stiefel/Stürner aaO S. 835: Völz aaO S. 233 f.; Sabella aaO S. 1188, 1190 f.).

Aus deutscher Sicht wären die zivilrechtsfremden Beweggründe sowie das Fehlen hinreichend bestimmter und zuverlässiger Begrenzungen im Falle der Anerkennung derartiger Urteile geeignet, die gesamten inländischen Haftungsmaßstäbe

Ergebnis einräumen. Ähnliche Regeln bestimmen kanischen Zivilprozeß, bis hin zur Festlegung des Sachverhalts durch die Parteien und zur Möglich nnisentscheidungen.

fallen Sanktionen, die der Bestrafung und Ab also dem Schutz der Rechtsordnung im allgemei nach deutscher Auffassung grundsätzlich unter das des Staates. Er übt es im öffentlichen Interesse in eren Verfahrensart aus, in dem einerseits die ng eine höhere Gewähr für die Richtigkeit der ung bieten soll und andererseits die Rechte des stärker geschützt sind. Aus hiesiger Sicht nerträglich, in einem Zivilurteil eine erhebliche aufzuerlegen, die nicht dem Schadensausgleich wesentlich nach dem Interesse der Allgemeinheit d und möglicherweise neben eine Kriminalstrafe Vergehen treten kann (ebenso Greger NJW 1989, m.).

es sich im Ergebnis mit dem vorliegenden Fall. Der rafschadensersatz ist höher als die Summe aller en Ausgleichsbeträge. Sogar das hierauf anfallende rar zusammen könnte nur gut ein Drittel der ages« ausmachen. Für einen sonstigen auszuglei den ist nichts ersichtlich. Dann würde eine Voll n Beklagten übermäßig treffen.

ne festes Verhältnis zum eingetretenen Schaden nessen des Gerichts verhängten, teilweise außeror en »punitive damages« haben in den USA im zu einem raschen Anstieg der gesamtwirtschaftli asersatzlast bis an die Grenze des kalkulierbaren rbaren Risikos geführt (vgl. Zekoll, Produkthaft . 84 ff., 155 f.; Hoechst VersR 1983, 13, 15; Stiefel S. 835; Völz aaO S. 233 f.; Sabella aaO S. 1188,

cher Sicht wären die zivilrechtsfremden Beweg das Fehlen hinreichend bestimmter und zuverläs zungen im Falle der Anerkennung derartiger net, die gesamten inländischen Haftungsmaßstäbe

zu sprengen. Ausländische Gläubiger könnten aufgrund eines solchen Titels in vielfach weiterem Ausmaße auf inländisches Schuldnervermögen zugreifen als inländische Gläubiger, die unter Umständen wesentlich größere Beeinträchtigungen erlit ten haben. Eine solche Besserstellung von Gläubigern allein aus den wenigen Staaten in der Welt, die Strafschadensersatz ver hängen (vgl. dazu Stoll, Encyclopedia Rdn. 8-104 ff.), gegen über allen anderen ist nicht durch Gründe gerechtfertigt, die nach der deutschen Rechtsordnung Schutz verdienen. Deshalb wäre schon allein die Vollstreckung eines Anspruchs auf pau schalen Strafschadensersatz – über den Ersatz vollen materiellen wie immateriellen Schadens hinaus – in Deutschland ein untrag bares Ergebnis, so daß bereits diese verhältnismäßig geringe Inlandsbeziehung des Streitfalles dem Klageantrag entgegen steht.

cc) Damit ist eine Vollstreckung in Deutschland insoweit aus geschlossen. Es braucht nicht mehr entschieden zu werden, ob die Vollstreckung von Strafschadensersatz die deutsche öffentli che Ordnung noch aus weiteren Gründen verletzte. Insbeson dere kann es offenbleiben, ob die wenig bestimmbaren Voraus setzungen für den Erlaß eines Urteils auf »punitive damages« und für deren Höhe an Art. 103 Abs. 2 GG zu messen sind, sowie ob die Verurteilung zu Strafschadensersatz neben einer Kriminalstrafe aus deutscher Sicht unter das Verbot der Mehr fachbestrafung (Art. 103 Abs. 3 GG) fiele (vgl. dazu Zekoll, Pro dukthaftpflichtrecht S. 152 f.; Hoechst VersR 1983, 13, 17).

