

LEXSEE 2000 U.S. DIST. LEXIS 22899

In re BROADCAST.COM, INC., PRIVACY LITIGATION; This Document Relates To: All Actions

Master File NO. 2:00CV18-TJW

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

*2000 U.S. Dist. LEXIS 22899*

August 30, 2000, Decided
August 31, 2000, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Claim dismissed by *In re Broadcast.Com, Inc. Privacy Litig., 2001 U.S. Dist. LEXIS 26212 (E.D. Tex., Dec. 11, 2001)*

**COUNSEL:** [*1] For Jeffrey Schiller, on behalf of himself and all others similarly situated, Evan Stanley, on behalf of himself and all others similarly situated, Plaintiffs: Marc Robert Stanley, LEAD ATTORNEY, Stanley Mandel & Iola LLP, Dallas, TX; Allan M Mansfield, William J Doyle, II, Millberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA; Brian J Robbins, Law Offices of Steven E Cauley PA, Little Rock, AR; Carl R Roth, Michael Charles Smith, The Roth Law Firm, P.C., Marshall TX, US.

For Dennis Wayne Gregory, Jr, on behalf of himself and all others similarly situated, Consol Plaintiff: Carl R Roth, LEAD ATTORNEY, Michael Charles Smith, The Roth Law Firm, P.C., Marshall TX, US.

For Brenda Cotrell, as N/F for Philip Cotrell, a Minor; and on behalf of himself and all others similarly situated, Consol Plaintiff: Carl R Roth, Michael Charles Smith, The Roth Law Firm, P.C., Marshall TX, US; John G. Emerson, Emerson Poynter LLP, Houston, TX, U.S.A.

For Broadcast.Com Inc, Yahoo! Inc, Defendants: Otis W Caroll, Jr, LEAD ATTORNEY, James Patrick Kelly, Ireland Carroll & Kelley, Tylear, TX; Geoffrey Scott Harper, Michael Brett Johnson, Steven H Stodghill, Thomas M Melsheimer, Fish & Richardson - Dallas, Dallas [*2] TX; Gregory D Call, Thomas Laffey, Folger Levin & Khan LLP, San Francisco, CA.

For In re Broadcast.com Inc, Privacy Litigation Master File, Defendant: Thomas Laffey, LEAD ATTORNEY, Gregory D Call, Folger Levin & Khan LLP, San Francisco, CA; Michael Brett Johnson, Fish & Richardson - Dallas, Dallas TX.

For Heather Gillbanks, Plaintiff: Carl R Roth, LEAD ATTORNEY, Michael Charles Smith, The Roth Law Firm, P.C., Marshall TX, US.

**JUDGES:** T. JOHN WARD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** T. JOHN WARD

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before the court are the Defendants' Motions to Dismiss for Improper Venue. After considering the motions, responses, and applicable law, the court is of the opinion that the motions should be DENIED.

**1. Introduction.**

In this case, Jeffrey Schiller ("Schiller") and Evan Stanley ("Stanley"), putative class representatives, bring claims against broadcast.com, inc. ("broadcast.com") and Yahoo! Inc. ("Yahoo"). The crux of the case is that the accused used their Internet sites to obtain and disclose plaintiffs' personal information and usage trends. Schiller and Stanley claim that this conduct violated the plaintiffs' right to privacy. Merits aside, the defendants say that Schiller and Stanley [*3] agreed to sue elsewhere. This court disagrees and denies the motions to dismiss.

**2. Factual Background and Procedural Posture.**

Yahoo! operates an Internet Website which offers users a variety of products and services. Among them are address books, auctions, entertainment news, calendars, greeting cards, and e-mail services. Yahoo! users can elect either to register with Yahoo! or not to register. The registration process requires the user to submit certain personal information. According to Yahoo!, this process enables Yahoo! to personalize the services available to a particular registered user. Some of Yahoo!'s services are available to non-registered users, and others are not.

Broadcast.com is an aggregator and broadcaster of streaming media programming on the Internet. Broadcast.com has the ability to stream a wide variety of live and on demand audio and video programming to its users. On or about July 20, 1999, Yahoo! acquired broadcast.com. Broadcast.com maintains a separate Website, offering audio and video programming to users around the clock. Like Yahoo!, broadcast.com allows its users to register. Certain programming is available to registered users, while other programming [*4] is available to both registered and non-registered users.

