Price v. Facebook, Inc.

Doc. 133 Att. 10



LEXSEE 2006 U.S. DIST. LEXIS 28214

**ADVANTA CORPORATION, an Indian Corporation, Plaintiff, v. DIALOGIC CORPORATION, a New Jersey Corporation, et al. Defendants.**

**Case No. C 05-2895 JF**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2006 U.S. Dist. LEXIS 28214*

**May 2, 2006, Decided
May 2, 2006, Filed**

**COUNSEL:** [*1] For Advanta Corporation, an Indian Corporation, Plaintiff: Christopher Ashworth, Silicon Valley Law Group, San Jose, CA.

For Dialogic Corporation, a New Jersey Corporation, Intel Semiconductor Limited, Defendant: David R. Burtt, Jonmi Nai On Koo, Perkins Coie LLP, San Francisco, CA.

**JUDGES:** JEREMY FOGEL, United States District Judge.

**OPINION BY:** JEREMY FOGEL

**OPINION**

ORDER [1] CONDITIONALLY GRANTING MOTION TO DISMISS ON GROUND OF *FORUM NON CONVENIENS* [re: docket no. 15]

> 1   This disposition is not designated for publication and may not be cited.

On July 15, 2005, Plaintiff Advanta Corporation ("Advanta"), an Indian corporation, filed the instant complaint against Defendants Dialogic Corporation ("Dialogic"), Intel Semiconductor Limited ("ISL") and Does 1-10. Plaintiff alleges two claims for relief: (1) breach of contract and (2) tortious interference with prospective economic advantage. Plaintiff alleges that it is entitled to money damages, exemplary damages and costs of suit. On November 7, 2005, Defendants filed [*2] the instant motion to dismiss on the ground of *forum non conveniens*. Plaintiff opposes the motion. Plaintiff filed a first amended complaint ("FAC") deleting Dialogic and adding Intel Corporation as a defendant on January 26, 2006, but subsequently withdrew the FAC on February 10, 2006. The Court has considered the parties' briefs as well as the oral argument presented at the hearing on April 28, 2006. For the reasons set forth below, the motion will be conditionally granted.

**I. BACKGROUND**

This action arises from a business relationship between Plaintiff and Dialogic from 1997 to 2002. Plaintiff alleges the following: Plaintiff is a corporation registered in the State of Maharashtra, India, with its principal place of business in Mumbai, India. Complaint ("Compl.") P 1. Dialogic, a New Jersey corporation with offices in this District, entered into an agreement with Plaintiff in April 1997. *Id.* PP 2, 6. Under this one-year agreement, Plaintiff served as the sole distributor of Dialogic's hardware and software products in India and fulfilled Dialogic's "express purpose of opening and exploiting the Indian market." *Id.* In June 1999, Dialogic was acquired by Intel Corporation [*3] ("Intel"). *Id.* P 9. Upon learning this information after filing the complaint, Plaintiff filed a FAC adding Intel and deleting Dialogic as a Defendant. Plaintiff subsequently withdrew the FAC, however; accordingly, the named defendants remain those named in the original complaint, Dialogic and ISL.

In 2001, Plaintiff had several meetings with Intel/Dialogic employees Anil Sibnis and Robert Heymann and ISL's attorney Jim Jeffs for the purpose of negotiating a new distributor agreement ("Agreement"). At the time the Agreement was executed, Plaintiff's president, Siddarth S. Mehta, allegedly intended to litigate any disputes in "either California's state courts or in California's federal courts." Declaration of Siddharth S. Mehta in Support of Plaintiff's Opposition to Motion to Dismiss (hereinafter "Mehta Decl.") PP 2-6. The Agreement entered on July 17, 2001 provides that "[t]his Agreement shall be governed by and construed according to the laws of the State of California and the parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the California courts." Agreement, P 24. On November 7, 2001, Dialogic assigned the Agreement to ISL, a Delaware corporation [*4] and a subsidiary of Intel. Compl. PP 3, 10. The Agreement later was terminated effective October 18, 2002 due to Defendants' alleged breach of contract and tortious interference with prospective economic advantage. *Id.*

