

LEXSEE 2008 U.S. DIST. LEXIS 105781

**FLEX-N-GATE CORPORATION, an Illinois corporation, Plaintiff, v. GERHARD WEGEN, a citizen of Germany, Defendant.**

**08 Civ. 2502 (LLS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 105781*

**December 29, 2008, Decided
December 29, 2008, Filed**

**COUNSEL: [*1]** For Flex-n-Gate Corporation, an Illinois corporation, Plaintiff: Kenneth J. King, Samuel Joseph Abate, Jr, LEAD ATTORNEYS, David D Murphy, Pepper Hamilton, LLP, New York, NY.

For Gerhard Wegen, a citizen of Germany, Defendant: Paul C Saunders, LEAD ATTORNEY, Cravath, Swaine & Moore LLP, New York, NY.

**JUDGES:** LOUIS L. STANTON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** LOUIS L. STANTON

**OPINION**

**Opinion and Order**

Plaintiff Flex-N-Gate Corporation ("FNG") is an Illinois corporation with its principal place of business in Urbana, Illinois. Compl. P 1. It brings this action on claims arising from defendant's alleged unauthorized disclosure of confidential information while chairman of a German arbitral tribunal that is presiding over a dispute between plaintiff and a German entity.

Defendant moves to dismiss the complaint for *forum non conveniens* and under *Fed. R. Civ. P. 12* for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. FNG cross-moves for leave to seek early discovery.

**I. BACKGROUND**

**A. THE GERMAN ARBITRATION**

On May 2, 2004, FNG entered into a Sale and Purchase Agreement (the "SPA") to acquire a German tier one automotive supplier ("Seller") . *Id*. PP 8, 9. The SPA provides for **[*2]** disputes to be referred to arbitration. *Id*. P 10.

A dispute under the SPA arose between FNG and Seller, *id*. P 11, and on October 21, 2004, Seller submitted a Statement of Claim against FNG to the German Institute of Arbitration, the Deutsche Institution Fur Schiedsgerichtsbarkeit ("DIS"), Wegen Decl. P 2. The arbitration is in Germany, but it is conducted in English. Compl. P 12. It is governed by the DIS Arbitration Rules, *id*. P 14, which enjoin confidentiality upon the participants.

Defendant Dr. Gerhard Wegen is Chairman of the Arbitral Tribunal. *Id*. P 13. Dr. Wegen is a German citizen and resident. Wegen Decl. P 1. He is a partner in a German law firm, Gleiss Lutz. Compl. P 2.

On September 15, 2006, the Arbitral Tribunal rendered a partial award, finding FNG liable to Seller for damages, Wegen Decl. P 4, but leaving the amount of damages to be determined.

## B. DR. WEGEN'S COMMUNICATIONS WITH DR. MANGOLD

In November 2007, FNG and Seller began to consider using mediation to resolve their dispute, and they discussed this with the Arbitral Tribunal. Weimann Decl. P 6. Dr. Wegen suggested that the Arbitral Tribunal would consider the names of potential mediators and identify a specific candidate. [*3] *Id.* P 7.

The Arbitral Tribunal concluded that Dr. Klaus Mangold [1] would be a suitable mediator. Wegen Decl. P 8. Dr. Mangold is a German citizen and resident. *Id.* Dr. Wegen thereafter sought to contact him about serving as mediator.

> 1   The complaint refers to Dr. Mangold as "Dr. M."

On December 3, 2007, Dr. Wegen attempted to call Dr. Mangold at his office in Stuttgart, Germany, but he was unavailable. *Id.* P 9. On December 10, 2007, Dr. Mangold's secretary gave Dr. Wegen his mobile phone number and stated that he could be reached on December 12 or 13, 2007, from 1:00 to 3:00 p.m. New York time. *Id.* P 10.

On December 12, 2007, Dr. Wegen called Dr. Mangold on his mobile phone. *Id.* P 12. At that time, both men were in New York separately and on matters unrelated to this action. *Id.* P 11. Dr. Wegen disclosed the identities of FNG and Seller as parties to the arbitration so that Dr. Mangold could check for conflicts. *Id.* P 13. The conversation was in German. *Id.* P 14.

On December 16, 2007, Dr. Wegen and Dr. Mangold had a second telephone conversation, when they were both back in Germany. Wegen Supp. Decl. P 1. Dr. Mangold told Dr. Wegen that he thought he had no conflicts in acting as mediator. [*4] Compl. P 24.

On December 17, 2007, Dr. Wegen sent a letter to FNG's and Seller's arbitration counsel in Germany and Timothy F. Graham, FNG's Vice President, Secretary, and General Counsel in Lakeshore, Ontario, Canada. *Id.* PP 6, 25; *see* Kremer Decl. Ex. 1. Graham is a Canadian citizen. Compl. P 6. Dr. Wegen stated that the Arbitral Tribunal had selected Dr. Mangold as a proposed mediator and that he had been contacted and had no conflicts. Kremer Decl. P 4.

