

heymann

Heymann & Partner
Rechtsanwälte

Taunusanlage 1
60329 Frankfurt am Main

T: +49·69·768 063 · 0
F: +49·69·768 063 · 15
E: info@heylaw.de

www.heylaw.de

ⓗ Heymann & Partner Rechtsanwälte ı Taunusanlage 1 ı 60329 Frankfurt am Main

Landgericht Köln
Luxemburger Straße 101
50922 Köln

Unser Zeichen: 0249.002 KS/CMW
(bitte bei Antwort angeben)

13. März 2009

In dem Rechtsstreit

**Facebook Inc. ./. StudiVZ Ltd.**

<u>**Az.: 33 O 374/08**</u>

teilen wir mit, dass wir im Termin zur mündlichen Verhandlung am 28. April 2009 folgenden weiteren Klageantrag stellen werden:

6.

a. **Es wird – durch einen vom Gericht bestellten Sachverständigen – die Besichtigung angeordnet**
   aa. **des Source Codes der von der Beklagten für ihre Internet-seiten www.studivz.de/.net, www.schuelervz.net sowie www.meinvz.net entwickelten Software in allen Versions-nummern, insbesondere, aber nicht ausschließlich, der Programmfunktionalitäten „about.php", „announce.php", „contact.php", „login.php", „help.php", „jobs.php", „poli-cy.php", „register.php", „reset.php", „terms.php", „po-ke.php", „groups.php", „wall.php", „myfb.css" sowie „studivz.js",**

Dr. Friedrich Klinkert

Thomas Heymann

Adi Seffer

Dr. Katharina Scheja

Prof. Dr. Jens Ekkenga

Dr. Lars Lensdorf

Dr. Sabine Pittrof
LL.B. (Univ. N.S.W.)

Titus Walek

Dr. Andreas Müller-Driver
LL.M. (Georgetown),
Attorney-at-Law (N.Y.)

Dr. Henning Bloß
LL.M. (London)

Piet Bubenzer

Walter Born
Fachanwalt für Arbeitsrecht

Nora Keßler

Eva Prinz

Dirk Hochapfel

Dr. Peter Gumnior

Price v. Facebook, Inc.

Doc. 134

Dockets.Justia.com

bb. sowie des Source Codes der Beklagten in den Versionen wie sie nach
den Zeitpunkten gemäß folgenden Tabelle von der Beklagten einge-
setzt wurden, insbesondere aber nicht ausschließlich, in Bezug auf die
dort genannten Funktionen:

| Funktion | StudiVZ seit |
|---|---|
| Anlegen und Gestalten einer Profilseite mit Foto des Nutzers („*Meine Seite*") | November 2005 |
| Suche nach Bekannten und Freunden („*Freundesuche*") | November 2005 |
| Hinzufügen von Personen auf eine Freundesliste („*Meine Freunde*") | November 2005 |
| Grüßen oder Anstupsen anderer Nutzer („*Gruscheln*") | November 2005 |
| Versenden von persönlichen Nachrichten an andere Nutzer („*Nachrichtendienst*") | November 2005 |
| Gründung oder Beitritt zu Gruppen, in denen über bestimmte Themenbereiche diskutiert werden kann („*Gruppen*") | November 2005 |
| Pinnwand auf der Seite des Nutzers, auf der andere Nutzer Kurznachrichten hinterlassen können („*Pinnwand*") | November 2005 |
| Einstellen von Fotos („*Meine Fotos*") | November 2005 |
| Markieren von Personen auf Fotos („*Fotos verlinken*") | September 2006 |
| Fenster, in dem der Nutzer seinen aktuellen Status für andere sichtbar angeben kann („*Ich bin gerade*") | Juni 2007 |
| Chatten mit Personen von der Freundesliste (Instant Messenger) („*Plauderkasten*") | Oktober 2008 |

| Möglichkeit, Freunde in Listen zu sortieren („*Freundesliste*") | Februar 2009 |
|---|---|
| „ahead-typing"-Dialoge | Februar 2009 |
| „Remember me"-Funktion („*Eingeloggt bleiben*") | März 2009 |

cc. unmittelbar mit dem Source Code in Zusammenhang stehender technischer Dokumentation, wie Ausdrucke des Source Codes, Ablaufpläne, Strukturübersichten, Grob- und Feinkonzepten, Mechanismen zur Verbindung von Programmmodulen, bestehende Datenstrukturen, Handbücher und technischer Beschreibungen.

7. Der Sachverständige wird beauftragt, die bei der Beklagten programmierte und/oder eingesetzte Software wie sie sich aus Ziffer 6. a. ergibt, insbesondere, aber nicht ausschließlich die Skripte „about.php", „announce.php", „contact.php", „login.php", „help.php", „jobs.php", „policy.php", „register.php", „reset.php", „terms.php", „poke.php", „groups.php", „wall.php", „myfb.css" sowie „studivz.js" – insbesondere aus dem Zeitraum Ende 2005/Anfang 2006, aber auch spätere Versionen und Bearbeitungen für die Seiten StudiVZ, SchülerVZ und MeinVZ – und hiermit in Zusammenhang stehende Unterlagen darauf hin zu untersuchen, ob diese unter Einsatz des in Anlage A 6/K 22 übergebenen Source Codes der Klägerin oder Teilen hiervon oder Mitteln der Klägerin wie in Ziffer 6. a. cc. beschrieben erstellt worden sind.

8. Es werden darüber hinaus folgende weitere Anordnungen getroffen:

a. Die Beklagte hat dem gerichtlich bestellten Sachverständigen Zugang zu ihren Geschäftsräumen einschließlich Nebenräumen – insbesondere dem Rechenzentrum – zu gewähren und ihm den Zugriff auf die Source Code Archivierungsdateien/repositories (z.B. Subversion System, CVS System sowie Archivierungsdateien davon) gegebenenfalls über Datenfernübertragung (Remote-Zugriff) zu verschaffen.

b. Die Beklagte hat jeweils unverzüglich mit Eintreffen des Sachverständigen sämtliche Mitarbeiter anzuweisen, jedwede Tätigkeit an den Computeranlagen der Firma einzustellen und keinerlei Veränderungen für die Dauer der Besichtigung durch den Sachverständigen vorzunehmen.



