**E-Filed 5/4/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>            Plaintiff,<br><br>            v.<br><br>STUDIVZ LTD; VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmBH; HOLTZBRINCK NETWORKS GmBH; and HOLTZBRINCK VENTURES GmBH<br><br>           Defendants. | Case Number C 08-3468 JF (HRL)<br><br>**ORDER[1] DEFERRING RULING ON MOTIONS TO DISMISS**<br><br>RE: Docket Nos. 41 & 42 |

## I. BACKGROUND

In this action for trade dress infringement under the Lanham Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Computer Fraud and Abuse Act and California Penal Code § 502(c), Plaintiff Facebook, Inc. ("Facebook") alleges that Defendants StudiVZ ("StudiVZ") and related corporate entities

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 08-3468 JF
ORDER DEFERRING RULING ON MOTIONS TO DISMISS
(JFLC3)

variously bearing the name Holtzbrink ("the Holtzbrink entities," collectively "Defendants") are responsible for the creation of an illegal "knock-off" version of Facebook's popular social utility website. StudiVZ launched its original website in 2005. The site, which bears a disputed degree of visual and functional similarity to Facebook, was oriented towards university students. As the site became increasingly popular in Germany, StudiVZ launched several other services targeting other age groups. Believing that the StudiVZ websites infringed its proprietary trade dress, Facebook sent a demand letter to StudiVZ in 2006. The letter was written in German and alleged a series of potential claims for infringement of Facebook's intellectual property rights under German law. A similar letter was sent in January 2007.

After various entities within the Holtzbrink publishing conglomerate became interest-holders in StudiVZ in August 2006 and October 2007, Facebook entered into negotiations to purchase the StudiVZ websites. Shortly after the negotiations broke down, Facebook sent demand letters to the Holtzbrink entities. On July 18, 2008, StudiVZ filed a declaratory judgment action against Facebook in the German district court for the district of Stuttgart.[2] On the same day, Facebook filed the instant action, alleging claims similar to those outlined in the 2006, 2007, and 2008 demand letters. On October 22, 2008, Defendants filed the instant motions to dismiss for lack of personal jurisdiction and on the ground that Germany is a more convenient forum. On November 19, 2008, Facebook filed a separate lawsuit against StudiVZ in the German district court for the district of Cologne, alleging a series of claims under German law. While there can be little dispute that the two actions filed by Facebook are based on essentially the same alleged conduct, the parties dispute the extent to which the claims in the German action duplicate those alleged here.

Since the filing of Defendants' motions to dismiss, multiple discovery disputes have impeded the resolution of the jurisdictional issues. In an earlier administrative motion, Facebook requested a continuance of the hearing on Defendants' motions, claiming that it

---

[2] Trial in this action was set to begin on April 28, 2009.

2

required additional discovery that Defendants improperly were withholding. The Court denied Facebook's request except with respect to the issue of personal jurisdiction over StudiVZ. Nonetheless, for reasons of judicial economy, the Court continued the hearing on all pending motions to April 10, 2009. Subsequently, StudiVZ moved to postpone consideration of the personal jurisdiction component of its motion and to stay related discovery. In a separate motion, Facebook requested a further continuance as to both issues in order to resolve the discovery disputes. Facebook opposed any "bifurcation" of the issues of personal jurisdiction and *forum non conveniens*. On March 30, 2009, the Court issued an order granting a separate hearing on the *forum non conveniens* issue. The hearing ultimately was set for May 1, 2009. To ensure the presentation of all relevant argument, the Court authorized each party to submit a five-page supplemental brief.

Having considered the current record and the parties' written and oral arguments, the Court is inclined to dismiss the instant action on the ground that Germany is the more appropriate forum. Such a determination would be procedurally reasonable: given the difficulty of personal jurisdiction discovery in this case and the strength of Defendants' arguments with respect to *forum non conveniens*, a determination that the instant dispute should be hear in Germany would appear to be within the Court's discretion under *Sinochem International Trading Company v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007). Nonetheless, because the procedural gloss of *Sinochem* makes the question of *when* to decide *forum non conveniens* a relatively close one in the instant case, the Court will defer ruling on *forum non conveniens* until the issue of personal jurisdiction is ripe for consideration.

## II. LEGAL STANDARD

Under the doctrine of *forum non conveniens*, courts have broad discretion to decline jurisdiction in favor of a more convenient forum outside of the United States. *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). A party moving to dismiss on grounds of *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2) that the balance of private and public interest factors weighs in favor of dismissal. *Piper*

*Aircraft v. Reyno*, 454 U.S. 235, 238 (1981); *Creative Tech., Ltd. v. Aztech Syst. PTE Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). The determination of whether to dismiss an action on the ground of *forum non conveniens* involves a three-step analysis:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Under proper circumstances, a *forum non conveniens* determination may occur before a court asserts jurisdiction over the parties or the subject matter of the lawsuit. *Sinochem*, 549 U.S. at 436.

