1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

     FACEBOOK, INC.,              )  CV-08-3468-JF
5                                 )
                  PLAINTIFF,      )  SAN JOSE, CALIFORNIA
6                                 )
            VS.                   )
7                                 )  MAY 1, 2009
     STUDIVZ, LTD, ET AL,         )
8                                 )
                  DEFENDANT.      )  PAGES 1-32
9    _____)

10

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMY FOGEL
12             UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:   ORRICK HERRINGTON & SUTCLIFFE
                          BY:  THOMAS J. GRAY
17                        4 PARK PLAZA, STE 1600
                          IRVINE, CA 92614
18

19   FOR THE DEFENDANT:   GREENBERG GLUSKER
                          BY:  STEPHEN SMITH
20                             WILLIAM WALKER
                          1900 AVENUE OF THE STARS
21                        STE 2100
                          LOS ANGELES, CA 90067
22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR,
                          CERTIFICATE NUMBER 13185

                                                        1

```
 1    FOR THE PLAINTIFF:  ORRICK HERRINGTON & SUTCLIFFE
                          BY:  JULIO AVALOS
 2                        1000 MARSH ROAD
                          MENLO PARK, CA 94025
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SAN JOSE, CALIFORNIA        MAY 1, 2009

2                P R O C E E D I N G S

3                (WHEREUPON, COURT CONVENED AND THE

4     FOLLOWING PROCEEDINGS WERE HELD:)

5                THE COURT:  THE NEXT AND FINAL MATTER IS

6     FACEBOOK VERSUS STUDIVZ.

7                MR. SMITH:  GOOD MORNING, YOUR HONOR.

8                STEVEN SMITH AND WILLIAM WALKER ON BEHALF

9     OF DEFENDANTS STUDIVZ, HOLTZBRINCK NETWORKS AND

10    HOLTZBRINCK VENTURES.

11               MR. GRAY:  GOOD MORNING, YOUR HONOR.

12               TOM GRAY AND JULIO AVALOS ON BEHALF OF

13    FACEBOOK.

14               THE COURT:  GOOD MORNING.

15               WELL, LET ME ASK STUDIVZ A QUESTION.

16    THERE ARE SEVERAL MOTIONS THAT ARE BUMPING AROUND.

17    THERE ARE JURISDICTIONAL MOTIONS THAT ARE NOT

18    BEFORE THE COURT THIS MORNING BECAUSE OF SOME

19    ONGOING DISCOVERY DISPUTES.

20               I THINK IT'S KIND OF A DISCRETIONARY

21    DETERMINATION FOR THE COURT TO MAKE, WHETHER IT

22    WANTS MAKE UP THE FOREIGN NON CONVENIENS MOTION

23    BEFORE THE JURISDICTIONAL ISSUES ARE FULLY

24    PRESENTED.

25               I'M PREPARED TO DO IT, AND I'M PREPARED

```
 1    NOT TO DO IT.  I'D LIKE TO GET FEEDBACK FROM BOTH
 2    PARTIES.  I KNOW FACEBOOK HAS BEEN ANXIOUS TO GET
 3    THESE MATTERS HEARD, BUT WHAT'S YOUR VIEW?
 4          MR. SMITH:  STUDIVZ AND HOLTZBRINCK'S
 5    VIEW IS THEY SHOULD BE HEARD NOW, SEPARATE AND
 6    APART FROM JURISDICTION, FOR REASONS WE BRIEFED
 7    BEFORE.
 8          BRIEFLY, THE SINOCHEM CASE, WHICH IS THE
 9    U.S. SUPREME COURT CASE, TALKS ABOUT CIRCUMSTANCES
10    THAT ARE PRESENT HERE THAT FORM CAN BE CONSIDERED
11    FIRST.
12          THE COURT:  I KNOW I HAVE SINOCHEM.  IF
13    IT SAYS NOTHING ELSE, IT SAYS I HAVE DISCRETION TO
14    DO IT.  I'M TRYING TO DETERMINE WHAT YOUR
15    PREFERENCE IS.
16          MR. SMITH:  MY PREFERENCE TO HAVE THE
17    FORUM NON CONVENIENS HEARD FIRST.
18          WE DO HAVE AN OUTSTANDING DISCOVERY
19    DISPUTE THAT IS A -- ALTHOUGH WE RESPECTFULLY
20    DISAGREED WITH FACEBOOK'S ISSUE ON IT, IT'S A
21    COMPLICATED ISSUE.  SO THE FORUM ISSUE SHOULD BE
22    HEARD FIRST BECAUSE IT'S CLEAN.
23          THE COURT:  AND FACEBOOK, I TAKE IT,
24    DISAGREES WITH THAT?
25          MR. GRAY:  YES, YOUR HONOR, WE DO.
```

