

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2004 WL 532714 (N.D.Tex.)
**(Cite as: 2004 WL 532714 (N.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.
Shawne FIELDING and Thomas Borer, Plaintiffs,
v.
HUBERT BURDA MEDIA, INC., et al., Defendants.
**No. Civ.A. 3:03-CV-0872-.**

Feb. 11, 2004.

Kent C. Krause, Speiser Krause, Dallas, TX, for Plaintiffs.

Thomas S. Leatherbury, Vinson & Elkins, Kimberly Van Amburg, Charles L. Babcock, Jackson Walker, Mark L. Mathie, McKool Smith, Dallas, TX, Jennifer L. Johnson, Marc E. Ackerman, Robert L. Raskopf, White & Case, New York, NY, for Defendants.

Sidney Stahl, pro se, Law Office of Sidney Stahl, Dallas, TX, for Provider.

*MEMORANDUM OPINION AND ORDER*

KINKEADE, J.

**\*1** Several motions are currently pending before the Court, including Motions to Dismiss filed by each defendant. Having considered the merits of the motions to dismiss, and for the reasons stated herein, the motions are GRANTED.

I. Background

Thomas Borer, formerly the Swiss ambassador to Germany, and his wife, Texan Shawne Fielding (collectively, "Plaintiffs"), bring this suit against Hubert Burda Media, Inc., Hubert Burda Digital, Inc., Burda Media, Inc., Burda Publications, Inc., Bunte Entertainment Verlag GMBH, and Hubert Burda (collectively, the "Burda Defendants"); Bertelsmann AG and Bertelsmann, Inc. (collectively, the "Bertelsmann Defendants"); and Gruner & JAHR AG, TIP-Verlag GMBH, and Stern DE GMBH (collectively, the "Gruner Defendants") by way of the Court's diversity jurisdiction.

Plaintiffs claim that beginning in April of 2002, Defendants, all media businesses, undertook a campaign to impugn the reputations of Plaintiffs in Europe and the United States. Plaintiffs state that several magazines published by the Defendants in this case, German magazines such as *Stern, Bunte,* and *TIP,* detailed an alleged affair between Plaintiff Borer and Ms. Djamila Rowe, a European model, and allegedly attacked Plaintiff Fielding's reputation in Europe and the United States. Although the articles were originally published by the German media, some of the allegations set forth in those stories were published in the United States by the Associated Press, Dallas Morning News, and other domestic media. Plaintiffs allege that the allegedly defamatory publications caused them to suffer physical and emotional damage, plus damage to their professional reputations.

Plaintiffs sue Defendants for libel, intentional infliction of emotional distress, tortious interference with prospective business relations, and civil conspiracy. Defendants filed their motions to dismiss asking the Court to dismiss the case based on (1) lack of personal jurisdiction; (2) improper service of process; (3) forum non conveniens; and (4) failure to state a claim on which relief can be granted. The Court will analyze each claim in turn.

II. Personal Jurisdiction

The Texas long-arm statute applies in this case. The Texas long-arm statute has the same scope as the U.S. Constitution, so this Court may only exercise jurisdiction over the Defendant if jurisdiction is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

consistent with the Due Process Clause. *See Alpine View Co. v. Atlas Copco A.B.,* 205 F.3d 208, 214 (5th Cir.2000). The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" in that state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Id.* at 214-15 (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**\*2** "Minimum contacts" can be established through either specific jurisdiction or general jurisdiction. *See Alpine View,* 205 F.3d at 215. Specific jurisdiction over a nonresident defendant exists when it has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise from or relate to those activities. *See id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). General jurisdiction exists when the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are "continuous and systematic." *Alpine View,* 205 F.3d at 215 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Once a defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing the Court's jurisdiction over a defendant. *See Gundle Lining Constr. v. Adams Cty. Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir.1996). In its response to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff cannot stand on its pleadings, but must, through affidavits or otherwise, set forth specific facts demonstrating that the Court has jurisdiction. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).

When the Court does not conduct an evidentiary hearing, the party seeking to assert jurisdiction must present facts sufficient to make out a prima facie case supporting personal jurisdiction. *See Alpine View,* 205 F.3d at 215. The Court accepts as true that party's uncontroverted allegations, resolving in its favor all conflicts between the facts contained in the parties' affidavits and other documentation. *See id.* However, the Court is not required to give credit to conclusory allegations, even if they are uncontroverted. *See Panda v. Brandywine Corp. v. Potomac Elec. Power Comp.,* 253 F.3d 865, 868-69 (5th Cir.2001).

