

LEXSEE 2006 U.S. DIST. LEXIS 56243

**KANYE WEST, Plaintiff/Counter-Defendant, v. ERIC "E-SMOOVE" MILLER and FOCUS MUSIC GROUP, INC. Defendants/Counter-Plaintiffs.**

No. 05 C 4977

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 56243*

**August 11, 2006, Decided**

**SUBSEQUENT HISTORY:** Affirmed by, Objection denied by *West v. Miller, 2007 U.S. Dist. LEXIS 11360 (N.D. Ill., Feb. 13, 2007)*

**COUNSEL:** [*1] For Kanye West, Plaintiff: Leslie Anne Morse, Ronald Hanley Balson, Carrie A. Hall, Hill, Gilstrap & Balson, Chicago, IL; Philip R Hoffman, Pryor, Cashman, Sherman & Flynn, New York, NY.

For Focus Music Group, Inc., Eric E-Smoove Miller, Defendants: Lois T. Collins, Randolph D Phifer, Victor L. Bowman, PHIFER & WHITE, P.C., Detroit, MI US.

For Kanye West, Counter Defendant: Leslie Anne Morse, Hill, Gilstrap & Balson, Chicago, IL; Philip R Hoffman, Pryor, Cashman, Sherman & Flynn, New York, NY.

**JUDGES:** Magistrate Judge Maria Valdez. Honorable Wayne R. Anderson.

**OPINION BY:** MARIA VALDEZ

**OPINION**

## MEMORANDUM OPINION AND ORDER

The claims and counter-claims arising out of this dispute are a mix of federal and state causes of action regarding the parties' respective rights to exploit for commercial purposes eleven unreleased master recordings of performance artist Kanye West that were made in or around 1995 or 1996. Now before this Court is a pair of motions filed by Defendants/Counter-Plaintiffs, Eric "E-Smoove" Miller and. Focus Music Groups, Inc. ("Defendants"), including Defendants' motion to compel production of documents [Doc. No. 33] and motion to extend the discovery deadline [*2] [Doc. No. 35]. Plaintiff/Counter-Defendant, Mr. West ("Plaintiff" or "West"), responds by opposing both motions.

### I. Background

The District Court, on December 5, 2005, referred all discovery matters to this Court for resolution. *See* [Doc. No. 23]. This Court held its first status hearing with the parties on January 18, 2006, and allowed the parties to set a discovery cutoff of July 10, 2006. *See* [Doc. No. 28]. At a subsequent status hearing on April 20, 2006, the parties appeared and represented to this Court that discovery was progressing without incident *See* [Doc. No. 32].

Yet more than two months later and with less than a dozen days left in discovery, Defendants filed their (1) motion to compel production, and (2) motion to extend discovery. [1] Defendants through their motion to compel indicated that as early as April 10th the discovery process broke down with regard to Defendants' document requests nos. 1 and 6. [2] (Defs.' Mot. Compel PP 2, 3, Ex. B.) As to Defendants' motion to extend discovery, they represented that a new discovery cutoff was needed as a result of parties agreeing to suspend discovery to pursue informal settlement talks between [*3] April 21st and

June 8th. (Defs.' Mot. Extend PP 5,6.)

> 1  Courtesy copies of these motions were delivered to this Court on July 6, 2006.
> 2  Plaintiff objected to request nos. 1 and 6 by arguing that Defendants sought propriety and confidential information and were overbroad and unduly burdensome. (Defs.' Mot. Compel Ex. B.)

At the July 12th argument on the motions, counsel for Defendants raised an additional concern regarding an outstanding deposition. This Court granted leave for the parties to brief their respective positions if they could not resolve the deposition dispute on their own. Five days later, Defendants filed a third motion [Doc. No. 40] and eventually noticed it up before this Court for August 3, 2006.

Awaiting the August 3rd hearing on Defendants' third motion, this Court delayed ruling on the others. At the August hearing, however, the parties resolved the matter raised in the third motion which lead this Court to deem the motion moot. *See* [Doc. No. 45.] Accordingly, this Court now **[*4]** turns to address Defendants' remaining motions.

## II. Motion to Compel Production of Documents

Through their first motion, Defendants seek anorder to compel the production of various recording and/or music production contracts ("recording contracts") executed between Plaintiff and third parties. (Defs.' Mot. Compel P 3.) Through their pleadings, Defendants narrowed their discovery request to those recording contracts "generated in the last five years." (Defs. 'Mem. Supp. Mot. Compel 9.) At argument, however, Defendants further narrowed the request to Plaintiff's current contract with the successor-in-interest to a contract originally entered into between Plaintiff and Roc-A-Fella Records ("Roc-A-Fella contract"). Plaintiff asserted that this contract contains a valid confidentiality clause and they offered to produce this contract to the Defendants in redacted form, which was declined. As such, this Court now addresses Defendants' motion to compel production of the Roc-A-Fella contract, which is the only issue remaining to support extending the discovery deadline.