## VI.

Der Umstand, daß das Urteil des Superior Court wegen des darin verhängten Strafschadensersatzes in Deutschland nicht für vollstreckbar erklärt werden kann, hindert die Anerkennung im übrigen nicht. Entgegen der Meinung der Revision zwingt die Tatsache, daß der Streitgegenstand des Vollstreckungsurteils nicht in dem materiell-rechtlichen Anspruch besteht, der dem ausländischen Titel zugrunde liegt, sondern durch das Begehren des Gläubigers bestimmt wird, diesem Titel im Inland Voll streckbarkeit zu verleihen, nicht dazu, über die Vollstreckbarer klärung eines ausländischen Zahlungsurteils hinsichtlich der

gesamten Urteilssumme immer einheitlich zu entscheiden. Wenn ein ausländisches Urteil mehrere, rechtlich selbständige Ansprüche zuerkennt, können diese auch jeweils einzeln auf ihre Anerkennungsvoraussetzungen geprüft werden. Sofern diese nicht für alle Ansprüche vorliegen, ist eine Teilanerkennung als ein Weniger möglich, ohne daß der Kläger dem mit seinem Klageantrag Rechnung tragen muß (Geimer IZPR Rdn. 2294; Zöller/Geimer aaO § 328 Rdn. 285; Zekoll, Produkthaftpflichtrecht S. 37 und 37 AmJCompL 301, 330; Schack, IZVR Rdn. 1022; Martiny, Handbuch Rdn. 323; Schütze, FS Nagel S. 400; Böhmer NJW 1990, 3049, 3051; für das österreichische Recht Matscher in Festschrift für Reimer S. 33, 35 f.). Demnach bestehen keine Bedenken dagegen, daß das Berufungsgericht die im Urteil des Superior Court ausgewiesenen Beträge für bereits entstandene und zukünftig entstehende Behandlungs- beziehungsweise Unterbringungskosten, Nichtvermögensschäden und »punitive damages« einer getrennten ordre public-Kontrolle unterzogen hat.

Ob eine Teilanerkennung auch hinsichtlich eines einheitlichen materiellen Anspruchs zulässig ist (bejahend Schack, IZVR Rdn. 869 a.E., 1026; Stiefel/Stürner aaO S. 842 f.; Zekoll, Produkthaftpflichtrecht S. 123, 156 und 37 AmJCompL 301, 330; Siehr aaO S. 709: vgl. auch Stürner/Stadler aaO S. 159; Geimer/ Schütze aaO Bd. I/2 § 214, 4; Zöller/Geimer aaO § 328 Rdn. 169 – verneinend LG Berlin RIW 1989, 988, 990: für österreichisches Recht Matscher aaO S. 38; für Schweizer Recht Kaufmann-Kohler aaO S. 244), braucht nach dem vom Senat gefundenen Ergebnis nicht entschieden zu werden.

### B. Zur Revision des Klägers

#### I.

Der Superior Court hat dem Kläger für Nichtvermögensschäden in Form erlittener Ängste, Schmerzen und Leiden einen Betrag in Höhe von US-Dollar 200 000 zuerkannt. Nach den unangefochtenen Feststellungen des Berufungsgerichts beruht das kalifornische Urteil insoweit auf der Überzeugung, der Kläger sei durch das Verhalten des Beklagten in seiner seelisch-

: immer einheitlich zu entscheiden.
Urteil mehrere, rechtlich selbständige
önnen diese auch jeweils einzeln auf
ussetzungen geprüft werden. Sofern
rüche vorliegen, ist eine Teilanerken-
öglich, ohne daß der Kläger dem mit-
chnung tragen muß (Geimer IZPR
er aaO § 328 Rdn. 285; Zekoll, Pro-
7 und 37 AmJCompL 301, 330; Schack,
iny, Handbuch Rdn. 323; Schütze, FS
JW 1990, 3049, 3051; für das österei-
in Festschrift für Reimer S. 33, 35 f.).
ne Bedenken dagegen, daß das Beru-
eil des Superior Court ausgewiesenen
andene und zukünftig entstehende Be-
weise Unterbringungskosten, Nichtver-
nitive damages« einer getrennten ordre
ogen hat.

ung auch hinsichtlich eines einheitlichen
zulässig ist (bejahend Schack, IZVR
iefel/Stürner aaO S. 842 f.; Zekoll, Pro-
123, 156 und 37 AmJCompL 301, 330;
ch Stürner/Stadler aaO S. 159; Geimer/
4, 4; Zöller/Geimer aaO § 328 Rdn. 169
RIW 1989, 988, 990: für österreichisches
8; für Schweizer Recht Kaufmann-Koh-
nach dem vom Senat gefundenen Ergeb-
u werden.