In July, 1999, Yahoo! incorporated a Universal Terms of Service ("TOS") agreement into its Website. A "link" located at the bottom of Yahoo!'s home page is titled "Terms of Service." By pointing the mouse arrow at the link and clicking a button on the mouse, a user (registered or unregistered) is able to open a separate window which contains the entire TOS. The user is then able to scroll through the TOS and review all of its terms. A registered user, by contrast, submits certain personal data to Yahoo! and completes the registration process only by clicking on a button which submits the registration form to Yahoo!. Directly above the "submit" button is the phrase "[b]y submitting your registration information, you indicate that you agree to the terms of service."

Among other provisions in Yahoo!'s Universal TOS is a choice of law clause and a forum selection provision. Specifically, Yahoo!'s Universal TOS provides:

> The TOS and the relationship between you and Yahoo shall be governed by the laws of the State of California without regard to its conflict of law provisions. You and Yahoo agree to submit to the personal and exclusive [*5] jurisdiction of the courts located within the county of Santa Clara, California.

Prior to July, 1999, Yahoo! utilized several separate TOS agreements keyed to the various services available on the Yahoo! site. For instance, Yahoo!'s e-mail service, known as Yahoo! Mail, had a separate TOS and separate registration process. Separate TOS agreements also governed services like the Yahoo! calender service and the Yahoo! messenger service. The separate TOS agreements contained forum selection clauses similar to the one later incorporated into Yahoo!'s Universal TOS. Apparently, Yahoo! consolidated the separate TOS agreements into its Universal TOS in July, 1999. In addition to the link to the Universal TOS located at the bottom of the first page of its Website, Yahoo! posts links to its Universal TOS on other pages throughout the site.

Schiller began using the Yahoo! website in approximately 1995-1996. He registered with Yahoo! Mail on October 26, 1998 and indicated his acceptance of the Yahoo! Mail TOS by affirmatively assenting to them when he registered. He registered with Yahoo!'s main Website on or about the same day; however, his registration to Yahoo! 's main Website preceded the date [*6] that Yahoo! first began using its Universal TOS. For his part, Stanley started using the Yahoo! website in approximately 1992. On December 30, 1997, he registered with Yahoo! 's main Website. Like Schiller, Stanley's registration to Yahoo!'s main Website preceded Yahoo!'s initial use of its Universal TOS. On September 28, 1998, Stanley registered with Yahoo! Mail, affirmatively accepting the Yahoo! Mail TOS the same date. Although both registered to Yahoo!'s main Website prior to July, 1999, both Stanley and Schiller continued to use the Yahoo! Website after Yahoo! incorporated its Universal TOS.

Broadcast.com's Website contains a similar

arrangement. Like Yahoo!'s Universal TOS, broadcast.com's terms and conditions provide that exclusive venue for an action against broadcast.com will be in the courts of Dallas County, Texas. Like Yahoo!'s, broadcast.com's website provides a link to the terms and conditions on the first page of the Website. Additional links to the terms and conditions appear on other pages within broadcast.com's Website. According to Plaintiffs' First Amended Complaint, both Schiller and Stanley have utilized broadcast.com's Website for a number of years.

On February [*7] 1, 2000, Schiller and Stanley, as putative class representatives, sued Yahoo! and broadcast.com alleging, *inter alia,* that the defendants had obtained and disseminated personal information from the class of users in violation of various federal and state laws. In March, 2000, Schiller and Stanley filed their First Amended Complaint, continuing to press their claims against the defendants. Yahoo! and broadcast.com have moved to dismiss the action on the grounds of improper venue, relying on the forum selection provisions in the terms and conditions governing the use of their Internet Website.

### 3. Discussion.

Federal law governs the construction and enforceability of forum selection clauses. *Carnival Cruise Lines v. Shute, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)*; *International Software Sys. v. Amplicon, Inc., 77 F.3d, 112, 114-15 (5th Cir. 1996)*. Under federal law, a forum selection clause is *prima facie* valid and enforceable, unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)*. A federal court should enforce a forum selection clause unless the resisting party clearly shows that enforcement would be [*8] unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Id. at 1913.*

In this case, Schiller and Stanley contest the forum selection clauses by challenging whether they ever entered into any contract selecting a forum. Federal law sanctions forum selection clauses in form contracts if, and only if, the drafter reasonably communicates the terms of the clause. *See Carnival Cruise Lines, 111 S.Ct. at 1522*; *Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995)*(noting that "the legal effect of a forum selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff"). Although the reasonable communication standard derived from maritime law, courts have applied it in other contexts as well. *See O'Brien v. Okemo Mountain, Inc., 17 F. Supp. 2d 98, 103 (D. Conn. 1998)*. The parties to this case appear to assume that this standard applies to the issues raised by the motions to dismiss. The court agrees that it does and turns to the issue of whether the defendants reasonably communicated the clauses at issue in this case to the users of their respective Website. [1]