From 1997 until 2002, Mr. Sibnis allegedly told Indian customers not to buy from Plaintiff because of its high price. *Id.* P 12(b). Mr. Sibnis also allegedly told Plaintiff's Indian customers that Plaintiff is selling fake, used, or pirated goods and that Dialogic/Intel would not provide technical support or warranties to Plaintiff's customers. *Id.* PP 12 (m)-(p).

Defendants represent that the following additional facts are true: Dialogic was Intel's subsidiary between 1999 and 2003. Declaration of Daivd R. Burtt, PP 2-4, Exs. 1-4. Dialogic designs, manufactures, and sells hardware and software for telecommunications systems, including systems used by "call centers, a major industry in India." Declaration of James H. Jeffs in Support of Defendants' Motion to Dismiss, (hereinafter "Jeffs Decl.") P 3. The headquarters of Dialogic's Asia-Pacific sales and marketing operations is located Singapore; Dialogic also has a sales office in Bangalore, India. *Id.*

[*5] Intel generally conducts its sales, marketing, and customer support operations through regional subsidiaries in the Asia-Pacific region. *Id.* P 6. Intel conducts marketing and customer support operation through its local marketing organizations ("LMOs"), such as Intel Technology India Pvt., Ltd. ("Intel (India)") and Intel Semiconductor, Ltd., ("Intel (Hong Kong)"). *Id.* Defendant ISL, as a subsidiary of Intel, conducts and transacts Intel's sales in the Asia-Pacific region. *Id.* ISL is a Delaware corporation and does not have any offices or employees in the United States. *Id.*

Under the distribution agreements in 1997 and 2001, Plaintiff was authorized to sell Dialogic products only in India. *Id.* P 8, Ex. A P 1, Ex. B P 1. Most of the dealings between Dialogic, ISL, Intel's LMOs and Plaintiff under the 2001 Agreement allegedly took place primarily in India. *Id.* P 12. Plaintiff allegedly had very few dealings with anyone working in the United States for Dialogic or Intel. *Id.*

Prior the execution of the Agreement in July 2001, Mr. Mehta suggested "that the contract be subject to the laws of either NJ or CA -- Intel may choose which it prefers -- and we should [*6] have a choice of suing Intel either in India or America (at our option) -- this is because it may not be practical of us to travel to America frequently." Reply Declaration of James H. Jeffs in Support of Defendants' Motion to Dismiss, Ex. 2, p. 5-6.

Between 1997 and March 2002, Anil Sibnis [2] was the Dialogic employee responsible for working with Advanta in Dialogic's office in Bangalore. *Id.* P 9. After Mr. Sibnis's departure, Patrick Mathias assumed primary responsibility for working with Advanta between March 2002 and 2004. *Id.*

> 2 Plaintiff spells the name "Sibnis" in its briefs and declarations; the Court presumes that Mr. "Sabnis" and Mr. "Sibnis" are the same person.

In April 2002, in accordance with the terms of the Agreement, ISL gave Plaintiff a ninety-day notice to terminate the Agreement, effective on July 22, 2002. Jeffs Decl. P 7.

## II. LEGAL STANDARD

"The doctrine of *forum non conveniens* permits an American court to decline to exercise jurisdiction over a case when a foreign tribunal [*7] can more appropriately conduct the litigation." *Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 945 (1st Cir. 1991)* (Breyer, C.J.), citing *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)*, and *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-08, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)*. "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck*

*v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In deciding whether to dismiss an action based on *forum non conveniens*, a court must take into account various considerations related to fairness and convenience. *See Piper Aircraft*, 454 U.S. at 250; *Gulf Oil*, 330 U.S. at 507-08; *Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1090 (9th Cir. 1999). The party moving for dismissal under this doctrine must demonstrate two things to overcome the great deference due to a plaintiff's choice of forum: (1) the existence of an adequate alternative forum and (2) that the balance of relevant private-and public-interest factors favors dismissal. [*8] *See id.; Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995).