On December 21, 2007, FNG submitted an objection to Dr. Mangold as mediator, Compl. P 27, and Dr. Wegen thereafter withdrew the proposal, *id.* P 28.

## C. FNG'S ALLEGATIONS

FNG alleges that Dr. Wegen's disclosure of information about the arbitration to Dr. Mangold was in breach of his obligations of confidentiality. Moreover, it alleges that, *id.* P 26,

> Well known to Wegen at the time he contacted Dr. M was the fact that Daimler AG was and is a major customer of Flex-N-Gate and its affiliates; that Dr. M was an advisor to the Chairman of Daimler AG; that Dr. M was Chairman of the supervisory board of the investment bank, Rothschild; that a Flex-N-Gate affiliate was actively engaged in a potential sale transaction wherein a Flex-N-Gate affiliate [*5] would acquire the assets or shares of a German tier one automotive supplier; and that Daimler AG's consent to Flex-N-Gate's affiliate's involvement in the transaction was key to the Flex-N-Gate affiliate's chances of entering into a prospectively advantageous economic arrangement. Wegen also either knew or should have known that his law firm, Gleiss Lutz, represented the German tier one automotive supplier for whose assets a Flex-N-Gate affiliate was bidding. Rothschild, on information and belief, represents or advises a bidder which was competing against Flex-N-Gate's affiliate for the acquisition of the assets of the German tier one automotive supplier.

FNG further alleges that, *id.* P 38,
> The bid procedure in which Flex-N-Gate was engaged, until Wegen's unauthorized and wrongful disclosure of the arbitration to Dr. M, has been put on hold and it is anticipated that Flex-N-Gate will not be permitted to bid for the German tier one automotive supplier because it cannot obtain the consent of Daimler AG to such a bid because Daimler AG now knows some of the details, from Dr. M, of the

arbitral proceedings.

FNG asserts causes of action for breach of contract, promissory estoppel, and tortious [*6] interference with a business relationship. It alleges that when Dr. Wegen agreed to become Chairman of the Arbitral Tribunal, he agreed to abide by the DIS Arbitration Rules, *id.* P 16, including Rule 43.1, which provides, *id.* P 15:

> The parties, the arbitrators and the persons at the DIS Secretariat involved in the administration of the arbitral proceedings shall maintain confidentiality towards all persons regarding the conduct of arbitral proceedings, and in particular regarding the parties involved, the witnesses, the experts and other evidentiary materials. Persons acting on behalf of any person involved in the arbitral proceedings shall be obligated to maintain confidentiality.

FNG asserts that his agreement to the Rules was a contract between Dr. Wegen, FNG, and Seller and that Dr. Wegen breached that contract by his disclosure to Dr. Mangold. *Id.* PP 16, 34-36. In the alternative, FNG asserts that Dr. Wegen promised to abide by the DIS Arbitration Rules and broke his promise. *Id.* PP 16, 43-47. FNG also asserts that Dr. Wegen's disclosure to Dr. Mangold constitutes tortious interference with its efforts to purchase the German tier one automotive supplier. *Id.* P 54.

## II. DISCUSSION

Dr. [*7] Wegen moves to dismiss the complaint on the grounds of *forum non conveniens*, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted due to arbitral immunity. 2

> 2 FNG argues that Wegen's motion, filed on October 8, 2008, should be rejected as untimely. Pl.'s Mem. 6 n.4. Since the argument seems ill-supported by the facts, and in any event it does not appear that FNG was prejudiced by the alleged delay, I do not consider it further.

Since the *forum non conveniens* issue is dispositive, it is addressed at the outset, *see Sinochem Int'l Co., Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)*, and it is unnecessary to reach the personal jurisdiction and arbitral immunity arguments.

### A. *FORUM NON CONVENIENS* DISMISSAL STANDARD

The *forum non conveniens* analysis "starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" *Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154 (2d Cir. 2005)*, quoting *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S. Ct. 252, 265-66, 70 L. Ed. 2d 419 (1981)*.

The exercise of discretion whether to dismiss a case on the ground of *forum non conveniens* involves a three-step analysis:

> At step one, a court determines the degree of [*8] deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Id. at 153*, citing *Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001)* (en banc).

### B. APPLICATION OF *FORUM NON CONVENIENS* PRINCIPLES

**1. Degree of Deference Due FNG's Forum Choice**

In the Second Circuit, "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri, 274 F.3d at 71*. Specifically, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id. at 72* (footnotes omitted).