c. Die Beklagte hat alle vom Sachverständigen vor Ort zur Durchführung der Begutachtung gemäß 6. a. für erforderlich gehaltenen Maßnahmen zu dulden, insbesondere, dass der Sachverständige die Software und/oder Unterlagen der in 6. a. bezeichneten Art speichert – insbesondere einen kompletten Abzug der php- und Datenbankstruktur sowohl für den Zeitraum Ende 2005/Anfang 2006, als auch spätere und insbesondere die aktuellen Versionen von StudiVZ und der mit dieser Software weitgehend identischen Software der Sozialen Netzwerke MeinVZ und SchülerVZ erstellt – auf Datenträger vervielfältigt, entschlüsselt, im Ablauf in Augenschein nimmt, fotografiert, im laufenden Betrieb untersucht, Bildschirmfotos (Screenshots) anfertigt, Ausdrucke anfertigt, speichert sowie sonst alle Handlungen vornimmt, die der Sachverständige zur Beantwortung der Beweisfrage für erforderlich hält, insbesondere diese angefertigten Kopien, Bildschirmfotos, gespeicherte Daten und auf sonstige Weise gesicherten Daten mitnimmt, um diese auch in den eigenen Geschäftsräumen untersuchen zu können.

d. Die Beklagte weist ihren Rechenzentrums- und/oder Entwicklungsleiter an, den Sachverständigen bei der angeordneten Besichtigung zu unterstützen und alle hierzu erforderlichen Unterlagen und/oder Zugriffsrechte auf die EDV und/oder technische Unterlagen einzuräumen und/oder bereitzustellen, insbesondere:

aa. Bezeichnung und Bereitstellung aller bei der Beklagten und/oder ihren Angestellten und freien Mitarbeitern befindlichen, ganz oder teilweise für die Beklagte eingesetzten Computer und/oder Entwicklungsumgebungen und/oder Source Code Archivierungssysteme/repositories und/oder der eingesetzten technischen Dokumentation, wie Ausdrucke des Quell- und/oder Objekt-Codes, Ablaufpläne, Strukturübersichten, Handbücher, technischer Beschreibungen,

bb. Mitteilung etwaiger Benutzer- und Administratorkennungen und Passwörter und, auf Verlangen,

cc. Gewährung und/oder Verschaffung des Zugriffs auf die unter vorstehend aa. bezeichneten Systeme,

dd. Bereitstellung und/oder Verschaffung des Besitzes an den vorstehend unter aa. bezeichneten Geräte und/oder Systemen und/oder Verviel-

fältigungsstücken sämtlicher bei der Beklagten eingesetzten und/oder bearbeiteten Software und/oder Unterlagen der in 6. a. bb. bezeichneten Art,

ee. Bereitstellung und/oder Verschaffung des Zugriffs mittels Datenfernübertragung (Remote-Zugriff) auf gegebenenfalls an anderer Stelle befindliche Entwicklungsumgebungen und/oder gespeicherte Entwicklungsstände im Quell- und Objectcode der unter 6. a. bezeichneten Software und Dokumentation.

e. Neben dem gerichtlich bestellten Sachverständigen hat die Beklagte jeweils einem anwaltlichen Vertreter der Klägerin sowie den von der Klägerin beauftragten und zur Verschwiegenheit verpflichteten öffentlich bestellten und vereidigten EDV-Sachverständigen Dipl.-Inf. Sabine Schreiber-Ehle und/oder Dr. Siegfried Streitz für die Klägerin Zugang zu den Geschäftsräumen der Beklagten zu gewähren und die Anwesenheit während der Begutachtung zu gestatten.

f. Der Beklagten wird – mit sofortiger Wirkung und für die Dauer der Begutachtung – untersagt, eigenmächtig Veränderungen an dem Quell- und Objekt-Code der Software vorzunehmen oder vornehmen zu lassen.

9. Es werden darüber hinaus folgende Anordnungen zum Schutz vertraulicher Geschäfts- und Betriebsgeheimnisse getroffen:

a. Es wird angeordnet, dass die Anlage A 6/K 22 weder der Beklagten noch ihren Vertretern oder nicht gerichtlich bestellten Sachverständigen zugänglich gemacht werden darf.

b. Es wird angeordnet, dass die Anlage K 23 sowie die Anlage K 23a nur dem Prozessvertreter der Beklagten sowie – ggf. einem von der Beklagten bestellten, ihr gegenüber zur Vertraulichkeit verpflichteten Sachverständigen – nicht aber der Beklagtenpartei selbst bis zum Abschluss der sachverständigen Untersuchung nicht zugänglich gemacht werden dürfen.

c. Die Prozessvertreter der Beklagten sowie ein ggf. von der Beklagten eingesetzter Sachverständiger werden zur strikten Verschwiegenheit auch gegenüber der Beklagtenpartei über den Inhalt der Erkenntnisse des klägerischen Privatgutachtens in Anlage K 23 und Anlage K 23a verpflichtet.



Inhaltsübersicht

| | Randziffer |
|---|---|
| **Einleitung** | 1 - 2 |
| **A. Zum Tatsächlichen** | 3 - 45 |
| **I. Anhaltspunkte für widerrechtliche Nutzung des Source Code der Klägerin** | 11 - 43 |
| 1. Das Privatgutachten des EDV-Sachverständigenbüros Dr. Streitz | 13 - 24 |
| 1.1 Neue Übernahmen im Jahr 2009 | 16 - 23 |
| 1.2 Eigene Wertung des Privatgutachtens des EDV-Sachverständigen Schreiber-Ehle | 24 |
| 2. Das Privatgutachten des EDV-Sachverständigen Schrader | 25 - 29 |
| 2.1 Inhalt des Gutachtens | 26 - 27 |
| 2.2 Eigene Wertung | 28 - 29 |
| 3. Bestätigung durch die Internet-Community | 30 - 33 |
| 4. Zusammenfassung der Gutachterergebnisse | 34 - 36 |
| 5. Weitere Indizien für die Übernahme von Source Code | 37 - 43 |
| **II. Vorlage des Source Codes der Klägerin** | 44 - 45 |
| **B. Zum Rechtlichen** | 46 - 69 |
| **I. Zulässigkeit der Klageerweiterung** | 46 - 47 |
| **II. Begründetheit** | 48 - 57 |
| **III. Berechtigtes Interesse** | 58 |
| **IV. Geheimhaltungsinteressen der Beklagten** | 59 - 63 |
| **V. Vertraulichkeit für das Privatgutachten des EDV-Sachverständigenbüros Dr. Streitz** | 64 - 68 |

**Begründung:**

1      Die Klägerin begehrt mit dem zusätzlichen neuen Klageantrag als Rechteinhaberin des Source Codes des Sozialen Netzwerks www.facebook.com eine Besichtigung des Source Codes der Beklagten.

2      Es besteht eine hohe Wahrscheinlichkeit, dass die Beklagte nicht nur in dreister Weise das Geschäftsmodell und das äußere Erscheinungsbild des von der Klägerin entwickelten Sozialen Netzwerks kopiert hat, sondern dass die Beklagte bei der Erstellung und Programmierung ihres Sozialen Netzwerks www.studivz.de auf den Source Code der Klägerin zurückgegriffen hat und dies für die Entwicklung neuer Funktionen auch heute noch tut. Dies ergibt sich insbesondere aus:

         ➤ den mit gesondertem Schriftsatz zu übermittelnden Erkenntnissen der öffentlich bestellten und vereidigten EDV-Sachverständigen Diplom-Informatikerin Sabine Schreiber-Ehle des EDV-Sachverständigenbüros Streitz;

         ➤ der vorliegenden Identität der sog. „Stylesheets" (programmatische Lay-Out Vorgaben), die der ö.b.u.v. EDV-Sachverständige Diplom-Programmierer Bernward Schrader festgestellt hat;

         ➤ neuen, kürzlich entdeckten kopierten Features für die erneut der Verdacht der möglichen Übernahme von Source Code besteht.