### III. DISCUSSION

**A.** *Forum non conveniens*

As the Court will explain in considerably greater detail if required to do so at a future date, Defendants' motions to dismiss on the basis of *forum non conveniens* have considerable merit. Under the relevant legal authorities, the high level of deference that ordinarily would be accorded Facebook's choice of forum must be discounted substantially because: (1) Facebook is a multinational company with a significant business presence in Germany, *see Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991); *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990); (2) Facebook currently is litigating an action in Germany that is extremely similar to the instant action, *see EFCO Corp. v. Aluma Systems USA, Inc.*, 145 F. Supp. 2d 1040, 1046-47 (S.D. Iowa 2000); and (3) the conduct complained of appears to have occurred principally in Germany, *see LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007); *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 447 (S.D.N.Y. 2001), *aff'd sub nom.*, *First Union Nat'l Bank v. Arab African Int'l Bank*, 48 Fed. Appx. 801 (2d Cir. 2002).

In addition, Germany clearly is an adequate forum. An inadequate forum will be found only in "[i]n rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory," for example, where the alternative forum "does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 255 n.22. The alternative forum

need not offer the same claims, legal theories, or remedies as the domestic forum, *see, e.g.*, *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381-83 (5th Cir. 2002), and the "assert[ion] [of] distinctively U.S. and California-based claims," Supp. Opp. at 1:19, including claims under the Lanham Act, is immaterial, *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768-69 (9th Cir. 1991); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 (9th Cir. 1977); *Fluoroware, Inc. v. Dainichi Shoji K.K.*, 999 F. Supp. 1265, 1271 (D. Minn. 1997). To the extent Facebook argues that it cannot obtain meaningful relief in Germany, that argument "is belied by the scope of [Facebook's] own [German complaint][,] . . . . [which] seeks both monetary and permanent injunctive relief for all alleged acts of infringement" implicated by the instant action. *Creative Tech.*, 61 F.3d at 702.

Turning to the private interest factors, Facebook has offered some explanation as to what U.S. witnesses it will require in this action, which appears to turn principally on conduct that occurred in Germany. Nonetheless, Facebook has not explained (1) why the testimony of five witnesses purportedly relevant to its trade dress claims will be critical or unique, (2) why the testimony of a U.S.-based former summer intern and a U.S.-based former marketing director at StudiVZ will be relevant to the alleged infringement, (3) why the testimony of unspecified individuals connected with an Illinois programming company that outsources it work to the Ukraine will be relevant, or (4) how the potentially critical testimony of StudiVZ's two co-founders, who reside in Germany, and of numerous other likely German witnesses, can be compelled in this Court. With respect to the enforceability of a putative judgment, Facebook still has not suggested what "more effective means [there could be] of protecting [Facebook's] United States [trademark] interests than by shutting off the pipeline of infringing goods at the source," i.e., Germany. *Creative Tech.*, 61 F.3d at 702

The majority of the public interest factors are neutral. Neither this Court nor the German courts appear to be particularly overburdened. *Cf. Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2008 WL 3977887, at *9 (N.D. Cal. Aug. 26, 2008). Nor would "retaining this action . . . avoid[] the problem of having to apply foreign law[,] . . . [since] [Facebook's] complaint necessarily implicates the legality of infringing acts occurring

5

Case No. C 08-3468 JF
ORDER DEFERRING RULING ON MOTIONS TO DISMISS
(JFLC3)

in [Germany][,] . . . [rendering] an application of foreign law . . . likely inevitable, regardless of which forum adjudicates this controversy," *Creative Tech.*, 61 F.3d at 704.[3] Even the local interest factor may not favor retention. Citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336-37 (9th Cir. 1984), Facebook notes that a U.S. court ordinarily would have an interest in protecting a resident corporation from trademark infringement abroad. But in *Jenson*, the Ninth Circuit already had found that a choice-of-law clause required the application of Arizona law to the subject contract dispute. *Id*. Thus, Arizona was substantively "interested" in the dispute because it had an "interest in interpreting its own laws," and because those laws presumably expressed an "interest in protecting [Arizona] companies from trademark infringement abroad to preserve the state's economic vitality." *Id*. In the instant case, the Court is not required to undertake a choice-of-law analysis at this stage of the proceedings,[4] and Facebook has not urged it to do so. Facebook thus incorrectly conflates the local interest served by the assertion of adjudicatory versus legislative or prescriptive jurisdiction.[5] In any

---

[3] No choice-of-law determination is required here because neither the Lanham Act nor the CFAA contains a special venue provision. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 (9th Cir. 2001); *see also Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) (recognizing that "the necessity of applying American law may add weight to the factors favoring retention of jurisdiction" but finding no abuse of discretion in *forum non conveniens* dismissal even where U.S. law might or might not have applied to the subject international dispute).

[4] *See supra* note 3.