```
 1          YOUR HONOR, I THINK YOU'VE HIT THE NAIL

 2   ON THE HEAD WITH RESPECT TO WHAT THIS MOTION TODAY

 3   IS ALL ABOUT IN TERMS OF PREVENTING AND AVOIDING

 4   DISCOVERY IN THIS ACTION.

 5          THE COURT:  WHY ISN'T THAT A GOOD THING?

 6          MR. GRAY:  WELL, IT'S NOT A GOOD THING

 7   BECAUSE PLAINTIFF HAS RIGHTFULLY BROUGHT U.S. AND

 8   CALIFORNIA-BASED CLAIMS HERE BEFORE THIS COURT FOR

 9   INJURY IT SUFFERED HERE.

10          BUT TO ANSWER YOUR QUESTION REGARDING

11   SINOCHEM, I'M NOT SURE THAT SINOCHEM DOES GRANT YOU

12   FULL DISCRETION TO HEAR THE FORUM NON CONVENIENS

13   PORTION OF THEIR MOTION AT THIS TIME.

14          IF YOU LOOK AT SINOCHEM, PAGE 433, 549 US

15   433, THE COURT SAYS THERE SHOULD BE NO ASSUMPTION

16   OF LAW DECLARING POWER UNLESS THE COURT FINDS THAT

17   THE FORUM NON CONVENIENS MOTION IS SO CLEAR, AS IT

18   DID IN THE SINOCHEM CASE, WHERE IT WAS ALL FOREIGN

19   PARTIES DISPUTING EVENTS THAT OCCURRED IN A FOREIGN

20   LOCALE.

21          THE COURT:  YOU ARE DISTINGUISHING

22   SINOCHEM ON ITS FACTS.  THE COURT HAS DISCRETION,

23   AND LIKE MOST DISCRETION THERE ARE LIMITS ON IT,

24   BUT THE COURT CAN STILL LOOK AT THE FORUM FACTORS

25   AND DECIDE IF THEY ARE CLEAR.
```

I AGREE THEY HAVE TO BE PRETTY STRONG AND THE JURISDICTIONAL ISSUES HAVE TO BE STICKY, WHICH THEY ARE HERE, AND UNDER THOSE CIRCUMSTANCES THE COURT HAS DISCRETION.

YOU ARE SAYING THAT I THINK, ULTIMATELY, THAT THE FORUM FACTORS ARE NOT NEARLY AS CLEAR IN SINOCHEM.

MR. GRAY:  THAT'S CORRECT, YOUR HONOR.

I THINK, IN THIS INSTANCE, THERE'S A LOT OF DISPUTE OF FACTUAL ISSUES.

THE COURT:  I STARTED WITH COUNSEL, BUT I'M GOING TO FOCUS MY QUESTIONS ON YOU AT THIS POINT.

YOU KNOW, GERMANY ISN'T EXACTLY -- WHO DO I INSULT HERE -- GERMANY ISN'T SOMALIA, IT'S NOT A FAILED STATE WITH NO LEGAL SYSTEM AND NO RECOURSE. IT'S A VERY SOPHISTICATED LEGAL SYSTEM.  AND, IN FACT, THESE VERY PARTIES ARE LITIGATING CLOSELY RELATED CLAIMS IN GERMANY.

SO GIVEN THAT, GIVEN THAT THERE ARE STICKY JURISDICTIONAL QUESTIONS, GIVEN THERE'S NO REASON TO THINK THAT A GERMAN COURT WOULDN'T OR COULDN'T CONSIDER THE UNIQUE CALIFORNIA CLAIMS FACEBOOK HAS, WHY SHOULD THERE BE LITIGATION GOING ON IN TWO DIFFERENT FORUMS OVER CLOSELY RELATED

ISSUES WHEN A LOT OF THE CRITICAL DEFENSE WITNESSES
ARE IN GERMANY, A LOT OF THE MISCONDUCT THAT'S
ALLEGED TOOK PLACE IN GERMANY?

IT MAY NOT BE SINOCHEM, BUT IT STRIKES
ME, AT LEAST SUPERFICIALLY, AS BEING PRETTY CLOSE
THAT THERE ARE A LOT OF CONVENIENCE FACTORS AND
JUDICIAL ECONOMY FACTORS THAT ARE IN FAVOR OF
GERMANY.

I NEED TO UNDERSTAND WHAT CAN'T FACEBOOK
GET IN GERMANY THAT IT COULD GET IN CALIFORNIA?
WHAT'S THE HARM?

MR. GRAY:  FIRST OFF, TAKING A STEP BACK,
OBVIOUSLY, THE DEFENDANTS RELY HEAVILY ON THE FACT
THAT THERE IS ANOTHER CASE IN GERMANY, AS WE
POINTED OUT IN OUR BRIEF, THE ADELSON CASE, THE
DOLE CASE, THE HAYES CASE, ALL OF THESE CASES SAY
THAT DUPLICATIVE LITIGATION ISN'T A FACTOR UNDER
FORUM NON CONVENIENS ANALYSIS.

THE COURT:  WELL, DOLE, IT JUST SO
HAPPENS -- THERE'S SERENDIPITY, BUT IF YOU ARE A
JUDGE LONG ENOUGH THESE THINGS HAPPEN.

I WAS ON THE PANEL IN DOLE, AND THE
ANALYSIS IN THAT CASE IS WHERE IS THE BRUNT OF THE
HARM?  WHERE IS THE CENTER OF GRAVITY OF THE
DISPUTE?  AND, YOU KNOW, I THINK THERE'S A DESCENT