A. Specific Jurisdiction Under *Calder*

Plaintiffs argue that the Court has specific jurisdiction over Defendants in this case based on the effects caused in Texas by Defendants' allegedly libelous articles. Defendants argue that the law clearly prevents the exercise of specific jurisdiction over Plaintiffs' claims.

The seminal authority on specific jurisdiction in a libel suit is the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* an editor and a writer for the *National Enquirer,* both residents of Florida, were sued in California for libel arising out of an article published in the *Enquirer* about Shirley Jones, an actress. *See id.* at 784-85. The Supreme Court upheld the exercise of personal jurisdiction over the two defendants because they had "expressly aimed" their conduct towards California. *Id.* at 789. The allegedly libelous story concerned the California activities of a California resident, impugning the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, with the brunt of the harm, including both the California resident's emotional distress and the injury to her professional reputation, felt in California. In short, California was the focal point both of the story and of the harm suffered. *See id.* at 788-89. In supporting its holding, the Court also relied upon the fact that the magazine had its largest circulation in California. *See id.* at 789-90.

**\*3** The Fifth Circuit Court of Appeals' primary case interpreting *Calder* is *Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002). In *Revell,* the court stated that in order for *Calder* to apply, the harm from a defendant's alleged defamation had to be felt in the forum state *and* the forum had to be the focal point of the publication. *See id.* at 474 n. 48 (citing *Burt v. Board of Regents of University of Nebraska,* 757 F.2d 242, 245-47 (Seth, J., dissenting)) (emphasis in original). Applying that test, the court held that specific jurisdiction did not exist over a defendant who posted allegedly defamatory remarks about a Texas resident on an internet bulletin board of a New York university.

In this case, Defendants argue that neither the focus of the articles nor the brunt of the harm caused by the articles was felt in Texas, while Plaintiffs claim that the Defendants "plainly directed their libelous activities at Texas and were fully aware that the effects of their defamatory articles would be felt in Texas." To support their claims, Plaintiffs state that the articles (1) were distributed throughout the word, including Texas; (2) discussed Plaintiff Fielding's activities as a Texas citizen; (3) included interviews with Plaintiff Fielding's former husband, a Texas resident; and (4) contained "totally false accusations that Plaintiff Fielding engaged in illegal and sordid activities with Plaintiff Borer in Germany and other countries, including adultery, illicit drug use, obstruction of justice, and incurring the wrath of the citizens of Berlin." Plaintiff states that Defendants sell their magazines systematically in Texas through subscriptions and newsstand sales.

1. The "Brunt of the Harm"

One of the two requirements needed in order to establish minimum contacts under *Calder* is the "effects" test. In *Calder,* the Court found jurisdiction because the plaintiff suffered the "brunt of the harm," both emotionally and professionally, in California. *See Calder,* 465 U.S. at 789. In this case, Plaintiffs allege that the articles published by Defendants caused them to suffer harm in Texas. Plaintiffs' only evidence of any harm suffered in Texas are affidavits from Plaintiffs themselves and five of Plaintiffs' contemporaries. Defendants argue that Plaintiffs' affidavits are inadmissible as hearsay under the Federal Rules of Evidence, and insofar as they include conclusory allegations. Nevertheless, the Court will consider the affidavits in determining whether the brunt of the effects of the articles were suffered in Texas.

Collectively, the affiants claim that they were contacted in Texas to contribute to Defendants' articles, and that the articles damaged Plaintiffs' reputations in Dallas. One affiant, Tony Fielding, testified that the articles he read in both the German and United States press "portrayed Shawne as a shallow, money-grubbing, headline-grabbing dilettante who was only interested in her appearance and the publicity she could get." Another affiant, Nancy Scholz, testified that a German friend translated the German articles into English for her, and that the articles "portrayed Shawne as a flashy, blond dingbat who was not genuine nor at all intelligent." Ms. Scholz, along with several of the affiants, testified that the articles irreparably harmed Plaintiffs' reputations in Dallas.

**\*4** Even considering these affidavits, Plaintiffs' First Amended Complaint shows that the brunt of the harm from the articles was suffered outside of Texas. Discussing the effect of Defendants' articles published in April of 2002, Plaintiffs' First Amended Complaint states that "Plaintiff Borer was recalled to Switzerland and stripped of his ambassadorship to Germany, which resulted in his resignation from the Swiss diplomatic corps." Additionally, Plaintiffs state that because of the articles "Plaintiff Fielding suffered serious debilitating physical illness. Indeed, the stress and anxiety caused by Defendants' campaign of libel and defamation was so devastating as to cause Plaintiff Fielding to suffer a miscarriage in April of 2002."