### A. Meet & Confer Requirements

This Court begins by noting that Defendants failed to include in their **[*5]** motion to compel a detailed explanation of their past in-person or telephonic communications with their opponent to resolve this discovery dispute without court intervention. Both *Rule 37 of the Federal Rules of Civil Procedure* and *Local Rule 37.2* prescribe a firm meet and confer requirement for motions to compel. *Fed. R. Civ. P. 37(a)(2)(B)* ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."); *N.D. Ill. L.R. 37.2* (requiring "consultation in person or by telephone" and "good faith attempts to resolve differences").

"Failure to comply with the local rules," which seek to further the aims of the federal rules, "is not merely a harmless technicality, but can be a fatal mistake." *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C., 2004 U.S. Dist. LEXIS 26861, No. 03 C 760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 20, 2004)* (citations and internal quotations omitted). Nevertheless, this Court will forego a harsh application of either the federal or local requirement as there are independent grounds to deny Defendants' production **[*6]** request.

### B. Relevance

Relevancy for discovery purposes is a broader concept than relevancy at the time of trial. *Fed. R. Civ. P. 26(b)(1)* ("Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). Specifically, *Rule 26(b)(1) of the Federal Rules of Civil Procedure* provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...."

Despite the liberal breath of discovery allowed under the federal rules, "the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant." *U.S. v. Lake County Bd of Com'rs, 2006 U.S. Dist. LEXIS 22793, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006)* (quoting *Alexander v. Federal Bureau of Investigation, 186 F.R.D. 154, 159 (D.D.C. 1999)* and citing *United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993))*. However, failure to make even a colorable initial showing as to relevance can doom a motion to compel. *See, e.g., Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir. 1993)* **[*7]** (finding court did not abuse its discretion in denying motion to compel discovery for lack of a

persuasive showing on relevance). "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." *Trading Technologies Intern., Inc. v. eSpeed, Inc., 2005 U.S. Dist. LEXIS 10686, No. 04 C 5312, 2005 WL 1300778, at *1 (N.D. Ill. Apr. 28, 2005)* (citing *Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004))*. Defendants here do not make a sufficient showing to shift the burden to their opponent.

### 1. Parties' Arguments on Relevance

Defendants' relevance arguments are based on the contention that the Roc-A-Fella contract is at issue in this litigation. In support of their burden, Defendants' offered that this contract is relevant to address the current market value of Plaintiff's recording works. (Defs.' Mem. Supp. Mot. Compel 6-7.) At argument on this motion, Defendants expanded the justification to add that this contract is needed to calculate the market value of Plaintiff's studio recording time, it is needed to further Defendants' fraud counter-claim, and it has a direct hearing **[*8]** on Plaintiff's motivation for filing this suit.

Through his response, Plaintiff countered that the only contract at issue in this instant matter is the absence of one between the partie -- not any contract West may have or had with third parties years later. (Pl.'s Resp. Mot. Compel P 3.) Plaintiff further speculated that Defendants seek such contracts for motives unconnected to the underlying litigation -- namely for purposes of harassment and to obtain confidential information about a celebrity, the Plaintiff. (*Id.*) At argument, Plaintiff added that Defendants had slept on their rights through an untimely filing of their motion to compel, contested that Plaintiff's worth as an artist today has any bearing on his worth in 1995 when he was a minor and a relatively unknown figure in the music industry, and asserted that there is not even partial relevance at play here.

### 2. Waiver through Undeveloped Arguments

By and large, what Defendants have argued and placed before this Court is simply not enough to reach the conclusions on relevance that they demand. Traditionally, where a movant "failed to discuss the facts relevant to their claim," such "[p]erfunctory or undeveloped **[*9]** arguments are waived." *Estate of Mordand v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005)* (citing *Colburn v. Trs. of Ind. Univ., 973 F.2d 581, 593 (7th Cir. 1992)*; *Hunter v. Allis-Chalmers Corp., 797 F.2d 1417 (7th Cir.1986))*.

Defendants make two market value arguments. They assert that the Roc-A-Fella contract is relevant to calculating "the market value of Plaintiff's work as a record artist" (Defs.' Mem. Supp. Mot. Compel 7), and relevant to calculate the market value of his studio time. Defendants, however, are not specific as to whether the artistic work and studio time market values they envision are ones from 1995, 2005, or at the time of the alleged breach of the parties' purported contract. Generally, market value is a concept tied to a specific time reference and factors relevant to its calculation must be close in time to said reference point. *See, e.g., Vill. of Lake Villa v. Stokovich, 284 Ill. Dec. 360, 376, 211 Ill. 2d 106, 810 N.E.2d 13 (Ill. 2004)* (holding a comparison too remote in time to be "little evidence of market value"). Nor are Defendants specific as to which claim or defense such market values relate. Without specificity as to **[*10]** time reference or which claim or defense is contemplated, this Court cannot properly weigh Defendants' market value arguments on relevance. For lack of development and support, this Court deems the market value arguments waived. *See Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n.l (7th Cir. 1996)* (upholding trial court finding that argument was waived for lack of both specificity as to evidence and cited authority in support).