Klägers

### I.

at dem Kläger für Nichtvermögensschä-
· Ängste, Schmerzen und Leiden einen
S-Dollar 200 000 zuerkannt. Nach den
tellungen des Berufungsgerichts beruht
. insoweit auf der Überzeugung, der Klä-
halten des Beklagten in seiner seelisch-

sexuellen und sozialen Entwicklung gestört, was letztlich dazu geführt habe, daß er von zu Hause zu entfliehen versucht und ein Auto gestohlen habe, weshalb er inhaftiert worden sei. Das Berufungsgericht ist der Ansicht, nach deutschen Verhältnissen sei angesichts der vorliegenden Umstände äußerstenfalls ein Schmerzensgeld von 30 000 DM gerechtfertigt. Die oberste Grenze dessen, was nach inländischen Verhältnissen für ein ausländisches Urteil noch erträglich erscheine, liege unter Berücksichtigung der daneben zuerkannten Kosten künftiger Heilbehandlung und Unterbringung bei 120 000 DM (US-Dollar 70 000). Nur in dieser Höhe könne wegen der Nichtvermögensschäden dem Urteil des Superior Court die Vollstreckbarkeit verliehen werden. Hinsichtlich des übersteigenden Betrages sei das Urteil nicht mit dem ordre public zu vereinbaren; denn es sprenge jeden vernünftigen Rahmen und lasse unberücksichtigt, daß der Beklagte wegen seiner Taten auch strafrechtlich zur Verantwortung gezogen worden sei.

Diese Ausführungen halten einer rechtlichen Überprüfung nicht stand. Mit der vom Superior Court ausgesprochenen Verurteilung des Beklagten zur Zahlung von US-Dollar 200 000 soll ein von den getrennt zuerkannten »punitive damages« zu unterscheidender Ausgleich immaterieller Schäden erfolgen (vgl. hierzu The American Law Institute aaO S. 199 f.; Madden aaO S. 313 f., 324 f., 328 f.; Kionka aaO S. 357 f.; Stiefel/Stürner aaO S. 843; Schütze, FS Nagel S. 396; Siehr aaO S. 707). Dem kann im deutschen Schadensersatzrecht mit einem Schmerzensgeldanspruch gemäß § 847 BGB annähernd Rechnung getragen werden. Sogar wenn der vom Superior Court zur Abgeltung der Nichtvermögensschäden in Ansatz gebrachte Betrag um ein Vielfaches über der Höhe desjenigen liegt, was nach deutschen Vorstellungen bei den zugrunde gelegten tatsächlichen Umständen als Schmerzensgeld in Betracht gekommen wäre, ist der Teil des Urteils, mit dem der Beklagte zur Zahlung von US-Dollar 200 000 für immaterielle Schäden des Klägers verurteilt wurde, hier dennoch anzuerkennen.

1. Wie ausgeführt (oben A IV 3 b), liegt ein Verstoß gegen §§ 723 Abs. 2, 328 Abs. 1 Nr. 4 ZPO nur vor, wenn das Ergebnis der Anwendung ausländischen Rechts den Grundgedanken