> 1 Some additional observations [*9] bear mention. First, neither Schiller nor Stanley manifested any affirmative acceptance to Yahoo!'s Universal Terms of Service or broadcast.com's terms and conditions by clicking on a window labeled "I accept" or "I agree." As noted, although Schiller and Stanley registered with Yahoo!'s main Website, their registration preceded Yahoo!'s requirement that the user affirmatively agree to Yahoo!'s Universal TOS. As such, the issue is whether Schiller's or Stanley's continued use of Yahoo!'s or broadcast.com's services, after the inclusion of the terms of service containing the forum selection provisions, is sufficient to manifest their assent to the respective terms, considering the manner in which those terms are communicated to the user. The record is also undisputed that, regardless of the manner in which the existence of the terms were communicated, neither Schiller nor Stanley had actual knowledge of the terms of service governing the use of either site.

The issue of reasonable notice is one of law. *Effron, 67 F.3d at 9*. The Circuits generally use a two-pronged test to assess whether a clause has been reasonably communicated to one against whom enforcement is sought. *Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922, 930-31 (5th Cir. 1997)*; [*10] *Carpenter v. Klosters Rederi A/S, 604 F.2d 11, 12-13 (5th Cir. 1979)*; *Miller v. Lykes Brothers Steamship Co., Inc., 467 F.2d 464 (5th Cir. 1974)*; *see also Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 8-9 (1st Cir. 1990)*; *Shankles v. Costa Armatori, 722 F.2d 861 (1st Cir. 1983)*. First, a court examines the facial clarity of the contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. Second, the court focuses on the circumstances of the plaintiff's

possession and familiarity with the contract. This second prong of the test requires an assessment of any extrinsic factors indicating the plaintiff's ability to become meaningfully informed of the contractual terms at stake. The determination of reasonable communication is made on a case by case basis.

Internet Websites bear some resemblance to passage tickets insofar as both attempt to employ terms and conditions governing their use. But they differ in important respects. Passage tickets are themselves contracts, representing the parties' agreement that the price paid grants passage at a certain time and place to a certain destination. The cruiseline often incorporates other terms. [*11] To use the ticket is to agree to the terms. The buyer can simply forgo the trip and, while potentially subjecting himself to a penalty, is in control of whether he or she accedes to the terms. At a minimum, the buyer has the ability to decide that the upside of passage sufficiently outweighs to the unlikely (and ordinarily unanticipated) risk of a need to sue the cruiseline in an inconvenient forum.

A visit to a Website is different. Websites such as Yahoo! provides services, be they search engines, calendars, conduits to online auction houses, e-mail hookups, or audio and video broadcasts. The primary purpose of the Website, unlike the passage ticket, is not to communicate terms of a contract (although many do) but rather to provide services that the user perceives to be beneficial. Given that a passage ticket is itself a contract, it is more likely that the terms thereon will be inspected by the purchaser. Based on this practical reality, the court judges more cautiously a claim of notice when it is urged with respect to terms of service governing use of a Website a displayed medium with functions above and beyond communicating the terms of a bargain than to a passage ticket, whose [*12] function is limited to memorializing the parties' agreement.

Website operators go to various lengths to regulate the use of their sites. They also undertake various methods to make users aware of the terms and restrictions which govern the use of the site. For instance, some operators, including the defendants in this case, post a link on the home page and elsewhere in the site to a "Terms of Use" page. A click on the mouse pointed at the link opens a second window which contains the terms governing use of the site. Other Website go further, requiring the user to register and point and click the mouse on a box titled "I agree," "I accept," or similar terms by which the user electronically signals his or her acceptance to the terms of service, be they displayed on the same or a separate page of the Website. Still others initiate the user's site visit by posting the terms and conditions of site usage on the first or "home" page of the site and requiring the user to accept the terms and conditions before entering the site.