### III. DISCUSSION

Defendants assert that Plaintiff is entitled to little or no deference to its forum selection because Plaintiff is a foreign corporation with no operations in the United States, the underlying lawsuit has no connection to California, and the *permissive* forum selection clause in the Agreement has no impact on normal forum *non conveniens* analysis. Defendants also assert that India is an adequate alternative forum because Defendants are amenable to service of process in India and Indian courts provide Plaintiff with an adequate remedy. Finally, Defendants argue that both the private interest and public interest factors weigh heavily in favor of dismissal.

Plaintiff contends that this Court is not required to dismiss its action because the forum selection clause is mandatory and thus subject to the *Bremen* doctrine. 3 Plaintiff also asserts that India is not an adequate forum on the ground that there will be excessive delays in the Indian judicial system.

> 3  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). In *Bremen*, the Court ruled that a "freely negotiated mandatory forum selection is enforceable unless the party challenging its enforcement can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching,' or that 'trial in the [chosen] forum will be gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" Plaintiff's Opposition to Motion to Dismiss, p. 2 (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2000)).

### [*9] A. The Forum Selection Clause

The threshold question is whether the forum selection clause in the Agreement is mandatory or permissive. The clause reads as follows: "[t]his Agreement shall be governed by and construed according to the laws of the State of California and the parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the California courts." Agreement, P 24. Despite the express use of the term "non-exclusive," Plaintiff argues that the clause mandates exclusive venue in California. Defendants argue that while the parties consented to personal jurisdiction in California, there is no agreement as to venue. A primary rule of contract interpretation is that '"[t]he common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it.'" *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (citing 4 S. Williston, *A Treatise on the Law of Contracts* § 618 (W. Jaeger 3d ed. 1961)). Here, the plain meaning of the language is that California law is applicable and that California courts have jurisdiction. [*10] By its own terms, however, such jurisdiction is not exclusive. "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). *See also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275 (9th Cir. 1984). 4 Accordingly, without explicit language indicating that the parties consented to exclusive jurisdiction or venue in the California courts, the forum selection clause in the Agreement is unambiguously permissive and the *Bremen* doctrine analysis does not apply.

> 4  The court held that the language of the clause clearly mandates exclusive jurisdiction: "any and all disputes arising out of or in connection with this Agreement shall be litigated only in the Superior Court for Los Angeles, California (and in no other)."

Because it reaches the conclusion that the forum selection clause is unambiguously permissive, [*11] the Court finds it unnecessary to discuss whether Mr. Mehta intended to make California the exclusive venue.

### B. India As An Adequate Alternative Forum

Plaintiff contends that India is an inadequate forum

because there are unreasonable delays in the administration of justice in India and the instant case is barred by the Indian statute of limitations. Defendants argue that the instant action could be litigated in the Bangalore District Court in a timely manner, that Indian courts are capable of applying California contract and tort law, and that Plaintiff's filing of the instant action is within the Indian statute of limitations.

Defendants bear the burden of showing that (1) they are amenable to service of process in the alternative forum and (2) the forum provides Plaintiff with some remedy for the wrong at issue. *Lueck, 236 F.3d at 1143* (quoting *Piper Aircraft, 454 U.S. at 254 n. 22*)). "The key determination is whether the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Creative Tech., Ltd., 61 F.3d at 699*. Here, the first element of the test is readily [*12] satisfied because Defendants Dialogic and ISL declare that they consent to jurisdiction in the Bangalore District Court in India and "agree to accept service of process for any subsequent action." Jeffs Decl. P 16.