Although FNG has not identified any connection of its own to this district, its United States citizenship and place of business weigh against dismissal. *See* [*9] *BFI Group Divino Corp. v. JSC Russian Aluminum, Nos.*

07-1804-cv(L), 07-0233-cv(CON), 2008 U.S. App. LEXIS 23220, 2008 WL 4810779, at *3 (2d Cir. Nov. 4, 2008). New York is more convenient than Germany for an Illinois company. On the other hand, FNG is a corporation doing business in Germany and actively seeking to acquire a German presence - by entering into the SPA to acquire Seller and bidding for the German tier one automotive supplier - and it should expect to litigate claims relating to those business ventures in Germany, as it is doing in the arbitration. In the Second Circuit, the deference due an American plaintiff "is diminished where 'plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts.'" *Aguas Lenders Recovery Group, LLC v. Suez S.A., No. 06 Civ. 7873(RLC), 2008 U.S. Dist. LEXIS 16283, 2008 WL 612669, at *6 (S.D.N.Y. Mar. 3, 2008)*, quoting *Guidi v. Inter-Cont'l Hotels Corp., 224 F.3d 142, 147 (2d Cir. 2000)*; see *BFI Group, 2008 U.S. App. LEXIS 23220, 2008 WL 4810779, at *3* ("In this case, the district court weighed BFI's U.S. citizenship against the fact that BFI had chosen to invest in Nigeria. These factors were appropriate to consider and therefore the district court did not abuse its discretion in determining [*10] that BFI's choice of forum was not entitled to significant deference.").

"A plaintiff's choice of forum is also 'given reduced emphasis where . . . the operative facts upon which the litigation is brought bear little material connection to the chosen forum.'" *LaSala v. UBS, AG, 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007)* (alteration in original), quoting *Nieves v. Am. Airlines, 700 F. Supp. 769, 772 (S.D.N.Y. 1988)*; see *Kirch v. Liberty Media Corp., No. 04 Civ. 667 (NRB), 2006 U.S. Dist. LEXIS 82175, 2006 WL 3247363, at *4 (S.D.N.Y. Nov. 8, 2006)* ("plaintiffs' choice of this forum is not to be afforded great deference, in light of the inherently German nature of this dispute"). The disclosure was made over a telephone by one German citizen and resident to another German citizen and resident, and it occurred here only by the coincidence that Dr. Wegen and Dr. Mangold were both visiting New York separately on matters having nothing to do with this case. *See Transunion Corp. v. Pepsico, Inc., 640 F. Supp. 1211, 1216 (S.D.N.Y. 1986)* (New York not convenient where "only connection this litigation has with New York of any significance is that three PepsiCo employees are alleged to have made fraudulent misrepresentations [*11] during the negotiations in New York" and "this connection was fortuitous" because "it was purely coincidental that he had planned a trip to New York for the same time period Meils of PepsiCo planned to be in New York"), *aff'd, 811 F.2d 127 (2d Cir. 1987)*.

According to the claim, the conversation took place in New York between two men who were there simultaneously by accident of each of their unrelated business. They were both citizens and residents of Germany. They spoke in German. The subject of the conversation was whether one of them, Dr. Mangold, could serve in Germany as mediator in connection with an arbitration pending before the German Institute of Arbitration, holding hearings and deliberations in Frankfurt/Main, Munich, Dusseldorf, and Stuttgart. The claim is that during the conversation Dr. Wegen violated the confidentiality rule of the German Institute of Arbitration by revealing the identities of the parties to the arbitration. One of the issues is whether that information was already public in Germany. The disclosure involved and affected business relationships and transactions in Germany and, as far as those consequences are concerned, it makes no difference at all where [*12] the conversation took place.

## 2. Availability of an Adequate Alternative Forum

Dr. Wegen is readily subject to service of process in Germany, and there is no question of the jurisdiction of German courts. Apparently New York law (as the place of the tort) would be applied to tort claims, and no difficulty is presented with respect to the application of German law to the breach of contract claim. (The "breach of promise" claim might not be recognized.) It cannot be said that litigation in Germany would leave FNG without a remedy. *See Fitzgerald v. Texaco, Inc., 521 F.2d 448, 453 (2d Cir. 1975)* ("A district court has discretion to dismiss an action under the doctrine of forum non conveniens, however, even though the law applicable in the alternative forum may be less favorable to plaintiff's chance of recovery."); *LaSala, 510 F. Supp. 2d at 223* ("The mere fact that Switzerland's tort law is not written to provide precisely the same causes of action as ours does not render its forum inadequate.").