Im Einzelnen:

## A. Zum Tatsächlichen

3      Durch die von den ö.b.u.v. EDV-Sachverständigen Diplom-Programmierer Bernward Schrader und dem Sachverständigenbüro Dr. Streitz (dort Diplom-Informatikerin Sabine Schreiber-Ehle) durchgeführten Untersuchungen kann mit hoher Wahrscheinlichkeit davon ausgegan-

gen werden, dass die Beklagte den Source Code (oder mindestens erhebliche Teile davon) der Klägerin übernommen hat. Aufgrund der auffälligen Übereinstimmungen zwischen den Webseiten der Klägerin und der Beklagten in optischer und funktioneller Hinsicht hat die Klägerin bereits am 19.11.2008 Klage erhoben. So hat die Beklagte die äußere Gestaltung der Webseite der Klägerin in beispiellos ungenierter Weise übernommen und sich in keiner Weise Mühe gegeben, das Kopieren zu verschleiern. Dies illustriert eindrucksvoll die bereits in der Klageschrift und in Anlagen K 3 und K 6 vorgenommene Gegenüberstellung der Webseite der Klägerin mit der Webseite der Beklagten.

4     Damit nicht genug, hat die Beklagte auch die Funktionen der Webseite der Klägerin kopiert. Die Wall/Pinnwand-Funktion, die Funktionen der Startseite und etliche weitere wurden bereits beschrieben – zur Vermeidung von Wiederholungen wird hierzu auf Randziffern 25 - 26 und 62 - 66 der Klageschrift verwiesen.

5     Bisher ist die Klägerin in diesem Klageverfahren davon ausgegangen, dass die Beklagte diese Funktionen der Klägerin nur nachahmen würde, diese also selbst unter Anlehnung an das Vorbild der Klägerin in womöglich wettbewerbswidriger Art und Weise nachprogrammiert hat. Im Jahr 2008 ergaben sich bei der Klägerin interne Verdachtsmomente für die illegale Verwendung und Bearbeitung ihres Source Code durch die Beklagte. Hieraufhin beauftragte die Klägerin Sachverständige zur Abklärung ihrer Anhaltspunkte. In Deutschland wurden neben dem ö.b.u.v. EDV-Sachverständigen Diplom-Programmierer Bernward Schrader auch das EDV-Sachverständigenbüro Dr. Streitz beauftragt, dessen Expertise auf dem Gebiet der Untersuchung von Computerprogrammen bundesweit bekannt ist. Diese wurden mit der Untersuchung der öffentlich verfügbaren Webseiten der Beklagten im Hinblick auf Übereinstimmungen der beiden Webseiten beauftragt. Hierdurch konnten seitens der Sachverständigen Erkenntnisse gewonnen werden, die aus Vertraulichkeitsgründen in **Anlage K 23a** nur für das Gericht, den zu bestimmenden Sachverständigen und die – insoweit ihren Mandanten gegenüber zur Verschwiegenheit zu verpflichtenden – Prozessvertreter der Beklagten übermittelt werden, da das Gutachten ansonsten der Beklagten als „Blaupause" dienen könnte, welche Hinweise für einen Source Code-Diebstahl zu vernichten sind.



6    Die dabei gewonnen Erkenntnisse bestätigten die Spekulationen, die –
     wie bereits in der Klageschrift dargestellt – bisher lediglich gerüchteweise
     im Raum standen. Die gutachterlichen Feststellungen bestätigen in tech-
     nisch eindeutig nachgewiesener Weise die Vermutungen der „Internet
     Community". Danach besteht eine hohe Wahrscheinlichkeit dafür, dass
     die Beklagte zur Erstellung ihres Sozialen Netzwerks auf geistiges Eigen-
     tum der Klägerin zurückgegriffen hat und dieses untersucht, bearbeitet
     und vervielfältigt hat.

7    Weiterhin sind am 04.02.2009 Anhaltspunkte auf erneute mögliche Sour-
     ce Code-Übernahmen entdeckt worden. Der Mitarbeiter der Klägerin Ja-
     vier Olivan hat sich am 04.02.2009 in das Soziale Netzwerk
     www.studivz.de der Beklagten eingeloggt. Dabei hat er festgestellt, dass
     sich auf der Webseite der Beklagten nunmehr auch die bereits seit länge-
     rem auf der Webseite der Klägerin vorhandenen Funktionen „Freundeslis-
     te" und „ahead-typing"-Dialoge befinden. Dem Mitarbeiter der Klägerin
     ist dabei aufgefallen, dass die Funktionen der Webseite der Beklagten in
     optischer Gestaltung und Funktionalität starke Ähnlichkeiten mit den ent-
     sprechenden Funktionen der Webseite der Klägerin aufweisen.

     **Beweis:** Ausdruck der Email von Javier Olivan an den Justiziar der Klä-
             gerin, Herrn Mark Howitson (**Anlage K 24**).

8    Die Klägerin hat das EDV-Sachverständigenbüro Dr. Streitz daher mit ei-
     ner Ergänzung des bereits fertig gestellten Gutachtens beauftragt.
     Screenshots der Funktionen sind nachfolgend in Rz. 22 und 23 eingefügt
     und finden sich in Anlage K des Privatgutachtens des EDV-
     Sachverständigenbüros Dr. Streitz in **Anlage K 23** vom 17.02.2009. Die
     EDV-Sachverständigen halten es für überwiegend wahrscheinlich, dass
     hier eine erneute unerlaubte Übernahme von Source Code der Klägerin
     stattgefunden hat. Dies begründet eine hohe Wahrscheinlichkeit für eine
     nicht nur einmalig erfolgte sondern im Gegenteil fortlaufende, systemati-
     sche und andauernde Übernahme von Source Code der Klägerin.

9    Bereits kurz nach der Ergänzung des Gutachtens, am 04.03.2009, hat die
     Klägerin eine neuerliche Funktionsübernahme von der Webseite der Klä-
     gerin auf der Webseite der Beklagten festgestellt. Diesmal handelt es sich
     um eine „Remember me"-Funktion. Durch das Aktivieren dieser Funktion
     wird ein Cookie auf der Festplatte des Computers des Nutzers gesetzt,



mittels dessen die Webseite den Nutzer wiedererkennen kann, so dass sich dieser bei seinem nächsten Besuch nicht erneut mit Benutzernamen und Passwort einloggen muss.