[5] Whether or not StudiVZ's website infringes Facebook's intellectual property rights, this Court in no way suggests that a German court would be less likely to protect, or less capable of protecting, Facebook from trademark infringement, either under German or U.S. law. *See Creative Tech.*, 61 F.3d at 702-03. Absent a prior choice-of-law determination–which, as noted above, is not required or even necessarily proper at this stage of the litigation–the Court considers highly suspect the proposition that domestic courts should assert adjudicatory jurisdiction to "protect" domestic plaintiffs. Undoubtedly, in the context of what is often called legislative or prescriptive jurisdiction–the issue of which country's laws should apply to a given act or course of conduct–domestic courts may well have a distinct legal duty to enforce policy decisions made by the national (or state) legislature. A court's assessment of that duty plays a central role in most modern choice-of-law regimes.

By contrast, where the question solely is whether to assert adjudicatory jurisdiction over a controversy that properly may be governed by foreign *or* domestic law, the notion that a court should assert such jurisdiction in order to protect the interests of a domestic plaintiff improperly

6
Case No. C 08-3468 JF
ORDER DEFERRING RULING ON MOTIONS TO DISMISS
(JFLC3)

event, with respect to either type of jurisdiction, it is far from clear that the predominantly economic injury that Facebook may have sustained in California outweighs Germany's interest in deciding a controversy whose outcome may affect the availability of a website used by millions of its citizens. *See In re Donald G. Atteberry, DVM, P.A.*, 159 B.R. 1, 9 (D. Kan. 1993) (affirming bankruptcy court's dismissal of action on ground of *forum non conveniens* and observing, in connection with local interest factor, that the action "has little to do with the United States, other than the plaintiff lives here").

**B.** *Sinochem*

As should be clear from the brief preceding discussion, the relevant *forum non conveniens* considerations suggest that dismissal may be appropriate. Nonetheless, this Court's discretion to decide *forum non conveniens* interchangeably with other non-merits grounds for dismissal is not without limits. The Supreme Court has admonished that "the consideration ordinarily accorded the plaintiff's choice of forum 'should impel [a] federal court to dispose of [jurisdictional] issue[s] first.'" *Sinochem*, 549 U.S. at 436 (quoting *Ruhrgas*, 526 U.S., at 587-588). Only "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh *heavily* in favor of dismissal, [does] the court properly takes the less burdensome course." *Id*. (emphasis added). This Court directed the parties to appear at the May 1, 2009 hearing for the purpose of determining just how "heavily" the relevant *forum non conveniens* considerations might weigh in favor of dismissal. Notwithstanding the apparent strength of Defendants' arguments with respect to *forum non conveniens*, the *Sinochem* question presents a closer call. The efficiency considerations raised by Defendants are legitimate, but it is possible, as Facebook has suggested, that the personal jurisdiction inquiry meaningfully will inform the Court's ultimate

---

suggests that the domestic court may "side with" that plaintiff in interpreting the applicable law. Without some indication that particular foreign courts or a particular foreign jurisdiction's choice-of-law regime systematically favors the application of domestic law, this Court discerns few legitimate interests to be vindicated by the assertion of adjudicatory jurisdiction for its own sake. Indeed, the same principles that underlie diversity jurisdiction might suggest that Defendants should be able to "remove" this action to a court in some more "neutral" location such as Alabama or Michigan.

7

decision with respect to *forum non conveniens*. Out of prudence, the Court will defer its ruling on *forum non conveniens* until the issue of personal jurisdiction fairly can be presented.

### IV. CONCLUSION

For the foregoing reasons, the Court will defer consideration of Defendants' motions to dismiss on the ground of *forum non conveniens*. The stay of personal jurisdiction discovery is hereby lifted. The hearing on Defendants' motions to dismiss will be re-scheduled for July 10, 2009 at 9:00 AM. Not later than June 26, 2009 at 5 PM PDT, Facebook may file a supplemental opposition brief not to exceed fifteen pages in length. Not later than July 3, 2009 at 5 PM PDT, Defendants may file supplemental reply briefs individually not to exceed fifteen pages in length.

**IT IS SO ORDERED.**

DATED: 5/4/09

JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

2  Annette L. Hurst     ahurst@orrick.com

3  Gary Evan Weiss      gweiss@orrick.com, sdonlon@orrick.com

4  I. Neel Chatterjee     nchatterjee@orrick.com, adalton@orrick.com, htsutsui@orrick.com, kmudurian@orrick.com, mawilliams@orrick.com

5  Julio Cesar Avalos     javalos@orrick.com, aako-nai@orrick.com, adalton@orrick.com

6  Stephen Shannon Smith , Esq     ssmith@greenbergglusker.com

7  Thomas J. Gray     tgray@orrick.com

8  Warrington S. Parker , III     wparker@orrick.com

9  William Mielke Walker     wwalker@greenbergglusker.com