```
 1    ARGUMENT THAT THE CENTER OF GRAVITY IN THIS CASE IS
 2    IN GERMANY.
 3              MR. GRAY:  THE CENTER OF GRAVITY OF THE
 4    HARM TO FACEBOOK, AS A LOCAL ENTITY WITH ITS
 5    PRINCIPAL PLACE OF BUSINESS RIGHT UP THE STREET IN
 6    PALO ALTO, CALIFORNIA.
 7              YES, THEY'VE GOT USERS IN GERMANY THAT
 8    THEY UNFAIRLY AND IMPROPERLY GAINED BECAUSE OF
 9    THEIR ACTIONS IN GERMANY, BUT THE BRUNT OF ECONOMIC
10    INJURIES ARE SUFFERED HERE.
11              AND WE ALSO HAVE TO LOOK, WHICH THE
12    DEFENDANTS DON'T LOOK AT MUCH AT ALL, THERE ARE
13    DEFENDANT USERS IN CALIFORNIA AND THROUGHOUT THE
14    UNITED STATES.
15              SO THERE IS HARM TO FACEBOOK'S
16    INTELLECTUAL PROPERTY RIGHT HERE IN CALIFORNIA WITH
17    OVER 11,000 USERS, AND PROBABLY TENS OF THOUSANDS,
18    IF NOT HUNDREDS OF THOUSANDS OF USERS, THROUGHOUT
19    THE UNITED STATES.
20              AGAIN, AT THIS EARLY STAGE OF THIS CASE
21    WITH NO DISCOVERY PROVIDED FOR MANY PARTS OF THE
22    DESIGN DEVELOPMENT AND THE ACTIONS TAKEN BY
23    DEFENDANTS IN GERMANY, FACEBOOK IS AT A
24    DISADVANTAGE OF COMING FORTH --
25              THE COURT:  TO GET BACK TO MY EARLIER
```

QUESTION, WHAT CAN'T YOU GET IN GERMANY THAT YOU CAN GET IN CALIFORNIA?  I REALIZE THAT'S NOT THE ONLY QUESTION THE COURT HAS TO LOOK AT, BUT JUST IN TERMS OF CONVENIENCE AND ECONOMY.

IF YOU HAVE YOUR WAY, WE ARE GOING TO HAVE PARALLEL LITIGATION GOING ON IN TWO DIFFERENT CONTINENTS ABOUT SOME OF THE SAME DISPUTED FACTS AND INVOLVING A LOT OF THE SAME PEOPLE.

WHY DOES THAT MAKE SENSE?  WHY DO THE EQUITIES FAVOR THAT RATHER THAN HAVING ONE COURT IN A CIVILIZED INDUSTRIAL COUNTRY MAKING A DETERMINATION OF THE PARTIES' RIGHTS.

MR. GRAY:  BECAUSE THE CLAIMS ARE DIFFERENT HERE, YOUR HONOR.  THESE ARE LARGELY U.S. BASED FEDERAL CLAIMS.

AGAIN, IT'S DEFENDANT'S BURDEN TO COME FORWARD TO SHOW THAT THESE CLAIMS WOULD BE DUPLICATIVE, THAT ALL THE WITNESSES AND ALL THE EVIDENCE WOULD BE DUPLICATIVE OF WHAT'S GOING ON IN GERMANY.

AND THEY CAN'T DO THAT BECAUSE THE TRADE DRESS CLAIMS HAS DIFFERENT ELEMENTS AND DIFFERENT ISSUES AND WOULD REQUIRE DIFFERENT TESTIMONY FROM DIFFERENT WITNESSES THAT WOULD BE GOING FORWARD ON THE UNFAIR COMPETITION OF COPYRIGHT CLAIMS.

THE COURT:  THEY ARE CLOSELY RELATED,
THOUGH, AREN'T THEY?  I MEAN, IT'S A FORM OF UNFAIR
COMPETITION -- IT'S NOT COMMON LAW AND UNFAIR
COMPETITION, BUT IT'S MISUSING A PARTY'S PRESENCE
IN THE MARKETPLACE IN A WAY THAT'S UNFAIR.

THERE'S A COMMON THREAD IN ALL OF THESE
THINGS.

MR. GRAY:  THERE'S CERTAINLY A COMMON
THREAD IN THE FACT THAT, YOU KNOW, IT'S A TRADEMARK
RELATED ISSUE AND UNFAIR COMPETITION IS TRADEMARK
RELATED.  BUT THE TRADE DRESS CLAIM HERE HAS AN
ELEMENT THAT THE DESIGN HAS TO BE A NON-FUNCTIONAL
DESIGN.

THAT'S NOT AN ELEMENT AT ISSUE IN THE
GERMAN CASE.  THAT WILL REQUIRE DIFFERENT
TESTIMONY, DIFFERENT EXPERTS, DIFFERENT DOCUMENTS
THAT WILL BE HERE, AND FACEBOOK WILL BE
INCONVENIENCED FOR HAVING TO BRING ALL THOSE PEOPLE
TO GERMANY.

SO THAT IS ONE ASPECT.  BUT THERE'S ALSO
THE COMPUTER TRESPASS CLAIMS.  THOSE ARE NOT AT
ISSUE IN THE GERMAN CASE.  THOSE ARE VERY DISTINCT
U.S. BASED CLAIMS, CALIFORNIA-BASED CLAIMS, THAT
AGAIN, WILL HAVE DIFFERENT WITNESSES REGARDING THE
ACTIONS ON THE PALO ALTO, U.S. BASED SERVERS THAT

FACEBOOK OWNS.

ONCE WE CAN GET DISCOVERY TO SEE HOW MANY
PEOPLE -- THE EXTENT OF THE INTERACTION ON
FACEBOOK'S CALIFORNIA SERVERS, WE CAN GO LOOK AND
SEE EXACTLY WHAT THEY'VE DONE.

BUT THOSE ARE VERY, VERY BROAD CLAIMS
THAT PREDICT THE EXACT TYPE OF ACTION WE HAVE HERE,
UNAUTHORIZED USE OR ACCESS TO A COMPUTER SYSTEM,
AND THAT UNAUTHORIZED USE WILL REQUIRE, AGAIN,
DIFFERENT WITNESSES AND DIFFERENT TESTIMONY,
DIFFERENT DOCUMENTS, DIFFERENT EVIDENCE THAT
CURRENTLY RESIDES RIGHT HERE IN CALIFORNIA THAT
WOULD NOT BE NEEDED IN THE CURRENT GERMAN --