Plaintiffs' First Amended Complaint also states that because of Defendants' articles, Plaintiffs have

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

suffered shame, embarrassment, humiliation, mental pain and anguish, harm to their standing in the community, and harm to their business reputations. Plaintiff Borer specifically states that the articles have caused him to suffer a loss of spousal consortium. Despite Plaintiff Fielding being a Texas citizen, there is no evidence that either Plaintiff Fielding or Plaintiff Borer currently live in Texas, or lived in Texas at any time relevant to this lawsuit. Although Plaintiffs' reputations might have been damaged in Texas, the bulk of Plaintiffs' harm has been suffered in Europe, where Plaintiff Borer lost his job as Swiss Ambassador to Germany and Plaintiff Fielding lost her unborn child. Stating that the brunt of the harm caused by Defendants' allegedly defamatory articles has been suffered in Texas is not a reasonable claim.

Therefore, the effects of the allegedly defamatory articles were felt primarily in Europe, and Plaintiffs cannot make out a prima facie case of specific jurisdiction based on Defendants articles, and the Court cannot hear this case against Defendants.

2. Geographic Focus

Even if the "brunt of the harm" of the articles was felt in Texas, *Revell* states that *Calder* also requires Plaintiffs to make a prima facie showing that Texas was the geographic focus of the articles. In *Revell,* the court stated that *knowledge* of the particular forum where a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test. *See Revell,* 317 F.3d at 475 (emphasis added). Even though a defendant must know that the harm of the article will hit home wherever the plaintiff resides, that is the case with virtually any defamation-a more direct aim is required. *Id.* at 476. Merely residing in a forum, and suffering harm there, does not alone support jurisdiction under *Calder.See id.* at 473 (internal citation omitted).

Plaintiffs correctly point out that the article at issue in *Revell* did not rely on any Texas sources and made no reference to Texas, while in this case some of the articles published by Defendants did refer to Plaintiff Fielding's life in Texas before she moved overseas and quoted her ex-husband, a Texas resident. Still, *Revell* requires that in order to invoke the specific jurisdiction of the Court, the articles must be "directed specifically at Texas." *See id.* at 475.

**\*5** As an initial matter, most of the allegedly libelous articles focus on the alleged affair between Plaintiff Borer and a German model and Plaintiffs' allegedly illegal and illicit activities in Germany. Discussing conduct based wholly in Europe is not sufficient invoke specific jurisdiction under *Calder.*As discussed above, in *Calder,* the Supreme Court found that the exercise of specific jurisdiction in California was proper because the allegedly libelous story dealt with the California activities of a California resident, was drawn from California sources, impugned the professionalism of an entertainer whose career was centered in California, and caused the California resident to suffer the brunt of the harm in California. *See Calder,* 465 U.S. at 788-89. To establish the specific jurisdiction of Texas courts in a libel suit, the article must, at the very least, refer to Plaintiffs' actions in Texas and rely on Texas sources in some way. *See Revell,* 317 F.3d at 473-74. This standard clearly has not been met in the articles which discuss Plaintiffs' activities in Europe, relying on wholly European sources.

Nevertheless, some of the articles Plaintiffs complain of discuss Plaintiff Fielding's life in Texas before her marriage to Plaintiff Borer and include quotes from her ex-husband, a Texas resident. Of the articles provided by Plaintiffs to the Court, only three discuss Plaintiff Fielding's Texas background: (1) an article in the April 22, 2002 issue of *Bunte;* (2) an article in the April 22, 2002 issue of *Neue Woche;* and (3) an article dated April 24, 2002 issue of *Viel Spass.*The content of these articles is sufficiently related to Texas to potentially invoke the specific jurisdiction of this Court. However, the "geographic focus" requirement of *Revell* requires more than merely discussing activities based in Texas included the articles.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

In determining the articles' true geographic focus, *Revell* requires the Court to look at more than the content of the articles. In *Revell,* the court noted that placing an article on the internet bulletin board of a New York university did not compare to the targeting of over 600,000 California readers of the *Enquirer* as in *Calder.See id.*While some of the articles Plaintiffs base their complaint on do discuss the Texas activities of Plaintiff Fielding and rely on Texas sources in doing so, Defendants' magazines which published the articles at issue are directed almost entirely to a German audience. In this case, the articles published by Defendants were published in Germany, in the German language, with only a handful of readers in Texas. Indeed, both the Gruner and Burda Defendants state that their magazines have an extremely limited market in Texas.