Next, Defendants argue that determining whether the Roc-A-Fella contract contains mention of any of the unreleased masters is relevant to their common law fraud counter-claim. In Illinois, "the elements of a claim for fraudulent misrepresentation are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *W. W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill. App. 3d 752, 814 N.E.2d 960, 969, 286 Ill. Dec. 734 (Ill. App. 1st Dist. 2004)* (citing *Miner v. Fashion Enters., Inc., 342 Ill. App. 3d 405, 794 N.E.2d 902, 276 Ill. Dec. 652 (2003)*; **[*11]** *Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482, 675 N.E.2d 584, 221 Ill. Dec. 389 (1996))*. However, the reliance and harm contemplated by a fraud action is that of the relying party and not a third-party. Here, the counter-claim fraud count at issue between Defendants and Plaintiff arises from their purported oral contract from the mid-1990's. (Defs.' Countercl. P 52 ("On or about September, 1995 West represented to Miller that he would work with Miller to create, write, produce, and edit the Masters so that Focus could exploit

said Masters."); *id.* P 53 ("These representations were false and West knew that falsity of these statements at the time they were made."); *id.* P 55 ("Counter-Plaintiffs relied on the representations of West . . . .").) Any alleged misrepresentation--fraudulent or otherwise -- would relate to any oral contract between West and Defendants. West's contract with Roc-A-Fella entered into years later, has not been has not been shown to be relevant to the fraud claim here. This Court disagrees with Defendants and finds the Roc-A-Fella contract not relevant (even under its broadest definition at the discovery stage) to the fraud count brought by Defendants.

Lastly, Defendants [*12] assert that the Roc-A-Fella contract is key to establishing or leading to other discovery related to Plaintiff's motive for filing his claims. Review of the pleadings here reveals that Plaintiff's sole reference to the Roc-A-Fella contract is offered as a background fact in his complaint (Pl.'s Compl. P 11), and furthermore Defendants make no references to it through any of their counts under the counter-claim (*see generally* Defs.' Countercl). Defendants fail to specify how West's subjective motive is relevant to a claim or defense. [3] Without more, Defendants' motive argument is deemed waived for lack of development.

> 3 Assuming *arguendo* for the moment that motive is relevant to a count or defense here, Defendants do not address why compelling disclosure of a confidential third-party contract would either further a point that has already been coneeded by Plaintiff through his depositions answers (Defs.' Mot Compel P 5) or not be duplicative. There are many other discovery methods to utilize in determining a party's motive. Interrogatories, requests to admit, and/or depositions questions can all be used to get such information. Furthermore, *Rule 26(b)(2) of the Federal Rules of Civil Procedure* cautions against allowing discovery diat is duplicative or inconvenienL *Fed. R. Civ. P. 26(b)(2)* ("The frequency or extent of use of the discovery methods . . . shall be limited by the court if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . . .").

[*13] Simply asserting a conclusion or pointing to evidentiary backing without sufficient explanation or authority cannot sustain Defendants' initial burden for their market value, fraud, and motive aiguments on relevance. *See Estate of Moreland, 395 F.3d at 759*. Even presuming Defendants could make a colorable case that the Roc-A-Fella contract is remotely relevant to a claim or defense, they would still not prevail on their requested relief due to unexcused delay.

### 4. Waiver for Undue Delay

There are many reasons why a motion to compel production, like other discovery motions (including motions for an extension of discovery), filed on the eve of the discovery deadline should be granted. *Fed. R. Civ. P. 26(b)(1)* ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). And such reasons for granting are usually set out or justified by the motion for relief. But that was not done in this case.

The broad discretion afforded courts over discovery matters includes the discretion to determine whether a movant's tardiness constitutes undue delay. *Packman v. Chi. Tribune Co., 267 F.3d 628, 646-47 (7th Cir. 2001)*. [*14] On assessing delay of a moving party, "courts usually focus on three questions: (i) how long was the delay; (ii) was there an explanation for it; and (iii) what happened during the delay." *Carbajal v. Household Bank, FSB, 2003 U.S. Dist. LEXIS 16458, No. 00 C 0626, 2003 WL 22159473, at *9 (N.D. Ill. Sept. 18, 2003)* (addressing delay in filing motion to compel arbitration).