deutscher Regelungen und der in ihnen enthaltenen Gerechtigkeitsvorstellungen so sehr widerspricht, daß es nach inländischen Vorstellungen untragbar erscheint. Der materielle ordre public im Sinne dieser Vorschriften unterliegt insoweit einem abgestuften Prüfungsmaßstab, als es auch entscheidend auf Ausmaß und Bedeutung der Inlandsbeziehung des Sachverhalts ankommt, den das in der Bundesrepublik zu vollstreckende Urteil regelt sowie möglicherweise im Ergebnis umgestalten würde (Martiny, Handbuch Rdn. 181, 1014, 1028 f.; Schack, IZVR Rdn. 867; Geimer IZPR Rdn. 2265; vgl. auch BGHZ 98, 70, 74; OLG Bamberg RIW 1991, 541, 542; OLG Frankfurt RIW 1991, 417, 418; Zöller/Geimer aaO § 328 Rdn. 167; für das Schweizer Recht Drolshammer/Schärer aaO S. 312; ZivG Basel Basler JurMitt 1991, 31, 34). Das gilt nicht nur für das Eingreifen des inländischen kollisionsrechtlichen ordre public-Vorbehalts nach Art. 6 EGBGB, das eine hinreichend starke Inlandsbeziehung voraussetzt (Amtliche Begründung der Bundesregierung aaO S. 43; Beschlußempfehlung und Bericht des Rechtsausschusses des Deutschen Bundestages, BT-Drucks. 10/5632 S. 40; vgl. auch BVerfGE 31, 58, 77), sondern erst recht für die Frage, ob ein vom zuständigen ausländischen Gericht ergangenes Urteil in Deutschland zu vollstrecken ist. In diesem Falle hat der inländische Richter keine eigene Entscheidung über die materiell-rechtliche Grundlage des ausländischen Spruchs oder die Höhe einer zuerkannten Entschädigung mehr zu fällen. Für ihn ist im Hinblick auf den ordre public allein maßgeblich, ob das Ergebnis der Anerkennung und Vollstreckung des ausländischen Urteilsspruchs für das Inland noch tragbar erscheint. Das kann auch dann zutreffen, wenn das ausländische Erkenntnis mit wesentlichen deutschen Wertungen oder sogar zwingenden inländischen Rechtsnormen (beispielsweise Art. 38 EGBGB, s. o. A IV 3 a bb) nicht vereinbar ist, sofern der Haftungsfall – bis auf in Deutschland belegenes Schuldnervermögen – vollständig in die ausländische Rechtsordnung eingebettet ist.

Im vorliegenden Falle hat das Urteil des Superior Court den Schadensersatzanspruch eines US-amerikanischen Staatsangehörigen gegen einen anderen zum Gegenstand. Der Anspruch findet seine Begründung in unerlaubten Handlungen, die der

a und der in ihnen enthaltenen Gerechtig-
) sehr widerspricht, daß es nach inländi-
untragbar erscheint. Der materielle ordre
r Vorschriften unterliegt insoweit einem
maßstab, als es auch entscheidend auf Aus-
z der Inlandsbeziehung des Sachverhalts
in der Bundesrepublik zu vollstreckende
möglicherweise im Ergebnis umgestalten
ndbuch Rdn. 181, 1014, 1028 f.; Schack,
mer IZPR Rdn. 2265; vgl. auch BGHZ 98,
rg RIW 1991, 541, 542; OLG Frankfurt
Zöller/Geimer aaO § 328 Rdn. 167; für das
lshammer/Schärer aaO S. 312; ZivG Basel
31, 34). Das gilt nicht nur für das Eingreifen
lisionsrechtlichen ordre public-Vorbehalts
, das eine hinreichend starke Inlandsbezie-
mtliche Begründung der Bundesregierung
ßempfehlung und Bericht des Rechtsaus-
chen Bundestages, BT-Drucks. 10/5632
fGE 31, 58, 77), sondern erst recht für die
uständigen ausländischen Gericht ergange-
land zu vollstrecken ist. In diesem Falle hat
ter keine eigene Entscheidung über die ma-
ndlage des ausländischen Spruchs oder die
nten Entschädigung mehr zu fällen. Für ihn
den ordre public allein maßgeblich, ob das
ennung und Vollstreckung des ausländi-
für das Inland noch tragbar erscheint. Das
treffen, wenn das ausländische Erkenntnis
utschen Wertmaßstäben oder sogar zwingenden
normen (beispielsweise Art. 38 EGBGB
t vereinbar ist, sofern der Haftungsfall - bis
elegenes Schuldnervermögen - vollständig
Rechtsordnung eingebettet ist.
Falle hat das Urteil des Superior Court den
ruch eines US-amerikanischen Staatsange-
anderen zum Gegenstand. Der Anspruch
dung in unerlaubten Handlungen, die der

Beklagte an seinem zur Tatzeit allein in den USA gelegenen Wohnsitz gegenüber dem Kläger begangen hat. Ein Inlandsbezug besteht lediglich insoweit, als der Beklagte auch über die deutsche Staatsangehörigkeit verfügt und nach seiner strafrechtlichen Verurteilung sowie nach Rechtshängigkeit der Schadensersatzklage des Klägers seinen Aufenthalt in die Bundesrepublik Deutschland verlegte.