At issue here is the first method. Specifically, the issue is whether posting a link entitled "Terms of Use" reasonably communicates to the user that his use of the site [*13] subjects him to important terms and conditions contained elsewhere in the site. Under the Fifth Circuit's holding in *Sam L. Majors Jewelers,* a court first examines the facial clarity of the contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. A review of cases dealing with cruise tickets and other passage contracts helps to resolve the issue. Most cases enforcing forum selection or liability limitation provisions in passage contracts involve tickets which, on their face, either (a) specifically notify the purchaser that use of the contract is subject to the terms and conditions set forth on the reverse side of the ticket or (b) utilize certain language such as "important Notice, Additional Terms on Reverse Side." *See, e.g., Effron, 67 F.3d at 9* (noting that ticket's face contained notice reading "IMPORTANT NOTICE READ BEFORE ACCEPTING"); *Carpenter, 604 F.2d at 12* (noting that ticket stated, in bold type "Issued subject to the terms and conditions printed on the cover of this contract ticket which form part thereof"); *Lousararian, 951 F.2d at 10* (observing that ticket notice was printed in white type on blue background "THIS [*14] IS YOUR TICKET CONTRACT. IT IS IMPORTANT THAT YOU READ ALL TERMS OF THIS CONTRACT"). Conversely, the court in *Silvestri v. Italia Societa Per Azioni Di Navigazione, 388 F.2d 11 (2d Cir. 1968)*, refused to enforce the terms contained in a ticket contract in which the notice was printed in inconspicuous small type that incorporated terms on the ticket jacket.

In this case, the link to "Terms of Service" is similar to the terms contained in the ticket contract that *Silvestri* refused to uphold. First, the language near the Website link to "Terms of Service" contains no notice to users that mere use of the site constitutes acceptance of the terms of service. Although language to that effect is contained in the Terms of Service itself, the point of the passage ticket decisions is that the face of the ticket must alert the

reasonable person that his use of the ticket subjects him to important terms contained elsewhere in the ticket contract. Moreover, the words "Terms of Service" although contained on the first page of the Website, are set forth at the bottom of the page, at a point lower than many of the site features appear. It is therefore likely that a user who simply logs on to the Website [*15] will never see the Terms of Service link and bypass it altogether. These facts are particularly relevant because a Website serves a multitude of functions other than simply communicating the terms of an agreement. The court holds that the first factor cuts against a conclusion that the terms of service are reasonably communicated to the Website user.

The second factor focuses on the circumstances of the plaintiff's possession and familiarity with the contract. In this case, it is undisputed Schiller and Stanley have both testified that the posted links to the defendants' terms of service agreements escaped their notice. There is no indication that Schiller's and Stanley's failure to notice the links to the terms of service resulted from an ignorance of Internet mechanics. Although both Schiller and Stanley testified that they would not have read the terms of service even had they noticed the links posted on the defendants' sites, the issue in this case is whether the links and terms of service were reasonably communicated to the users such that the users are presumed, as a matter of law, to have reviewed them. A user's presence on any particular page of a Website may only be momentary, [*16] and it cannot be said that a Webpage containing a link to the terms and conditions of use is within the user's "possession" for any meaningful amount of time. Instead, the user commonly moves immediately past the initial site pages to view whatever events drew his or her attention to the site in the first place. The extrinsic factors do not favor a finding of reasonable communication. Accordingly, the court holds that the defendants did not reasonably communicate the terms of the forum selection clauses to the plaintiffs.

This result is consistent with the few cases that address similar issues. To be sure, not many cases exist on the consequences of using a particular method of notification. And, the few that do provide only limited guidance into the issue. For instance, the court in *In re RealNetworks, Inc., Privacy Litigation, 2000 U.S. Dist. LEXIS 6584, 2000 WL 631341 (May 8, 2000)*, enforced an arbitration clause contained in RealNetworks' End User License agreement. At issue there was RealNetworks' license agreement including an arbitration clause, that users had to "accept" prior to downloading the software. Although the court's opinion does not reveal the precise steps required before a user "accepted" the [*17] terms of the license agreement, a fair reading of the opinion suggests that users needed to affirmatively signal their acceptance to the terms of the license agreement before the terms bound them.

Likewise, in *Hotmail Corp. v. Van$ Money Pie, 1998 U.S. Dist. Lexis 10729 (N.D. Cal. 1998)*, the court considered a request for injunctive relief by a Website operator against a subscriber to its services. The Website operator claimed, *inter alia,* that the subscriber had misused the site in violation of the terms governing the use of the site. In that case, as in *RealNetworks,* it appears that the users was required to affirmatively agree to the terms of service to become a subscriber. Based on the subscriber's acceptance of the terms, the court found that the operator had made a showing of substantial likelihood of success on the merits on its claim for breach of the terms of service agreement.