Defendants provide extensive affidavits from former Chief Justice Kamal Narain Singh of the Indian Supreme Court, a practicing Bangalore attorney, and an attorney from Intel (Hong Kong) who is familiar with practice in Indian courts. Together, these affidavits show the following: (1) the backlog of cases in the Indian court system is overstated by Plaintiff because there are over 10,000 subordinate court judges, in addition to as many as 648 High Court judges, currently handling cases in India; (2) the Indian Code of Civil Procedure was amended in 1999 and 2002 to expedite the resolution of civil cases; (3) a Bangalore attorney provides a list of similar civil disputes which have been disposed of by the Bangalore District within three years of commencement, and his own experience suggests that civil and commercial suits could be concluded within three years of filing in Bangalore; (4) the Bangalore District Court has extensive experience in commercial and contract cases; [*13] (5) Under the Indian Evidence Act, Indian judges are permitted to appoint foreign law experts to assist in interpreting foreign laws; and (6) Indian courts routinely apply English and United States precedents to adjudicate disputes.

Plaintiff argues that Indian judicial system has endemic delays that makes it an inadequate forum. Relying on an affidavit of former judge S.K. Desai of the Bombay High Court and the 2001 India Parliament report, Plaintiff asserts the following: (1) Indian courts have a huge backlog and civil cases in Bangalore often take fifteen to twenty-five years to resolve; (2) the instant case is estimated to be resolved in fifteen to twenty years at the trial court level, plus an additional ten years for two stages of appeal; and (3) there are problems in implementing California law in India because of difficulty locating lawyers or judges experienced in California law. Plaintiff also cites *Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1228 (3rd Cir. 1995)*, holding that "wherever the line might be drawn separating tolerable delay from intolerable . . . delays of up to a quarter of a century fall on the intolerable side of that line. Delays [*14] of such egregious magnitude would render a remedy 'clearly inadequate under Piper Aircraft.'"

"A litigant asserting inadequacy or delay must make a powerful showing." *Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1179 (9th Cir. 2006)*. The Court finds that Plaintiff has failed to make a sufficient showing here. Mr. Desai's assertions about the excessive delays in the Indian court system are based upon personal experience with the Bombay High Court, not the Bangalore District Court. Defendants have submitted not only the opinion of a former Supreme Court Justice, but also a list of cases in the Bangalore courts that have been disposed of within three years. While Plaintiff cites *Bhatnagar* in support of its position, Defendants cite several other cases concluding that India is an adequate forum. [5] Finally, similarities between English-based Indian contract law and United States contract law, and the admission of foreign law experts' testimony under the Indian Evidence Act, indicate that Indian judges are capable of applying and interpreting California law.

    5   Defendants cite the following cases in their reply brief: *Neo Sack, Ltd. V. Vinmar Impex, Inc., 810 F. Supp. 829, 834 (S.D. Tex. 1993)* ("while [] parties might experience more delay in India, this Court cannot conclude that an Indian forum would not provide an adequate remedy"); *Chhawchharia v. Boeing Co., 657 F. Supp. 1157, 1160 (S.D.N.Y. 1987)* (despite the backlog, India found to be an adequate alterative forum); *In re Union Carbide Corp. Gas Plant Disaster, 634 F. Supp. 842, 852 (S.D.N.Y. 1986)*, *off'd as modified*, *809 F.2d 195 (2d Cir. 1987)*; *PLM Int'l., Inc. v.*

*Nath, 1998 U.S. Dist. LEXIS 12835, No. C 98-01912 SC, 1998 WL 514045 at *1 (N.D.Cal. Aug. 17, 1998).*

[*15] Plaintiff and Defendants disagree on the application of the Indian statute of limitations. Both parties agree that India's statute of limitations period for contract actions is three years and that an Indian court may toll the limitations period from the date of the United States filing and treat that filing date as if the action had been filed in India. Plaintiff asserts that the limitations period began running on July 18, 2001, the date of the signing of the Agreement. Defendants argue that the limitations period began running on the date of the alleged wrongful termination of the Agreement, July 18, 2002, less than three years before the filing of Plaintiff's complaint in this Court. Based on Section 22 of the 1963 Limitation Act of Indian law, "[i]n the case of a continuing breach of contract . . . a fresh period of limitation begins to run at every moment of the time during which breach . . . continues." Reply Affidavit of Singh, P 1.4. Accordingly, the Court concludes that the Indian statute of limitations began running on the date of alleged breach, July 18, 2001, and that the Indian statute of limitations does not bar the instant case.