Nor do procedural differences, including less liberal pretrial discovery rules, render Germany an inadequate forum. It is well-established that "'some inconvenience or the unavailability of beneficial [*13] litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'" *Blanco v. Banco Indus. De Venez., S.A., 997 F.2d 974, 982 (2d Cir. 1993)*, quoting *Borden, Inc. v. Meiji Milk*

*Prods. Co., Ltd., 919 F.2d 822, 829 (2d Cir. 1990)*; *see Potomac Capital Inv. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V., No. 97 Civ. 8141(AJP)(RLC), 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998)* ("were a forum considered inadequate merely because it did not provide for federal style discovery, few forums could be considered 'adequate' - and that is not the law"). Furthermore, numerous courts in this district have found Germany to be adequate despite its differences in civil procedure. *See, e.g., BlackRock, Inc. v. Schroders PLC, No. 07 Civ. 3183(PKL), 2007 U.S. Dist. LEXIS 39279, 2007 WL 1573933, at *7 (S.D.N.Y. May 30, 2007)*; *Kirch, 2006 U.S. Dist. LEXIS 82175, 2006 WL 3247363, at *6*; *Fagan v. Deutsche Bundesbank, 438 F. Supp. 2d 376, 383 (S.D.N.Y. 2006)*; *NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale, No. 96 Civ. 9321(LMM), 1999 U.S. Dist. LEXIS 817, 1999 WL 39539, at *2 (S.D.N.Y. Jan. 28, 1999)*.

Germany provides an adequate alternative forum.

### 3. Balancing of the *Gilbert* Factors

### i. Private interest factors

Many of [*14] the relevant documents are in German and would need to be translated for a trial in this forum. *See Acosta v. JPMorgan Chase & Co., 219 Fed. App'x 83, 87 (2d Cir. 2007)* (inconvenience of "translating documents from Spanish to English weighed in favor of dismissal") . Most of the key non-party witnesses are also in Germany. Defendant lists: Dr. Mangold, Seller, the two co-arbitrators, Daimler AG Chairperson Dieter Zetsche, members and associates of Gleiss Lutz, and employees and board members of Rothschild. No party has identified witnesses in this district. The only witnesses FNG has identified outside of Germany are "witnesses from FNG," without specifying any particular individuals with relevant testimony or their location. The location of witnesses weighs heavily in favor of dismissal.

### ii. Public interest factors

Germany has some interest in this case because it implicates the scope of authority of an arbitrator in the DIS (as well as the scope of his immunity) and interpretation of the DIS Arbitration Rules. *See* Compl. 1 ("Flex-N-Gate Corporation asserts claims against Defendant Gerhard Wegen arising out of Wegen's misconduct as the chairman of an arbitral tribunal presiding over [*15] DIS arbitral proceedings in Germany."); *id.* PP 16, 34-36, 43-47, 54; *see also Bybee v. Oper Der Standt Bonn, 899 F. Supp. 1217, 1224 (S.D.N.Y. 1995)* (strong German interest where case "involves an allegation against a significant cultural institution in which Germany has a substantial interest," the Bonn Opera Company). The disclosure allegedly affected the bidding process for the German tier one automotive supplier, *see* Compl. PP 26, 37-38, 51-54, in which Germany also has an interest. *See BFI Group Divino Corp. v. JSC Russian Aluminum, 481 F. Supp. 2d 274, 285 (S.D.N.Y. 2007)* (local interest favored dismissal of claims relating to plaintiff's bid for Nigerian company where "bidding process occurred in Nigeria" and "property that was the subject of the bidding is located wholly within Nigeria"), *relief from judgment denied by 247 F.R.D. 427 (S.D.N.Y. 2007)*, *aff'd, Nos. 07-1804-cv(L), 07-0233-cv(CON), 2008 U.S. App. LEXIS 23220, 2008 WL 4810779 (2d Cir. Nov. 4, 2008)*.

New York has no particular interest in whether an indiscreet conversation between two Germans violated a German rule of confidentiality. *See Kirch, 2006 U.S. Dist. LEXIS 82175, 2006 WL 3247363, at *8* (finding that "New York has no unique interest" in defamation action even though [*16] statements were made in New York because "the interview occurred in New York because Dr. Breuer was coincidentally in town"); *NCA, 1999 U.S. Dist. LEXIS 817, 1999 WL 39539, at *3* ("The fact that a few meetings took place in the United States does not make the dispute one local to New York or the United States.").

Thus, Germany's local interest far exceeds that of the United States, and, "With small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case." *Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 76 (2d Cir. 2003)*.

### C. ADDITIONAL DISCOVERY

The additional discovery sought is immaterial to the grounds on which the motion is decided.

### III. CONCLUSION

Dr. Wegen's motion to dismiss (Docket No. 8) is granted on the ground of *forum non conveniens*, and FNG's cross-motion for early discovery (Docket No. 19) is denied.

The Clerk will enter judgment dismissing the complaint without prejudice, with costs and disbursements to defendant according to law.

    So ordered.

    DATED: New York, New York

December 29, 2008

/s/ Louis L. Stanton

LOUIS L. STANTON

U.S.D.J.