**Beweis:** Augenschein der Webseiten www.facebook.de und www.studivz.net

10    Aufgrund dieser ganz neuen Dimension der sich ursprünglich als einfacher „Nachahmungsfall" darstellenden Aktivitäten der Beklagten bringt die Klägerin nunmehr vorstehende Anträge in das Klageverfahren ein. Diese werden wie folgt im Einzelnen begründet:

11

## I. Anhaltspunkte für widerrechtliche Nutzung des Source Codes der Klägerin

12    Die Beklagte hat mit an Sicherheit grenzender Wahrscheinlichkeit die der Webseite der Klägerin zugrundeliegende Programmierung übernommen. Dies ergibt sich aufgrund der Erkenntnisse, die die Klägerin durch Einschaltung der Sachverständigenbüros Dr. Streitz und Schrader gewonnen hat.

13    Die Webseite der Beklagten gleicht der Webseite der Klägerin aus der Zeit von 2005 bis Ende 2006 wie bereits oben ausgeführt optisch aus auf die blaue/rote Farbe und programmiiert derart, dass eine Anlehnung ohne Rückgriff auf den Source Code der Klägerin ausgeschlossen ist. Die offensichtlich ausgängliche Übernahme von Quell-Code im Jahr 2005 ist nicht nur bis heute nachweisbar – sie wird auch offensichtlich fortlaufend fortgesetzt. Denn die Beklagte übernimmt bis heute, wie an der Tabelle in Anlage K 9 ablesbar, neue Funktionalitäten der Webseite der Klägerin in auffällig ähnlicher Weise. Zuletzt hat die Klägerin solche Übernahmen am 04.02.2009 und 04.03.2009 festgestellt, diese jüngsten Übernahmen konnten in der Tabelle vom 19.11.2008 nicht berücksichtigt werden.

14    1. Das Privatgutachten des EDV-Sachverständigenbüros Dr. Streitz

Das Gutachten des EDV-Sachverständigenbüros Dr. Streitz zeigt detailliert und nachvollziehbar die zahlreichen Hinweise auf einen Source Code-Diebstahl, die die Sachverständige zu dem Urteil führen:

> *„Die Ähnlichkeiten gehen soweit, dass mit einer hohen Wahrschein-*
> *lichkeit von einer Kopie ausgegangen werden muss.*
> *[…]*
> *Es wird zusammengefasst, dass sich in den untersuchten Versionen*
> *erhebliche Übereinstimmungen zwischen den studiVZ Dateien und*
> *den facebook Dateien feststellen lassen."*

**Beweis:** Seiten 27 und 28 des Privatgutachtens des EDV-Sachverständigenbüros Dr. Streitz (**Anlage K 23**)

15      Außerdem stellt die Sachverständige fest:

> *„Die verglichenen Dateien stimmen in vielen Punkten derart genau*
> *überein, dass davon auszugehen ist, dass es sich bis auf unerhebli-*
> *che Veränderungen um dieselbe Software handelt."*

**Beweis:** Seite 4 des Privatgutachtens des EDV-Sachverständigenbüros Dr. Streitz (**Anlage K 23**)

16      Das Gutachten der Sachverständigen kann allerdings der Beklagten als „Anleitung" dienen, welche Source Code-Teile nunmehr überarbeitet werden müssen, um die Bearbeitung des Source Codes rechtzeitig vor der Besichtigung durch den Sachverständigen zu beseitigen. Daher beantragt die Klägerin gemäß Antrag Ziffer 9 für die **Anlagen K 23** und **K 23a** Vertraulichkeitsschutz und gibt diese nur für das Gericht, die Prozessvertreter und ihren bestellten Sachverständigen sowie den vom Gericht zu bestellenden Sachverständigen zur Ansicht frei. Die Klägerin wird das Gutachten auch nur in der **Anlage K 23a** erläutern und führt abstrakt zu den tatbestandlichen Voraussetzungen des Besichtigungsanspruchs gem. § 101a UrhG nachfolgendes aus.

17      <u>1.1 Neue Übernahmen im Jahr 2009</u>

Die erneuten Übernahmen von Funktionen, welche die Klägerin am 04.02.2009 festgestellt hat, hat die Sachverständige aufgrund eines Ergänzungsauftrags im Februar 2009 ebenfalls einer technischen Begutachtung unterzogen.

18    Die Beklagte hat bereits seit 2005 immer wieder Funktionen der Klägerin in technisch wie optisch auffällig ähnlicher Art und Weise übernommen. Ein Beispiel ist die „Groups"-Funktion, also Gruppen-Funktion. Jeder Nutzer kann zu einem bestimmten Thema eine Benutzergruppe gründen, z.B. zur Diskussion über ein Buch oder als Fangruppe für einen Popstar. Bei der Präsenz der Klägerin stellt sich dies wie folgt dar:



19    Zum Vergleich dazu eine Gruppenseite der Webseite der Beklagten:





20 Erkennbar sind hier alle Merkmale der Gruppenseite der Klägerin 1:1 übernommen worden. Die geringfügigen Unterschiede sind dadurch verursacht, dass die Klägerin gewisse Funktionserweiterungen vorgenommen hat und die abgebildete Seite jüngeren Datums ist.

21 Bei den nun im Jahr 2009 neulich übernommenen Funktionen handelt es sich um die Funktionen „Freundesliste" und sogenannte „aheadtyping"-Dialoge. Screenshots der Funktionen seien hier nachfolgend eingefügt und finden sich in Anlage K des Gutachtens in **Anlage K 23**.



22    Die Freundeslisten ermöglichen es den Nutzern hierbei, ihre Freunde in
dem Sozialen Netzwerk in Listen zu sortieren, um sich dann nur die
Freunde aus der jeweiligen Liste anzeigen zu lassen, anstatt alle Freunde
unsortiert angezeigt zu bekommen.





23  Die „ahead-typing"-Dialoge bewirken, dass dem Nutzer schon während der Eingabe eines Suchbegriffs bereits mögliche Suchziele in einem Fenster angezeigt werden.





24  Die Sachverständige hält es – insbesondere aufgrund der Feststellungen zum Aufbau der gegnerischen Seite aus dem Source Code der Klägerin – für hoch wahrscheinlich, dass eine erneute unerlaubte Übernahme von Source Code der Klägerin in jüngster Vergangenheit stattgefunden hat:

> „Bis zum heutigen Tage werden neue Funktionalitäten von Facebook weitgehend identisch übernommen, was im Hinblick auf die festgestellte sehr wahrscheinliche Source Code-Übernahme mit überwiegender Wahrscheinlichkeit dafür spricht, dass auch weiterhin Source Code von Facebook übernommen wird."