THE COURT:  OKAY.  HOW FAR OFF ARE WE IN
TERMS OF GETTING THE JURISDICTIONAL MOTIONS TEED
UP?  I KNOW YOU'RE IN THE MIDST OF OBJECTIONS AND
MOTIONS AND SO FORTH.

MR. GRAY:  I THINK WE ARE BEYOND THAT.
IT'S NO SURPRISE THAT DEFENDANTS SWITCHED GEARS
AFTER JUDGE LLYOD INDICATED THAT HE WAS READY TO
REQUIRE THEM TO PRODUCE DISCOVERY REGARDING THE
DESIGN AND DEVELOPMENT DOCUMENTS RELATED TO THEIR
ACTIONS HERE IN THE U.S. ON THE U.S. SERVERS AND
HOW THEY DESIGN THEIR PRODUCT.

AS SOON AS JUDGE LLYOD INDICATED THAT

1  THAT WAS GOING TO HAPPEN, THEY PULLED BACK ON THEIR

2  PERSONAL JURISDICTION MOTION AND SAID, LET'S GO

3  FORWARD WITH THE FORUM --

4        THE COURT:  THAT'S A STRATEGIC

5  OBSERVATION.

6        I'M SAYING -- MY QUESTION IS EXTREMELY

7  SIMPLE.  HOW LONG WOULD IT TAKE -- IF I DENIED THE

8  FORUM NON CONVENIENS MOTION, HOW LONG WOULD IT TAKE

9  FOR THE JURISDICTION, PERSONAL SUBJECT MATTER

10  JURISDICTION -- I'M SORRY, PERSONAL JURISDICTION.

11  HOW LONG WOULD IT TAKE FOR THAT MOTION TO BE READY

12  TO BE HEARD?

13        MR. GRAY:  OF COURSE, IT DEPENDS ON THE

14  DISCOVERY.  IF WE CAN GET DISCOVERY IN 30 DAYS, THE

15  MOTION CAN BE HEARD 35 DAYS AFTER THAT, YOUR HONOR.

16        THE COURT:  SO YOU DON'T KNOW, IN OTHER

17  WORDS.

18        MR. GRAY:  WE DON'T KNOW BECAUSE THEY'VE

19  BEEN DRAGGING THEIR FEET.

20        THE COURT:  IT WILL BE A COUPLE OF

21  MONTHS, AT LEAST.

22        MR. GRAY:  CERTAINLY.  A COUPLE OF MONTHS

23  TO GET THE DISCOVERY REVIEW, THE DISCOVERY, AND

24  WRITE UP THE SUPPLEMENTAL BRIEFS.

25        BUT IT SHOULD NOT BE SIX MONTHS OR A

1    YEAR, IT SHOULD BE RELATIVELY QUICK IF DEFENDANTS

2    COMPLY WITH THE DISCOVERY ISSUES.

3            THE COURT:  AND APART FROM THE LEGAL

4    ANALYSIS THAT THERE ARE FREESTANDING U.S. CLAIMS,

5    THE PRACTICAL IMPACT OF THE CASE IN GERMANY IS THAT

6    FACEBOOK'S WITNESSES ON THE TRADE DRESS CLAIM AND

7    ON THE COMPUTER CLAIM ARE NOT WITNESSES WHO

8    OTHERWISE WOULD BE CALLED IN THE GERMAN ACTION AND

9    THEY WOULD HAVE TO GO TO GERMANY TO PARTICIPATE.

10           MR. GRAY:  THAT'S THE INCONVENIENCE ON

11   THE PRIVATE FACTOR.  BUT, OF COURSE, WE THINK THIS

12   COURT HAS SUBSTANTIAL PUBLIC INTEREST IN

13   ADJUDICATING THESE CLAIMS FROM A U.S. PLAINTIFF, OF

14   A LOCAL PLAINTIFF, THAT HAS SUFFERED FINANCIAL

15   INJURY HERE LOCALLY REGARDING U.S. BASED CLAIMS,

16   NOVEL AND SOMEWHAT UNIQUE U.S. BASED CLAIMS, AS WE

17   POINT OUT IN OUR BRIEF.

18           THE COURT:  OVER A PARTY THAT IT MAY OR

19   MAY NOT HAVE JURISDICTION OVER.  I MEAN, I DON'T

20   KNOW THAT.  I MEAN, I SUPPOSE I COULD SPECULATE AS

21   TO HOW THAT'S GOING TO TURN OUT.  THERE'S,

22   OBVIOUSLY, A MESSY FIGHT ABOUT JURISDICTION.  IT'S

23   NOT A SELF-EVIDENT TYPE OF THING.

24           MR. GRAY:  WELL, IT'S A MESSY FIGHT NOW.

25   WE THINK THERE'S CLEARLY JURISDICTION BASED ON THE

CONTEXT.

THE COURT:  THAT'S WHY YOU SUED THEM
HERE.

MR. GRAY:  EXACTLY.  THAT'S WHY WE SUED
THEM HERE.

AND WE'RE ALSO NOT DEALING WITH THE FORUM
SELECTION CLAUSE AND TERMS OF USE.  AND DEFENDANTS
RAISE SOME RED HERRING ISSUES WITH RESPECT TO
WHETHER THERE'S AN ARBITRATION PROVISION AFTER
DECEMBER 2006, OR WHETHER BOSTON SHOULD HAVE BEEN
THE FORUM BEFORE JUNE OF 2005.

BUT AS WE SUBMITTED, DURING THE CRUCIAL
RELEVANT TIME PERIOD HERE JUNE 2005 THROUGH 2006,
THERE WAS A CLICK THROUGH LICENSE --

THE COURT:  I DON'T KNOW THAT YOU WANT TO
GO THERE, THOUGH.  THAT'S AN INTERESTING FORUM
SELECTION CLAUSE BECAUSE THEY CONSENT TO
JURISDICTION BUT IT CERTAINLY IS NOT AN EXCLUSIVE
JURISDICTION.

WHEN I SAY "THEY," I MEAN WHOEVER,
ASSUMING THAT A PARTY IS BOUND BY THAT, THEY
CONSENT TO JURISDICTION, BUT IT'S NOT AN
EXCLUSIVE --

MR. GRAY:  I WOULD DISAGREE, YOUR HONOR.
I WOULD SAY THAT THAT ARBITRATION PROVISION SAYS