In a declaration before the Court, Stephan Schwerg, Defendant Gruner + Jahr AG & Co. KG's vice president of distribution, states that out of an average weekly circulation of over 1,000,000 copies, over 94% of *Stern's* circulation is in Germany, less than 40 copies are sent directly to subscribers in Texas, and fewer than twenty copies are sold at newsstands in Texas. Similarly, Philipp Welte, Chief Executive Officer of Defendant Bunte Entertainment Verlag GmbH, testifies in a declaration before the Court that out of a circulation of approximately 750,000 copies per issue, *Bunte* magazine is shipped to approximately 40 subscribers in Texas, and an importer distributes approximately 30 copies of each issue of *Bunte* throughout Texas. Based on these undisputed facts, Plaintiffs cannot reasonably compare this case to *Calder,* where 600,000 copies of a magazine out of a circulation of 5,000,000 were distributed to the forum state, which happened to be the defendant's single largest market. In this case, only a fraction of a percent of Defendants' magazines are distributed in Texas each month. This is a far cry from the twelve percent figure in *Calder.*

**\*6** Therefore, despite soliciting some information in the articles from Texas, discussing Plaintiff Fielding's Texas origins in some of the articles, and interviewing Plaintiff Fielding's ex-husband for an article in *Bunte* magazine, Texas was not the geographic focus of Defendants' articles. The articles were published in Germany, in German, and distributed almost exclusively to readers in Europe. Because Texas cannot fairly be called the geographic focus of Defendants' articles, Plaintiffs have not met their burden of establishing specific jurisdiction over Defendants.

3. Liability for Republication

Plaintiffs argue that specific jurisdiction exists over Defendants because several Texas publications ran versions of the articles originally published by Defendants. Essentially, Plaintiffs argue that articles published by the Dallas Morning News, Fort Worth Star Telegram, Texas Monthly Magazine, and D Magazine should be attributed to Defendants, thus invoking the specific jurisdiction of the Court.

Plaintiffs correctly point out that under Texas law, if a reasonable person would recognize that his actions create an unreasonable risk that the defamatory statements will be communicated to third parties, his conduct becomes a *negligent publication* to those parties with the same consequences as a direct and intentional communication. *See [Stephan v. Baylor Medical Center at Garland,](...) 20 S.W.3d 880, 888 (Tex.App.-Dallas 2000, no pet.)*(emphasis added). While liability for the Texas media's republication of Defendants allegedly defamatory articles might exist if the Court has jurisdiction over Defendants in the first place, Plaintiffs cite no authority, and the Court could fine none, which states that jurisdiction itself may be predicated on republication. Significantly, *Calder* and its progeny note the importance of defendants' intentional tortious acts in defamation cases, not negligent acts.

In *Calder,* the Court specifically noted that the defendants were not charged with "mere untargeted

negligence," but for their intentional and allegedly tortious actions. *See Calder,* 465 U.S. at 789. Similarly, in *Remick v. Manfredy,* 238 F.3d 248 (3rd Cir.2001), which *Revell* relied upon in interpreting *Calder,* the Court stated that a plaintiff must show that a defendant committed an *intentional tort* in order to invoke *Calder.See id.* at 258 (emphasis in original). The cases involving the existence of specific jurisdiction over a defamation clearly require allegations of an intentional tort.

Plaintiffs' allegations of republication do not invoke an intentional tort, and as such, are insufficient to establish the specific jurisdiction of the Court. While the effects of a finding of liability under negligent republication may be the same as with an intentional publication, Plaintiffs cannot bootstrap their negligent republication claim to the Court's *Calder* analysis.

Ultimately, the issue of whether the Court has specific jurisdiction over this case comes down to the simple question of to whom these articles were directed. In *Revell,* the court stated that the post on the bulletin board could have been directed to the entire world, or maybe just U.S. citizens; regardless, the posting was not directed specifically at Texas. *See Revell,* 317 F.3d at 475. If the articles at issue in this case were directed to anyone in particular, it was to the German readers of Defendants' magazines. While there might be instances where an article written in a foreign language is directed towards the State of Texas, this is not such an instance. Accordingly, Defendants could not have reasonably anticipated being haled into court in Texas for the articles written about Plaintiffs.

**\*7** Given these facts and the evidence before the Court, Plaintiffs have not met their burden of proof to show that the Court has specific jurisdiction over their claims against Defendants. Therefore, the Court may exercise personal jurisdiction over Defendants only if Plaintiffs meet their burden of establishing the Court's general jurisdiction over Defendants.