Defendants here admit that they knew as early as April 10, 2006, that Plaintiff objected to the Roc-A-Fella production request. (Defs' Mem. Supp. Mot. Compel 2.) Yet, at the second status hearing before this Court, on April 20th, Defendants raised no concern with Plaintiff's objections to this discovery. And, in fact, Defendants stated that they did not begin their discovery efforts -- in the words of defense counsel -- "in earnest" until late-April 2006. Further, prior to filing their motions, Plaintiff offered to share a redacted version of the Roc-A-Fella contract in question, but Defendants failed to take him up on this offer. Essentially, Defendants opted not to conduct discovery for approximately four of the six months they had; they forewent meaningful discovery from January through April 2006 and, to some extent, even [*15] after their motion to compel was filed.

The explanation offered as to the late discovery start by Defendants was that parties had reached an informal agreement to stay discovery pending informal settlement discussions. (Defs.' Mot. Extend PP 5,6.) An assertion that Plaintiff vigorously denies. (Pl.'s Resp. Mot. Extend P 10.) This explanation, more importantly, is belied by Defendants' own actions. On or about April 5, 2006, while the purported truce on discovery was to be in effect, defense counsel sent a defective subpoena to Universal Music Croup in New York City seeking recording contracts. [4] (Pl.'s Resp. Mot. Compel PP 7-9, Ex. A.)

> 4 Plaintiff devotes a significant share of his first response to pointing out the execution flaws and delivery deficiencies of defense counsel in her repeated attempts to subpoena recording contracts from third parties to this litigation including Def Jam Music, Inc.; Def Jam Recordings, Inc.; Def Jam Records, Inc.; Roc-A-Fella Records, LLC; Roc-A-Fella Records, Inc.; Rush Communications a/k/a Def Jam Mobile, LLC; Sony BMG Management Co., LLC; Sony BMG Music Entertainment; and Universal Music Group. (Pl.' s Resp. Mot. Compel PP 7-12, Ex. A, C, F.) Even after this Court addressed defense counsel's noncompliance with *Rule 45 of the Federal Rules of Civil Procedure* in open court, apparently she continued on issuing Northern District of Illinois subpoenas through the mail to a significant share of the music industry in New York and California. Out of judicial economy, this Court declines Plaintiff's invitation to further comment on Defendants' multifaceted noncompliance with *Rule 45*.

[*16] There is no firm time limit on when a late discovery motion is too late. *In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 331, 332 (N.D. Ill. 2005)* (noting that "[g]reater uncertainty occurs where the motion is made very close to the discovery cut-off date"); *Carbajal, 2003 U.S. Dist. LEXIS 16458, 2003 WL 22159473, at *9* ("Obviously, the longer a party waits, the more likely a court will find a waiver."). And, federal courts have varied on when a delay becomes excessive. *In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. at 332* (collecting cases). Nonetheless, one court in this district succinctly proclaimed that a motion to compel filed four days prior to the close of discovery was "a clear case of too little, too late." *Ridge Chrysler Jeep L.L.C., 2004 U.S. Dist. LEXIS 26861, 2004 WL 3021842, at *4*.

Here, Defendants' first motion to compel was filed eleven days from the close of discovery. This alone is not enough for this Court cry "too late," but when factored together with (1) four months of discovery inaction; (2) representations to this Court that no problem existed close in time to when Defendants' first learned of Plaintiff's noncompliance; (3) repeated [*17] rounds of defective subpoena attempts; (4) foregone opportunities to seek the "market value" information through less dramatic means than production of a third-party confidential contract and to depose the third-party successor-in-interest to the Roc-A-Fella contract; and (5) refusal of Plaintiff's offer to turn over a redacted version of the contract in question, this Court is inclined to exercise its discretion to find the undue delay that constitutes waiver.

### III. Motion to Extend Discovery Deadline

Defendants request an enlargement of discovery through September 11, 2006, because -- as they put it -- "[t]here are possibly more depositions" to be taken. (Defs.' Mot. Extend P 3.) At argument, they clarified that the additional discovery time sought would be used to redepose Plaintiff and to depose third-parties to the Roc-A-Fella contract regarding representations made under the contract. Because this Court has denied Defendants' motion to compel production, Defendants' only remaining ground for an extension has been extinguished above. Lastly, the same waiver through undue delay concerns addressed above also apply to Defendants' request to extend. For these reasons, [*18] Defendants' motion to extend is hereby DENIED as moot.

### CONCLUSION

Defendants' motion to compel [Doc. No. 33] is DENIED. Defendants' motion to extend discovery deadline [Doc. No. 35] is DENIED as moot.

**SO ORDERED.**

Dated: AU6 11 2006

**ENTERED:**

**HON. MARIA VALDEZ**

**United States Magistrate Judge**