2. In jedem Falle einer Vollstreckung in inländisches Vermögen sind allerdings die Grundrechte zu wahren (vgl. § 328 Abs. 1 Nr. 4 ZPO und BVerfGE 52, 214, 219). Die Überprüfung, ob durch ein ausländisches Urteil, das nach deutschen Maßstäben weit überhöhte Schadensersatzbeträge zuerkennt, der materielle ordre public verletzt ist, muß sich am Grundsatz der Verhältnismäßigkeit ausrichten (oben A V 3 e aa). Die Grenze, bei deren Überschreiten demnach ein im Ausland gewährter Schadensersatzanspruch nicht mehr anerkannt werden kann, ist in jedem Einzelfalle gesondert zu bestimmen. Soweit in der Literatur für die Vollstreckbarerklärung US-amerikanischer Urteile aufgrund Produzentenhaftung gegen deutsche Firmen eine formelhafte Typisierung der Verhältnismäßigkeitsprüfung vorgeschlagen wird (Stiefel/Stürner aaO S. 840, 844; vgl. dagegen Martiny, Handbuch Rdn. 1046; Zekoll, Produkthaftpflichtrecht S. 40 und RIW 1990, 302, 305), kann sie jedenfalls für den hier zu entscheidenden Sachverhalt nicht gelten. Jene Fälle unterscheiden sich im allgemeinen schon durch ihren weitaus stärkeren Inlandsbezug (dazu oben 1) maßgeblich vom vorliegenden Streitfall.

Umfang und Gewicht des Inlandsbezuges prägen zugleich die für die Verhältnismäßigkeit maßgebenden Wertungen mit. Die deutsche Rechtsordnung nimmt in gewissen Grenzen auch abweichende fremde Wertmaßstäbe hin, die einen ausländischen Richterspruch bestimmt haben. Jedenfalls dann, wenn beide Parteien US-amerikanische Staatsbürger sind, der Tatort in den USA gelegen ist und zudem der Verurteilte zur Zeit der Tat und des Beginns der Rechtshängigkeit des amerikanischen Schadensersatzprozesses dauernden Wohnsitz in Amerika hatte, liegt sogar unter Berücksichtigung der gleichzeitig vorhandenen deutschen Staatsangehörigkeit des Verurteilten ein dermaßen

geringer Bezug zum Inland vor, daß die im Rahmen des § 328 Abs. 1 Nr. 4 ZPO vorzunehmende Verhältnismäßigkeitsprüfung die nach amerikanischem Recht geltenden Maßstäbe weitestgehend zu respektieren hat. Unter diesen Voraussetzungen überwiegt das Interesse des Opfers volle Wiedergutmachung für die erlittene Lebensbeeinträchtigung sowie Genugtuung nach den für seine Heimat maßgeblichen Anschauungen und Lebensumständen zu erlangen. Der Schädiger muß diese Maßstäbe gegen sich gelten lassen.

Das trifft um so mehr zu, wenn – wie im Streitfall – die zuerkannte Schadensersatzforderung die Sanktion für ein vorsätzliches, eine Straftat darstellendes Verhalten des Schädigers darstellt, dessen Konsequenzen nach US-amerikanischem Recht für ihn bei der Tatbegehung absehbar gewesen sein müssen. Gewichtige inländische allgemeine Interessen werden dann nicht berührt.

Anhaltspunkte dafür, daß der dem Kläger für seinen immateriellen Schaden zugesprochene Betrag sich nicht mehr im Rahmen dessen bewegt, was nach US-amerikanischem, insbesondere kalifornischem Recht, zur Abgeltung sogenannter »noneconomic damages« üblich ist, liegen nicht vor (vgl. hierzu The American Law Institute aaO S. 202 f., 220, 223; Stiefel/Stürner aaO S. 843 f.; Schubert aaO S. 39; Sabella aaO S. 1190 jeweils m.w.Nachw.).