Finally, the court in *Ticketmaster Corp. v. Tickets.com, Inc., 2000 U.S. Dist. Lexis 4553 (C.D. Cal. 2000)* refused to enforce a contract when the Website declared that anyone "going beyond the home page" agreed to the terms and conditions on the Website's page. The court drew a distinction between [*18] those sites which required a user to affirmatively "click" on an acceptance window and those that did not. Although the terms at issue were not forum selection or choice of law clauses, the court's reading of the case reveals that it is grounded in fundamental principles of offer and acceptance of contract terms.

From the scant authority that exists, it appears that courts enforce agreements if there is a showing of some affirmative manifestation to a Website's terms of service. At the other end of the scale, it appears that mere usage of a site, without more, is not enough if the terms of service are not otherwise reasonably communicated to the user. Whether mere usage combined with actual knowledge of a Website's terms and conditions could, under appropriate circumstances, constitute acceptance of the terms of service is an open question-but it is a question for a different day as the record is clear that neither Schiller nor Stanley had actual knowledge of the terms of service.

The court additionally notes that this case presents a

compelling reason for requiring a Website operator to reasonably communicate the terms and conditions governing use of the site. The First Amended Complaint [*19] in this case does not challenge Yahoo!'s or broadcast.com's failure to provide the services they ordinarily provide. Nor do the plaintiffs complain that the service provided was inferior or interrupted such that Yahoo! or broadcast.com breached some promise related to the quality or quantity of service provided. Instead, the plaintiff is challenging the defendants' alleged assimilation, use, and disclosure of personal data to third parties which, although bearing a connection to the plaintiffs use of the defendants' sites, does not directly challenge the quality or nature of the services provided by the defendants. At a minimum, when a Website operator attempts to limit the available fora for resolving disputes arising only incidentally from the services it offers, it is imperative that it do so in a manner which is reasonably communicated to the user.

Yahoo! posits an alternative theory for dismissing this case for improper venue. It points out that both Schiller and Stanley registered to use Yahoo! Mail and, in doing so, affirmatively manifested their agreement to the Yahoo! Mail TOS agreement. Since the Yahoo! Mail TOS agreement contains a similar forum selection clause as the Universal [*20] TOS, Yahoo! urges the court to enforce the agreement against plaintiffs and dismiss this case.

Yahoo!'s argument, though not without some force, fails to persuade this court to dismiss this case. The Yahoo! Mail TOS agreement, by its terms, is limited to the e-mail service provided by Yahoo!. The First Amended Complaint alleges conduct related to Yahoo!'s use of personal information and usage trends resulting from plaintiffs' use of the defendants' sites in general. Although the Yahoo! Mail TOS agreement contains language suggesting that the "relationship between User and Yahoo!" is governed by the laws of the State of California without regard to its conflict of law provisions, these terms must be read *in pari materia* with the remainder of the Yahoo! Mail TOS, the purpose of which is to govern use of the Yahoo! Mail service. The terms of the TOS provide that the Yahoo! Mail Terms of Service "comprises the entire agreement between User and Yahoo! and supersedes any prior agreements *pertaining to the subject matter contained herein.*" (emphasis added). A fair reading of the Yahoo! Mail TOS agreement indicates that its provisions govern a registrant's use of the e-mail service provided [*21] by Yahoo!. *A fortiori,* the relationship referenced by the choice of law/choice of forum provision is limited to that existing between Yahoo! and the user arising out of the e-mail service. The claims presented in the First Amended Complaint are outside the scope of the forum selection provision contained in the Yahoo! Mail TOS agreement.

Finally, Yahoo! asserts that dismissal or transfer is appropriate based on the fact that absent class members registering after July, 1999 affirmatively agreed to the terms of service containing the forum selection clause. According to Yahoo!, this court should dismiss or transfer this case to guard against the possibility of splitting the class into two different venues. However, the court has certified no class; accordingly, the fact whether absent class members may be bound by a forum selection clause is irrelevant at this stage of the proceedings. Of course, Yahoo! is free to re-urge this argument if and when the court certifies any class.

**4. Conclusion.**

The motions to dismiss for improper venue are DENIED. Neither Schiller nor Stanley affirmatively accepted the terms of service containing the forum selection provisions. The links posted in the Websites [*22] do not reasonably communicate to the user that his or her use is subject to the important terms and conditions contained therein. Finally, the present claims fall outside the scope of the Yahoo! Mail separate TOS forum selection clause, and the court rejects Yahoo!'s alternative basis for dismissal.

So **ORDERED** and **SIGNED** this day 30th of August, 2000.

T. JOHN WARD

UNITED STATES DISTRICT JUDGE