[*16]

Once an adequate forum is shown to exist, the Court must consider whether the balance of private-and public interest factors supports dismissal. The private-interest factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) the relative ease of access to sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck, 236 F.3d at 1145*. "The district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each." *Id.*

"The site where the events in question took place and most of the evidence is located is usually the most efficient forum." *Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 302 (9th Cir. 1986).* Here, the conduct about which Plaintiff complains and the injury it allegedly suffered occurred in India, not in California. Plaintiff is an Indian corporation which has no connection to the United [*17] States Defendants Dialogic and ISL, although incorporated in the United States, conduct most of their business in India and the Asia Pacific region. All of the current and former employees of Plaintiff, the relevant Dialogic sales persons (Sibnis and Mathias), and many third-party customer witnesses who are believed to have information material to the claims asserted in the complaint reside in India. Most of parties' relevant files and records are in India or in the Asia-Pacific region.

Because India is not a signatory to the Hague Convention, the parties will not be able to compel discovery or testimony in the United States from unwilling witnesses in India, such as former employees and relevant customer witnesses. *See Neo Sack Ltd. v. Vinmar Impex, Inc., 810 F. Supp. 829, 836 (S.D. Tex. 1993).* Further, the cost of transportation of the willing witnesses from India to testify in California would be expensive and time-consuming. Delaware's Uniform Foreign Money-Judgments Recognition Act considers a foreign judgment enforceable in Delaware if it is final and conclusive. *10 Del. C. §§ 4802-4803*. Thus, a judgment rendered against ISL in [*18] India is deemed enforceable in Delaware, where ISL is incorporated. Accordingly, combination of these factors weigh in favor of India as a proper forum, not California.

In addition to private factors to support dismissal, the court must also consider public interest factors to determine dismissal for *forum non conveniens*. These factors include: (1) any local interest in the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck, 236 F.3d at 1147*.

California has only a weak interest in adjudicating a breach of contract dispute that arose in India between and Indian national and American corporations operating wholly in India. While California law applies, it appears that the Indian courts routinely apply English and United States law when relevant, and the Indian Evidence Act allows testimony of foreign law experts. It would be inappropriate to expend the resources of this Court to resolve a dispute that has such a tenuous connection to California. Virtually every event at issue in this matter occurred in India and virtually [*19] all witnesses in the case reside in India or in the Asia-Pacific region. The cost of transportation of even willing witnesses to California would be substantial. On balance, public interest factors favor India as a forum.

**D. Conditional Nature Of Order**

The Court is persuaded that granting Defendants' motion is appropriate for the reasons discussed above. However, the Court cannot be certain that it is correct in assuming that the Indian statute of limitations will not bar Plaintiffs claims and that Plaintiff will be able to litigate those claims in India without facing many years of delay. The Court's order therefore is conditional; if the assumptions upon which this order is based prove to be untrue, Plaintiff may return to this Court and request that the instant case be reopened. [6]

> 6   Obviously, with respect to the issue of delay, Plaintiff would have to show that it had been diligent in attempting to litigate in India before seeking to reopen the case here.

**IV. ORDER**

Plaintiff's motion [*20] to dismiss on the ground of *forum non conveniens* is CONDITIONALLY GRANTED as set forth above.

DATED: May 2, 2006

JEREMY FOGEL

United States District Judge