**Beweis:** Seite 5 des Privatgutachtens des EDV-Sachverständigenbüros Dr. Streitz (**Anlage K 23**)

25    <u>1.2    Eigene    Wertung    des    Privatgutachtens    des    EDV-Sachverständigenbüros Dr. Streitz</u>

Die ö.b.u.v. EDV-Sachverständige Sabine Schreiber-Ehle kommt zu dem nachvollziehbaren Ergebnis, dass eine hohe Wahrscheinlichkeit für eine ausgängliche unerlaubte Source Code-Übernahme im Jahr 2005 stattge-funden hat, welche sich noch heute auf technische Weise nachvollziehen lässt. Ferner kommt sie zu dem Ergebnis, dass auch eine fortlaufende un-erlaubte Source Code-Übernahme noch heute überwiegend wahrschein-lich ist.

26    <u>2. Das Privatgutachten des EDV-Sachverständigen Bernward Schrader</u>

Das Gutachten des ö.b.u.v. EDV-Sachverständigen Dipl.-Prog. Bernward Schrader ist bereits in der Klageschrift, insbesondere Rz. 40 - 55, be-schrieben worden. Daher seien hier nur die wichtigsten Erkenntnisse des Sachverständigen bezüglich Source Code wiedergegeben:

27    <u>2.1 Inhalt des Gutachtens</u>

Der Sachverständige führt bezüglich der Stylesheets, also in programma-tischer Hinsicht, aus:

> *„Die programmatische Übereinstimmung der StyleSheets der Stu-diVZ Seite ist dabei so weit mit der ursprünglichen Facebook Pro-grammierung identisch, dass nach Anwendung des Facebook StyleS-heets auf die StudiVZ Seite gemäß Anlage A.2.2 eine hohe De-ckungsrate erreicht wird. Vergleicht man diese Anlehnung an die Facebook StyleSheets dann noch mit der Anlage A.2.3, so wird er-sichtlich, in welchem Maße die StudiVZ Seite an die original Face-book Präsentation aus dem Jahre 2005/2006 hinsichtlich der StyleS-heets angelehnt ist.*
> *Dies bedeutet technisch, dass die StyleSheet Programmierung der StudiVZ Seite so mit der Facebook Programmierung harmoniert, dass sie bei Überlagerung mit einem Facebook StyleSheet ein Aus-*

> *sehen annimmt, welches in hohem Maße mit der originalen Facebook Präsentation der Anlage A.2.3 übereinstimmt.* [...]
> *Als Gegenbeispiel dazu führe ich die Anlage A.2.7 an. Dort habe ich auf einer Präsentation eines dritten Anbieters für soziale Netzwerke (myspace.com) ebenfalls das Facebook StyleSheet angewendet und festgestellt, dass auf Grund der programmatischen Unterschiedlichkeit zwischen myspace.com und Facebook keine Angleichung durch das StyleSheet erfolgt. Die Anwendung des Facebook StyleSheets auf dieser Seite bleibt ohne sichtbare Veränderungen.*"

**Beweis:** Seite 11 des Privatgutachtens des EDV-Sachverständigen Dipl.-Prog. Bernward Schrader (**Anlage K 12**)

28          Der Gutachter resümiert (Hervorhebung im Original):

> *„In Bezug auf die von mir getroffenen Analysen, Feststellungen und Beurteilungen komme ich zu folgenden Deckungsgraden zwischen den streitgegenständlichen Präsentationen facebook.com und studivz.de in Bezug auf das von mir untersuchte Onlinematerial und die Grafiken des Anlagenkonvoluts sowie an Hand der von mir wiedergegebenen Beispiele in den Anlagen:*
>
> *a) Programmatische Deckung (StyleSheets) ca. **70 bis 80%***
>
> *b) Funktionale Übereinstimmung der Facebook Version 2005/2006 zu StudiVZ 2008, ca. **80 %***
>
> *c) Deckungsangabe zum grafischen und typografischen Layout, zwischen Facebook Version 2005/2006 und StudiVZ 2008 **80 bis 85 %** in Bezug auf das von mir untersuchte Onlinematerial und die Grafiken des Anlagenkonvoluts sowie an Hand der von mir wiedergegebenen Beispiele in den Anlagen.*"

**Beweis:** Seite 20 des Privatgutachtens des EDV-Sachverständigen Dipl.-Prog. Bernward Schrader (**Anlage K 12**)

**29**     <u>2.2 Eigene Wertung</u>

Der Sachverständige hat durch seine Untersuchungen feststellen können, dass die sogenannten Stylesheets der Webseite der Klägerin, also Schablonen, in denen die Farb- und Formatinformationen einer Webseite gespeichert werden, problemlos auf die Webseite der Beklagten angewendet werden können. Diese nimmt bei Applikation der Stylesheets der Klägerin das Aussehen der Webseite der Klägerin an. Dieses Vorgehen funktioniert indes nur bei Webseiten, welche auf sehr ähnlichem Source Code beruhen. Aufgrund der erheblichen Freiheitsgrade die ein Programmierer bei der Erstellung einer Internetseite hat, können zufällige Übereinstimmungen ausgeschlossen werden.

**30**     Soweit die Beklagte diese nachvollziehbaren Erkenntnisse des ö.b.u.v. EDV-Sachverständigen Schrader unter Berufung auf ein Privatgutachten des Herrn Prof. Carle anzuzweifeln sucht, kündigt die Klägerin bereits jetzt eine Stellungnahme des EDV-Sachverständigen Schrader in ihrer Replik mit Frist bis 30.03.2009 an.

**31**     <u>3. Bestätigung durch die Internet-„Community"</u>

Wie bereits in der Klageschrift vom 19.11.2008 in Rz. 31 vorgebracht, ist auch anderen Personen diese interessante technische Verwandtschaft aufgefallen: So stellte der Blogger Michael Bumann 2006 ein Bild in seinem Internet-Blog zur Verfügung, welches durch Anwendung desselben Verfahrens – Anwendung des Facebook-Stylesheets auf eine Seite von StudiVZ – entstanden war.

**Beweis:** Blog „Der Bumi", Michael Bumann, „StudiVZ in original Facebook-Farben…", 03.10.2006 (**Anlagenkonvolut K 13, Seite 31**)

ⓗ

32    Das Bild sei hier zur Veranschaulichung eingeblendet:



33    Wohlgemerkt: Es handelt sich hierbei um eine Seite von StudiVZ, auch
      wenn dies nach Anwendung des Facebook-Stylesheets nicht mehr den
      Anschein erweckt. Auch Michael Bumann verdeutlicht hierdurch die pro-
      grammatischen Identitäten zwischen der Webseite der Klägerin und der
      Webseite der Beklagten.