```
1    THAT ACTIONS WILL BE CONDUCTED HERE IN

2    SANTA CLARA COUNTY RELATED TO THE BREACH OF THE

3    AGREEMENT AS WELL AS --

4              THE COURT:  DOES IT SAY -- AND REFRESH ME

5    IF I'M WRONG ABOUT THIS.  I DON'T BELIEVE IT SAYS

6    THAT THE COURT'S, FEDERAL AND STATE COURTS OR

7    WHATEVER OF SANTA CLARA COUNTY, SHALL HAVE

8    EXCLUSIVE AND SOLE EXCLUSIVE JURISDICTION.  I DON'T

9    THINK THERE'S ANY LANGUAGE LIKE THAT.

10             MR. GRAY:  IT CERTAINLY DOES MENTION THE

11   COURTS OF THIS JURISDICTION.

12             THE COURT:  AND THERE'S NO QUESTION ABOUT

13   THAT, BUT I DON'T RECALL SEEING THE WORD

14   "EXCLUSIVE" IN THERE.

15             IF IT'S IN THERE, I MISSED IT.  AND THE

16   NINTH CIRCUIT HAS HAD A LOST CASES ON THIS AND THEY

17   FOCUS ON THE PRESENCE OR ABSENCE OF THAT.

18             OKAY.  WELL, I THINK THIS IS BOTH A LEGAL

19   AND A PRACTICAL INQUIRY.  I APPRECIATE YOUR

20   COMMENTS.

21             LET ME GET A RESPONSE FROM THE

22   DEFENDANTS.

23             MR. SMITH:  THERE WERE A NUMBER OF THINGS

24   SAID THERE, YOUR HONOR.  I WILL TRY TO BE AS BRIEF

25   AS POSSIBLE.
```

YOUR FIRST QUESTION FOCUSED, THOUGH, ON
WHAT TYPE OF RELIEF FACEBOOK IS UNABLE TO GET IN
GERMANY THAT IT CAN GET HERE.

WITH ALL DUE RESPECT, I THINK IF YOU LOOK
AT THE COMPLAINTS IN GERMANY, AND THERE ARE NOW TWO
IN THE CLONE ACTION, I THINK AN 82 PAGE FIRST ONE
AND THEN AN AMENDED ONE THAT WAS FILED MORE
RECENTLY ABOUT A MONTH OR TWO AGO, EVERY SINGLE
FACTUAL ALLEGATION AND EVERY TYPE OF RELIEF THAT IS
BEING SOUGHT IN THIS CASE IS BEING SOUGHT THERE.

YES, THEY ARE CALLED DIFFERENT THINGS IN
GERMANY.

THE COURT:  THERE'S DIFFERENT THEORIES,
BUT WHAT THEY ARE LOOKING FOR IS THE SAME.

MR. SMITH:  THAT IS CORRECT.

AND THE LAW IS QUITE CLEAR, I THINK, IN
THE FORUM.  THERE IS A LOT OF LAW ON THIS ISSUE,
BUT YOU DON'T HAVE TO HAVE THE SAME LABEL ON THE
CLAIM; AND IN FACT, IT'S EVEN REALLY BETTER FOR US
THAT WE DON'T NEED IT HERE.

THE COURT:  WELL, BASICALLY WHAT COUNSEL
IS SAYING, WHEN IT COMES DOWN TO IT, IS THAT THERE
ARE SOME SETS OF WITNESSES GIVEN THESE CLAIMS THAT
AREN'T IN THE GERMAN CASE WHO WOULD BE
INCONVENIENCED; AND I THINK THAT'S CERTAINLY

ENTITLED TO SOME WEIGHT.

AND THE OTHER THING HE'S SAYING, WHICH I
THINK IS PROBABLY THE MORE COMPELLING POINT, IS
THIS IS A LOCAL COMPANY WHICH IS ENTITLED TO EXPECT
THE PROTECTIONS OF A LOCAL FORUM.

AND, CLEARLY, SOME OF THE RELEVANT FACTS
IN THIS CASE ARISE HERE.  IT'S NOT -- NOTHING IS
HAPPENING IN PALO ALTO.  AND THEY BELIEVE THEY HAVE
A GOOD ARGUMENT ON PERSONAL JURISDICTION WHICH THE
COURT HASN'T BEEN ABLE TO ADDRESS YET.

SO AT LEAST UNTIL THE COURT IS ABLE TO
ADDRESS THAT, WHY SHOULD WE SAY TO A LOCAL PARTY
THAT HAS A RIGHT TO RELY ON ACCESS TO THE LOCAL
COURTS, PARTICULARLY WHERE THERE IS A FORUM
SELECTION CLAUSE AND WHETHER IT'S EXCLUSIVE AND
BINDING IN EVERY CASE -- WHICH IS SOMETHING I
HAVEN'T DETERMINED YET -- WHY SHOULD WE SAY YOU
NEED TO GO TO GERMANY BECAUSE THERE'S A CASE
PENDING OVER THERE THAT INVOLVES SOME OF THE SAME
PARTIES AND CLAIMS?

IF WE DON'T HAVE JURISDICTION OVER YOUR
CLIENT THEN IT'S EASY, THEN YOU HAVE TO GO TO
GERMANY.  BUT IF THERE IS STILL A DETERMINATION TO
BE MADE AS TO WHETHER YOUR CLIENT IS SUBJECT TO
JURISDICTION, WHY SHOULD THE COURT JUMP THE GUN AND

```
 1    SAY, GO AWAY?

 2              MR. SMITH:  WELL, LEGALLY, FOR THE EXACT

 3    SAME REASONS IN SINOCHEM.  AND WE CAN DISCUSS WHAT

 4    THE FACTS ARE ON POINT WITH THE SINOCHEM VERSUS NOT

 5    WITH THE LAW ON POINT.

 6              THAT LAW IS ALSO ON POINT THAT A RESIDENT

 7    PLAINTIFF, ALTHOUGH IT IS A FACTOR THAT IS ENTITLED

 8    TO WEIGHT AND WE NEVER CLAIMED THE CONTRARY, IT IS

 9    NOT A DISPOSITIVE FACTOR IN AND OF ITSELF.

10              AND IN THIS CASE IT'S NOT -- I HATE TO

11    PICK ON LITTLE OLD LADIES, BUT IT'S NOT A LITTLE

12    OLD LADY IN CALIFORNIA, WHOSE HUSBAND -- BECAUSE

13    ONE OF THE CASES INVOLVES THIS -- WHOSE HUSBAND WAS

14    KILLED BY TERRORISTS IN EGYPT AND HER ASKING US TO

15    GO TO EGYPT TO SEEK REDRESS.

16              THIS IS A MULTINATIONAL COMPANY BY TWO

17    HUNDRED MILLION, BY THEIR OWN ESTIMATION --

18              THE COURT:  AND A CORPORATE PRESENCE IN

19    GERMANY.

20              MR. SMITH:  WITH A WEB SITE IN GERMANY

21    OPERATING ALL OVER THE WORLD.  THE CONTACT LUMBER

22    CASE DISCUSSES THAT PARTICULAR ISSUE DIRECTLY.

23              IN ADDITION, THEY, THEMSELVES, ARE

24    LITIGATING.  WE ARE NOT -- WE ARE NOT TRYING TO

25    FORCE THEM INTO SOME FORUM --
```

1        THE COURT:  THEY'RE THE PLAINTIFF.

2        MR. SMITH:  THAT'S CORRECT.  THEY ARE THE

3    PLAINTIFF, YES THE STUTTGART ACTION WHICH WAS A

4    DECLARATORY RELIEF ACTION STUDIVZ FILED, WAS FILED

5    FIRST.  THERE ARE TWO CASES WE SIGHT BOTH CREATIVE

6    AND LOCKMAN, WHERE THAT EXACT SAME THING HAPPENED.

7    THE COURT DID NOT HAVE ANY ISSUE WITH THAT.

8        THE COURT ACTUALLY DID RELY UPON THE FACT

9    THAT THERE WAS ANOTHER PIECE OF LITIGATION ALREADY

10   PENDING.  SOME CONTRARY, WITH ALL DUE RESPECT TO

11   MR. GRAY'S STATEMENT, BUT IT'S NOT A FACTOR.  IT'S

12   A FACTOR IN SINOCHEM, IT'S A FACTOR IN CREATIVE,

13   IT'S A FACTOR IN CONTACT LUMBER, AND IT'S A FACTOR

14   IN LOCKMAN.

15        IT'S A FACTOR IN ALL KINDS OF CASES.  AND

16   IT'S USUALLY QUITE AN IMPORTANT FACTOR FOR THE

17   REASON YOUR HONOR ALREADY NOTED, WHICH IS, IT

18   DOESN'T MAKE SENSE, FROM A JUDICIAL ECONOMY

19   PERSPECTIVE, TO FIGHT OVER THE SAME FACTS SEEKING

20   THE SAME RELIEF IN TWO DIFFERENT PLACES.

21        IN ADDITION, SPECIFICALLY AS TO THE

22   COMPUTER ABUSE ACT, WE'VE NOTED THIS IN OUR BRIEFS

23   AND IT'S IN THE PLEADINGS IN GERMANY.  THEY ARE

24   SEEKING REDRESS SPECIFICALLY FOR THAT.  RIGHT NOW

25   THERE IS PENDING A REQUEST FOR A NEUTRAL EXPERT

SEARCH OF THE ENTIRE PREMISES, INSPECTION OF ALL

THE COMPUTER SYSTEMS, ALL THE SERVERS, ALL OF THE

SOURCE CODE, TO GET INTO WHETHER OR NOT THAT TYPE

OF ACCESS THAT THEY'RE TALKING ABOUT DID, IN FACT,

OCCUR.

SO YES, THEY DON'T CALL IT THE COMPUTER

ABUSE ACT, BUT WITHIN THE CASE, AS A FACTUAL AND

LEGAL MATTER UNDER A DIFFERENT LABEL, THE EXACT

SAME THING IS BEING LAID.

THE COURT: CAN I ASK YOU THIS -- THIS

MAY COME OUT OF LEFT FIELD -- BUT I HAVE DISCRETION

UNDER 1404 TO STAY AS WELL AS DISMISS, CORRECT?

MR. SMITH: I BELIEVE SO, YOUR HONOR.

THE COURT: I COULD JUST SAY, WELL, LET'S

JUST STOP THE BLEEDING IN THIS CASE AND GO FIGHT

GERMANY FOR A WHILE, AND THEN IF THINGS ARE -- IF

YOU CAN'T GET A COMPLETE RESOLUTION BETWEEN THE

PARTIES, THEN THIS CASE CAN BE TAKEN OUT OF THE

FREEZER AT A LATER DATE.

THAT'S AN OPTION THE COURT HAS, ISN'T IT?

MR. SMITH: THAT'S CORRECT. AND ALTHOUGH

THAT'S A SECONDARY OPTION --

THE COURT: THAT'S NOT WHAT YOU ASKED FOR

BUT IT'S SOMETHING THE COURT CAN DO.

MR. SMITH: RELEVANT TO THAT, YOUR HONOR,