B. General Jurisdiction

Plaintiffs argue that the Court has general jurisdiction over the Gruner and Bertelsman Defendants by virtue of their subsidiaries' contacts with Texas, although they make no such jurisdictional argument regarding the Burda Defendants. Specifically, Plaintiffs' response to Defendants' motions state that "Texas courts have exercised [general jurisdiction] over nonresident parent corporations based upon the Texas contacts of subsidiaries which were 'mere 'divisions' or 'branches' of a larger whole, such that the subsidiaries' contacts with Texas should be attributed to' the parent."Plaintiffs' response also states that general jurisdiction is proper where "the parent and the alleged subsidiaries constitute a single business enterprise."Defendants argue that neither theory applies, and that general jurisdiction does not exist in this case.

Plaintiffs seek to invoke this Court's general jurisdiction by attributing the contacts of Bertelsmann, Inc., to Bertelsmann AG and the Gruner Defendants. The Bertelsmann Defendants, through the Declaration of Jacqueline Chasey, Senior Vice President for Legal Affairs of Bertelsmann, Inc., state that Bertelsmann, Inc. "has no substantial, continuous, or systematic contacts with Texas. Specifically, Ms. Chase testifies that Bertelsmann, Inc. is not licensed or qualified to do business in Texas, has no employees in Texas, has no offices or facilities in Texas, has no bank accounts in Texas, pays no taxes in Texas, does not own or use any personal or real property in Texas, or manufacture or sell any goods in Texas. Plaintiff's only evidence of any contacts of Bertelsmann, Inc. with Texas is a document procured from the website www.knowx.com, which shows that Bertelsmann, Inc., has a registered agent located in Dallas, Texas. However, the document shows that it is actually Bertelsmann Music Group, Inc. ("BMG"), not Bertelsmann, Inc., which has a registered agent in Texas. BMG is not a party to this litigation.

Even if Bertelsmann, Inc. had appointed an agent for service of process in Texas, that one factor is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

not enough to show that this Court has general jurisdiction. *See Wenche Seimer v. Learjet Acquisition Corp.,* 966 F.2d 179, 181-82 (5th Cir.1992) (holding that defendant's mere registering to do business in state and appointing an agent was not sufficient to confer general jurisdiction, as primary question is not whether defendant is registered to do business in state, but if defendant actually conducted business in state). Therefore, as Plaintiffs do not refute any of Ms. Chase's testimony in her declaration, they fall short of meeting their burden of establishing that the Court has general jurisdiction over Bertelsmann, Inc.

**\*8** Plaintiffs' failure to establish general jurisdiction over Bertelsmann, Inc., necessarily means that their attempts to establish general jurisdiction over Bertelsmann AG and the Gruner Defendants also fail. Plaintiffs had sought to use the single enterprise theory to attribute the contacts of Bertelsmann, Inc., to the other Defendants. The single enterprise theory states that when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose, personal jurisdiction will be attributed to all corporations to which the theory applies. *See El Puerto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.,* 82 S.W.3d 622, 635-36 (Tex.App.-Corpus Christi 2002, pet dism'd w.o.j.). In order for the theory to apply, however, some party must have minimum contacts in the first place. As Plaintiffs' only evidence of any contacts in Texas by any defendant in this case is the employment of a registered agent by BMG, a non-party to this case, there are no contacts that could even potentially be attributed to the other Defendants. No defendant has contacts sufficient with Texas to invoke the general jurisdiction of the Court, whether the single enterprise theory applies or not.

III. Other Grounds for Dismissal

Because the Court lacks personal jurisdiction over Defendants based on either specific or general jurisdiction, it need not discuss the other grounds included in Defendants' motions to dismiss: improper service of process, forum non conveniens, or failure to state a claim.

IV. Conclusion

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED, and this case is DISMISSED without prejudice.

Accordingly, the following motions are DENIED as moot: (1) Plaintiffs' Motion to Extend Time filed on August 15, 2003; (2) Defendants' Motion to Strike filed September 2, 2002; (3) Defendant Gruner + Jahr AG's Motion to Quash filed September 4, 2003; (4) Defendants' Motion to Quash filed September 23, 2003; (5) Defendant Gruner + Jahr AG's Motion to Quash filed October 30, 2003; (6) Defendants' Motion to Quash filed November 7, 2003; (7) Plaintiffs' Motion for Leave filed November 7, 2003; (8) Defendants' Motion to Quash filed December 15, 2003; and (9) Defendants' Motion to Quash filed December 18, 2003. Defendants' Motion for Sanctions filed on January 20, 2004, is DENIED.

SO ORDERED.

N.D.Tex.,2004.
Fielding v. Hubert Burda Mdia, Inc.
Not Reported in F.Supp.2d, 2004 WL 532714 (N.D.Tex.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.