3. Ob anderes gelten müßte, wenn die dem Kläger zuerkannten Schadensersatzbeträge zu der finanziellen Leistungskraft des Beklagten außer jedem Verhältnis stünden, kann offenbleiben. Dazu behauptet der Beklagte selbst nichts. Aus den Feststellungen zu seiner Vermögenssituation, die im Protokoll des Superior Court vom 23. April 1985 enthalten sind, ergeben sich dafür keine Anhaltspunkte.

.....

## C.

Nach alledem ist das Urteil des Berufungsgerichts im Ergebnis insoweit teilweise aufzuheben, als es dem Urteil des Superior Court die Vollstreckbarerklärung über einen Betrag von US-Dollar 275 325 hinaus versagt hat, § 564 Abs. 1 ZPO. Da

im Inland vor, daß die im Rahmen des § 328 O vorzunehmende Verhältnismäßigkeitsprüfung amerikanischem Recht geltenden Maßstäbe weit respektieren hat. Unter diesen Voraussetzungen ist das Interesse des Opfers volle Wiedergutmachung für ensbeeinträchtigung sowie Genugtuung nach nat maßgeblichen Anschauungen und Lebens- langen. Der Schädiger muß diese Maßstäbe lassen.

o mehr zu, wenn – wie im Streitfall – die Zur ersatzforderung die Sanktion für ein vorsätzlich t darstellendes Verhalten des Schädigers dar nsequenzen nach US-amerikanischem Recht atbegehung absehbar gewesen sein müssen ndische allgemeine Interessen werden dann

dafür, daß der dem Kläger für seinen immate ugesprochene Betrag sich nicht mehr im Rah egt, was nach US-amerikanischem, insbeson em Recht, zur Abgeltung sogenannter »non- es« üblich ist, liegen nicht vor (vgl. hierzu The stitute aaO S. 202 f., 220, 223; Stiefel/Stürner hubert aaO S. 39; Sabella aaO S. 1190 jeweils

gelten müßte, wenn die dem Kläger zuerkann- tzbeträge zu der finanziellen Leistungskraft ßer jedem Verhältnis stünden, kann offenbleit iptet der Beklagte selbst nichts. Aus den Fest ner Vermögenssituation, die im Protokoll der om 23. April 1985 enthalten sind, ergeben sich altspunkte.

**C.**

ist das Urteil des Berufungsgerichts im Ergeb- eise aufzuheben, als es dem Urteil des Superior streckbarerklärung über einen Betrag von 25 hinaus versagt hat, § 564 Abs. 1 ZPO. Da

keine weiteren tatsächlichen Feststellungen erforderlich sind, ist der Senat zu einer eigenen abschließenden Entscheidung des Rechtsstreits in der Lage, § 565 Abs. 3 Nr. 1 ZPO. Diese ergeht dahin, daß das Urteil des Landgerichts in dem Umfang wieder- hergestellt wird, in dem es das Urteil des Superior Court bis zum Betrag von US Dollar 350 260 für vollstreckbar erklärt hat.

## 34

a) Will der Pächter von Grünland die Milcherzeugung aufgeben und eine Milchrente beziehen, so muß er hierzu die Zustimmung des Verpächters einholen.

b) Beantragt der Pächter ohne Zustimmung des Verpäch- ters eine Milchrente, so kann dies eine fristlose Kündigung des Pachtverhältnisses rechtfertigen.

BGB §§ 590, 594 e, 554 a.
Senat für Landwirtschaftssachen. Urt. vom 5. Juni 1992
i. S. K. (Bekl.) w. K. (Kl.).
LwZR 11/91.

I. Amtsgericht Langen
II. Oberlandesgericht Celle

Mit schriftlich abgeschlossenem Zupachtvertrag vom 1. November 1985 verpachtete der Kläger Grünland an den Be- klagten. § 8 Abs. 1 des Vertrages bestimmt:

> »Will der Pächter das Pachtland oder Anlagen auf dem Pachtland wesentlich ändern (z.B. Umwandlung von Grünland in Ackerland oder umgekehrt, ....), und wirkt sich diese Änderung über die Dauer des Pachtvertrages hinaus aus, so bedarf es hierzu der vorherigen schriftli- chen Zustimmung des Verpächters.«