34    Bezüglich der Anzweifelungen durch die Beklagte in ihrer Replik an die-
      sem Verfahren des Herrn Bumann gilt nichts anderes, als bezüglich der
      Anzweifelungen durch die Beklagte an dem Verfahren des EDV-
      Sachverständigen Schrader. Die Klägerin wird zu diesen generellen An-
      zweifelungen mit ihrer Replik eine Stellungnahme des ö.b.u.v. EDV-
      Sachverständigen Schrader übersenden.

**35**     <u>4. Zusammenfassung der Gutachterergebnisse</u>

Das EDV-Sachverständigenbüro Dr. Streitz kommt zu dem Ergebnis, dass mit hoher Wahrscheinlichkeit eine Source Code-Übernahme stattgefunden hat und dass mit überwiegender Wahrscheinlichkeit auch nach wie vor eine laufende Übernahme stattfindet. Die Begründung der Sachverständigen für dieses Ergebnis wird die Klägerin in Anlage K 23a erläutern.

**36**     Auch der Sachverständige Schrader hat festgestellt, dass eine programmatische Übereinstimmung beider Seiten vorliegt, so dass Programmmodule wie die Stylesheets jeweils untereinander ausgetauscht werden können.

**37**     Beide Gutachter stimmen überein, dass dies bei getrennten Entwicklungen nicht möglich wäre.

**38**     <u>5. Weitere Indizien für die Übernahme von Source Code</u>

Es gelten ferner weiterhin die mit der Klageschrift vom 19.11.2008 bereits angeführten Anhaltspunkte für eine unerlaubte Übernahme von Source Code.

**39**     So wurden die eingangs beschriebenen Kernfunktionen der Webseite der Klägerin, die poke-Funktion, die wall-Funktion sowie die groups-Funktion nicht nur vom äußeren Erscheinungsbild übernommen, sondern die Funktion „gruscheln" wurde seinerzeit durch das Skript „poke.php" generiert, die Funktion „Pinnwand" durch ein „wall.php" und die Gruppenfunktion (Diskussionsforen) durch eine „groups.php". Dies geht aus dem Wikipedia-Eintrag über die Beklagte ebenso hervor wie aus diversen Blogs.

**40**     So schreibt der Nutzer „Chris" am 30.07.2008 um 22:17:

*„was ich aus eigener Erfahrung weiß, ist dass die php Befehle auf jeden Fall den Englischen entsprochen haben:*
*home.php, poke.php (für Gruscheln), ... das kann ich bezeugen."*



**Beweis:** Kommentar Nr. 20 zu dem Blog „netzpolitik.org" „Facebook verklagt StudiVZ", Markus Beckedahl, 28.07.2008 **(Anlage K 25)**

Wikipedia-Eintrag über die Beklagte **(Anlage K 26)**

41  Offensichlich aufgrund der Berichterstattung im Internet hat die Beklagte dann systematisch die Namen der betreffenden Skripte geändert, so dass jetzt anstelle von „wall.php" zu lesen ist „pinboard.php". Möglicherweise hatte die Beklagte die Offensichtlichkeit ihres Vorgehens erkannt und wollte verhindern, dass die Klägerin davon Kenntnis erlangte.

42  Es ist also zu vermuten, dass auch insoweit eine Übernahme von Source Code stattgefunden hat. Auch diese Skripte bedürfen daher insbesondere in ihren frühen Versionen einer näheren Untersuchung durch einen gerichtlich bestellten Sachverständigen.

43  Auch die in der Klageschrift in Rz. 68 und **Anlagenkonvolut K 13, S. 125** beschriebene identische Sicherheitslücke bei Fotos ist ein starkes Indiz für eine Source Code-Übernahme. Genau wie ein Lehrer, der bei zwei nebeneinander sitzenden Schülern einen identischen Fehler in einer Klassenarbeit findet, vermuten kann, dass hier abgeschrieben wurde, ist dies erst recht bei zwei nicht miteinander verbundenen Sozialen Netzwerken der Fall: Da hier offensichtlich identische Programmierfehler vorliegen, liegt auch die Vermutung nahe, dass dies nicht zufällig, sondern durch rechtswidrige Übernahme des Source Codes entstanden ist.



44  Wie die Gründer der Beklagten Zugang zum Source Code der Klägerin erlangt haben und welche Bearbeitung im Einzelnen erfolgt ist, entzieht sich nach wie vor der Kenntnis der Klägerin. Es entzieht sich auch der Kenntnis der Klägerin wie die Beklagte noch heute Zugang zum Source Code der Klägerin erlangt. Für die Klägerin steht aber fest, dass dieses permanente „Abzapfen" ihres urheberrechtlich geschützten Know-hows gestoppt werden muss. Es sind in derartiger Fülle Anzeichen für eine Source Code-Übernahme vorhanden, dass mit an Sicherheit grenzender Wahrscheinlichkeit von fortlaufend begangenen Urheberrechtsverletzungen durch die Beklagte auszugehen ist.



## II. Vorlage des Source Codes der Klägerin

45      Zur Überprüfung und zum Abgleich der Source Codes im Rahmen des zu erstellenden schriftlichen Sachverständigengutachtens stellt die Klägerin dem Gericht als **Anlage A 6/K 22** den Source Code ihrer eigenen Software mit Stand Dezember 2005 in einem versiegelten Umschlag zur Aushändigung an den gerichtlich bestellten Sachverständigen zur Verfügung. Sollte der Sachverständige weitere Versionen des Source Codes der Klägerin benötigen, ist die Klägerin bereit, diesen auf Anfrage an den Sachverständigen auszuhändigen.

46      <u>Wir weisen aber darauf hin, dass es sich hierbei um wertvolles urheberrechtlich geschütztes Know-how der Klägerin und Geschäfts- und Betriebsgeheimnisse handelt. Diese dürfen daher der Beklagten (überhaupt) nicht zugänglich gemacht werden. Wir stellen anheim, dem Antrag unter Ziffer 9 a) stattzugeben; hilfsweise möge das Gericht eine gleichermaßen geeignete Anordnung zum Schutz des Betriebsgeheimnisses der Klägerin treffen.</u>

## B. Zur Rechtslage

## I. Zulässigkeit der Klageerweiterung

47      Die Klageänderung ist zulässig gemäß § 263 ZPO. Die Klägerin erweitert ihre bisherige Klage auf Unterlassung und Feststellung wegen Schadenersatz um den Besichtigungsanspruch. Hierzu bedarf es der Sachdienlichkeit, die vor der mündlichen Verhandlung stets gegeben ist (Münchner Kommentar zur ZPO, 3. Auflage 2008, § 263 Rdn. 37). Außerdem ist die Klageerweiterung sachdienlich, weil sie einen ansonsten erforderlich werdenden neuen Prozess vermeidet (Musielak, ZPO, 6. Auflage 2008, § 263 Rdn. 7).