```
 1    BECAUSE THIS HEARING GOT MOVED A COUPLE OF WEEKS
 2    BECAUSE OF DEFENSE COUNSEL'S VACATIONS WHICH IS
 3    FINE, THE COMMENCEMENT OF THE TRIAL DID, IN
 4    GERMANY, STARTED JUNE -- THERE IS A DATE NOW
 5    JUNE 16TH FOR THE RENDITION OF A JUDGMENT.
 6              NOW, I DON'T WANT TO SAY THAT MEANS THEY
 7    WILL RENDER A FINAL JUDGMENT, I DON'T WANT TO
 8    MISLEAD THE COURT, BUT IT IS A DATE TO EITHER
 9    DECIDE, ARE WE GOING TO RENDER A FINAL JUDGMENT, A
10    PARTIAL JUDGMENT, OR ARE WE GOING TO ASK FOR
11    SOMETHING MORE?
12              SO THERE IS THAT NEXT DATE OUT THERE.
13    AGAIN, I DON'T -- I THINK THE FORUM ISSUE HERE IS
14    TEED UP, AND WITH THE FACTORS WEIGHING SO HEAVILY
15    IN OUR CLIENT'S FAVOR, IT SHOULD BE DISMISSED
16              THE COURT:  BUT IF I WERE TO STAY THIS
17    CASE UNTIL AFTER A JUDGMENT IS RENDERED IN THE
18    GERMAN COURT, THEN AT THAT POINT WE COULD
19    RECONVENE, WE COULD CONSIDER WHAT THE PRECLUSIVE
20    EFFECT, IF ANY, OF THAT JUDGMENT IS AND WHERE IT
21    LEAVES THE PARTIES, AND THEN THE COURT COULD DECIDE
22    WHETHER TO GO FORWARD IN THIS CASE OR NOT.
23              THAT'S ANOTHER OPTION THE COURT HAS.
24              MR. SMITH:  THAT IS CORRECT.
25              AND JUST ONE EFFORT TO PERSUADE
```

YOUR HONOR OF THE FIRST OPTION, LET ME MAKE THIS
POINT, WHICH IS:  I THINK WE SHOULD STEP BACK HERE
FOR A SECOND AND TALK ABOUT WHAT'S ACTUALLY BEING
SOUGHT.  BECAUSE IF WE LOOK AT WHAT'S GOING ON
HERE, FACEBOOK IS TRYING TO RECOVER FOR HARM THAT
IS OCCURRING IN GERMANY.

IF YOU LOOK AT THEIR SUPPLEMENTAL REPLY
THEY FILED, THEY HAVE THE NUMBER $100 MILLION IN
DAMAGES.  THAT'S A TELLING STATEMENT BECAUSE
THERE'S NO WAY THERE'S $100 MILLION IN DAMAGES FOR
ACTIVITY THAT OCCURRED IN THE UNITED STATES.
THAT'S THE ENTIRE VALUE OF STUDIVZ.  THEY ARE
SEEKING AN INJUNCTION TO SHUT DOWN STUDIVZ
ALTOGETHER.

SO THERE'S BEEN NO ARGUMENT THAT WE
SHOULD BE ALLOCATING SOMETHING TO THE UNITED STATES
ONLY HERE.  SO WHAT'S GOING TO HAPPEN IN GERMANY --
AND THE GERMAN COURT IS WELL AWARE OF THE PENDENCY
OF THIS CASE BECAUSE IT WAS DISCUSSED ON THE
APRIL 28TH TRIAL.  MAYBE WE WAIT TO SEE AND I CAN
BRIEF IT AND GO THROUGH IT, BUT IT'S CLEAR IT'S
GOING TO HAVE A PRECLUSIVE EFFECT.

AND IN THE CASE -- ONE OF THE CASES SAID
WHEN YOU HAVE THE INFRINGEMENT OCCURRING FROM
SINGAPORE, THE BEST PLACE TO GO, IF YOU ARE GOING

```
 1    TO SHUT DOWN THE INFRINGING PARTY, IS THE SOURCE.