48      Außerdem besteht zwischen der bisherigen Klage auf Unterlassung und Feststellung wegen Schadenersatz wegen unlauterem Wettbewerb und Urheberrechtsverstoß hinsichtlich des Quellcodes der Klägerin sowie dem

neuen Antrag ein direkter Sachzusammenhang (vgl. MüKo ZPO, wie vor, § 263 Rdn. 33).

## II. Begründetheit

49    Der Besichtigungsantrag ist begründet.

50    Der BGH hat bereits in seinem Urteil „Faxkarte" entschieden, dass ein Besichtigungsanspruch aus § 809 BGB auch dem Urheber zustehen kann, der sich vergewissern möchte, ob eine bestimmte Sache unter Verletzung des geschützten Werks hergestellt worden ist. Voraussetzung ist dabei stets, dass für die Verletzung bereits eine gewisse Wahrscheinlichkeit besteht (BGH NJW-RR, 2002, 1617 ff.).

51    Diese Rechtsprechung ist durch die Umsetzung der "Enforcement-Richtlinie" nunmehr auch gesetzgeberisch durch Einführung von § 101a UrhG bestätigt.Die Voraussetzungen dieser Norm sind vorliegend erfüllt. Es ergibt sich eine nachgewiesene – nicht nur hinreichende, wie gesetzlich gefordert – sondern überwiegende, an Sicherheit grenzende Wahrscheinlichkeit dafür, dass die Beklagte ihre Webseiten unter Verwendung von Source Code der Klägerin erstellt hat. Diese ergibt sich:

> ➢ Aus den vorgelegten Gutachten, welche übereinstimmend zu dem Schluss kommen:
>
> > ▪ dass im Falle einer unabhängig voneinander erfolgenden Entwicklung derart hohe Übereinstimmungsgrade nicht zu erwarten sind,
> > ▪ dass keine technische Notwendigkeit für die Übereinstimmungen besteht.
>
> ➢ Den schon zuvor in der Internet Community diskutierten technischen Auffälligkeiten.
>
> ➢ Sowie den für jedermann erkennbaren optischen Übereinstimmungen.



52  Außerdem besteht die überwiegende Wahrscheinlichkeit für eine fortlaufende und andauernde unerlaubte Übernahme von Source Code aus den Erkenntnissen der EDV-Sachverständigen Schreiber-Ehle in ihrer Ergänzung vom 17.02.2009 zu ihrem Gutachten.

53  Hierbei ermöglicht die Norm ausdrücklich nicht nur eine Vorlageanordnung an den mutmaßlichen Verletzer sondern vielmehr auch die Besichtigung der Sache vor Ort, also in den Räumlichkeiten des Verletzers. So sieht § 101a Abs. 1 UrhG schon in seinem Wortlaut vor, dass der mit hinreichender Wahrscheinlichkeit verletzte Urheber „*Vorlage einer Urkunde oder Besichtigung einer Sache*" verlangen kann. Hier geht der Anspruch auf eine Sache, nämlich die Rechensysteme der Beklagten, auf denen die urheberrechtsverletzenden Mittel befindlich sind. Diese ist unmittelbar durch den gerichtlich bestellten Sachverständigen zu besichtigen (vgl. Wandtke/Bullinger, UrhG, 3. Auflage 2009, § 101a Rdn. 15, 21).

54  Die Klägerin ist darauf angewiesen, den Source Code durch einen gerichtlich bestellten Sachverständigen begutachten zu lassen, um sich Kenntnis darüber zu verschaffen, ob und gegebenenfalls in welchem Umfang die ihr zustehenden Rechte verletzt worden sind (vgl. BGH NJW-RR 2002, 1617 [1620]).

55  Hierzu muss es dem Sachverständigen gestattet werden, die streitgegenständliche Software der Beklagten zu untersuchen. Dies umfasst insbesondere auch die bei der Beklagten vorhandenen Rechner und Netzwerke. Der Sachverständige soll daher zu den Geschäftsräumen der Beklagten und zu den darin befindlichen Rechnern Zugang erhalten, um diese zu untersuchen.

56  Es muss sichergestellt werden, dass die Beklagte bzw. Mitarbeiter der Beklagten keine Veränderungen an den auf den Rechnern befindlichen Daten vornehmen können. Es besteht die Gefahr, dass diese versuchen werden, Beweise insbesondere zu löschen oder zu vernichten. Daher ist es unbedingt erforderlich anzuordnen, dass es der Beklagten unmittelbar nach Zutritt des Sachverständigen untersagt wird, für die Dauer der Begutachtung eigenmächtige Veränderungen an dem Objekt- und Source Code, Teilen davon und insbesondere der PHP-Skripte vorzunehmen oder vornehmen zu lassen.



57    Dem Sachverständigen sollte ferner gestattet werden:

> die Vergleichsmittel an ein Datensicherungsgerät anzuschließen,
> in Inhaltsverzeichnisse und Dateien Einsicht zu nehmen,
> Daten zu sichern zu kopieren,
> Parametereinstellungen zu prüfen und Screenshots anzufertigen und zu speichern,

um festzustellen, ob der Source Code der Beklagten oder Teile des Source Codes der Beklagten mit dem Vergleichsmaterial der Klägerin übereinstimmt bzw. auf diesem basiert. Dazu gehört auch, dass der Sachverständige insbesondere die gefertigten Kopien und/oder auf sonstige Weise gesicherten Daten und Screenshots mitnehmen darf, um diese in den eigenen Geschäftsräumen zu untersuchen.

58    Um den ungehinderten Zugriff auf die erforderlichen Daten zu ermöglichen, sollte die Beklagte zudem angewiesen werden, dem Sachverständigen etwaige Benutzerkennungen und Passwörter mitzuteilen. Ferner sollten dem Sachverständigen bei der Sicherung der Beweismittel in den Betriebsräumen der Beklagten die ö.b.u.v. EDV-Sachverständigen Diplom-Informatikerin Sabine Schreiber-Ehle und/oder Dr. Siegfried Streitz auf Seiten der Klägerin zur Seite gestellt werden. Diese sind mit der Materie vertraut. Weiterhin ist es erforderlich, dass die Beklagte sämtliche Betriebshandbücher und Dokumentationen bezüglich der Software in gedruckter und/oder elektronischer Form zur Einsicht und Kopie zur Verfügung stellt.

### III. Berechtigtes Interesse

59    Sollte sich aufgrund der Besichtigung herausstellen, dass die Beklagte den Source Code der Klägerin für die Entwicklung und Programmierung ihrer Internetpräsenz verwendet hat und/oder fortlaufend und andauernd für die Entwicklung neuer Funktionen verwendet, stehen der Klägerin die bereits geltend gemachten Ansprüche gemäß §§ 97 Abs. 1, 2 Abs. 1 Nr. 1, Abs. 2, 69a Abs. 3 UrhG, ein entsprechender Unterlassungsanspruch sowie erhebliche Schadensersatzansprüche gegen die Beklagte zu, die sich durchaus im sieben- bis achtstelligen Euro Bereich bewegen könnten (un-

bestätigten Berichten zufolge soll die Beklagte im abgelaufenen Geschäftsjahr einen Umsatz von zehn Millionen Euro erzielt haben).