 2              THE COURT:  YEAH.

 3              MR. SMITH:  AND THAT'S EXACTLY WHAT THEY

 4    ARE DOING.

 5              THE COURT:  ALL RIGHT.

 6              LET ME GET A REACTION FROM COUNSEL,

 7    BECAUSE I DON'T WANT TO SPRING A SURPRISE ON

 8    ANYBODY.

 9              WHAT WOULD THE EFFECT BE ON FACEBOOK IF

10    THE COURT SIMPLY SAID, ALL RIGHT, STOP THE

11    CALIFORNIA ACTION IN ITS TRACKS UNTIL THE GERMAN

12    COURT RULES AND THEN WE WILL SEE WHAT'S GOING ON?

13              MR. GRAY:  WELL, THE DEVIL WOULD BE IN

14    THE DETAILS THEN, YOUR HONOR.

15              ARE WE SAYING FACEBOOK HAS TO BRING ITS

16    CALIFORNIA AND U.S. BASED CLAIMS IN THE GERMAN

17    ACTION?  BECAUSE THEN, AGAIN, WE FEEL THAT'S NOT

18    WARRANTED AND PROPER IN THIS INSTANCE BASED ON THE

19    STRONG DEFERENCE THAT SHOULD BE PROVIDED TO

20    FACEBOOK FOR LITIGATING THESE CLAIMS IN THIS

21    COURTROOM.

22              THE COURT:  I'M NOT EVEN SURE THAT'S

23    POSSIBLE IF THE COURT HAS ALREADY CONDUCTED AN

24    EVIDENTIARY PROCEEDING.

25              MR. GRAY:  OKAY.  LET ME CLARIFY THAT.
```

```
 1              WITH ALL DUE RESPECT TO COUNSEL, THAT

 2      JUNE --

 3              THE COURT:  THAT'S ABOUT THE THIRD TIME I

 4      HEARD THAT PHRASE TODAY, I'M GETTING WORRIED.

 5              MR. GRAY:  WELL, MAYBE -- BECAUSE HE

 6      VASTLY OVERSTATES WHAT'S GOING ON IN GERMANY.

 7          THERE HAS NOT BEEN A TRIAL.  WHAT OCCURRED ON

 8      TUESDAY WAS ESSENTIALLY A STATUS CONFERENCE.  THE

 9      PARTIES CAME IN, THEY DISCUSSED THE CASE, FACEBOOK

10      WAS GIVEN AN OPPORTUNITY TO DISCUSS -- TO BRIEF,

11      ADDITIONALLY, THE CLAIM THAT HE'S TALKING ABOUT

12      WHICH IS A COPYRIGHT INSPECTION CLAIM, IT IS NOT

13      THE COMPUTER FRAUD TRESPASS CLAIM.

14              SO GOING INTO STUDIVZ AND THE DEFENDANT'S

15      HEADQUARTERS TO GET ALL THE DOCUMENTS AND ACCESS TO

16      THE COMPUTERS, IS AN INSPECTION OF THEIR SOURCE

17      CODE CLAIM.  IT IS NOT RELATED TO THE COMPUTER

18      FRAUD AND ABUSE ACT --

19              THE COURT:  LET ME REPHRASE MY QUESTION

20      WITH PARTICULARITY.

21              IS WHAT EMANATES FROM THE GERMAN COURT IN

22      JUNE LIKELY TO HAVE SOME TYPE OF PRECLUSIVE EFFECT

23      ON THE CLAIMS THAT FACEBOOK HAS BROUGHT IN

24      CALIFORNIA?

25              MR. GRAY:  IT MAY.
```

1          BUT MY UNDERSTANDING IS WHAT'S GOING TO

2     HAPPEN IN JUNE IS THE COURT IS GOING TO SET THE

3     SCHEDULE FOR THE SOURCE CODE INSPECTION CLAIM, THE

4     SOURCE CODE COPYRIGHT CLAIM, WHICH MAY TAKE SIX TO

5     NINE MONTHS TO ADJUDICATE, AND THEN THERE WILL BE A

6     TRIAL ON THE MERITS -- EVIDENTIARY HEARING ON THE

7     MERITS AFTER THAT.

8          THE COURT:  SO IT WOULD BE CLEANER IF THE

9     COURT SAID YAY OR NAY WITH THE REGARD TO THE FORUM

10    NON CONVENIENS.

11         MR. GRAY:  IT'S CLEANER -- I DON'T THINK

12    THERE'S ANY REASON TO DELAY UNTIL AFTER JUNE

13    BECAUSE I DON'T THINK JUNE IS GOING TO BE

14    DISPOSITIVE.

15         THE COURT:  THAT'S MY QUESTION.

16         SO A STAY REALLY WOULDN'T GET YOU

17    ANYWHERE.  YOU'D RATHER EITHER GET SENT THERE AND

18    AND/OR NOT GO THERE AT ALL; AND OBVIOUSLY, YOU

19    PREFER THE LATTER.

20         MR. GRAY:  RIGHT.  I THINK WE DESERVE TO

21    BE HERE.

22         AND I THINK WHAT COUNSEL HAS SAID

23    REGARDING THE GERMAN CASE IS LARGELY INDICATIVE OF

24    WHAT WE'VE GOT HERE.  THERE'S A BIG DISPUTE AGAIN,

25    A FACTUAL DISPUTE, TO THE SIMILARITY OF THE GERMAN

CASE VERSUS THE CASE HERE.

AND AS THESE CASES HAVE DISCUSSED, THE RECORD OF DEFENSE COUNSEL AND PLAINTIFF'S COUNSEL SAYING WHAT THEIR INTERPRETATION IS OF WHAT'S GOING ON IN THE ALTERNATIVE FORUM REALLY DOESN'T CARRY THE DAY FOR THE DEFENDANTS UNDER A FORUM NON CONVENIENS ANALYSIS.

THEY NEED TO COME IN AND SHOW THAT IT IS DUPLICATIVE, AND ALL WITNESSES AND ALL TESTIMONY WOULD BE --

THE COURT: AND THAT'S THE CALL I NEED TO MAKE. THAT'S WHAT SINOCHEM SAYS. THAT'S THE STANDARD. I MEAN, IT'S GOT TO BE, ESSENTIALLY, THE SAME CASE. AND YOU GOT A COUPLE BELLS AND WHISTLES ON IT HERE THAT THEY DON'T HAVE THERE, BUT IN ORDER FOR THE COURT TO TRANSFER AT THIS STAGE IT WOULD HAVE TO FIND IT WAS ESSENTIALLY THE SAME CASE, IT WAS ARISING OUT OF THE SAME DISPUTE, AND OF COURSE THERE'S DIFFERENT CLAIMS FOR RELIEF AND DIFFERENT LEGAL THEORIES AND LEGAL SYSTEMS.

MR. GRAY: BUT BEYOND THAT, IT'S DEFENDANT'S BURDEN TO COME FORWARD TO OVERCOME THE SUBSTANTIAL DEFERENCE HERE. AND IF WE LOOK AT THE ADELSON CASE, THE HAYES BICYCLE CASE, THE ALNWICK V. EUROPEAN MICRO, 137 F. SUPP.2D 112, IN WHICH IT

SPECIFICALLY SAYS THE AFFIDAVITS OF THE ATTORNEYS