## IV. Geheimhaltungsinteressen der Beklagten

60    Etwaigen Geheimhaltungsinteressen der Beklagten an ihrer Software kann dadurch begegnet werden, dass der zur völligen Verschwiegenheit verpflichtete Sachverständige seinen abschließenden Bericht dem Gericht zu hinterlegen hat (vgl. OLG Frankfurt NJW-RR 2006, 1344 f.; BGH NJW-RR 2002, 1617 [1620]).

61    Zudem wäre die Klägerin damit einverstanden, dass der Sachverständige angewiesen wird, jeden unmittelbaren Kontakt mit den Parteien zu vermeiden und notwendige Korrespondenz entweder über das Gericht oder mit den Prozessbevollmächtigten der Parteien zu führen.

62    Nach erfolgter Begutachtung kann den Geheimhaltungsinteressen der Beklagten dadurch genüge getan werden, dass das Gericht „in camera" und in Gegenwart der Prozessvertreter der Parteien sowie zur Verschwiegenheit verpflichteten gerichtlich und durch die Parteien bestellten EDV-Sachverständigen entscheidet, ob eine Herausgabe an die Klägerin zu erfolgen hat (vgl. Wandtke/Bullinger, UrhG, 3. Auflage 2009, § 101a Rdn. 30; *Spindler/Weber*, MMR 2006, 711 [714]). Schließlich ist bei einem dann durch das Sachverständigengutachten ermittelten Source Code-Diebstahl die Beklagte überhaupt nicht schutzwürdig.

63    Als gerichtliche Sachverständige sollten Personen bestellt werden, die sich auf den Gebieten von EDV-Systemen, Softwareprogrammierung, Entwicklungsprozesse und -verfahren auskennen. Ausweislich des IHK-Sachverständigenverzeichnis würden insbesondere die Sachverständigen

Diplom-Informatiker (univ.)
Markus Schmidt
Ehrengutstraße 1
80469 München

oder

Projective Expert Group GmbH
Lindwurmstraße 149
80337 München

sowie

Michael Pruß
Im Tal 12
86179 Augsburg

in Betracht kommen, die für die eben genannten Gebiete öffentlich be-
stellt und vereidigt sind. Die entsprechenden Ausdrucke aus dem IHK-
Sachverständigenverzeichnis fügen wir als **Anlage K 27** bei.

64    Die Sachverständigen unterhalten keinerlei Verbindungen zur Klägerin.

## V. Vertraulichkeit für das Privatgutachten des EDV-Sachverständigenbüros Dr. Streitz

65    Durch das unter Rz. 60 - 62 beschriebene Verfahren wird neben dem Ge-
heimhaltungsinteresse auch das rechtliche Gehör für die Beklagte ge-
wahrt, auch wenn das Privatgutachten der EDV-Sachverständigen Sabine
Schreiber-Ehle unter dem Schutz der Vertraulichkeit nur für das Gericht,
die Parteivertretern und den bestellten Sachverständigen eingereicht wird.

66    Insofern ist der Vertraulichkeitsschutz für den klägerischen Source Code
in **Anlage A 6/K 22** und das Privatgutachten in **Anlage K 23** und die **An-
lage K 23a** das Gegenstück zu der Wahrung der Geheimhaltungsinteres-
sen der Beklagten.

67    Durch das Verfahren in Rz. 60 - 62 wird ein gerichtlich bestellter und zur
Verschwiegenheit verpflichteter Sachverständiger den Source Code der
Beklagten sichern, untersuchen und ein Gutachten erstellen. Dieses Gut-
achten wird er nur bei Gericht hinterlegen. Kommt das Gericht – ggf. in
einem „in camera"-Verfahren – zu dem Schluss, dass das Gutachten keine
Anhaltspunkte für eine unerlaubte Source Code-Übernahme zeigt, wird
das Gutachten nicht an die Parteien herausgegeben, wodurch die Interes-

sen der Beklagten gewahrt bleiben und ihr rechtliches Gehör nicht verletzt ist. Kommt das Gericht zu dem von der Klägerin erwarteten Ergebnis, dass das Gutachten eine unerlaubte Übernahme des klägerischen Quellcodes nachweist, so ist die Beklagte nicht schutzwürdig. Zudem kann sie sich dann nach einer Herausgabe des Gutachtens an die Parteien in sachlicher und rechtlicher Hinsicht äußern (so insgesamt auch OLG Nürnberg CR 1986, 197 [198]; *Stadler*, NJW 1989, 1202 [1203 ff.]; *Leppin*, GRUR 1984, 695 ff.; auch BGH GRUR 2006, 962 [967] und *Kühnen*, GRUR 2005, 185 [192 f.], für den umgekehrten Fall von Geheimnisinteressen des mutmaßlichen Verletzers).

68 Demgegenüber besteht ein hohes und gerechtfertigtes Interesse der Klägerin an Vertraulichkeitsschutz für das Privatgutachten in **Anlage K 23** sowie die **Anlage K 23a**. Wird das Privatgutachten an die Beklagte weitergegeben, erhält diese die Anleitung frei Haus, was sie an ihrem Quellcode ändern muss, bevor das Hauptsacheverfahren über den Besichtigungsanspruch abgeschlossen ist, um die Ansprüche der Klägerin vollständig zu vereiteln. Die Klägerin würde rechtlos gestellt und der ihr als alleiniger Rechteinhaberin an ihrem Source Code zustehende Rechtsschutz in unerträglicher Weise verkürzt. Es würde ihr *de facto* unmöglich gemacht, ihre schutzwürdigen Interessen zu wahren. Sie stünde dann für die Zukunft vor der Wahl, kein Privatgutachten zu erstellen, wodurch sie keine hinreichende Wahrscheinlichkeit für eine Source Code-Übernahme mehr nachweisen könnte, oder ein Privatgutachten zu erstellen, durch dessen Offenlegung an den Gegner aber ihre Ansprüche samt und sonders vereitelt würden.

69 Die Klägerin ist insbesondere auch damit einverstanden, dass die Prozessbevollmächtigten der Beklagten und ein ggf. von der Beklagten beauftragter Sachverständiger unter Verpflichtung zur strikten Verschwiegenheit auch gegenüber der Beklagtenpartei an einem solchen „in camera"-Verfahren teilnehmen.



70      Daher ist antragsgemäß zu entscheiden. Sollte das Gericht weiteren Sach-
vortrag für erforderlich erachten, wird um einen entsprechenden richterli-
chen Hinweis gebeten.


gez. Dr. Scheja

Dr. Katharina Scheja
Rechtsanwältin

Beglaubigt

Rechtsanwältin