IS INSUFFICIENT TO SHOW THE DUPLICATIVE NATURE OF
THE TWO LITIGATIONS, AND THEREFORE IT SHOULDN'T BE
GIVEN ANY WEIGHT WHATSOEVER WITH RESPECT TO FORUM
NON CONVENIENS.

EVEN THOUGH IN THESE CASES ADELSON AND
HAYES BICYCLE AND DOLE, PLAINTIFFS THEMSELVES FILED
SUIT IN THE OTHER JURISDICTION.

IF I MAY, YOUR HONOR, THE CREATIVE AND
THE LOCKMAN CASE ARE CLEARLY DISTINGUISHABLE.  THE
REASON THAT THE ALTERNATIVE FORUMS WERE AT ISSUE IN
THOSE CASES IS BECAUSE ALMOST ALL OF THE OTHER
ACTIONS OCCURRED IN THOSE ALTERNATIVE FORUMS.

IN THE CREATIVE LABS CASE, THE PARTIES,
ALTHOUGH THEY WERE SUING UNDER THEIR AMERICAN
SUBSIDIARIES, THE COURT RECOGNIZED THAT THE PRIMARY
PARTIES WERE THE SINGAPORE COMPANIES.

THEY WERE FIGHTING OVER THE MANUFACTURE
OF SINGAPORE PRODUCTS MANUFACTURED IN SINGAPORE.
THE PRIMARY PARENT COMPANIES WERE BOTH SINGAPORE
COMPANIES.  THE INFRINGEMENT WAS OCCURRING IN
SINGAPORE BUT THEY DECIDED TO COME TO THE U.S.  THE
COURT SAID NO IN ADELSON.

AND WHAT THE COURT DID SAY ON PAGE TEN OF
THAT OPINION IS, IT'S NOT A CASE OF PIRACY OF

AMERICAN MADE PRODUCTS INVOLVING AMERICAN
COMPANIES.

THIS IS A CASE OF AMERICAN MADE PRODUCTS
AND PIRACY, ESSENTIALLY, COPYING -- WHOLESALE
COPYING OF THE LOOK AND FEEL --

THE COURT:  BY A GERMAN COMPANY --

MR. GRAY:  YES.  AND THAT IS
DISTINGUISHABLE.  THE COURT IN CREATIVE SAID, NO,
THEY ARE SINGAPORE COMPANIES.

THE COURT:  RIGHT.

MR. GRAY:  AND, ADDITIONALLY, IN THE
LOCKMAN CASE THE MAIN ISSUE IN THAT CASE WAS THE
JAPANESE COPYRIGHT ISSUE.  IT FLOWED THROUGH EVERY
CLAIM THAT THE PLAINTIFF WAS TRYING TO BRING.

THE PLAINTIFF HAD A 30-YEAR RELATIONSHIP WITH
THE ASIAN COMPANY THAT IT THEN TURNED AROUND AND
SUED.  ALL OF THE COPYRIGHT ISSUES WERE IN JAPAN
AND ASIA AND THE PRODUCTS SOLD WERE IN JAPAN AND
ASIA.

SO WE ARE LOOKING AT ANOTHER SUIT BECAUSE
ALL THE UNDERLYING ACTIONS WERE THERE, AND
ESSENTIALLY THE HARM FOR THOSE JAPANESE COPYRIGHTS
WAS IN JAPAN.

THE COURT:  OKAY.

MR. GRAY:  ONE OTHER POINT I'D LIKE TO

MENTION, YOUR HONOR, IN TERMS OF THE GERMAN AND
U.S. CASE --

THE COURT:  YES.

MR. GRAY:  FACEBOOK SHOWED ITS INDICATION
TO BE HERE IN THIS FORUM.  COINCIDENTALLY ENOUGH,
WE BOTH FILED SUIT ON THE SAME DAY.

SO THEY FILED IN GERMANY THEIR
DECLARATORY RELIEF ACTION AND WE FILED HERE, SAME
DAY.  WE CLEARLY INDICATED OUR INTENT TO BE HERE.

AGAIN, COUNSEL IS APPLYING U.S. THOUGHT
AND U.S. PROCEDURES TO THE CLAIMS IN GERMANY.  YES
WE ARE PLAINTIFF IN COLOGNE, BUT AS WE POINTED OUT
IN THE KATHARINA SCHEJA DECLARATION, I THINK DOCKET
NUMBER 126, THAT PROCEDURE IS LARGELY A
COUNTERCLAIM TO A DECLARATORY RELIEF ACTION.

WE DIDN'T HAVE THE SAME OPPORTUNITIES TO
STAY OR DISMISS THOSE CLAIMS IN GERMANY.  IT'S A
DIFFERENT SYSTEM WITH DIFFERENT PROCEDURES.

THE FACT WE ARE PLAINTIFF IN COLOGNE IS
JUST COUNTERCLAIMS TO THE DECLARATORY JUDGMENT
ACTION TIMED BY THESE FOLK.

THE COURT:  WELL, BEST EFFORTS IN A
DECLARATORY JUDGMENT ACTION, ANYWAY.

THE POINT IS IT'S LARGELY THE SAME
DISPUTE.  AND YOU ARE REALLY ARGUING ABOUT WHERE IT

OUGHT TO BE HEARD.

MR. GRAY:  WELL, WE DISAGREE WITH THAT, OBVIOUSLY, AS WE'VE TALKED ABOUT.  WE DON'T THINK IT'S LARGELY THE SAME DISPUTE.  BUT FOR THEIR FILING THE DECLARATORY RELIEF ACTION, WE WOULD NOT BE HERE, FACEBOOK WOULD NOT BE IN GERMANY.

THE COURT:  I THINK WE'VE HAD A GOOD DISCUSSION, AND I WILL GIVE THE MATTER SOME THOUGHT AND I'LL GET A DECISION OUT SOON.

MR. GRAY:  THANK YOU, YOUR HONOR.

MR. SMITH:  I DID WANT TO RESPOND TO ONE POINT.

THE COURT:  REALLY?  YOU DON'T THINK YOU'VE HAD ENOUGH ORAL ARGUMENT?  YOU'VE HAD HALF AN HOUR.  THAT'S ABOUT TEN TIMES MORE THAN MOST PARTIES GET.

MR. SMITH:  THE LAWSUIT DOESN'T START JULY 18TH, 2008.  THEY SENT DEMAND LETTERS IN JANUARY 2007.  WE ACTUALLY FILED IN COURT IN GERMANY WHICH WAS AN ANTICIPATED DEFENSE.

SO THE GERMAN-NESS OF THIS DISPUTE IS IT'S GENESIS.

THE COURT:  OKAY.  WELL, I'M ACTUALLY GOING TO GO BACK AND LOOK AT THE FILINGS AND I WILL MAKE MY OWN JUDGMENT OF THAT.

```
 1              THANK YOU.

 2              MR. SMITH:  THANK YOU, YOUR HONOR.

 3              MR. GRAY:  I'M SORRY, YOUR HONOR THIS IS

 4     REALLY -- ARE WE ON FOR THE CMC CALENDAR --

 5              THE COURT:  I'M NOT GOING TO DO THE CMC

 6     UNTIL I DECIDE THE CASE.  I WILL GIVE YOU NOTICE.

 7              THANK YOU.

 8              (WHEREUPON, THE PROCEEDINGS IN THIS

 9     MATTER WERE CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT
REPORTER OF THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
CERTIFY:

THAT THE FOREGOING TRANSCRIPT,
CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND
CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS
SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____
SUMMER A. CLANTON, CSR
CERTIFICATE NUMBER 13185